**MONIKA Y. LANGARICA** (SBN 308518)(mlangarica@aclusandiego.org)
**JONATHAN MARKOVITZ** (SBN 301767)(jmarkovitz@aclusandiego.org)
**KIMBERLY GRANO** (SBN 328298)(kgrano@aclusandiego.org)
**BARDIS VAKILI** (SBN 247783)(bvakili@aclusandiego.org)
**DAVID LOY** (SBN 229235)(davidloy@aclusandiego.org)
**ACLU FOUNDATION OF SAN DIEGO &**
**IMPERIAL COUNTIES**
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4493

Counsel for Plaintiff-Petitioners

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Adrian RODRIGUEZ ALCANTARA, et. al.,<br><br>　　　　　Plaintiffs-Petitioners,<br><br>　　v.<br><br>GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement, et. al.,<br><br>　　　　　Defendant-Respondents. | Case No. 20cv756 DMS (AHG)<br><br>**NOTICE OF SUPPLEMENTAL FACTS AND AUTHORITY** |

1.　　Plaintiff-Petitioners ("Plaintiffs") Adrian Rodriguez Alcantara, Maria Flor Calderon Lopez, Yasmani Osorio Reyna, and Mary Doe submit this notice to inform the Court of new facts regarding the active outbreak of COVID-19 in Otay Mesa Detention Center ("Otay Mesa") and of new authority supporting their emergency request for relief.

2.　　On April 21, 2020, Plaintiffs filed a class complaint and petition for writ of habeas corpus on behalf of themselves and similarly situated civil immigration detainees currently incarcerated at Otay Mesa and the Imperial Regional Detention Facility, seeking, among other things, a court-supervised, orderly reduction in the population of both facilities to allow for the ability to practice social distancing. Due to the urgency of the current outbreak of COVID-19 at Otay Mesa, Plaintiffs

simultaneously filed an emergency request for a temporary restraining order ("TRO"), preliminary injunction, and writ of habeas corpus, seeking the immediate release, pursuant to release plans that comport with local health guidelines, of a subclass of medically vulnerable persons incarcerated at Otay Mesa who face heightened risk of serious illness or death due to COVID-19.

3. In their complaint, Plaintiffs noted that as of April 17, 2020 there were 18 cases of COVID-19 confirmed among individuals incarcerated in Otay Mesa in the civil custody of Immigration and Customs Enforcement ("ICE"). ECF No. 1 ¶ 3. On April 22, 2019, counsel for Plaintiffs noted that the ICE coronavirus website had been updated to indicate that he number of confirmed cases has jumped to 42, underscoring the urgency of Plaintiffs' emergency motion.[1]

4. After Plaintiffs filed their emergency motion, the U.S. District Court for the Northern District of Ohio issued an order in response to an emergency request for habeas relief on behalf of a class of incarcerated people at the Elkton Federal Correctional Institution, where an active COVID-19 outbreak is also underway. *See Wilson v. Williams,* No. 4:20-cv-00794 (N.D. Ohio Apr. 22, 2020). At the time, the government had confirmed 58 positive cases of COVID-19 among people incarcerated at FCI Elkton, as well as 46 among staff members. *Id.* at 2.

5. In Wilson, the court provisionally certified a subclass of medically vulnerable people confined at FCI Elkton, and it issued a preliminary injunction granting classwide habeas relief to protect the subclass from the imminent harm of infection. *Id.* at 9, 11, 15. In concluding the plaintiffs "obviously" demonstrated irreparable harm, the court found:

> At this moment a deadly virus is spreading amongst Elkton's population and staff. For infected inmates, the virus can lead to pneumonia. In the worse

---

[1] *See* ICE Guidance on COVID-19, Confirmed Cases, https://www.ice.gov/coronavirus (last visited April 23, 2020)

> pneumonia cases, COVID-19 victims suffer diminishing oxygen absorption, with resulting organ failure leading to death. Victims choke to death. While not every inmate who contracts the virus will die, the subclass members are at a much greater risk of doing so. They have a very serious medical need to be protected from the virus.

*Id.* at 16. As the court put it, prison officials are "fight[ing] a losing battle. A losing battle for staff. A losing battle for inmates." *Id.* at 2-3. The court found petitioners had satisfied the preliminary injunction factors, including a likelihood of success on the merits of their Eighth Amendment claim, which requires a showing of deliberate indifference on the part of the government. *Id.* at 16-19.

