ROBERT S. BREWER JR.
United States Attorney
KATHERINE L. PARKER, SBN 222629
Chief, Civil Division
SAMUEL W. BETTWY, SBN 94918
Assistant U.S. Attorney
REBECCA G. CHURCH, SBN 259652
Assistant U.S. Attorney
STEVEN J. POLIAKOFF, SBN 188231
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-9634/7125/7721 / 619-546-7751 (fax)

Attorneys for Federal Respondents[1]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ADRIAN RODRIGUEZ ALCANTARA, et al., | Case No. 20cv0756 DMS AHG |
| Plaintiffs-Petitioners, | |
| v. | |
| GREGORY J. ARCHAMBEAULT, San Diego Filed Office Director, ICE; et al., | |
| Defendants-Respondents. | |

## RESPONDENTS' RESPONSE

## TO MOTION FOR TEMPORARY RESTRAINING ORDER

## AND

## RETURN TO HABEAS PETITION

---

[1] There is no personal jurisdiction over the federal defendants with respect to non-habeas subject matter jurisdiction and claims. Service of process has not been effected on the federal defendants.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES     ii

I.    SUMMARY OF ARGUMENT     1

II.    STATEMENT OF FACTS     5

     A. REMOVAL PROCEEDINGS     5

     B. ACTION TAKEN IN RESPONSE TO THE COVID-19 PANDEMIC     6

III.    ARGUMENT     8

     A. STANDARD     8

     B. PETITIONERS UNLIKELY TO SUCCEED ON THEIR HABEAS CLAIMS     9

       1. *Petitioners do not state a constitutional claim*     9

       2. *This Court lacks jurisdiction over Petitioners' habeas petition*     13

     C. FAILURE TO STATE IRREPERABLE HARM     15

     D. BALANCE OF EQUITIES DO NOT TIP IN PETITIONERS' FAVOR     15

IV.    CONCLUSION     16

# TABLE OF AUTHORITIES

**Cases**

*Albino-Martinez v. Adducci*, Case No. 2:20-cv-10893,

    2020 WL 1872362 (E.D. Mich. Apr. 14, 2020) ...................................................... 16

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470 (9th Cir. 1985) ......... 15

*Anderson v. United States*, 612 F.2d 1112 (1979) ................................................................. 9

*A.S.M. v. Donahue*, No. 7:20-CV-62 (CDL),

    2020 WL 1847158 (M.D. Ga. Apr. 10, 2020) ........................................................ 14

*Badea v. Cox*, 931 F.2d 573 (9th Cir. 1991) ....................................................................... 13

*Benavides v. Gartland*, No. 20-CV-46,

    2020 WL 1914916 (S.D. Ga. Apr. 18, 2020) ........................................................ 14

*Benavidez-Leon et al v. Barr et al*, No. 20cv00750-H (MDD) (S.D. Cal. Apr. 23, 2020) .. 8

*Brown v. Plata,* 563 U.S. 493 (2011) ................................................................................... 15

*Chasson v. Immigration & Customs Enforcement*, No. CV-17-5819-SVW (JPR),

    2017 U.S. Dist. LEXIS 190792 (C.D. Cal. Nov. 15, 2017) .................................... 13

*Crawford v. Bell*, 599 F.2d 890 (9th Cir. 1979) .................................................................. 13

*Dawson v. Asher*, No. C20-0409 JLR-MAT,

    2020 WL 1304557 (W.D. Wash. Mar. 19, 2020) .................................................. 12

*Dawson v. Asher*, No. C20-0409JLR-MAT,

    2020 WL 1704324 (W.D. Wash. Apr. 8, 2020) ...................................................... 14

*Fraihat v. ICE*, No. EDCV 19-1546 JGB (SHKx),

    2020 WL 1932393 (C.D. Cal. Apr. 20, 2020) ..................................................... 4, 7

*Fraihat v. ICE*, 2020 WL 1932570 (C.D. Cal. Apr. 20, 2020) ........................................ 4, 7

*Gayle v. Meade*, No. 20-21553,

    2020 WL 1949737 (S.D. Fla. Apr. 22, 2020) ........................................................ 14

*Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423 (1974) ............................................ 9

*Habibi v. Barr*, No. 20cv00618-BAS (RBB),

    2020 WL 1864642 (S.D. Cal. Apr. 14, 2020) ...................................................... 1, 8

*Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004) .................................................................. 15

*Kafatia v. Gilkey*, No. CV 11-9090-CJC SP,

    2012 WL 1987136 (C.D. Cal. Apr. 25, 2012), *report and recommendation adopted*,

    No. CV 11-9090-CJC SP, 2012 WL 1986316 (C.D. Cal. May 31, 2012) .............. 13