6. The *Wilson* decision is relevant to these proceedings in at least three respects. *First*, it lends further support that the urgency of an active COVID-19 outbreak in a carceral facility warrants provisional class certification and emergency relief. *Second*, the subclass in *Wilson* involved prisoners serving sentences for crimes, who are protected by the Eighth Amendment's prohibition against cruel and unusual punishment, under which they must demonstrate deliberate indifference by the government. *Id.* at 15-16. The subclass on whose behalf Plaintiffs pursue emergency relief consists of civil immigration detainees, who by definition are not serving criminal sentences, and whose claims are therefore governed by "more protective" due process principles. *Jones v. Blanas*, 393 F.3d 918, 931, 934 (9th Cir. 2004) (noting conditions of civil confinement that are "similar to" conditions faced by pre-trial detainees or convicted prisoners presumptively violate due process). *Third,* the court ordered the government to identify all medically vulnerable subclass members within one day of the order and evaluate eligibility for transfer out of the prison through any means, including release, within two weeks.[2] *Id.* at 20. Plaintiffs

---

[2] In the context of people serving criminal sentences, the court noted that individuals ineligible for release could be transferred to a facility where measures including testing and single-cell placement or social distancing are possible. *Id.* at 16. As Plaintiffs have argued, no civil immigration detainees are ineligible for
(Footnote continues on next page.)

seek similar relief: prompt identification of subclass members followed by their orderly release pursuant to individualized Release Plans that comply with public health standards. *See* Exhibit A, Proposed Order submitted regarding Plaintiffs' emergency motion.

Dated: April 23, 2020            Respectfully submitted,

ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES

**s/Monika Y. Langarica**

Attorneys for Plaintiffs-Petitioners

---

release because ICE has authority and discretion to release every person in its custody. *See* ECF 2-1 at 18-19.

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Adrian RODRIGUEZ ALCANTARA, et. al., Plaintiffs-Petitioners, <br><br> v. <br><br> GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement, et. al., <br><br> Defendant-Respondents. | Case No. 20cv756 DMS (AHG) <br><br> **[PROPOSED] ORDER GRANTING PLAINTIFF-PETITIONERS' EMERGENCY EX PARTE MOTION FOR SUBCLASS-WIDE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND WRIT OF HABEAS CORPUS** |

After consideration of the briefs and arguments of counsel, the evidence filed in support of and opposition to Plaintiffs-Petitioners' Emergency Motion for Subclass-wide Temporary Restraining Order, Preliminary Injunction and Writ of Habeas Corpus Regarding the Otay Mesa Medically Vulnerable Subclass, and being fully advised, the Court finds that Plaintiff-Petitioners have met their burden of demonstrating a need for a temporary restraining order , preliminary injunction, and writ of habeas corpus in this case.

Accordingly, IT IS HEREBY ORDERED THAT Plaintiffs-Petitioners' Motion is GRANTED as follows:

1. The Court concludes that Plaintiffs-Petitioners have met their burden of showing: (1) a likelihood of success on the merits of their claim under the Due Process Clause of the Fifth Amendment to the United States Constitution; (2) that the continued detention of medically vulnerable subclass members under current conditions of detention at the Otay Mesa Detention Center is causing and will cause irreparable harm to subclass members absent a temporary restraining order; (3) that the balance of equities tips sharply in in Plaintiffs-Petitioners' favor; and (4) that the public interest favors granting the temporary restraining order. Accordingly, a temporary restraining order and preliminary injunction are warranted.

2. The Court hereby issues a writ of habeas corpus ordering release of all Otay Mesa Medically Vulnerable subclass members.

3. The Court provisionally certifies the Otay Mesa class, defined as follows:

    All civil immigration detainees incarcerated at the Otay Mesa Detention Center.

4. The Court provisionally certifies the Otay Mesa Medically Vulnerable subclass, defined as follows:

    All civil immigration detainees incarcerated at the Otay Mesa Detention Center who are age 45 or over or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19.

5. The Court hereby appoints ACLU Foundation of San Diego & Imperial Counties attorneys as class counsel.

6. The Court HEREBY DECLARES that current conditions of confinement for Otay Mesa Medically Vulnerable subclass members held at the Otay Mesa Detention Center are unconstitutional under the Fifth Amendment because the conditions of their confinement place subclass members at substantial risk of serious illness or death.