*Kydyrali v. Wolf et al*, No. 20cv00539-AJB (AGS) (S.D. Cal. Apr. 8, 2020) ................... 8

*Lopez-Marroquin v. Barr*, No. 18-72922,

    2020 WL 1808002 (9th Cir. Apr. 9, 2020)...................................................... 14

*Lopez-Marroquin v. Barr*, No. 20cv682-LAB (MDD),

    2020 WL 1905341 (S.D. Cal. Apr. 17, 2020) .......................................... 2, 8, 13, 15

*Los Angeles v. Lyons*, 461 U.S. 95 (1983). ..................................................................... 9

*Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) ...................................................... 13

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) ...................... 8

*Nken v. Holder*, 556 U.S. 418 (2009) ....................................................................... 15

*Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006) ........................... 9

*Sacal-Micha v. Longoria*, -- F. Supp. --,

    2020 WL 1518861 (S.D.T.X. Mar. 27, 2020) ........................................... 12

*Sacal-Micha v. Longoria*, No. 1:20-CV-37,

    2020 WL 1815691 (S.D. Tex. Apr. 9, 2020).......................................... 14

*See Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) ........................................... 12

*Shook v. Apker*, 472 F. App'x 702 (9th Cir. 2012)............................................. 13

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ........................................... 8

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) .............. 8

*United States v. Steward*, No. S1:20cr0052(DLC),

    2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020)............................................. 16

*United States v. Taylor*, No. 5:19-CR-192-KKC-MAS,

    2020 WL 1501997 (E.D. Ky. Mar. 26, 2020) 16

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)........................................... 8

**Statutes**

8 U.S.C. § 1226(c)(2) .................................................................................. 16

8 U.S.C. § 1229a ........................................................................................... 5

18 U.S.C. § 3623(a)(3)(A)(i), (ii) ................................................................ 15

**Other Authorities**

Executive Department, State of California, Exec. Order N-33-20, Mar. 19, 2020,
     https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf ....................... 6

Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus
     Disease (COVID-19) Outbreak, Mar. 13, 2020,
     https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-
     emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ ................... 6

# I

## SUMMARY OF ARGUMENT

Petitioners are asking this Court to intervene in the operations at Otay Mesa Detention Center (OMDC), when a vigorous response to COVID-19 is already well underway:[1] ICE has ensured that high-risk detainees are protected and receive review and release as appropriate (indeed, all four petitioners have been granted release in the normal course of custody reviews); ICE has reduced the detainee population to about 50% occupancy and has been accepting no new admissions since April 2, 2020 (with one exception); and the occupancy of the Medical Housing Units is at less than 30% occupancy. [*See* Dr. Farabaugh Dec.; Beckhelm Dec.; *see also* LaRose Dec.; Dr, Ivens Dec.][2]

Petitioners' allegations that ICE is not following CDC guidelines and their allegations that OMDC is overcrowded and that the Medical Facility is overrun are wholly unfounded. Petitioners would have this Court unnecessarily conduct an open-ended inquest to disrupt the work of medical and detention professionals who are busy on the front line of the COVID-19 pandemic response in the middle of declared states of emergency statewide and nationwide, to overrule existing CDC and ICE guidance and to add little or nothing to the recently issued nationwide injunction and provisional class certification. As the D.C. District Court observed last week, the same day that Petitioners filed this action: "To the extent that Plaintiffs' Motion [for Preliminary Injunction] recasts their case as one relating to conditions in the detention centers resulting from COVID-19, … the recent decision in *Fraihat v. ICE* … appears to offer Plaintiffs (and others) the relief they seek here related to the review of high-risk detainees." Ex. 5 (minute entry, *Mons v. McAleenan*, No. 18-cv-578-JEB (Apr. 21, 2020 D.D.C.) (denying motion for preliminary injunction)).

---

[1] As Judge Bashant recently found: "OMDC also appears to be taking great pains to protect the public during this unprecedented public health crisis." *Habibi v. Barr*, No. 20cv00618-BAS (RBB), 2020 WL 1864642, at *6 (S.D. Cal. Apr. 14, 2020).

[2] The declarations of OMDC Warden Christopher LaRose and Chief Medical Officer Keith Ivens accompany the warden's responses to the motion for class certification and the motion for TRO, in which the federal respondents join. Their declarations are hereby incorporated in this response.

As three other judges in this district have done, this Court should not disturb the status quo and should allow the process to continue working. Petitioners' motions are supported by a number of anecdotal, self-serving, and stale accusations, flawed "expert" opinions, and pure speculation none of which reflects the real state of affairs at OMDC. As can be seen from the dates of the declarations they have submitted,[3] Petitioners have spent several weeks preparing for this request for emergency relief in an attempt to paint a bleak and desperate picture of the situation at OMDC. Meanwhile, by contrast, the following has happened:

1. All four petitioners have been granted release from custody in the normal course of custody review in their removal proceedings.