7. It is hereby ORDERED THAT:

    a. Within 72 hours from the date of this Order, Defendants shall identify and disclose to class counsel a list, in a spreadsheet or comparable searchable format, of all Otay Mesa Medically Vulnerable subclass members,[1] including every subclass member's name, A number, age, underlying medical condition, immigration lawyer or representative (if any), primary language, current housing unit, prior custody determinations made by Defendants, and the names, relationship, and contact information for any points of contact in the United States that subclass members have provided Defendants in the course of their arrest, processing, and detention, along with any other information that becomes relevant during the course of implementation of this Order, subject to approval by the Court or magistrate judge assigned to this case;

---

[1] Qualifying medical conditions for the Otay Mesa Medically Vulnerable subclass will be informed by standards set by the CDC. *See, e.g., People Who Are at Higher Risk for Severe Illness,* Ctrs. Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html (last visited Apr. 20, 2020). Pregnancy should also qualify someone for subclass membership because the CDC acknowledges that "[p]regnant people have had a higher risk of severe illness when infected with viruses from the same family as COVID-19." *See Pregnancy and Breastfeeding,* Ctrs. Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/pregnancy-breastfeeding.html (last visited Apr. 20, 2020).

    b. Immediately upon identifying Otay Mesa Medically Vulnerable subclass members, Defendants shall release them pursuant to Release Plans listing the location upon release at which they will comport with public health guidelines for self-quarantine (if necessary due to infection or exposure), social distancing, and other recommendations of public health departments in their destination cities or counties; the name and contact information for the responsible adult at that location; information detailing their travel plans to that location; and any other information this Court deems necessary to ensure Release Plans comport with public health guidelines related to COVID-19;

    c. Defendants may release subclass members under appropriate conditions, but may not condition subclass members' release on paying a bond or providing proof of a sponsor's legal status and/or a sponsor's financial documents where Release Plans otherwise comport with public health guidelines related to COVID-19;

    d. Release Plans shall be appropriate to the individual circumstances of each subclass member, including whether they have been tested for COVID-19 or have been in close contact with confirmed cases of COVID-19, and a copy shall be provided to class counsel promptly upon a subclass member's release;

    e. Releases of subclass members pursuant to Release Plans shall begin no later than 72 hours after issuance of this Order and shall continue as long as any subclass members remain in ICE custody;

    f. Within 72 hours from the date of this Order, Defendants shall post a notice – to be created by class counsel and approved by the Court or magistrate judge assigned to this case – containing a phone number and email address at which subclass members can reach class counsel, they shall display the notice prominently at Otay Mesa Detention

       Center in all housing units, as well as all rooms where telephones or computers are available for class members' use, they shall translate the notice as necessary so that class members can understand it, and they shall facilitate free and confidential telephone calls between class members and class counsel until such time that all subclass members have been released pursuant to this Order;

g.  For any Otay Mesa class members who have medical conditions that Defendants do not believe qualify them for the Otay Mesa Medically Vulnerable subclass, Defendants shall provide class counsel with all information listed at part (7)(a) of this Order in a spreadsheet or comparable searchable format;

h.  If Defendants cannot determine adequate Release Plans for any Otay Mesa Medically Vulnerable subclass members within 48 hours of identifying subclass members, Defendants shall promptly meet and confer with class counsel so that class counsel may assist in identifying or developing appropriate Release Plans for those subclass members that comport with local public health guidelines for self-quarantine and social distancing;

i.  Should the parties be unable to resolve a dispute regarding subclass membership or subclass members' Release Plan within 48 hours after meeting and conferring, they shall raise the dispute to this Court, which may hear the matter or assign the magistrate judge assigned to this case to resolve the matter;

j.  On a weekly basis beginning one week from the issuance of this Order, Defendants shall provide status reports to the Court regarding their response to the COVID-19 outbreak at Otay Mesa, which shall include the following information: the total population levels at Otay Mesa broken down by housing unit, the total number of cohorted housing

      units and how long the units have been under quarantine, the total number of detainees tested for COVID-19, the number of available tests and the average length of time it takes for Defendants to receive results from those tests, and the total number of detainees confirmed positive for COVID-19;

k. Upon identification of any new or previously unidentified Otay Mesa Medically Vulnerable subclass members after the initial 72 hour period following this Order, Defendants shall promptly notify class counsel and release any such subclass members within 72 hours of such identification, and otherwise adhere to the requirements of this Order as if the date of identification of the new subclass member is the date of this Order;

l. No security shall be required.

Dated: _____

                                        United States District Court Judge