2. Two of the four petitioners were at Imperial Regional Detention Facility (Imperial) where there are *no reported positive cases of COVID-19*. [Farabaugh Dec., para. 16(a).]

3. The other two petitioners, Alcantara and Osorio Reyna, have been at OMDC, where there have been no deaths or intubations as a result of COVID-19. [Farabaugh Dec., para. 15(g)-(h).]

4. Since April 2, 2020, new admissions to OMDC have been suspended, except for one admission due to a critical need. [Beckhelm Dec., para. 8.]

5. ICE has been diligently identifying detainees in high-risk groups and granting them parole or release on bond, subject to conditions and final medical release, closely following the guidelines of the Centers for Disease Control (CDC) and ICE's implementing guidance. [Beckhelm Dec., para. 13, 21.]

6. ICE continues to process bond and custody release documentation through the downtown San Diego ERO bond unit. [Beckhelm Dec., para. 22.]

7. Removal and bond hearings before Immigration Judges (IJs) are continuing by VTC. [Beckhelm Dec., para. 20.]

---

[3] ECF No. 1-16 (Golob Declaration dated April 3, 2020); *see also Lopez-Marroquin v. Barr*, No. 20cv682-LAB (MDD), 2020 WL 1905341, at *2 (S.D. Cal. Apr. 17, 2020) (noting with disapproval that petitioner's evidence was based on "a visit by 'attorneys and legal staff ... during the week of March 19, 2020'—nearly a month ago.").

8.  As a result of ICE's reviews and releases as well as its suspension of new admissions, *OMDC is operating at about 50% occupancy*. [Beckhelm Dec., para. 13.]

9.  There are only six ICE detainees at OMDC who are 65 years old or over, and they are housed together in the same pod in separate dorms, and *occupancy at that pod is 31% of capacity*. [*See* LaRose Dec., para. 39.]

10. *The three Medical Housing Units at OMDC are at less than 30% occupancy*. [Farabaugh Dec., para. 15.]

Petitioners (none of whom are over 35 years old) are asking this Court to intervene and second guess CDC and ICE guidelines by lowering the high-risk age group to 45-and-over, based on the opinion of human rights activist Dr. Amon. [*See* ECF No. 1-14.][4] Dr. Keith Ivens, the Chief Medical Officer of CoreCivic, explains in his declaration why Dr. Amon's analysis and conclusions are flawed. [*See* Declaration of Kevin Ivens ("deaths from all causes in the 45-54 age group mirrored the COVID-19 percentage at 5%, suggesting that COVID-19 was no more significant a factor in deaths of this age group than any other cause of death.").] Dr. Ivens also explains why the opinions of Drs. Golob and McKenzie do not contain anything useful. [*See id*., para. 21 ("Dr. Golob simply states that those over the age of 50 are at heightened risk, without providing any support for the proposition, and Dr. McKenzie cites to a colleague, Dr. Jamie Meyer, [who] identifies people who are … at higher risk of serious illness or death, as those over the age of 65.").]

CDC guidance sets the high-risk age group at 65-and-older, ICE guidance sets it at 60-and-older [Ex. 41], and a nationwide provisional class certification and preliminary injunction issued in the Central District of California sets it at 55-and-older. *See Fraihat v.*

---

[4] *See* Joseph Amon, Twitter, https://twitter.com/joeamon ("Human rights activist, epidemiologist, Director Global Health & Clinical Professor @drexelpubhealth"); Humanity Journal, *Author Archives*, http://humanityjournal.org/author/joseph-j-amon/ ("JOSEPH J. AMON, PhD MSPH, is a human rights activist, scholar and teacher."); Joseph Amon, Wikipedia, https://en.wikipedia.org/wiki/Joseph_Amon ("Joseph Amon (born 1969) is an American epidemiologist and human rights activist and currently director of the Health and Human Rights Division at Human Rights Watch.").

*ICE*, No. EDCV 19-1546 JGB (SHKx), 2020 WL 1932393 (C.D. Cal. Apr. 20, 2020). *See also Fraihat v. ICE*, 2020 WL 1932570 (C.D. Cal. Apr. 20, 2020) (nationwide injunction ordering "timely custody determinations for detainees with risk factors.").

Petitioners make a number of inaccurate accusations about conditions at OMDC concerning such things as overcrowding, distancing, and the adequacy of cleaning and disinfecting supplies and personal protective equipment (PPE). In response, Respondents incorporate the declarations of Dr. Ivens and OMDC Warden LaRose, which explain in detail why Petitioners' allegations are inaccurate.

Petitioners also make a number of unfounded accusations about medical care at OMDC. As their own medical records show, they have received extraordinary, timely care at the medical facilities and have had much greater access than they would in an outside medical facility. In response, Respondents include the declarations of ICE Assistant Officer in Charge Kelley Beckhelm and of Dr. Philip Farabaugh, Deputy Medical Director of ICE's Health Corps Service (IHSC).

Petitioners do not state a constitutional claim, and contrary to their allegations, OMDC is more than reasonably protecting them and all other detainees from COVID-19, and the front-line IHSC medical professionals are diligently and promptly treating all detainees at both detention centers. ICE has been closely following CDC guidelines to ensure that high-risk detainees are protected and receive custody review, significantly reducing the detainee population, and the IHSC medical facility and the OMDC Medical Housing Units continue to have ample capacity to attentively respond to detainee medical needs.

///

///

///

## II

## STATEMENT OF FACTS

A. <u>REMOVAL PROCEEDINGS</u>

Petitioner Calderon-Lopez is a 35-year-old native and citizen of Honduras who was detained at Imperial.[5] [ECF No. 1, para. 35; Exs. 1, 4.] On December 25, 2019, she entered the United States without inspection and was immediately apprehended by U.S. Border Patrol and placed in expedited removal proceedings. [Exs. 1-3.] After requesting asylum and receiving a determination that she has a credible fear of persecution, on February 14, 2020, she was placed in removal proceedings under 8 U.S.C. § 1229a before an IJ, charged with inadmissibility due to her unlawful entry. [Exs. 4-5.] She was scheduled for a bond redetermination hearing before an IJ on May 4, 2020. [Ex. 6.] On April 24, 2020, ICE granted parole without bond restriction subject to reporting requirements and alternatives to detention (ATD), and she was released in the normal custody of bond review. [Exs. 7-8.]

Petitioner Mary Doe is a 19-year-old native and citizen of Guatemala who was detained at Imperial. [ECF No. 1, para. 36.] On June 17, 2019, she entered the United States without inspection. [Exs. 11-13.] She was placed in removal proceedings under 8 U.S.C. § 1229a in the Migrant Protection Protocols (MPP) program and returned to Mexico pending her proceedings. [Exs. 14.] On January 14, 2020, the IJ dismissed her case, and ICE appealed. Petitioner Mary Doe was not returned to Mexico and instead was detained at Imperial. [Exs. 11-13.] On April 24, 2020, ICE granted parole without bond restriction subject to reporting requirements and alternatives to detention (ATD), and she was released. [Exs. 15-16.]

///

///

---

[5] The declaration from Petitioners' expert Dr. McKenzie contains a description of the medical condition of Petitioner Calderon, without having examined her or her medical records. [ECF No. 1-5.] Dr. McKenzie inaccurately states that Petitioner Calderon "is detained by ICE at the Otay Mesa Detention Center." [*Id*., para. 23.] Petitioner Calderon was housed at Imperial, and she has been released in the normal course of custody review.

Petitioner Alcantara is a 33-year old native and citizen of Cuba and has been detained at OMDC. [ECF No. 1, para. 33.] On January 15, 2020, he applied for admission at the San Ysido port of entry and applied for asylum. [Exs. 17-20.] On February 12, 2020, it was determined that he had a credible fear of persecution or torture, but unlikely to be granted asylum. [Ex. 25 (citing 8 C.F.R. § 208.13(c)(4)) ; Ex. 30 ("stayed and worked in Brazil for about six months").] On February 21, 2020, Petitioner Alcantara was placed in removal proceedings under 8 U.S.C. § 1229a. [Exs. 26-27.] On Friday, April 24, 2020, he submitted a parole request packet, and on April 26, 2020, ICE granted the parole subject to the posting of $4000 bond and final medical clearance. [Ex. 27a.]

Petitioner Osorio Reyna is a 32-year-old native and citizen of Cuba and was detained at OMDC. [ECF No. 1, para. 34.] On January 15, 2020 Petitioner Osorio Reyna applied for asylum. [Exs. 28-31.] On April 23, 2020, it was determined that he had a credible fear of persecution or torture, though unlikely to be granted asylum for the same reason that applies to his partner Petitioner Alcantara, and was placed in removal proceedings on April 24, 2020 under 8 U.S.C. § 1229a. [Ex. 34.] On Friday, April 24, 2020, Petitioner Osorio Reyna submitted a parole request packet, and on April 26, 2020, ICE granted the parole subject to the posting of a $4000 bond and final medical clearance. [Ex. 34a.]

B. <u>ACTIONS TAKEN IN RESPONSE TO THE COVID-19 PANDEMIC</u>

On March 13, 2020, the President declared a national emergency. *See* Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, Mar. 13, 2020, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last visited Apr. 25. 2020).

On March 19, 2020, the Governor of California declared a statewide emergency. *See* Executive Department, State of California, Exec. Order N-33-20, Mar. 19, 2020, https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf (last visited Apr. 25, 2020).

///

///

On March 23, 2020, the U.S. Centers for Disease Control (CDC) issued its *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Mar. 23, 2020, https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf (last visited Apr. 12, 2020) (hereinafter *CDC Interim Guidance*).

On March 27, ICE issued its *Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision I*, Mar. 27, 2020) (Exs. 35-40.)

On April 4, 2020, ICE issued its *Update Guidance: COVID-19 Detained Docket Review*, Apr. 4, 2020 (Exs. 41-43), expanding the definition of high-risk groups. [Exs. 41-43.]

On April 10, 2020, ICE's Enforcement and Removal Operations issued its *COVID-19 Pandemic Response Requirements*, Apr. 10, 2020, https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities.pdf (last visited Apr. 25, 2020).

On April 20, 2020, the U.S. District Court for the Central District of California issued a nationwide injunction requiring "timely custody determinations for detainees with risk factors." *Fraihat v. ICE*, No. EDCV 19-1546 JGB (SHKx), 2020 WL 1932393 (C.D. Cal. Apr. 20, 2020).

On that same date, the district court also provisionally certified a class to include all detainees nationwide age 55 and older. *See also Fraihat v. ICE*, 2020 WL 1932570 (C.D. Cal. Apr. 20, 2020).

The next day, Petitioners brought this action, essentially asking this Court to take a slightly different approach to oversee and manage what is already being done pursuant to strict CDC and ICE guidelines and the judicial supervision of another court. Three other judges in this district have rejected similar TRO requests from petitioners seeking release from OMDC.[6] A separate TRO request brought by Petitioners' counsel on behalf of four

---

[6] *See Lopez-Marroquin v. Barr*, 2020 WL 1905341; *Habibi v. Barr*, 2020 WL 1864642, at *6; *Kydyrali v. Wolf et al*, No. 20cv00539-AJB (AGS) (S.D. Cal. Apr. 8, 2020)

different petitioners was recently dismissed as moot.[7] Five other TRO requests, filed on behalf of nine petitioners, are currently pending in this district, many with response deadlines this week.[8]

III

ARGUMENT

A. STANDARD

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co*., 434 U.S. 1345, 1347 n.2 (1977); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation and internal quotation marks omitted).

///

///

---

(ECF No. 10) (denying motion for TRO); *see also Benavidez-Leon et al v. Barr et al*, No. 20cv00750-H (MDD) (S.D. Cal. Apr. 23, 2020) (ECF Doc. 10) (noting that "it was improper for the two Petitioners to file a single § 2241 habeas petition" and ordering petitioners to file separate petitions).

[7] *Sagastume v. Archambeault*, No. 20cv658-LAB (MSB) (S.D. Cal. Apr. 14, 2020) (ECF No. 29) (order dismissing case as moot).

[8] *Andara v. DHS*, No. 20cv0679 H (BLM) (TRO response due Apr. 29, 2020); *Benavidez-Leon v. Barr*, No. 20cv00750 H (MDD) (TRO response due May 1, 2020); *Kydyrali v. Wolf*, No. 20cv00539 AJB (AGS) (TRO response due Apr. 28, 2020); *Quijada v. Wolf*, No. 20cv0744 WQH (AGS) (TRO response due May 1, 2020); *Castro v. LaRose*, No. 20cv0764 BEN (JLB).

An injunction is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged [] – a 'likelihood of substantial and immediate irreparable injury.'" *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter*, 555 U.S. at 22.

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held. Petitioners do not seek to preserve the status quo until this Court may decide their claims. Rather, they ask this Court to essentially decide the dispute at its inception via an ex parte TRO that would require immediate release. Such relief is especially disfavored. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974) (noting that TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"); *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (noting that "courts have recognized very few circumstances justifying the issuance of an ex parte TRO"); *Anderson v. United States*, 612 F.2d 1112, 1114 (1979) ("[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party").

## B. PETITIONERS UNLIKELY TO SUCCEED ON THEIR HABEAS CLAIMS

1. *Petitioners do not state a constitutional claim*. Petitioners state that OMDC is no longer releasing detainees, but the records of pending cases in this district show that their allegation is unfounded. On the contrary, ICE continues to conduct custody reviews, IJs continue to conduct bond redeterminations, and ICE continues to process bond and custody release documentation. [*See* Beckhelm Dec., paras. 20-22.] Individuals are released when they are medically cleared by IHSC, and medical clearance is conducted the same day that bond or release orders are processed. [*See* Beckhelm Dec., para. 22.]

Petitioners also speculate that, because of a closure of the Otay Mesa Immigration Court, detainees will have to wait months to seek release. [ECF No. 2-1 at 25:2-4.] The allegation is based on a declaration in which the declarant states that one of her hearings has been postponed from "April 21, 2020 … June 23, 2020." [ECF No. 1-10, para. 22.] Respondents are unable to address this anecdote without knowing more, but removal and bond proceedings are continuing by VTC at the immigration courts in San Diego. [*See* Beckhelm Dec., para. 20 ("The Executive Office for Immigration Review (EOIR) continues to conduct immigration court, including bond hearings through televideo from the downtown San Diego EOIR court.").]

Petitioners dispute that CDC and ICE guidance is adequate, offering anecdotes, speculation, and opinions that social distancing is not possible and that cohorting and screening are not effective. [ECF No. 2-1 at 21-22.] Respondents refer this Court to the declarations of Dr. Farabaugh (paras. 8-14, 17-21) (describing prevention and control protocols, screening, testing, monitoring, isolating, cohorting for quarantining, limited visitation, staff and vendor screening), ICE AOIC Beckhelm (paras. 4-19), Dr. Ivens, and Warden LaRose as to these allegations. [*See, e.g.*, Ivens Dec., paras. 15-16 (cohorting also used as a preventative measure for vulnerable detainees and services in unit); LaRose Dec., para. 100 (as of "late March 2020 … detainees receive their meal trays and eat in-pod rather than going to the dining hall.").] Medical staff provide education on COVID-19 to detainees on hand washing, hygiene, covering coughs with the elbow, and requesting to seek medical care if they feel ill. Detainees have daily access to sick call and access to emergency medical care at any time.

Likewise, Petitioners offer anecdotes to support their inaccurate allegation that OMDC is systemically ignoring guidelines with respect to distancing and the provision of adequate soap, disinfectant, and PPE. Respondents refer this Court to the Declaration of Warden LaRose.

Petitioners contend that the ICE's guidance ignores CDC guidelines regarding pregnant, postpartum women, and smokers in high-risk groups. [ECF No. 2-1 at 21:8-10.]

On the contrary, ICE's updated guidance includes "Pregnant detainees or those having delivered in the last two weeks." [Ex. 41.] Furthermore, smokers are not mentioned in the *CDC Interim Guidance*, although the CDC guidance (and the implementing ICE guidance) does include lung disease. *See also* CDC, *Groups at High Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Petitioners also argue that the age of high-risk individuals should be lowered from 65-and-older to 45-and-older, based on a flawed statistical analysis conducted by Dr. Amon, the unsupported conclusion of Dr. Golub, and the contradictory concession of Dr. McKenzie that the high risk group starts at age 65. [*See* Dr. Ivens Dec., paras. 20-21.] CDC guidance sets the high-risk age group at 65-and-older, ICE guidance sets it at 60-and-older [Ex. 41], and Judge Bernal sets it at 55-and-older. Petitioners are asking this Court to second guess the CDC, ICE, and even the district judge in the Central District, based on the flawed, unsupported, and contradictory opinions of their experts.

Petitioners offer unfounded speculation that IHSC medical resources will be overwhelmed, which will in turn "strain the medical infrastructures in the communities surrounding the detention centers, as the responsibility to care for them shifts to surrounding hospitals and health care facilities." [ECF No. 2-1 at 26:10-13; 27:26; 38:28-39:4.] As set forth in the declaration of Dr. Farabaugh, the Medical Housing Units have a capacity of 38, and they are currently occupied by 11 detainees. That is an occupancy rate of about 29%. [Farabaugh Dec., para. 15(h).] Over the course of this pandemic, six ICE detainees have been sent to the hospital, four have been discharged, and two are still hospitalized; none have required intubation. [*Id*. at 15(e)-(g).]

Petitioner Alcantara complains about his medical care at the OMDC Medical Unit. [ECF No. 1-5, paras. 5-6.] His medical records are lodged under seal to show the extraordinary care and access to care he has enjoyed. [*See* Farabaugh Dec., para. 14 ("daily access to sick calls in a clinical setting").] During his February 12, 2020 credible fear

interview, the USCIS asylum officer specifically asked him about medical issues, and he did not mention any complaints about his medical care:

> Q: How are you bring treated in detention?
> A: Well, at this moment, well, yesterday, I am good, they are giving me the medications and testing so I am good, thank god
> Q: So, you have been able to get the medication you need, correct?
> A: Yes…
> Medical Issues
> Q: Do you have any medical or health problems I should be aware of?
> A: Yes
> Q: Can you tell me what they are?
> A: I am a HIV/AIDS patient
> Q: You are getting the medication you need for that, correct?
> A: Yes
> Q: Are you having any other medical or health problems that I should be aware of?
> A: No, that is all

Exs. 22-24.

At bottom, Petitioners do not state a constitutional claim, and they are asking this Court to second guess the professionals at all levels, even the district judge in the Central District. For cases asserting that the conditions of confinement are so unsafe as to violate the Constitution, a plaintiff must show that the precautions taken to prevent harm are "objectively unreasonable." *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The institution is not charged with guaranteeing no injury and no risk to detainees; instead, the state is charged with taking reasonable steps to protect those in custody. *Cf. Steading v. Thompson*, 941 F.2d 498, 499 (7th Cir. 1991) ("neither negligence nor strict liability is the appropriate inquiry in prison-conditions cases.").

As the district court in *Sacal-Micha v. Longoria*, -- F. Supp. --, 2020 WL 1518861 (S.D.T.X. Mar. 27, 2020), found in denying the detainee's request for release based on his claimed risk of COVID-19, "Sacal presents no evidence that [the facility's] measures are insufficient or deviate materially from CDC's guidelines for institutions that detain individuals." *Id.* at *5 (citing the *CDC Interim Guidance*); *see also Dawson v. Asher*, No. C20-0409 JLR-MAT, 2020 WL 1304557, at *3 (W.D. Wash. Mar. 19, 2020) ("There is no evidence … that Defendants' precautionary measures are inadequate to contain such an

outbreak or properly provide medical care should it occur."); *Lopez-Marroquin v. Barr*, 2020 WL 1905341, at *5 ("What Petitioner has failed to demonstrate is that Respondent's actions [at OMDC] are "objectively unreasonable," which is the required standard.").

The habeas claims of all Petitioners have been rendered moot. All four petitioners have been granted release from custody. None of them states a constitutional claim.

2. *This Court lacks jurisdiction over Petitioners' habeas petition*. Release from custody is not an appropriate remedy in a conditions of custody habeas challenge. *See Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973) ("[T]he writ of habeas corpus is limited to attacks upon the legality or duration of confinement."). *See also Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016) (holding that conditions claim that do not require release must be brought in a civil-rights action) (citing *Skinner v. Switzer*, 562 U.S. 521, 534 (2011)); *Shook v. Apker*, 472 F. App'x 702, 702–03 (9th Cir. 2012) (affirming dismissal of inmate's habeas petition challenging inadequate medical care*); Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the "legality or duration" of confinement. A civil rights action, in contrast, is the proper method of challenging "conditions of ... confinement.") (internal citation omitted); *see also Chasson v. Immigration & Customs Enforcement*, No. CV-17-5819-SVW (JPR), 2017 U.S. Dist. LEXIS 190792, at *2 (C.D. Cal. Nov. 15, 2017) ("the principal purpose of a habeas corpus writ is to provide a remedy for prisoners challenging the fact or duration of their confinement, not the conditions of their confinement."); *Kafatia v. Gilkey*, No. CV 11-9090-CJC SP, 2012 WL 1987136, at *5 (C.D. Cal. Apr. 25, 2012), *report and recommendation adopted*, No. CV 11-9090-CJC SP, 2012 WL 1986316 (C.D. Cal. May 31, 2012) ("Because the fundamental nature of petitioners 2241 Petition is a challenge to the conditions of his confinement rather than to the legality of his confinement, it is not cognizable on habeas corpus review.").

///

///

13

Several courts around the country have applied the same principle in COVID-19 habeas cases. *See, e.g.*, *Gayle v. Meade*, No. 20-21553, 2020 WL 1949737, at *1 (S.D. Fla. Apr. 22, 2020) (denying habeas petitions by 34 immigration detainees seeking release on behalf of themselves and putative class at three facilities); *A.S.M. v. Donahue*, No. 7:20-CV-62 (CDL), 2020 WL 1847158, at *1 (M.D. Ga. Apr. 10, 2020) ("[A] writ of habeas corpus is not the appropriate mechanism for seeking the relief Petitioners request."); *Benavides v. Gartland*, No. 5:20-CV-46, 2020 WL 1914916, at *5 (S.D. Ga. Apr. 18, 2020) ("Though circuit courts are divided on whether habeas is the appropriate mechanism for challenging conditions of confinement, the weight of authority in the Eleventh Circuit is that it is not.") (collecting cases); *Dawson v. Asher*, No. C20-0409JLR-MAT, 2020 WL 1704324, at *8 (W.D. Wash. Apr. 8, 2020) ("The basis for Petitioners' claim rests on specific conditions within the NWDC that Petitioners allege expose them to a greater risk of contracting COVID-19. …If those alleged conditions could be remedied … Petitioners do not raise any separate challenge to the authority under which they were detained or the length of their detention."); *Sacal-Micha v. Longoria*, 2020 WL 1815691, at *3 ("Even when a petitioner alleges that inadequate conditions of confinement create the risk of serious physical injury, illness, or death, a petition for a writ of habeas corpus is not the proper vehicle for such a claim.") (collecting cases).

The Ninth Circuit also recently construed an emergency motion to remand an appeal of a removal order pursuant to the All Writs Act as a habeas petition and transferred the motion to the district court to consider and expressly declined to reach the issue whether the district court could release him. *See Lopez-Marroquin v. Barr*, No. 18-72922, 2020 WL 1808002, at *1 (9th Cir. Apr. 9, 2020). In her dissent, Judge Callahan explained that she would have held that the Act does not authorize his release. *See id.* at *1–2 (*Callahan*, J., dissenting) ("I would hold that the Act does not authorize us to entertain Lopez's request. Indeed, granting it would encourage detainees to exploit the Act in an end-run around our jurisdictional limitations and separation-of-powers principles.").

To the extent that Petitioners allege overcrowding, they cite a number of inapplicable decisions. In *Brown v. Plata,* 563 U.S. 493 (2011), and other cases, the court ordered a reduction of the prison population, based on the Prison Reform Litigation Act, 18 U.S.C. § 3626(a)(3), under which release is available as a remedy only *after* "less intrusive relief has failed to remedy" the violation *and* "the defendant has had a reasonable amount of time to comply with the previous court orders. 18 U.S.C. § 3623(a)(3)(A)(i), (ii).

## C. <u>FAILURE TO STATE IRREPARABLE HARM</u>

For the same reasons set forth above, Petitioners have failed to establish irreparable harm. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (finding irreparable harm not established by statements that "are conclusory and without sufficient support in facts").

## D. <u>BALANCE OF EQUITIES DO NOT TIP IN PETITIONERS' FAVOR</u>

The equities do not weigh in Petitioners' favor. There is a strong public and governmental interest in addressing flight risk to ensure respondents in removal proceedings appear for their hearing and, if not granted relief from removal, be repatriated. *See Nken v. Holder*, 556 U.S. 418, 436 (2009) ("There is always a public interest in prompt execution of removal orders."); *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) ("Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility.").

There is also an obvious strong public interest in protecting the public from dangerous persons. Petitioners argue that a blanket release is appropriate even where the detainee has a criminal history. [ECF No. 2-1 at 34:8-10, 16-17.] However, even the March 17, 2020 letter they cite recommends release for those "who do not pose an immediate risk to public safety." [ECF No. 2-1 26:18-19.] Further, Petitioners' blanket request for release without consideration of a detainee's criminal history could conflict with statute. *Lopez-Marroquin v. Barr*, 2020 WL 1905341, at *5 ("[B]ecause of Petitioner's status as a felon, Respondent is prohibited by statute from releasing him unless the release is "necessary" for witness protection purposes and Petitioner demonstrates that he will "not pose a danger to the safety

of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2).")

Petitioners contend that release without requiring a sponsor is appropriate because most people could find a way to practice social distancing and those with no place to go could seek assistance from "local shelters [which] have expressed willingness and capacity to assist with the effort." [ECF No. 2-1 at 38:23-25.] Several courts have recognized that merely releasing someone from a detention facility does not lessen the risk of exposure to COVID-19. *See Albino-Martinez v. Adducci*, Case No. 2:20-cv-10893, 2020 WL 1872362, at *10 (E.D. Mich. Apr. 14, 2020) ("Every person in the United States, whether in a detention facility or not, faces COVID-19 exposure."); *United States v. Steward*, No. S1:20cr0052(DLC), 2020 WL 1468005, at *1 (S.D.N.Y. Mar. 26, 2020) ("there is also no reason to find that the defendant's release would lessen the risk to his health presented by COVID-19"); *see also United States v. Taylor*, No. 5:19-CR-192-KKC-MAS, 2020 WL 1501997, at *5 (E.D. Ky. Mar. 26, 2020) ("there is little reason to believe that [the detainee] would be more at risk if detained versus being released").

Petitioners' interests have been fully addressed, and judicial intervention would be an unnecessary expenditure of resources and, worse, a diversion of valuable resources that are needed to continue addressing the COVID-19 threat, especially where such resources are already being diverted to address the nationwide injunction and multiple copycat habeas petitions.

IV

CONCLUSION

Petitioners' motion for a TRO should be denied, and their habeas claims should be dismissed. Their habeas actions have been rendered moot, they have failed to state a Fifth Amendment substantive due process claim, and Respondents have documented that their various allegations are old, inaccurate, or speculative.

///

///

DATED: April 27, 2020

Respectfully submitted,

ROBERT S. BREWER JR.
United States Attorney

KATHERINE L. PARKER
Chief, Civil Division

*s/ Samuel W. Bettwy*
SAMUEL. W. BETTWY
Assistant U.S. Attorney

s/ *Rebecca G. Church*
REBECCA G. CHURCH
Assistant U.S. Attorney

Attorneys for Respondents

17