# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ADRIAN RODRIGUEZ ALCANTARA, et al., | Case No. 20cv0756 DMS AHG |
| Plaintiffs-Petitioners, | |
| v. | **EXHIBITS** |
| GREGORY J. ARCHAMBEAULT, San Diego Filed Office Director, ICE; et al., | |
| Defendants-Respondents. | |

Documents relating to Petitioner Calderon-Lopez

    12/26/19 Record of Deportable/Inadmissible Alien (Form I-213)     1-3

    2/14/20 Notice to Appear (NTA) re Petitioner Calderon     4-5

    Notice of 5/4/20 Custody Redetermination Hearing     6

    Credible Fear Worksheet (redacted) of Petitioner's husband     7-8

    4/24/20 Release Notification     9-10

Documents relating to Petitioner Mary Doe

    1/15/20 Form I-213     11-13

    1/22/20 NTA     14

    4/24/20 Release Notification     15-16

Documents relating to Petitioner Alcantara

    1/17/20 Form I-213     17-20

    2/12/20 Credible Fear Worksheet (redacted)     21-25

    2/21/20 NTA     26-27

    4/26/20 Parole grant     27a

Documents relating to Petitioner Osorio Reyna

    1/16/20 Form I-213     28-31

    4/23/20 Credible Fear Worksheet (redacted)     32-33

    4/24/20 NTA     34

    4/26/20 Parole grant     34a

3/27/20 ICE COVID-19 Action Plan     35-40

4/4/20 ICE Updated Guidance     41-43

Docket Sheet, *Mons v. McAleenan*, No. 18-cv-578-JEB (D.D.C.)     44-45

U.S. Department of Homeland Security   Subject ID: ▮▮▮▮▮   **Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Complxn |
|---|---|---|---|---|---|---|---|
| CALDERON-LOPEZ, MARIA FLOR | | | | F | BLK | BRO | MED |

| Country of Citizenship | Passport Number and Country of Issue | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|
| HONDURAS | | CASE No: A203 679 674 | 58 | 156 | LABORER |

| U.S. Address | Scars and Marks |
|---|---|
| NONE CLAIMED | See Narrative |

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number |
|---|---|---|
| 12/25/2019, 1739, 11 mile(s) W of CAL, PWA (AFOOT) | | ☒ Single ☐ Divorced ☐ Married ☐ Widower ☐ Separated |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| ▮▮▮▮▮, CORTES, HONDURAS | PB |

| Date of Birth | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| ▮▮▮▮  Age:35 | 12/26/2019 | ELC/ELS | CALEXICO, CA | 12/25/2019 1745 |

| City, Province (State) and Country of Birth | | Form: (Type and No.) Lifted ☐ Not Lifted ☐ | By |
|---|---|---|---|
| QUARITA, LEMPIRA, HONDURAS | AR ☒ | | JEFFREY ARREOLA |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | | PWA Mexico | TRAVEL/SEEKING |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| | | AT ENTRY |

| Immigration Record | Criminal Record |
|---|---|
| NEGATIVE | None Known |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| | |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| See Narrative | See Narrative |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? ☒ Yes ☐ No | Systems Checks See Narrative | Charge Code Words(s) |
|---|---|---|---|
| None Claimed | | | I7A1 |

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary | Employed from/to |
|---|---|---|---|
| | | Hr | |

Narrative (Outline particulars under which alien was located/apprehended  Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation.  Indicate means and route of travel to interior.)

FINS #:1299216441     I77 #:8900496



Left Index Print          Right Index Print

ARREST COORDINATES:
--------------------
Latitude:    32.65603
Longitude:  -115.67953

**CREDIBLE FEAR CLAIM**

CONSEQUENCE DELIVERY SYSTEM:
----------------------------
Classification: FIRA

ELISEO B. DURANTE-JR
BORDER PATROL AGENT

| Alien has been advised of communication privileges | 12·26·19 (Date/Initials) | (Signature and Title of Immigration Officer) |
|---|---|---|

| Distribution: | Received: (Subject and Documents) (Report of Interview) |
|---|---|
| TO A FILE ELC ELS | Officer: ELISEO B. DURANTE-JR |
| | on: December 26, 2019 at 0330 (time) |
| | Disposition: Expedited Removal with Credible Fear |
| | Examining Officer: FLORENTINO HERNANDEZ JR |

Form I-213 (Rev. 08/01/07) Y

**001**

U.S. Department of Homeland Security                    **Continuation Page for Form** _____I213_____

| Alien's Name<br>CALDERON-LOPEZ, MARIA FLOR | File Number<br>A203 679 674<br>Event No: ████ | Date<br>12/26/2019 |
|---|---|---|

Program:        MPP


SCARS, MARKS, AND TATTOOS:
--------------------------
TATTOO CALF, LEFT
TATTOO HIP,NONSPECIFIC

FATHER NAME AND ADDRESS:
------------------------
Nationality:MEXICO UNKOWN
SAS

MOTHER NAME AND ADDRESS:
------------------------
Nationality:HONDURAS HUNDINA
SAS

FUNDS IN POSSESSION:
--------------------
United States Dollar 50.00   X MFCL

RECORDS CHECKED:
----------------
ABIS Negative
EARM Negative
IAFIS Negative    EJD
NCIC Negative
TECS Negative

NARRATIVE:
----------
ENCOUNTER:
Border Patrol Agent Jeffrey Arreola encountered Maria Flor Calderon-Lopez (A203 679 674)
in the El Centro Sector's area of responsibility. Border Patrol Agent Jeffrey Arreola
determined the subject had unlawfully entered the United States from Mexico, at a time and
place other than as designated by the Secretary of the Department of Homeland Security of
the United States. Maria Flor Calderon-Lopez admitted that she was in the United States
illegally.  After determining that the subject was an alien whom illegally entered the
United States, the subject was arrested and transported to the El Centro Sector Processing
Center for further processing using the E3/IDENT and IAFIS Systems.

IMMIGRATION/CRIMINAL VIOLATION:
At the El Centro Sector Processing Center, the subject was asked if she wanted to make a
Sworn Statement as part of the Removal Proceedings.  Service Form I-867A was read and
explained to the subject.  Calderon-Lopez  stated that she understood and was willing to

| Signature<br>ELISEO B. DURANTE-JR | Title<br>BORDER PATROL AGENT |
|---|---|

Form I-831 Continuation Page (Rev. 08/01/07)

| U.S. Department of Homeland Security | | **Continuation Page for Form** _____ | I213 |
|---|---|---|---|

| Alien's Name<br>CALDERON-LOPEZ, MARIA FLOR | File Number<br>A203 679 674<br>Event No: | Date<br>12/26/2019 |
|---|---|---|

stated that she is a citizen and national of Honduras without the necessary legal documents
to enter, pass through, or remain in the United States. The subject also stated that she
illegally crossed the international boundary without being inspected by an Immigration
Officer at a designated Port of Entry.

CONSULAR NOTIFICATION:
Calderon-Lopez was notified of her right to communicate with a consular officer from
Honduras  as per Article 36(a)(b) of the Vienna Convention of Consular Relations.
Calderon-Lopez  acknowledged understanding the right but declined to speak with anyone at
this time.  Calderon-Lopez further stated that she does fear persecution or torture if
returned to her country of citizenship.

TRAVEL:
Calderon-Lopez cliams to have started her journey to the United States from Honduras on
October 15, 2019. The subject arrived in Guatemala on October 18, 2019. The subject then
arrived in Mexico on October 19, 2019. The subject claims that her main form of
transportation was using the train and walking. The subject stated that she stayed at
several motels and in the streets while she continued on her journey to the United States.
The subject arrived in Mexicali, Mexico on November 15, 2019. The subject stayed in
Mexicali for approximatley a month and a half unitl she made her illegal entry into the
United States on December 25, 2019. The subject claims to have worked in Mexicali by
selling disposible plates, she also states to have stayed at a mirgrant camp while she
lived in Mexicali.

IMMIGRATION HISTORY: A203 679 674
Subject has no previous encounters with Immigration officails.

CRIMINAL HISTORY: FBI#
Subject does not have any recorded criminal history.

DISPOSITION:
The subject is being processed for an Expedited Removal. The subject was apprehended within
14 days of entering the United States and within 100 air miles of the United States /
Mexico international boundary.

The subject is claiming that she is a citizen of Honduras.

The subject claims she is in good health and not pregnant.

| Signature   for   ELISEO B. DURANTE-JR | Title<br>BORDER PATROL AGENT |
|---|---|

Form I-831 Continuation Page (Rev. 08/01/07)

**003**

DEPARTMENT OF HOMELAND SECURITY

## NOTICE TO APPEAR

| In removal proceedings under section 240 of the Immigration and Nationality Act: |
|---|

File No: 203 679 674

In the Matter of:

Respondent: _____ CALDERON-Lopez, Maria Flor _____ currently residing at:

c/o DHS MTC, IRDF, 1572 Gateway Road, Calexico, CA 92231          +1 (760) 618-7200

(Number, street, city and ZIP code)                     (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1) You are not a citizen or national of the United States;

2) You are a native of Honduras and a citizen Honduras;

3) You arrived to the United States at or near Calexico, California, on or about December 25, 2019;

4) You were not then admitted or paroled after inspection by an Immigration Officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

☒ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:          ☐ 8CFR 208.30          ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

EOIR - Imperial, 1572 Gateway Rd., Calexico, CA 92231

(Complete Address of Immigration Court, including Room Number, if any)

on _____ TBD _____ at _____ TBD _____ to show why you should not be removed from the United States based on the

(Date)          (Time)

charge(s) set forth above.          _____

(Signature and Title of Issuing Officer)

Date: 02/12/2020          Calexico, California

(City and State)

DHS Form I-862 (5/11)          **See reverse for important information**          Page 1 of 2

**004**

## Notice to Respondent

**Warning: Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the Department of Homeland Security immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act (the Act).

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____
(Signature of Respondent)

_____
(Signature and Title of Immigration Officer)

Date: _____

## Certificate of Service

This Notice To Appear was served on the respondent by me on _02/13/2020_ , in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person     [ ] by certified mail, returned receipt # _____ requested     [ ] by regular mail

[X] Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the _____Spanish_____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____
(Signature of Respondent if Personally Served)

_____Deportation Officer
(Signature and Title of officer)

```
                    IMMIGRATION COURT
             2409 LA BRUCHERIE ROAD
                 IMPERIAL, CA  92251
```

CALDERON-LOPEZ, MARIA FLOR
C/O DHS, MTC-IRDF
1572 GATEWAY ROAD
CALEXICO, CA  92231

FILE: A203-679-674

RE:   CALDERON-LOPEZ, MARIA FLOR

NOTICE OF CUSTODY REDETERMINATION HEARING IN IMMIGRATION PROCEEDINGS

PLEASE TAKE NOTE THAT THE ABOVE CAPTIONED CASE HAS BEEN
SCHEDULED/RESCHEDULED FOR A CUSTODY REDETERMINATION HEARING BEFORE THE
IMMIGRATION COURT ON May 4, 2020 AT 08:30 A.M. AT THE FOLLOWING ADDRESS:

```
                 1572 GATEWAY ROAD
                 CALEXICO, CA  92231
```

YOU MAY BE REPRESENTED IN THIS PROCEEDING, AT NO EXPENSE TO THE GOVERNMENT, BY
AN ATTORNEY OR OTHER INDIVIDUAL AUTHORIZED AND QUALIFIED TO REPRESENT PERSONS
BEFORE AN IMMIGRATION COURT.  IF YOU WISH TO BE REPRESENTED, YOUR ATTORNEY
OR REPRESENTATIVE SHOULD APPEAR WITH YOU AT THIS HEARING.

```
                      CERTIFICATION OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL [M]  PERSONAL SERVICE [P]  ELECTRONIC SERVICE [E]
TO: [ ] ALIEN  [m] ALIEN c/o Custodial Officer  [ ] ALIEN's ATT/REP  [p] DHS
DATE: _04/20/2020_____      BY:  COURT STAFF __v.lopez_____
    Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other
```

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Record of Determination/Credible Fear Worksheet**

| SND | Arlington (ZAC) | 203 679 677 | MARTINEZ-HERNANDEZ |
|---|---|---|---|
| District Office Code | Asylum Office Code | Alien's File Number | Alien's Last/ Family Name |
| May | Samantha | Honduras | |
| Asylum Officer's Last Name | Asylum Officer's First Name | Alien's Nationality | |

*All statements in italics must be read to the applicant*

**SECTION I:**          **INTERVIEW PREPARATION**

1.1  12/25/2019                                    1.2   Unknown, Unknown

Date of arrival [MM/DD/YY]                    Port of arrival

1.3                                              1.4   Imperial Regional Detention Facility, 1572 Gateway Road,
      12/25/2019                                      Calexico, CA 92231

Date of detention [MM/DD/YY]                  Place of detention

1.5  12/27/2019                                    1.6   N/A

Date of AO orientation [MM/DD/YY]             If orientation more than one week from date of detention, explain delay

1.7  1/16/2020                    1.8   ZAC (Telephonic)

Date of interview [MM/DD/YY]          Interview site

1.9   ☒ Applicant received and signed Form M-444 and relevant *pro bono* list on          12/27/2019

                                                                          Date signed [MM/DD/YY]

1.10  Does applicant have consultant(s)?          ☐ Yes   ☒ No

1.11   If yes, consultant(s) name, address, telephone number and relationship to applicant

          N/A

1.12  Persons present at the interview (check which apply)

1.13     ☐  Consultant(s)

1.14     ☒  Other(s), list:          Interpreter (Telephonic)

1.15     ☐  No one other than applicant and asylum officer

1.16  Language used by applicant in interview:          Spanish

| 1.17  Language Line : 25580 | ☒ Yes   ☐ No | 01:10 PM EST | 04:00 PM EST |
|---|---|---|---|
| Interpreter Service, Interpreter ID Number. | Interpreter Has Forms | Time Started | Time Ended |
| 1.18 | ☐ Yes   ☐ No | | |
| Interpreter Service, Interpreter ID Number. | Interpreter Has Forms | Time Started | Time Ended |
| 1.19 | ☐ Yes   ☐ No | | |
| Interpreter Service, Interpreter ID Number. | Interpreter Has Forms | Time Started | Time Ended |

1.20  ☒  Interpreter was not changed during the interview

1.21  ☐  Interpreter was changed during the interview for the following reason(s):

1.22     ☐  Applicant requested a female interpreter replace a male interpreter, or *vice versa*

1.23     ☐  Applicant found interpreter was not competent          1.24   ☐   Applicant found interpreter was not neutral

1.25     ☐  Officer found interpreter was not competent          1.26   ☐   Officer found interpreter was not neutral

1.27     ☐  Bad telephone connection

1.28  ☒  Asylum officer read the following paragraph to the applicant at the beginning of the interview:

*The purpose of this interview is to determine whether you may be eligible for asylum or protection from removal to a country where you fear persecution or torture. I am going to ask you questions about why you fear returning to your country or any other country you may be removed to. It is very important that you tell the truth during the interview and that you respond to all of my questions. This may be your only opportunity to give such information. Please feel comfortable telling me why you fear harm. U.S. law has strict rules to prevent the disclosure of what you tell me today about the reasons why you fear harm. The information you tell me about the reasons for your fear will not be disclosed to your government, except in exceptional circumstances. The statements you make today may be used in deciding your claim and in any future immigration proceedings. It is important that we understand each other. If at any time I make a statement you do not understand, please stop me and tell me you do not understand so that I can explain it to you. If at any time you tell me something I do not understand, I will ask you to explain.*

Form I-870 (Rev. 7/16/19) N Page 1

| Alien's File Number: | A203 679 677 |
|---|---|

**C.     Identity:**

4.25    ☒    Applicant's identity was determined with a reasonable degree of certainty (check the box(es) that applies):

4.26    ☒    Applicant's own credible statements. (If testimony is credible overall, this will suffice to establish the applicant's identity with a reasonable degree of certainty.)

4.27    ☐    Passport, which appears to be authentic.

4.28    ☐    Other evidence presented by applicant or in applicant's file (List): _____

4.29    ☐    Applicant's identity was **not** determined with a reasonable degree of certainty. (Explain on the continuation sheet.)

**SECTION V:           ASYLUM OFFICER / SUPERVISOR NAMES AND SIGNATURES**

| 5.1 | Samantha May, ZOL09W | 5.2 | _signature_ | 5.3 | 01/16/2020 |
|---|---|---|---|---|---|
| | Asylum officer name and ID CODE (print) | | Asylum officer's signature | | Decision date |
| 5.4 | M. HOUNGBEDJI | 5.5 | _signature_ | 5.6 | 1/21/2020 |
| | Supervisory asylum officer name | | Supervisor's signature | | Date supervisor approved decision |

### ADDITIONAL INFORMATION/CONTINUATION

Alien is barred from asylum pursuant to 8 CFR 208.13(c)(4) and therefore the alien has not established a significant possibility of establishing eligibility for asylum and has received a negative credible fear of persecution determination. Alien was then screened for potential entitlement to withholding under INA 241 or CAT protection under a 'reasonable possibility of persecution' and 'reasonable possibility of torture' standard.

*Office of Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
Imperial Regional Detention Facility
1564 Gateway Rd
Calexico, CA 92231

 **U.S. Immigration and Customs Enforcement**

Calderon-Lopez, Maria Flor A#203 679 674
C/O MTC - IRDF
Imperial Regional Detention Facility
1572 Gateway Rd
Calexico, CA 92231

## Release Notification

Upon review of your case, U.S. Immigration and Customs Enforcement (ICE) has concluded that you will be released from ICE custody on a discretionary parole pursuant to Section 212(d)(5)(A) of the INA and 8 C.F.R. § 212.5 pending your removal from the United States. This release does not affect your removal order and does not constitute an admission to the United States. Employment authorization will not be provided on this basis.

Based on a review of all available information, ICE has determined that your parole will be approved contingent to the following:

☒   Parole with no bond restriction.

☐   That you pay a bond in the amount of _____.

☒   That you be subject to parole reporting requirements such as alternatives to detention (ATD), or monthly monitoring requirements.

A violation of one of more of these conditions, or of any local, state or federal law may result in your being taken back into custody and any bond that you may have posted being forfeited. Your release from custody is also conditioned upon you maintaining proper behavior while sponsorship and placement efforts for you are being undertaken. Prior to your release from custody, an immigration officer may verify the sponsorship presented during your review.

It is particularly important that you keep ICE advised of your address at all times. ICE will continue to make efforts to obtain your travel document that will allow the United States government to carry out your removal pursuant to your order of deportation, exclusion, or removal. In addition, you are required by law to continue to make good faith efforts to secure a travel document on your own and provide proof of your efforts to ICE. Once a travel document is obtained, you will be required to

**Release Notification**
Calderon-Lopez, Maria Flor A#203 679 674
Page 2

surrender to ICE for removal.  You will, at that time, be given an opportunity to prepare for an
orderly departure.

_____

Signature of Assistant Field Office Director, Jesus R. Reyna

4/27/2020
Date

**010**

U.S. Department of Homeland Security   Subject ID: ███████   **Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|
| ███████ | | | | F | | | |

| Country of Citizenship | Passport Number and Country of Issue | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|
| GUATEMALA | | CASE No. A2██ | | | LABORER |

| U S Address | Scars and Marks |
|---|---|
| IN DHS CUSTODY | None Visible |

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F B I Number | ☒ Single |
|---|---|---|---|
| 06/17/2019, 1900, 12.75 mile(s) W of CAL, PWA (AFOOT) | | | ☐ Divorced ☐ Married ☐ Widower ☐ Separated |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| ███████, ███████, GUATEMALA | PB |

| Date of Birth | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| ███████   Age:19 | 01/15/2020 | ELC/ELS | CALEXICO, CA | 06/17/2019 2120 |

| City, Province (State) and Country of Birth | AR ☒ | Form (Type and No.) Lifted ☐ Not Lifted ☐ | By |
|---|---|---|---|
| ███████, GUATEMALA | | | ALAN CORONEL |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | | PWA Mexico | TRAVEL/SEEKING |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U S |
|---|---|---|
| | | AT ENTRY |

| Immigration Record | Criminal Record |
|---|---|
| POSITIVE - See Narrative | None Known |

| Name , Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| | |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| See Narrative | See Narrative |

| Monies Due/Property in U S Not in Immediate Possession | Fingerprinted? ☒ Yes ☐ No | Systems Checks See Narrative | Charge Code Words(s) |
|---|---|---|---|
| None Claimed | | | I6A |

| Name and Address of (Last)(Current) U S Employer | Type of Employment | Salary | Employed from/to |
|---|---|---|---|
| | | Hr | |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FINS #:1281991153          I77 #:8601971



Left Index Print                    Right Index Print

ARREST COORDINATES:
--------------------
Latitude:   32.65588
Longitude: -115.70822

CONSEQUENCE DELIVERY SYSTEM:
----------------------------
Classification: FIRA

| Alien has been advised of communication privileges | ███ 1/15/2020 (Date/Initials) | ROBERTO MOYRON BORDER PATROL AGENT (Signature and Title of Immigration Officer) |
|---|---|---|

| Distribution | Received. (Subject and Documents) (Report of Interview) |
|---|---|
| TO A FILE ELC ELS | Officer   ROBERTO MOYRON |
| | on   January 15, 2020 at 1208   (time) |
| | Disposition   Other |
| | Examining Officer:   RANDALL ROBERTS |

Form I-213 (Rev. 08/01/07) Y

**011**

**U.S. Department of Homeland Security**

Continuation Page for Form _____ **I213**

| Alien's Name | File Number | Date |
|---|---|---|
| ▮▮▮▮▮▮▮ | A2▮▮▮▮ | 01/15/2020 |
| | Event No: ▮▮▮▮▮ | |

**FATHER NAME AND ADDRESS:**
------------------------
**Nationality:GUATEMALA** ▮▮▮▮▮

▮▮▮▮▮, ▮▮▮▮, **GUATEMALA**

**MOTHER NAME AND ADDRESS:**
------------------------
**Nationality:GUATEMALA** ▮▮▮▮▮

▮▮▮▮▮, ▮▮▮▮, **GUATEMALA**

**FUNDS IN POSSESSION:**
---------------------
 .00

**RECORDS CHECKED:**
----------------
**ABIS Negative**
**EARM Positive**
**IAFIS Positive**
**NCIC Negative**
**TECS Negative**

**NARRATIVE:**
----------
The subject was apprehended on June 17, 2019 and was processed under the Migrant Protection Program (MPP) and send back to Mexico to await her court hearing.  On 11/26/2019 the subject attended her first court hearing and the judge did not made a determination.  The subject was given another court date and sent back to Mexico pending her court hearing.  On 01/14/2020, the subject again attended her court hearing and the judge dismissed the case. The subject was returned to the El Centro Border Patrol Station for further Processing.

**ENCOUNTER:**

Border Patrol Agent Alan Coronel encountered ▮▮▮▮▮▮▮▮▮ in the El Centro Sector's area of responsibility, and determined the subject had unlawfully entered the United States of America from Mexico, at a time and place other than as designated by immigration officers of the United States of America.
After determining that ▮▮▮▮▮▮▮ was an alien who illegally entered the United States, the subject was arrested and transported to the El Centro Sector Processing Center for further processing using the E3/IDENT/IAFIS systems.

| Signature | Title |
|---|---|
| ROBERTO MOYRON | BORDER PATROL AGENT |

Form I-831 Continuation Page (Rev. 08/01/07)

**012**

**U.S. Department of Homeland Security**

**Continuation Page for Form** _____ **I213**

| Alien's Name | File Number A | Date |
|---|---|---|
| ████████████ | Event No: ████████ | 01/15/2020 |

**IMMIGRATION/CRIMINAL VIOLATION:**

At the El Centro Border Patrol Station, ████████████ was advised of her administrative rights in removal proceedings via Service Form I-826. The subject acknowledged understanding these rights. ████████████ stated that she is a citizen and national of Guatemala without the necessary legal documents to enter, pass through, or remain in the United States. The subject also stated she illegally crossed the international boundary without being inspected by an Immigration Officer at a designated Port of Entry.

**CONSULAR NOTIFICATION:**

████████████████████ was notified of her right to communicate with a consular officer from Guatemala as per Article 36(a)(b) of the Vienna Convention of Consular Relations. ████████████ acknowledged understanding the right but declined to speak with anyone at this time. ████████████ further stated that she does not fear persecution or torture if returned to her country of citizenship.

**TRAVEL:**

The subject stated she departed her hometown on or about May 10, 2019. The subject stated she traveled by bus from Guatemala to Chiapas, Mexico. The subject stated once in Mexico she boarded a bus and traveled for several days stopping at several unknown Mexican cities until arriving in Mexicali, Mexico on June 17, 2019. The subject then stayed in an undisclosed location in Mexicali until she made her illegal entry as stated above.

**DISPOSITION:**

On 01/14/2020, the subject case was dismissed by an Immigration judge. The subject was found to be inadmissible in the United States and was process as Bag and Baggage. The subject was served with form I-205 (Warrant of Removal/ Deportation) and I-200 (Warrant of Arrest of Alien) .
The subject will be held at Imperial Regional Adult Detention pending her removal proceedings.

The subject  is claiming that she is a citizen of Guatemala.
The subject  claims she is in good health.

The subject  was asked the following:

Have you applied for a Visa?  No.
Are you afraid to go back to your country?  No.
Do you have anyone who is willing to support you financially in the U.S.?  Yes.

**IMMIGRATION HISTORY:** ████████████

**CRIMINAL HISTORY:** Subject does not have any criminal history.

| Signature | Title |
|---|---|
| ROBERTO MOYRON | BORDER PATROL AGENT |

____3____ of _3_ Pages

DEPARTMENT OF HOMELAND SECURI
U.S. Immigration and Customs Enforcement

## NOTICE TO EOIR: ALIEN ADDRESS

Date: 01/22/2020

To: Enter Name of BIA or Immigration Court I-830  Board of Immigration of Appeals (BIA)

Enter BIA or Immigration Court Three Letter Code@usdoj.gov   IMP

From: Enter Name of ICE Office  ECC - EL CENTRO, CA. DOCKET CONTROL OFFICE

Enter Street Address of ICE Office 1564 Gateway Rd.

Enter City, State and Zip Code of ICE Office  Calexico, CA 92231

Respondent:    Enter Respondent's Name

Alien File No: Enter Respondent's Alien Number

---

This is to notify you that this respondent is:

☐  Currently incarcerated by federal, state or local authorities. A charging document has been served on the respondent and an Immigration Detainer-Notice of Action by the ICE (Form I-247) has been filed with the institution shown below. He/she is incarcerated at:

Enter Name of Institution where Respondent is being detained

Enter Street Address of Institution where Respondent is being detained

Enter City, State and Zip code of Institution where Respondent is being detained

**Enter Respondent's Inmate Number**

His/her anticipated release date is Enter Respondent's Anticipated Release Date.

☒  Detained by ICE on **Enter Date Respondent was Detained by ICE** at:  01/16/2020

Enter Name of ICE Detention Facility where Respondent is being detained  IRADF / MTC

Enter Street Address of ICE Detention Facility where Respondent is being detained

1572 Gateway Road, Calexico CA. 92231

Enter City, State and Zip Code of ICE Detention Facility where Respondent is being detained

---

☐  Detained by ICE and transferred on **Enter Date Respondent was transferred** to:

Enter Name of ICE Detention Facility where Respondent has been transferred

Enter Street Address of ICE Detention Facility where Respondent has been transferred

Enter City, State and Zip Code of ICE Detention Facility where Respondent has been transferred

---

☐  Released from ICE custody on the following condition(s):

☐  Order of Supervision or Own Recognizance (Form I-220A)

☐  Bond in the amount of Enter Dollar Amount of Respondent's Bond

☐  Removed, Deported, or Excluded

☐  Other

---

Upon release from ICE custody, the respondent reported his/her address and telephone number would be:

Enter Respondent's Street Address 1572 Gateway Road

Enter Respondent's City, State and Zip Code  Calexico CA. 92231

Enter Respondent's Telephone Number (including area code)  760-618-7200

☒  I hereby certify that the respondent was provided an EOIR-33 Form and notified that they must inform the Immigration Court of any further change of address.

ICE Official: Enter Your First, Last Name and Title    M.Soza,    Deportation Officer

ICE Form I-830E (09/09)

**014**

*Office of Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
Imperial Regional Detention Facility
1564 Gateway Rd
Calexico, CA 92231



**U.S. Immigration
and Customs
Enforcement**

c/o Immigration and Customs Enforcement
Imperial Regional Detention Facility
1564 Gateway Road
Calexico, CA 92231

### Release Notification

Upon review of your case, U.S. Immigration and Customs Enforcement (ICE) has concluded that you will be released from ICE custody on a discretionary parole pursuant to Section 212(d)(5)(A) of the INA and 8 C.F.R. § 212.5 pending your removal from the United States. This release does not affect your removal order and does not constitute an admission to the United States. Employment authorization will not be provided on this basis.

Based on a review of all available information, ICE has determined that your parole will be approved contingent to the following:

☒    Parole with no bond restriction.

☐    That you pay a bond in the amount of _____.

☒    That you be subject to parole reporting requirements such as alternatives to detention (ATD), or monthly monitoring requirements.

A violation of one of more of these conditions, or of any local, state or federal law may result in your being taken back into custody and any bond that you may have posted being forfeited. Your release from custody is also conditioned upon you maintaining proper behavior while sponsorship and placement efforts for you are being undertaken. Prior to your release from custody, an immigration officer may verify the sponsorship presented during your review.

It is particularly important that you keep ICE advised of your address at all times. ICE will continue to make efforts to obtain your travel document that will allow the United States government to carry out your removal pursuant to your order of deportation, exclusion, or removal. In addition, you are required by law to continue to make good faith efforts to secure a travel document on your own and provide proof of your efforts to ICE. Once a travel document is obtained, you will be required to

**Release Notification**

████████████████████                                    Page 2

surrender to ICE for removal.  You will, at that time, be given an opportunity to prepare for an
orderly departure.

_____                      4/24/2020
Signature of Assistant Office Director, Jesus Reyna        Date

**016**

SIGMA Event: ▮▮▮▮
**U.S. Department of Homeland Security**   Subject ID: ▮▮▮▮

**Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|
| RODRIGUEZ ALCANTARA, Adrian | | | | M | BRO | BRO | MBR |

| Country of Citizenship | Passport Number and Country of Issue | Case No: | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|---|
| CUBA | CUBA | | A213200155 | 70 | 152 | |

| U.S. Address | | |
|---|---|---|
| 142 AINSWORTH CIR  PALM SPRINGS, FLORIDA, 334612013, | | Scars and Marks |

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | FBI Number | ☒ Single |
|---|---|---|---|
| 01/15/2020, SYS, 1003, AFOOT | | | ☐ Divorced ☐ Married |
| | | | ☐ Widower ☐ Separated |

| Number, Street, City, Province (State) and Country of Permanent Residence | | Method of Location/Apprehension |
|---|---|---|
| , LA HABANA, CUBA | | ISP |

| Date of Birth | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| Age: 33 | 01/17/2020 | SND/SYS | SYS | 01/15/2020 1003 |

| City, Province (State) and Country of Birth | AR ☒ | Form (Type and No) Lifted ☐ Not Lifted ☐ | By |
|---|---|---|---|
| GUANTANAMO, N/A, CUBA | | | R. REYES |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| None | None | No Documents | Seeking Immigration |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S |
|---|---|---|
| None | None | AT ENTRY |

| Immigration Record | Criminal Record |
|---|---|
| NEGATIVE - See Narrative | None Known |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| | 0 |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| NATIONALITY: CUBA | NATIONALITY: CUBA |

| Monies Due/Property in U.S Not in Immediate Possession | Fingerprinted? ☒ Yes ☐ No | Systems Checks | Charge Code Words(s) |
|---|---|---|---|
| None Claimed | | See Narrative | I7A1 |

| Name and Address of (Last)(Current) U.S Employer | Type of Employment | Salary | Employed from/to |
|---|---|---|---|
| | | Hr | |

Narrative (Outline particulars under which alien was located/apprehended  Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation  Indicate means and route of travel to interior.)

FINS: 1277939799                    **Left Index fingerprint**        **Right Index fingerprint**

```
RECORDS CHECKED
----------------
ATS-P Pos
CCD Neg
CIS Neg
CLAIM Neg
EARM Pos
...(CONTINUED ON I-831)
```

Digitally Acquired Signature

Alien has been advised of communication privileges _01/17/2020_    (Date/Initials)

F. MACIAS
CBP OFFICER
(Signature and Title of Immigration Officer)

| Distribution: | Digitally Acquired Signature | Received: (Subject and Documents) (Report of Interview) |
|---|---|---|
| A-FILE | | Officer: F. MACIAS |
| | | on January 17, 2020 (time) |
| | | Disposition: Expedited Removal with Credible Fear |
| | | Examining Officer: RAUL LANDAVAZO |

Form I-213 (Rev. 08/01/07)

**017**

**U.S. Department of Homeland Security**

**Continuation Page for Form** _I213_

| Alien's Name<br>RODRIGUEZ ALCANTARA, Adrian | File Number A213200155<br>SIGMA Event: ▮<br>Event No: ▮ | Date<br>01/17/2020 |
|---|---|---|

```
IAFIS Pos
NCIC Neg
TECS Pos

SECTION CODES
-------------
212a7AiI


FUNDS IN POSSESSION
-------------------
United States Dollar 102.00
```

On or about January 15, 2020 at approximately 10:30 hours Adrian RODRIGUEZ ALCANTARA (DOB: ▮▮▮▮) applied for admission into the United States from Mexico, at the San Ysidro, California Port of Entry Pedestrian Facility. RODRIGUEZ ALCATAR was traveling alone when he approached Customs and Border Protection (CBP) Officer R Reyes during inspectional operation. CBPO Reyes has first contact with RODRIGUEZ ALCANTARA who does not have entry document but requesting political asylum and intends to go to Palm Springs, Florida. CBPO Reyes referred and escorted RODRIGUEZ ALCANTARA for secondary inspection and was later turn over to SYS POE Admissibility Enforcement Unit (AEU) for disposition.

RODRIGUEZ ALCANTARA's alienage was determined and verified a native of Cuba and a citizen of Cuba who does not have legal document to enter, to pass or to remain in the U.S. RODRIGUEZ ALCANTARA processed administratively at the SYS POE AEU area for determination of his admissibility into the U.S.

CBP system queries on RODRIGUEZ ALCANTARA result as follows: Enforce/IDENT, IAFIS (Integrated Automatic Fingerprint System) and ABIS check positive; CIS, PCQS-CLAIMS, CCDI and EARM check negative. TECS/NCIC, NLETS and III (Interstate Identification Index) check negative. RODRIGUEZ ALCANTARA has no record of removal from the U.S. RODRIGUEZ ALCANTARA is assigned immigration record A213 200 155, FINS record ▮▮▮▮ and FBI record ▮▮▮▮

On January 17, 2020, CBPO F. Macias conducted sworn statement interview on RODRIGUEZ ALCANTARA in Spanish language, which he agreed while CBPO J Castro witnessed the interview. RODRIGUEZ ALCANTARA provided information about his health status, stated he is HIV positive and is taking medication. RODRIGUEZ ALCANTARA claims that he is gay and has partner with the same gender. RODRIGUEZ ALCANTARA's sworn statement interview recorded in written transcription in Form I-867A/I-831 (Record of Sworn Statement in proceedings/Continuation Page) and Form I-867B (Jurat for Record of Sworn Statement). RODRIGUEZ ALCATAR freely and voluntarily gave the statements under oath as follows: RODRIGUEZ ALCANTARA stated he is capable of answering the questions on his sworn statement interview. RODRIGUEZ ALCANTARA stated he understands the statement read to him regarding his application for admission into the U.S. on 01/15/2020 at the San Ysidro, CA POE.

RODRIGUEZ ALCANTARA stated his true, complete and correct name as Adrian RODRIGUEZ ALCANTARA stated he did not use other names nor dates of birth in the past. RODRIGUEZ ALCANTARA stated he was born in Guantanamo, Cuba on ▮▮▮▮ and he is now 33 years old. RODRIGUEZ ALCANTARA stated he is a native of Cuba and a citizen of Cuba. RODRIGUEZ ALCANTARA stated his proof of his Cuban citizenship is his passport. RODRIGUEZ ALCANTARA stated he has...(CONTINUED ON NEXT PAGE)

| Signature<br>✒<br>                                    F. MACIAS | Title<br><br>                        CBP OFFICER |
|---|---|

*Digitally Acquired Signature*

_2_ of _4_ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**

**Continuation Page for Form** I213

| Alien's Name | File Number A213200155 | Date |
| --- | --- | --- |
| RODRIGUEZ ALCANTARA, Adrian | SIGMA Event: ▓▓▓ | 01/17/2020 |
| | Event No: ▓▓▓ | |

not claimed citizenship, nationality or residency of another country. RODRIGUEZ ALCANTARA stated his father and mother were born in Cuba and they are citizens Cuba. RODRIGUEZ ALCANTARA stated he does not know his father and his mother is deceased. RODRIGUEZ ALCANTARA stated his mother never had immigration status in the U.S. RODRIGUEZ ALCANTARA stated he is single and has no children.

RODRIGUEZ ALCANTARA stated he lives in ▓▓▓▓▓▓▓▓▓▓▓ ▓ ▓▓▓▓▓▓▓▓▓▓▓▓, Habana Cuba. RODRIGUEZ ALCANTARA stated he left Cuba with his partner on 10/0028/2018 in transit to Brazil. RODRIGUEZ ALCANTARA stated he stayed in Brazil for six months. RODRIGUEZ ALCANTARA stated his partner and he left Brazil on 03/2019 in transit to Tijuana, Mexico crossing through and staying in different countries in South America. RODRIGUEZ ALCANTARA stated they arrived in Tijuana on 07/19/2019. RODRIGUEZ ALCANTARA stated they rented a house in Tijuana until they entered the U.S. to request political asylum at the SYS POE. RODRIGUEZ ALCANTARA stated he intends to go to Palm Springs, Florida where his partner's cousin, ▓▓▓▓▓▓▓▓▓▓ resides. RODRIGUEZ ALCANTARA stated they spoke to his partners' cousin before they entered the U.S.

RODRIGUEZ ALCANTARA stated ▓▓▓▓▓▓ is expecting them to enter the U.S. RODRIGUEZ ALCANTARA provided point of contact information in the U.S., telephone number ▓▓▓▓▓▓▓▓.

RODRIGUEZ ALCANTARA stated he arranged the travel and relatives helped pay his expenses. RODRIGUEZ ALCANTARA stated he does not have document neither to enter nor to travel in the U.S.

RODRIGUEZ ALCANTARA stated he knows he is required to have legal document to enter the U.S. RODRIGUEZ ALCANTARA stated he does not have pending applications or petitions with the U.S. Citizenship and Immigration Services. RODRIGUEZ ALCANTARA stated he does not have current visa application or permit to travel to the U.S. RODRIGUEZ ALCANTARA stated he was given free advice by an immigration lawyer name Erin Barbato while he was Tijuana and Erin will continue to represent him.

RODRIGUEZ ALCANTARA stated the purpose of his entry into the U.S. on 01/15/2020 is to ask political asylum in the U.S. RODRIGUEZ ALCANTARA stated he is afraid to go back to Cuba. RODRIGUEZ ALCANTARA stated he is subject to harm, persecution and torture because of ▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓. RODRIGUEZ ALCANTARA stated he does not feel safe in Cuba. RODRIGUEZ ALCANTARA stated he wants medication and to marry his partner U.S. RODRIGUEZ ALCANTARA expressed fears going back to Cuba.
RODRIGUEZ ALCANTARA stated he gave all his statements freely and voluntarily. RODRIGUEZ ALCANTARA stated that he was not force nor coerced in any way to answer the questions during interview.
RODRIGUEZ ALCANTARA stated he understood all the questions asked during the interview.

DISPOSITION: Adrian RODRIGUEZ ALCANTARA was presumably inadmissible to the U.S. pursuant to sections (a)(7)(a)(i)(I) of the INA, as amended. RODRIGUEZ ALCANTARA served and provided in the Spanish and English languages of Form M-444, Information about Credible Fear Interview, with attached List of Pro Bono Legal Service Providers. RODRIGUEZ ALCANTARA served with Form I-860, Determination of Inadmissibility. RODRIGUEZ ALCANTARA transferred into DHS custody pending credible fear interview with an Asylum Officer.


Contact Information in the U.S.:
Name: ▓▓▓▓▓▓  ▓▓▓▓▓
...(CONTINUED ON NEXT PAGE)

| Signature | Title |
| --- | --- |
| ✍ | |
| F. MACIAS | CBP OFFICER |

*Digitally Acquired Signature*

3 of 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

**019**

U.S. Department of Homeland Security                    Continuation Page for Form __I213__

| Alien's Name | File Number A213200155 | Date |
|---|---|---|
| RODRIGUEZ ALCANTARA, Adrian | SIGMA Event: ▉<br>Event No: ▉ | 01/17/2020 |

Relationship: Cousin
Address: ▉                        , FL ▉
Tel No.: ▉

| Signature | Title |
|---|---|
| ℰ                    F. MACIAS | CBP OFFICER |

*Digitally Acquired Signature*

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services

## Record of Determination/Credible Fear Worksheet

| IRA | Arlington (ZAC) | 213 200 155 | RODRIGUEZ ALCANTARA |
|---|---|---|---|
| District Office Code | Asylum Office Code | Alien's File Number | Alien's Last/ Family Name |
| Turosky | Anastasia | Cuba | |
| Asylum Officer's Last Name | Asylum Officer's First Name | Alien's Nationality | |

*All statements in italics must be read to the applicant*

<u>SECTION I:</u>                          INTERVIEW PREPARATION

1.1  1/15/2020

Date of arrival [MM/DD/YY]

1.2  At SYS - SAN YSIDRO, CA

Port of arrival

1.3  1/15/2020

Date of detention [MM/DD/YY]

1.4  Otay Mesa Detention Center, 7488 Calzada de la Fuente, San Diego, CA 92154

Place of detention

1.5  1/17/2020

Date of AO orientation [MM/DD/YY]

1.6  N/A

If orientation more than one week from date of detention, explain delay

1.7  2/11/20; 2/12/2020          1.8  ZAC (Telephonic)

Date of interview [MM/DD/YY]          Interview site

1.9  ☒ Applicant received and signed **Form M-444** and relevant *pro bono* list on    1/17/2020

Date signed [MM/DD/YY]

1.10  Does applicant have consultant(s)?    ☒ Yes    ☐ No

1.11    If yes, consultant(s) name, address, telephone number and relationship to applicant

Erin Barbato; 608 262-2276; Nancy, Law student

FEB 21 2020

1.12  Persons present at the interview (check which apply)

OTAY MESA
IMMIGRATION COURT

1.13    ☐ Consultant(s)

1.14    ☒ Other(s), list:          Interpreter (telephonic);

1.15    ☐ No one other than applicant and asylum officer

1.16  Language used by applicant in interview:          Spanish

| 1.17 | Language Line : 255862- 2/11/20 | ☒ Yes ☐ No | 11:02 AM EST | 12:30 PM EST |
|---|---|---|---|---|
| | Interpreter Service, Interpreter ID Number. | Interpreter Has Forms | Time Started | Time Ended |
| 1.18 | Language Line : 249790 - 2/12/20 | ☒ Yes ☐ No | 09:09 AM EST | 9:26am |
| | Interpreter Service, Interpreter ID Number. | Interpreter Has Forms | Time Started | Time Ended |
| 1.19 | Language Line : 323463  - 2/12/20 | ☒ Yes ☐ No | 9:27am | 11:24am |
| | Interpreter Service, Interpreter ID Number. | Interpreter Has Forms | Time Started | Time Ended |

1.20  ☐ Interpreter **was not changed** during the interview

1.21  ☒ Interpreter **was changed** during the interview for the following reason(s):

1.22    ☐ Applicant requested a female interpreter replace a male interpreter, or *vice versa*

1.23    ☐ Applicant found interpreter was not competent          1.24  ☐ Applicant found interpreter was not neutral

1.25    ☐ Officer found interpreter was not competent          1.26  ☐ Officer found interpreter was not neutral

1.27    ☒ Bad telephone connection

1.28  ☒ Asylum officer read the following paragraph to the applicant at the beginning of the interview:

*The purpose of this interview is to determine whether you may be eligible for asylum or protection from removal to a country where you fear persecution or torture. I am going to ask you questions about why you fear returning to your country or any other country you u may be removed to. It is very important that you tell the truth during the interview and that you respond to all of my questions. This may be your only opportunity to give such information. Please feel comfortable telling me why you fear harm. U.S. law has strict rules to prevent the disclosure of what you tell me today about the reasons why you fear harm. The information you tell me about the reasons for your fear will not be disclosed to your government, except in exceptional circumstances. The statements you make today may be used in deciding your claim and in any future immigration proceedings. It is important that we understand each other. If at any time I make a statement you do not understand, please stop me and tell me you do not understand so that I can explain it to you. If at any time you tell me something I do not understand, I will ask you to explain.*

Form I-870 (Rev. 7/16/19) N Page 1

**021**

Alien Number: A21320015̄   Date: 12-Feb-2020
Name: RODRIGUEZ ALCANTARA, ADRIAN   Asylum Officer: Turosky, Anastasia
Country: CUBA   Interpreter: Language Line: 249790
Asylum Office: Arlington (ZAC)

A: Spanish

Q: I am going to ask the interpreter to read something to you now to explain the purpose of this interview.

☒ Interpreter read Section 1.28 (Form I-870) to applicant

Q: Did you understand that?
A: Yes

Q: Do you have any questions about it?
A: no

Q: Is Erin Barbato still your atty, 608 262-2276, 414-467-4431 (Cellphone)?
A: Yes

Q: Do you want me to call your attorney now?
A: Yes

[officer called atty, atty affirmed that they were not recording]
Q: Okay sir, your atty is on the line. Counsel, please let the applicant know you are present.
Attorney: [attorney introduces self and Nancy]

Q: Your attorney said that she had a law student, Nancy, listening on the line with her. Is that okay with you if Nancy listens to the interview?
A: Yes

Q: Sir, your attorney is going to mute their phone. That helps with feedback. So, if you don't hear them during the interview, please know that they are there. They will be given time at the end of the interview to make a short statement or ask some questions, okay?
A: Yes, thank you

Q: Can you understand the interpreter clearly?
A: Yes

Q: Are you willing to answer my questions at this time?
A: Yes, I was crying

Q: Sir, do you feel well enough to continue the interview at this time?
A: Yes, I was crying because I was happy because my atty and Nancy are on the phone. I was excited.

Q: Oh, okay, if you start crying for any other reason and you need a moment, or just to pause, please let me know at any time, okay?
A: Yes, I am good, thank you

Q: How are you bring treated in detention?

*Credible-Fear Interview*   Page 2 of 18

**022**

Alien Number: A21320015⌐                          Date: 12-Feb-2020
Name: RODRIGUEZ ALCANTARA, ADRIAN                 Asylum Officer: Turosky, Anastasia
Country: CUBA                                     Interpreter: Language Line: 249790
Asylum Office: Arlington (ZAC)

**A:** Well, at this moment, well, yesterday, I am good, they are giving me the medications and testing so I am good, thank god

**Q:** So, you have been able to get the medication you need, correct?
**A:** Yes

**Q:** And you are getting it at all the times you need, like with food, and all that?
**A:** Yes, lately I have been having some knee pain and some headaches, and I asked to see the doctor, and I thought they were taking me today to see the doctor that is why I thought they were calling me. May I tell you something?

**Q:** Sure, go ahead.
**A:** On the day 9th around dawn, going on the 10th, I am here with my partner at the detention center, in his room, then in his room they were not letting him sleep and he called the officer at around 1am, to let them know the people around his room were not allowing him to sleep. Then the officer came and he did shut up the guys, and they were not understanding because they were from Africa [interpreter dropped at 9:26am, LL 323463 9:27am]

**Administered Interpreter Oath**

**Q:** Do you affirm that you will truthfully, literally and fully interpret the questions asked by the asylum officer and the answers given by the applicant; that you will not add to, delete from, comment on, or otherwise change the matter to be interpreted; and that you will immediately notify the officer in this case if you become aware of your inability to interpret in a neutral manner on account of a bias against the applicant or the applicant's race, religion, nationality, membership in a particular social group, or political opinion?
**Interpreter:** Yes

**Q:** Do you affirm that you understand that the matters discussed during this interview are confidential?
**Interpreter:** Yes

**Q:** Okay, sir the last thing I have is, they were not understanding because they were from Africa"
**A:** So the young man, the people what shared the room were not letting my partner sleep because they were speaking way too much, and my partner called the officer, and he has been trying to sleep better because they have been checking his blood pressure it has been very high, and the next day the boss of the unit was told to call the young man who had the problem. So I am in a different room, and that young man went to this young and spoke to another young man and said if he gave them a cookie he would grab my partner by the neck. He told the young man that he would hit in the face and grab him by the neck, we told the boss of the unit, and he said called the young man and said you can't do that, and we needed to stay there. I didn't want to because my partner's blood pressure was very high already

**Q:** Sir, I am going to ask you some clarifying questions okay?
**A:** Yes

**Q:** Your partner told the prison guards that his cell mates were being loud, correct?

**023**

Alien Number: A213200155
Name:  RODRIGUEZ ALCANTARA, ADRIAN
Country: CUBA
Asylum Office: Arlington (ZAC)

Date: 12-Feb-2020
Asylum Officer: Turosky, Anastasia
Interpreter: Language Line: 249790

**Q:** Have you or your partner seen the young man since you spoke to the boss?
**A:** Yes, we always see each other around

**Q:** Has the young man said or done anything since you spoke to the boss?
**A:** No

**Q:** Okay sir, thank you for telling me about this incident. I am going to let my supervisor know that it happened. They might be able to possibly do something about it.
**A:** Okay

**Q:** Has anything else happened in detention to make you feel unsafe?
**A:** No, it was that, I was just scared for my partner due to his blood pressure

## Medical Issues
**Q:** Do you have any medical or health problems I should be aware of?
**A:** Yes

**Q:** Can you tell me what they are?
**A:** I am a HIV/AIDS patient

**Q:** You are getting the medication you need for that, correct?
**A:** Yes

**Q:** Are you having any other medical or health problems that I should be aware of?
**A:** No, that is all

**Q:** Is there anything that may affect your ability to testify today?
**A:** No

## Background Information

**Q:** When you crossed the border into the United States, were you with any family members?
**A:** My partner, that is all

**Q:** And you entered the US at the exact same time and place?
**A:** Yes

**Q:** Have you lived in any other countries, even for a short time?
**A:** Well, as we traveled all the way to getting here to the US, we left Cuba, through Brazil, all the places we were crossing by, just to get here

**Q:** Did you ever stay in any of those countries for more than 3 weeks?
**A:** Six months in Brazil

**Q:** Did you have legal permission to live in Brazil?
**A:** We had a permit, an immigrant permit given by the federal police for a year

**024**

| Alien's File Number: | A 213 200 155 |
|---|---|

**C.    Identity:**

4.25   ☒   Applicant's identity was determined with a reasonable degree of certainty (check the box(es) that applies):

    4.26   ☒   Applicant's own credible statements. (If testimony is credible overall, this will suffice to establish the applicant's identity with a reasonable degree of certainty.)

    4.27   ☐   Passport, which appears to be authentic.

    4.28   ☐   Other evidence presented by applicant or in applicant's file (List): _____

4.29   ☐   Applicant's identity was not determined with a reasonable degree of certainty. (Explain on the continuation sheet.)

**SECTION V:          ASYLUM OFFICER / SUPERVISOR NAMES AND SIGNATURES**

| 5.1  Anastasia Turosky, ZAR598 | 5.2  *ATurg* | 5.3  02/12/2020 |
|---|---|---|
| Asylum officer name and ID CODE (print) | Asylum officer's signature | Decision date |
| 5.4  H. Cox | 5.5  *[signature]* | 5.6  2/12/2020 |
| Supervisory asylum officer name | Supervisor's signature | Date supervisor approved decision |

## ADDITIONAL INFORMATION/CONTINUATION

Alien is barred from asylum pursuant to 8 CFR 208.13(c)(4) and therefore the alien has not established a significant possibility of establishing eligibility for asylum and has received a negative credible fear of persecution determination. Alien was then screened for potential entitlement to withholding under INA 241 or CAT protection under a 'reasonable possibility of persecution' and 'reasonable possibility of torture' standard.

DEPARTMENT OF HOMELAND SECURITY

## NOTICE TO APPEAR



I.C.E. COPY

---

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

File No. 213 200 155

In the Matter of:

Respondent: RODRIGUEZ ALCANTARA, Adrian _____ currently residing at:

c/o DHS Otay Mesa Detention Center, 7488 Calzada De La Fuente, San Diego, CA 92154

(Number, street, city and ZIP code)

(Area code and phone number)

[x] You are an arriving alien.
[ ] You are an alien present in the United States who has not been admitted or paroled.
[ ] You have been admitted to the United States, but are removable for the reasons stated below.

FEB 21 2020

OTAY MESA (?...)
IMMIGRATION COURT

The Department of Homeland Security alleges that:

1) You are not a citizen or national of the United States;
2) You are a native of CUBA and a citizen of CUBA;
3) You applied for admission at the San Ysidro, CA, Port of Entry on or about January 15, 2020;
4) You did not then possess or present a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document as required by the Immigration and Nationality Act.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Act, as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211 (a) of the Act.

[X] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

[ ] Section 235(b)(1) order was vacated pursuant to: [ ] 8CFR 208.30(f)[ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

OTAY MESA IMMIGRATION COURT, 7488 Calzada De La Fuente, San Diego, CA 92154

(Complete Address of Immigration Court, including Room Number, if any)

on ___TO BE SET___ at ___TO BE SET___ to show why you should not be removed from the United States based on the

(Date)                     (Time)

charge(s) set forth above.

_____  , SDDO
(Signature and Title of Issuing Officer)

Date  FEB 19 2020  _____  SAN DIEGO, CALIFORNIA

(City and State)

DHS Form I-862 (5/17)          **See reverse for important information**          Page 1 of 2

**026**

### Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the Department of Homeland Security immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United Stated and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act (the Act).

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855)448-6903.

---

### Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____  *(Signature of Respondent)*

_____        Date:_____
*(Signature and Title of Immigration Officer)*

---

#### Certificate of Service

This Notice To Appear was served on the respondent by me on ___02/**20**/20___ , in the following manner and in compliance with section 239(a)(1) of the Act.

[X] In person   [ ] by certified mail, returned receipt # _____ requested   [ ] by regular mail

[X] Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____        _____O. Ota__ Deportation Officer_____
*(Signature of Respondent if Personally Served)*        *(Signature and Title of Officer)*

*Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
Otay Mesa Detention Center
7488 Calzada de la Fuente
San Diego, CA 92154



U.S. Immigration
and Customs
Enforcement

**APR 2 6 2020**

Reference:  RODRIGUEZ Alcantara, Adrian, A213 200 155

### NOTIFICATION TO GRANT PAROLE

The purpose of this letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) has decided to parole you from detention at this time.  Under ICE policy, arriving aliens determined by an Asylum Officer to have a credible fear of persecution or torture are initially considered for parole.  While the decision whether to grant parole is discretionary, ICE policy is generally to grant parole to aliens determined to have a credible fear if they establish their identity and that they pose neither a flight risk nor danger to the community.

Based on a review of all available information, ICE has determined that your parole will be approved contingent to the following:

☐        Parole with no bond restriction.

☒        That you pay a bond in the amount of  $4,000          .

☒        That you be subject to parole reporting requirements such as alternatives to detention (ATD), or monthly monitoring requirements.

If you request redetermination of this decision, please direct your written request to the address above, include a copy of this letter and any other prior ICE written decision(s), and clearly explain what changed circumstances or additional documents you would like considered. Requests for redetermination which are not clearly explained will be returned without action.

Sincerely,

Kelley Beckhelm
Assistant Officer In Charge

U.S. Department of Homeland Security

SIGMA Event: ▉
Subject ID : ▉

**Record of Deportable/Inadmissible Alien**

| Family Name (CAPS)          First          Middle | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|
| OSORIO REYNA, YASMANI | M | BRO | BRO | LGT |

| Country of Citizenship | Passport Number and Country of Issue | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|
| CUBA | CUBA | Case No: SYS2001000676  A213199946 | 64 | 127 | |

| U.S. Address | Scars and Marks |
|---|---|
| DHS CUSTODY, UNITED STATES OF AMERICA | |

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F B I Number | |
|---|---|---|---|
| 01/15/2020, 2504, 10:01, A FOOT | | | ☒ Single  ☐ Divorced ☐ Married  ☐ Widower ☐ Separated |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| CUBA LA HABANA | ISP |

| Date of Birth        Age: 32 | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| | 01/16/2020 | 2504 | SAN YSIDRO, CA | 01/15/2020 1856 |

| City, Province (State) and Country of Birth | AR ☒  Form : (Type and No.) Lifted ☐  Not Lifted ☐ | By |
|---|---|---|
| GRANMA, CUBA | | REYES, Roberto CBP OFFICER |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| None | None | No Documents | TRAVEL/SEEKING |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U S |
|---|---|---|
| None | None | At Entry |

| Immigration Record | Criminal Record |
|---|---|
| | None Known |

| Name , Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| | NONE |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address if Known |
|---|---|
| NATIONALITY: CUBA | NATIONALITY: CUBA |

| Monies Due/Property in U S Not in Immediate Possession | Fingerprinted? ☒ Yes ☐ No | Systems Checks  See Narrative | Charge Code Words(s) |
|---|---|---|---|
| United States Dollar 101.0 | | | See Narrative |

| Name and Address of (Last)(Current) U S Employer | Type of Employment | Salary | Employed from/to |
|---|---|---|---|
| | | Hr | |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

PINS: 1277933752            Left Index Finger            Right Index Finger

RECORDS CHECKED
-----------------
BVS Neg
CIS Neg
CLAIM Neg
CCD Neg
EARM Neg
...(CONTINUED ON I-831)

ENRIQUEZ, Ernesto
CBP OFFICER

| Alien has been advised of communication privileges  01/16/20  [initials]  (Date/Initials) | (Signature and Title of Immigration Officer) |
|---|---|

| Distribution: | Received: (Subject and Documents)  (Report of Interview) |
|---|---|
| A FILE | Officer  ENRIQUEZ, Ernesto   CBP OFFICER |
| SYS POE | on  January 16, 2020                (time) |
| ICE ERO | Disposition  EXPEDITED REMOVAL-CREDIBLE FEAR (ERCF)  Examining Officer  PINEDA, Angelica - SUPERVISORY CBP OFFI |

Form I-213 (Rev. 08/01/07)

**028**

U.S. Department of Homeland Security                    Continuation Page for Form  I213

| Alien's Name<br>OSORIO REYNA, YASMANI | File Number A-213-199-946<br>SIGMA Event: ███<br>Event No: ███ | Date<br>January 16, 2020 |
|---|---|---|

IAFIS Pos
NCIC Pos
O Neg
TECS Neg

CHARGE CODES
------------
I7A1


SECTION CODES
-------------
Sec212(a)(7)(A)(i)(I)
8 USC 1182-ALIEN INADMISSIBILITY UNDER SECTION 212


On or about 01/15/2020 at approximately 1001 hours Yasmani OSORIO REYNA (DOB: ███ )
applied for admission into the United States from Cuba, at the San Ysidro, California Port
of Entry (SYS POE) East Pedestrian Facility.  OSORIO REYNA was traveling alone when he
approached Customs and Border Protection (CBP) Officer R Reyes during inspectional
operation.  CBPO Reyes has first contact with OSORIO REYNA who does not have entry document
but requesting political asylum and intends to go to Miami, FL.  CBPO Reyes referred and
escorted OSORIO REYNA for secondary inspection and was later turn over to SYS POE
Admissibility Enforcement Unit (AEU) for disposition.

OSORIO REYNA's alienage was determined and verified a native of Cuba and a citizen of Cuba
who does not have legal document to enter, to pass or to remain in the U.S.  OSORIO REYNA
processed administratively at the SYS POE AEU area for determination of his admissibility
into the U.S.

CBP system queries on OSORIC REYNA result as follows: Enforce/IDENT, IAFIS (Integrated
Automatic Fingerprint System) and ABIS check negative; CIS, PCQS-CLAIMS, CCDI and EARM
check negative. TECS/NCIC, NLETS and III (Interstate Identification Index) check negative.
OSORIO REYNA has no record of removal from the U.S.  OSORIO REYNA is assigned immigration
record A213 199 946, FINS record ███ and FBI record ███

On 01/16/2020 at about 0805 hours, CBPO E Enriquez conducted sworn statement interview on
OSORIO REYNA in Spanish language, which he agreed while CBPO J Balanza witnessed the
interview.  OSORIO REYNA provided information about his health status, stated he is in good
health and he is not taking medication.  OSORIO REYNA claims that he is gay and has partner
with the same gender.  OSORIO REYNA's sworn statement interview recorded in written
transcription in Form I-867A/I-831 (Record of Sworn Statement in Proceedings/Continuation
Page) and Form I-867B (Jurat for Record of Sworn Statement).  OSORIO REYNA freely and
voluntarily gave the statements under oath as follows: OSORIO REYNA stated he is capable of
answering the questions on his sworn statement interview.  OSORIO REYNA stated he
understands the statement read to him regarding his application for admission into the U.S.
on 01/15/2020 at the San Ysidro, CA POE.

OSORIO REYNA stated his true, complete and correct name as Yasmani OSORIO REYNA.  OSORIO
REYNA stated he did not use other names nor dates of birth in the past.  OSORIO REYNA
stated he was born in Gramma, Cuba on ███ and he is now 32 years old.  OSORIO REYNA
stated he...(CONTINUED ON NEXT PAGE)

| Signature<br>ENRIQUEZ, Ernesto | Title<br>CBP OFFICER |
|---|---|

2 of 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security                                    Continuation Page for Form   I213

| Alien's Name | File Number A-213-199-946 | Date |
|---|---|---|
| OSORIO REYNA, YASMANI | SIGMA Event: ▮▮▮ | January 16, 2020 |
| | Event No: | |

is a native of Cuba and a citizen of Cuba.  OSORIO REYNA stated his birth certificate is
in Cuba and the proof of his Cuba citizenship is his passport and national identification
card.  OSORIO REYNA stated he has not claimed citizenship, nationality or residency of
another country.  OSORIO REYNA stated his father and mother were born in Cuba and they are
citizens Cuba.  OSORIO REYNA stated both of his parents are in Cuba.  OSORIO REYNA stated
his parents never had immigration status in the U.S.  OSORIO REYNA stated he is single and
has no children.

OSORIO REYNA stated he lives in ▮▮▮▮▮▮▮▮▮▮▮, La Habana Cuba.  OSORIO REYNA stated
he left Cuba with his partner via Caribbean Airlines on 10/04/2018 in transit to Guyana
then to Brazil.  OSORIO REYNA stated stayed and worked in Brazil for about six months.
OSORIO REYNA stated him and his partner left Brazil on 04/01/2019 in transit to Tijuana,
Mexico crossing through and staying in different countries in South America.  OSORIO REYNA
stated rode different buses until they arrived in Tijuana on 06/20/2019.  OSORIO REYNA
stated they stayed in a rented space in a house in Tijuana until Wednesday morning,
01/15/2020, when they entered the U.S. and to request political asylum at the SYS POE.
OSORIO REYNA stated he intends to go to Miami, FL where his cousin, ▮▮▮▮▮▮▮▮▮▮,
resides.  OSORIO REYNA stated he spoke to his cousin three days before he entered the U.S.
while he was in Tijuana.  OSORIO REYNA stated his cousin is expecting him to enter the U.S.
and also willing to help him.  OSORIO REYNA provided point of contact information in the
U.S., telephone number ▮▮▮  ▮▮▮▮▮▮▮ CBPO Enriquez gave OSORIO REYNA the opportunity to
call and speak with his cousin.  OSORIO REYNA was able to speak with his cousin.  OSORIO
REYNA stated he completed 12th grade in school and attended Agronomy technical school.
OSORIO REYNA stated he worked in radio and television communication.  OSORIO REYNA stated
he and his partner arranged their travel and relatives helped paid their expenses.

OSORIO REYNA stated he does not have document neither to enter nor to travel in the U.S.
OSORIO REYNA stated he knows he is required to have legal document to enter the U.S.
OSORIO REYNA stated he does not have pending applications or petitions with the U.S.
Citizenship and Immigration Services.  OSORIO REYNA stated he does not have current visa
application or permit to travel to the U.S.  OSORIO REYNA stated he was given free advice
by an immigration lawyer name Erin Barbato Morthy while he was Tijuana.

OSORIO REYNA stated the purpose of his entry into the U.S. on 01/15/2020 is to ask
political asylum in the U.S.  OSORIO REYNA stated he is afraid to go back to Cuba because
the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  OSORIO REYNA stated he has
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  OSORIO REYNA stated he is subject to harm, persecution and torture
because of ▮▮▮▮▮▮▮▮▮▮▮▮.  OSORIO REYNA stated he does not feel safe in
Cuba.  OSORIO REYNA stated he wants freedom and safety in the U.S.  OSORIO REYNA expressed
fears going back to Cuba.

OSORIO REYNA stated he gave all his statements freely and voluntarily.  OSORIO REYNA stated
that he was not force nor coerced in any way to answer the questions during interview.
OSORIO REYNA stated he understood all the questions asked during the interview.

DISPOSITION: OSORIO REYNA was presumably inadmissible to the U.S. pursuant to sections
(a)(7)(a)(i)(I) of the INA, as amended.  OSORIO REYNA served and provided in the Spanish
and English languages of Form M-444, Information about Credible Fear Interview, with
attached List of Pro Bono Legal Service Providers.  OSORIO REYNA served with Form I-860,
Determination of Inadmissibility.  OSORIO REYNA transferred into DHS custody pending
credible fear interview with an Asylum Officer.
...(CONTINUED ON NEXT PAGE)

| Signature | Title |
|---|---|
| ENRIQUEZ, Ernesto | CBP OFFICER |

                                                          3   of   4   Pages

Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security                    Continuation Page for Form __I213__

| Alien's Name | File Number A-213-199-946 | Date |
|---|---|---|
| OSORIO REYNA, YASMANI | SIGMA Event: ▮ | January 16, 2020 |
| | Event No: ▮ | |

Contact Information in the U.S.:

Name: ▮
Relationship: Cousin
Address: ▮ , FL ▮
Tel No.:

| Signature | Title |
|---|---|
| ENRIQUEZ / Hrnbato | CBP OFFICER |

_____4_____ of _____4_____ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

031

Credible Fear Interview Notes
Interview Date: 4/21/2020
AO: Conant ZAR633

A#: 213370394
Applicant Name: Yasmani OSORIO REYNA
Country of Origin: Cuba

## CREDIBLE FEAR INTERVIEW NOTES

| | |
|---|---|
| **INTERVIEW CCO:** | ZAC |
| **LOCATION:** | Otay Mesa Detention Center 7488 Calzada de la Fuente, San Diego, CA 92154 |
| **INTERVIEW DATE:** | 4/21/2020 |
| **START TIME:** | 3:07pm EST |
| **END TIME:** | 4:25pm EST |

*The following notes are not a verbatim transcript of this interview. These notes are recorded to assist the asylum officer in making a credible-fear determination and the supervisory asylum officer in reviewing the determination. There may be areas of the individual's claim that were not explored or documented for purposes of this threshold screening.*

### INTERPRETER OATH

☒ Call Interpreter

| | | | |
|---|---|---|---|
| Language: | Spanish | Start Time: | 3:07pm EST |
| Provider: | Language Line # 206641 | End Time: | 3:45pm EST |
| Language: | Spanish | Start Time: | 3:59pm EST |
| Provider: | Language Line # 203138 | End Time: | 4:25pm EST |

☒ Administered Interpreter Oath

| Interpreter Oath | Interpreter |
|---|---|
| **OATH:** (Raise right hand) Do you affirm you will truthfully, literally and fully interpret the questions asked by the asylum officer and the answers given by the applicant; you will not add to, delete from, comment on, or otherwise change the matter to be interpreted; and you will immediately notify the officer in this case if you become aware of your inability to interpret in a neutral manner on account of a bias for or against the applicant or the applicant's race, religion, nationality, membership in a particular social group, or political opinion? | YES |
| Do you affirm that you understand that the matters discussed during this interview are confidential? | Yes |

### INTERVIEW INITIATED

Interpreter, please introduce yourself to the applicant and inform the applicant that you have taken an oath to keep everything discussed today confidential.

| Officer | Applicant |
|---|---|
| Do you understand the interpreter? | Yes |

Hello, my name is Officer Conant and we are here because you expressed a fear of returning to Cuba.

| Officer | Applicant |
|---|---|

Page 1 of 7

**032**

| Alien's File Number: | A213 199 946 |
|---|---|

**C.     Identity:**

4.22  ☒  Applicant's identity was determined with a reasonable degree of certainty (check the box(es) that applies):

4.23  ☒  Applicant's own credible statements. (If testimony is credible overall, this will suffice to establish the applicant's identity with a reasonable degree of certainty.)

4.24  ☐  Passport, which appears to be authentic.

4.25  ☐  Other evidence presented by applicant or in applicant's file (List):   DHS Records

4.26  ☐  Applicant's identity was **not** determined with a reasonable degree of certainty.  (Explain on the continuation sheet.)

**SECTION V:          ASYLUM OFFICER / SUPERVISOR NAMES AND SIGNATURES**

| 5.1  L DeRosa ZAR679 | 5.2  *Lesley DeRosa* | 5.3  4/23/20 |
|---|---|---|
| Asylum officer name and ID CODE (print) | Asylum officer's signature | Decision date |
| 5.4  D K Gentry ZAR 508 | 5.5  *D K Gentry* | 5.6  04/23/2020 |
| Supervisory asylum officer name | Supervisor's signature | Date supervisor approved decision |

**ADDITIONAL INFORMATION/CONTINUATION**

Alien is barred from asylum pursuant to 8 CFR 208.13(c)(4) and therefore the alien has not established a significant possibility of establishing eligibility for asylum and has received a negative credible fear of persecution determination. Alien was then Screened for potential entitlement to withholding under INA 241 or CAT protection under a "reasonable possibility of persecution" and "reasonable possibility of torture" standard.

Alien did not establish that it is more likely than not that he or she meet the provisional class definition in *Al Otro Lado v. Wolf*

IR

DEPARTMENT OF HOMELAND SECURITY
**NOTICE TO APPEAR**

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

File No. A 213 199 946

In the Matter of:

Respondent: Osorio Reyna, Yasmani _____ currently residing at:

c/o DHS Otay Mesa Detention Center, 7488 Calzada de la Fuente, San Diego, CA 92154
(Number, street, city and ZIP code)

(Area code and phone number)

☒ You are an arriving alien.
☐ You are an alien present in the United States who has not been admitted or paroled.
☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that:

1) You are not a citizen or national of the United States.

2) You are a native of CUBA and a citizen of CUBA;

3) You applied for admission to the United States at the San Ysidro, CA Port of Entry on 1/15/2020;

4) You did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document;

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

☒ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:        ☐ 8CFR 208.30  ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

EOIR OTM, 7488 Calzada de la Fuente, San Diego, CA 92154
(Complete Address of Immigration Court, including Room Number, if any)

on _____ at _____ to show why you should not be removed from the United States based on the
        (Date)                  (Time)

charge(s) set forth above.        *Priscilla Cf. Ro*        Supervisory Asylum Officer
                                    (Signature and Title of Issuing Officer)

Date 04/24/20        Arlington, VA
                     (City and State)

**034**

*Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
Otay Mesa Detention Center
7488 Calzada de la Fuente
San Diego, CA 92154



U.S. Immigration
and Customs
Enforcement

APR 2 6 2020

Reference:  OSORIO Reyna, Yasmani, A213 199 946

### NOTIFICATION TO GRANT PAROLE

The purpose of this letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) has decided to parole you from detention at this time.  Under ICE policy, arriving aliens determined by an Asylum Officer to have a credible fear of persecution or torture are initially considered for parole.  While the decision whether to grant parole is discretionary, ICE policy is generally to grant parole to aliens determined to have a credible fear if they establish their identity and that they pose neither a flight risk nor danger to the community.

Based on a review of all available information, ICE has determined that your parole will be approved contingent to the following:

☐      Parole with no bond restriction.

☒      That you pay a bond in the amount of $4,000 ̄      .

☒      That you be subject to parole reporting requirements such as alternatives to detention (ATD), or monthly monitoring requirements.

If you request redetermination of this decision, please direct your written request to the address above, include a copy of this letter and any other prior ICE written decision(s), and clearly explain what changed circumstances or additional documents you would like considered. Requests for redetermination which are not clearly explained will be returned without action.

Sincerely,

Kelley Beckhelm
Assistant Officer In Charge

*Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536



U.S. Immigration
and Customs
Enforcement

March 27, 2020

MEMORANDUM FOR:      Detention Wardens and Superintendents

THROUGH:             Field Office Directors

FROM:                Enrique M. Lucero
                     Executive Associate Director
                     Enforcement and Removal Operations

SUBJECT:             Memorandum on Coronavirus Disease 2019 (COVID-19)
                     Action Plan, Revision 1

Background:

U.S. Immigration and Customs Enforcement (ICE) continues to monitor the spread of
Coronavirus Disease 2019 (COVID-19) and to work in conjunction with select U.S.
Department of Homeland Security (DHS) Component leadership and the Acting Secretary to
implement a mitigation strategy.

To ensure a unified and preventative response, the ICE Enforcement and Removal Operations
(ERO), ICE Health Service Corps (IHSC), Custody Management Division, and Field
Operations are providing the following guidance. The combination of a dense and highly
transient detained population presents unique challenges for ICE efforts to mitigate the risk of
infection and transmission. Consequently, these measures were developed to reduce exposure
to COVID-19, protect the detained population, and optimize employee health and availability
for duty.

This memorandum only applies to IHSC-staffed and non-IHSC-staffed, ICE-dedicated
facilities. For intergovernmental partners and non-dedicated facilities, ICE defers to local, state,
tribal, territorial, and federal public health policies and authorities, including adherence with
state laws on communicable disease reporting, but recommends actions contained in this
memorandum be considered as best practices. Questions and concerns related to the following
Action Plan can be addressed to: ICE_ERO_CMD@ice.dhs.gov.

Please see the recently-issued Centers for Disease Control and Prevention (CDC) Interim
Guidance: Managing COVID-19 in Correctional/Detention Facilities for additional
information.

**035**

Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1
Page 2

Action Plan:

**STAFF HIRING:** Wardens and facility staff should continue to meet any personnel staffing plan and staffing criteria outlined in the Performance Work Statement (PWS) and terms and conditions of their negotiated contract or agreement for medical staff and guard services. Facilities are expected to be appropriately staffed to meet established work schedules, rest periods, and to ensure the delivery of detainee medical and mental health care as it relates to the continually evolving impact of COVID-19.

**LOGISTICS:** Wardens and Facility Administrators should assess their inventories of food, medicine, cleaning supplies, personal protective equipment (PPE), and facility operational practices, and consistently maintain services and supplies to assure the safety, security, health, and well-being of ICE detainees. Facilities should have updated pandemic plans and policies as well as established quarantine and/or isolation areas within their facilities in the event they are needed. Alcohol-based hand sanitizer with at least 60 percent alcohol should be available in visitor entrances, exits, and waiting areas. In addition, alcohol-based hand sanitizer should be made available to staff and detainees in the secure setting to the maximum extent possible.

**SOCIAL VISITATION/TELEPHONIC COMMUNICATION:** As of March 13, 2020, social visits to/with ICE detainees at all detention facilities are suspended until further notice in order to mitigate the potential introduction of COVID-19 into the facilities. ICE recognizes the considerable impact of suspending personal visitation, and requests maximizing detainee use of teleconferencing, video visitation (e.g., Skype, FaceTime), email, and/or tablets, with extended hours where possible.

Detention facilities should make a timely effort to identify indigence in the detainee population. A detainee is considered "indigent" if he/she has less than $15.00 in his/her account for ten days. These detainees must be afforded the same telephone access and related privileges as other detainees. Each facility must ensure all detainees are able to make calls to the ICE-provided list of free legal service providers and consulates at no charge to the detainee or the receiving party, and that indigent detainees may request a call to immediate family or others in personal or family emergencies or on an as-needed basis to maintain community ties.

**LEGAL VISITS:** Detainee access to legal representatives remains a paramount requirement and should be accommodated to the maximum extent practicable. Legal visitation must continue unless determined to pose a risk to the safety and security of the facility.

Non-contact legal visitation (e.g., Skype or teleconference) should be offered first to limit exposure to ICE detainees, but in person contact should be permitted if determined essential by the legal representative. Prior to the in-person visit, the legal representative must undergo the same screening required for staff entry into the facility. The ultimate legal visit approving authority lies with the Warden or Facility Administrator; however, the facility should notify its local Field Office Director as soon as possible of any denied legal visits.

**LEGAL RIGHTS GROUP PRESENTATIONS:** Government-sponsored Legal Orientation Programs (LOPs), carried out by the Department of Justice Executive Office for Immigration Review (EOIR) and authorized by congressional appropriations, currently operate at a limited

**036**

Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1
Page 3

number of detention sites, and may continue to conduct detainee presentations. No more than

four LOP presenters may be allowed in the facility at any time and must undergo the same screening required for staff entry into the facility. Non-LOP legal rights group presentations offered by volunteers are suspended until further notice.

**STAFF-DETAINEE COMMUNICATION VISITS:** Field Office Directors should remain aware that detainees may experience increased feelings of fear and confusion during this time. Regular communication with staff is particularly important. Detainees should have frequent opportunities for informal contact with facility managerial and supervisory staff and with ERO field office staff.

Field Office Directors should monitor both facility staff and ERO officers to ensure they continue to interact with detainees. ICE staff-detainee communication may be conducted in-person (with appropriate risk reduction protocols to protect ERO officers, detainees, and facility staff) or through non-contact visitation using videoconferencing, phone calls, e-mail, or other communication services.

**CONTRACTORS:** Contractors performing essential services or maintenance on essential systems in ICE detention facilities must continue to be provided facility access and must undergo the same screening required for staff entry into the facility. Examples of essential services include medical and mental health services, telephone access, cleaning, laundry, waste disposal, and critical infrastructure repairs.

Facility annual inspections by the ICE inspections contractor, The Nakamoto Group, are suspended for 30 days from the issuance date of this memorandum.

**VOLUNTEERS:** Volunteer visits to ICE detention facilities are suspended until further notice unless approved by the Assistant Directors for Field Operations and Custody Management. The only exception is the facility Chaplain, who may continue to offer availability for individual and group pastoral care but must undergo the same screening required for staff entry into the facility. Other volunteers, contractors, and community groups that augment and enhance the religious program are suspended until further notice to reduce the risk of possible transmission of COVID-19 to detainees.

**TOURS:** Facility tours are suspended until further notice, excluding Members of Congress, Congressional Member Delegations (CODELs), and Congressional Staff Delegations (STAFFDELs) who will not be prevented from accessing facilities for the purpose of conducting oversight. To safeguard visitors, detainees, ICE and facility staff, congressional visitors may be subject to special screening procedures congruent with staff facility entry screening. Congressional visitors should be advised of standard hygiene practices to help prevent the spread of disease (i.e., washing hands, avoiding close contact) and should be made aware of available hand washing stations within the facility.

**STAFF TRAINING:** All ERO in-person staff training related to the ICE detention standards or facility compliance is suspended until further notice, including conferences, Contracting Officer Representative (COR) training, and Field Office Compliance Training. Wardens and Facility Administrators will determine the training schedule for facility staff. All staff licenses and certifications shall be maintained.

Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1
Page 4

**SCREENING OF FACILITY STAFF**: Enhanced health screening of both ICE and facility staff should be implemented in geographic areas with "sustained community transmission." These geographical areas are determined by the CDC and information is available at:
https://www.cdc.gov/coronavirus/2019-ncov/cases-in-us.html.  Health screening includes self-reporting symptoms associated with COVID-19 infection and a temperature check.

Wardens and Facility Administrators in those geographical areas should collaborate with their Health Services Administrator to designate a trained staff member available on all shifts to conduct verbal screening and record temperature checks. It is not required that the trained staff member be medical personnel; however, the staff member must have documented training and protect the privacy of those being screened.

Verbal screening for symptoms of COVID-19 and contact with COVID-19 cases should include the following questions based on Interim Guidance: Managing COVID-19 in Correctional/Detention Facilities:

- Today or in the past 24 hours, have you had any of the following symptoms?
  - Fever, felt feverish, or had chills?
  - Cough?
  - Difficulty breathing?
- In the past 14 days, have you had contact with a person known to be infected with COVID-19 where you were not wearing the recommended proper personal protective equipment (PPE)?

The following is a protocol to safely check an individual's temperature:
- Perform hand hygiene.
- Put on a face mask, eye protection (goggles or disposable face shield that fully covers the front and sides of the face), gowns/coveralls, and a single pair of disposable gloves.
- Check the individual's temperature.
- If performing a temperature check on multiple individuals, ensure that a clean pair of gloves is used for each individual and that the thermometer has been thoroughly cleaned in between each check.
- If disposable or non-contact thermometers are used and the screener did not have physical contact with an individual, gloves do not need to be changed before the next check. If non-contact thermometers are used, they should be cleaned routinely as recommended by CDC for infection control.
- Remove and discard PPE.
- Perform hand hygiene.

Staff who do not clear the screening process, or refuse the enhanced health screening must be denied entry and advised to follow CDC-recommended steps for persons who are sick with COVID-19 symptoms.

If PPE supply is limited, consider other PPE strategies based on CDC Guidance | Strategies for Optimizing the Supply of PPE.

**038**

Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1
Page 5

If staff register a temperature greater than or equal to 100.4 degrees (Fahrenheit), they should be denied entry to the facility and placed on leave per the employer's administrative policies.

**DETAINEE SCREENING:** IHSC developed guidance for IHSC-staffed facilities to assist in the risk assessment and management of detained individuals with potential exposure to COVID-19, and guidance was disseminated to non IHSC-staffed ICE detention facilities for potential adoption of this guidance at their respective sites. This guidance addresses intake medical screenings, monitoring, encounters, laboratory testing, and public health actions. The CDC remains the authoritative source for information on how to protect individuals and reduce exposure to COVID-19. ICE continues to encourage facilities to follow CDC guidelines and those of their state and local health departments for non IHSC-staffed ICE detention facilities.

ICE requests that Wardens and Facility Administrators ensure ICE detainees are provided guidance and education in a language that they fully comprehend regarding basic hygiene and measures to maintain health. Links for detainee/patient education resources, in a variety of languages, are maintained in the IHSC guidance and information on the CDC website.

**MODIFIED OPERATIONS:** Wardens and Facility Administrators should implement modified operations to maximize social distancing in facilities, as much as practicable. For example, Wardens and Facility Administrators should consider staggered mealtimes and recreation times in order to limit congregate gatherings. All community service projects are suspended until further notice.

**CONSIDERATIONS FOR DETAINEE RELEASE:** Upon notification of a detainee's pending release, a qualified health care provider will conduct a temperature screening:

- Temperature checks will be completed no more than 12 hours prior to facility departure and documented in the detainee medical record and transfer summary.
- Temperature checks must be completed and documented prior to providing ICE with transfer summary documents.

When considering the release of detainees into the United States with confirmed or suspected COVID-19, the following must be addressed for detainees exposed to an individual with confirmed or suspected COVID-19 or detainees under monitoring for having epidemiologic risk of exposure to COVID-19:

- If the detainee will be released prior to completion of the recommended medical isolation, cohorting, or monitoring period, the state or local health department in the facility jurisdiction should be notified of the detainee's release:
  - The health department should be provided with the detainee's name, intended address, email address, and all available telephone numbers.

- Facilitate safe transport, continued shelter, and medical care, as part of release planning:
  - Provide information regarding any potential community resources to promote continuity of care.
  - Attempt to facilitate transportation coordination through a family or friend.

**039**

Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1
Page 6

  o   Advise the detainee to avoid public transportation, commercial ride sharing (e.g.,
      Uber, Lyft), and taxis.

• Provide the detainee the CDC's *What To Do if You Are Sick* fact sheet.

If this guidance creates any contractual issues, please contact your respective Contracting
Officer Representative.

**040**



**From:** Berg, Peter B
**To:**
**Cc:**

**Subject:** Updated Guidance: COVID-19 Detained Docket Review-- Effective Immediately
**Date:** Saturday, April 4, 2020 5:17:40 PM

==**UPDATE: Please see the updated guidance below. The previous version of this guidance is rescinded.**==

**This message is sent from Peter B. Berg, (a)Assistant Director, Field Operations**

**To:**  **Field Office Directors and Deputy Field Office Directors**

**Subject:**  **COVID-19 Detained Docket Review**

**Background:**

U.S. Immigration and Customs Enforcement (ICE) has taken a number of significant and proactive measures in response to the Coronavirus Disease 2019 (COVID-19) pandemic, in order to mitigate the spread of COVID-19 to aliens detained in its custody, its workforce, and stakeholders at its detention facilities. As more becomes known about the virus, ERO will continue to update its practices and guidance in this regard. General ICE COVID-19 guidance is available here and will be updated and supplemented on an ongoing basis.

On March 18, 2020, you were directed to review the cases of aliens detained in your area of responsibility who were over the age of 70 or pregnant to determine whether continued detention was appropriate. The Centers for Disease Control and Prevention (CDC) has developed a list of categories of individuals identified as potentially being at higher-risk for serious illness from COVID-19. Expanding on that list, ERO has identified the following categories of cases that should be reviewed to re-assess custody:

- ==Pregnant detainees or those having delivered in the last two weeks==
- ==Detainees over 60 years old==
- Detainees of any age having chronic illnesses which would make them immune-compromised, including but not limited to:
  - Blood Disorders
  - Chronic Kidney Disease
  - Compromised immune system (e.g., ongoing treatment such as chemotherapy or radiation, received an organ or bone marrow transplant, taking high doses of corticosteroids or other immunosuppressant medications)
  - Endocrine disorders

**041**

- Metabolic disorders
- Heart disease
- Lung disease
- Neurological and neurologic and neurodevelopment conditions

As part of your ongoing application of the CDC's Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (available here), please identify all cases within your AOR that meet any of the criteria above and validate that list with assistance from IHSC or your Field Medical Coordinator to ensure the conditions listed are still present and do result in the detainee potentially having a higher risk for serious illness from COVID-19.  After identifying a case as meeting any of the above criteria, you should review the case to determine whether continued detention remains appropriate in light of the COVID-19 pandemic.

The presence of one of the factors listed above should be considered a significant discretionary factor weighing in favor of release.  To be clear, however, it may not always be determinative.  Field offices must remain cognizant of the requirements of mandatory detention.  Section 236(c) of the Immigration and Nationality Act (INA) mandates the detention of certain categories of criminal and terrorist aliens during the pendency of removal proceedings.  Such aliens may not be released in the exercise of discretion during the pendency of removal proceedings even if potentially higher-risk for serious illness from COVID-19.  INA § 236(c); 8 C.F.R. § 236.1(c)(1)(i).  Such aliens may only be released following a final order issued by an immigration judge, the Board of Immigration Appeals, or a federal court granting the alien relief, dismissing proceedings, or terminating proceedings.  Similarly, pursuant to section 241(a)(2), certain criminal and terrorist aliens subject to a final order of removal may not be released during the 90-day removal period even if potentially higher-risk for serious illness from COVID-19.  INA § 241(a)(2).  For alien's subject to discretionary detention under section 236(a), please remember that release is prohibited, even if the alien is potentially higher-risk for serious illness from COVID-19, if such release would pose a danger to property or persons.  8 C.F.R. § 236.1(c)(8).

When reviewing cases of alien's subject to discretionary detention under 236(a), the following must be completed:

- **Cases involving any arrests or convictions for any crimes that involve risk to the public regardless of the date of arrest or conviction must be reviewed and approved by a Deputy Field Office Director (DFOD) or higher before a determination is made to release.**
  - Examples of crimes that involve a risk to the public include any crime that: involves any form of violence, driving while intoxicated, threatening behaviors, terroristic threats, stalking, domestic violence, harm to a child, or any form of assault or battery.   This list is not intended to be

comprehensive. If there is any doubt whether a crime involves risk to the public, consult with your Office of the Principal Legal Advisor (OPLA) field location and your respective Deputy Assistant Director for Domestic Operations before a custody redetermination is completed.

- You may consider the age of an arrest or conviction as a mitigating or an aggravating factor, but the age of an arrest or a conviction does not automatically outweigh public safety concerns.

With regard to arriving aliens and certain other aliens eligible for consideration of parole from custody, under current circumstances and absent significant adverse factors, the fact that an alien is potentially higher-risk for serious illness from COVID-19, may form the basis for a determination that "continued detention is not in the public interest," justify release under 8 C.F.R. § 212.5(b)(5).

For other aliens for whom there is discretion to release, field offices remain responsible for articulating individualized custody determinations, taking into consideration the totality of the circumstances presented in the case. The fact that an alien is potentially higher-risk for serious illness from COVID-19 should be considered a factor weighing in favor of release. You may also consider alternatives to detention consistent with ICE ATD policies, if ATD is determined to sufficiently mitigate the risk of flight.

Any releases attributed to reviews of COVID-19 susceptibility shall be documented in the ENFORCE Alien Removal Module (EARM) under Special Class - COVID-19 Chronic Care Release. As previously communicated, these individuals should be placed on ATD if possible.

Please contact your local OPLA field location should you have any questions or concerns regarding your authority to release in any individual case.

**For any questions on this guidance, please contact your respective Deputy Assistant Director for Domestic Operations.**

**Limitation on the Applicability of this Guidance**. This message is intended to provide internal guidance to the operational components of U.S. Immigration and Customs Enforcement. It does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

APPEAL,TYPE-L

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:19-cv-01593-JEB

HEREDIA MONS et al v. MCALEENAN et al
Assigned to: Judge James E. Boasberg
 Case: 1:18-cv-00578-JEB
Case in other court: USCA, 19-05306
Cause: 05:551 Administrative Procedure Act

Date Filed: 05/30/2019
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government
Defendant

**Plaintiff**

**ANGEL ALEJANDRO HEREDIA
MONS**

represented by **Bruce Warfield Hamilton**
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
LOUISIANA
1340 Poydras Street
Suite 2160
New Orleans, LA 70112
(504) 522-0628
Email: bhamilton@laaclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katharine Schwartzmann**
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
LOUISIANA
1340 Poydras Street
Suite 2160
New Orleans, LA 70112
504-522-0628
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Rivera**
150 East Ponce De Leon Avenue
Suite 340
Decatur, GA 30030
404-521-6700
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| | | conference on April 21, 2020, at 12:00 noon. So ORDERED by Judge James E. Boasberg on 4/9/2020. (lcjeb3) (Entered: 04/09/2020) |
|---|---|---|
| 04/09/2020 | | Minute Entry for proceedings held before Judge James E. Boasberg: Telephone Conference held on 4/9/2020: See Minute Order filed on 4/9/2020 for full details. Notice due by 4/20/2020. A further Telephone Conference set for 4/21/2020 at 12:00 PM in Chambers before Judge James E. Boasberg. (Court Reporter Lisa Griffith) (nbn) (Entered: 04/09/2020) |
| 04/20/2020 | 67 | NOTICE *(Defendants' Notice In Response To Court Order)* by MATTHEW T. ALBENCE, NATHALIE ASHER, GEORGE LUND, III, KEVIN K. MCALEENAN re Order,, (Attachments: # 1 Declaration of John Hartnett) (Simon, Jeremy) (Entered: 04/20/2020) |
| 04/21/2020 | 68 | NOTICE OF SUPPLEMENTAL AUTHORITY by F.J.B.H., MIGUEL ANGEL GIRON MARTINEZ, ANGEL ALEJANDRO HEREDIA MONS, J.M.R., M.R.M.H., DAYANA MENA LOPEZ, ROLAND NCHANGO TUMENTA, P.S.P., DOUGLAS ENRIQUE PUCHE MORENO, R.O.P., ADRIAN TOLEDO FLORES, Y.A.L. (Attachments: # 1 Exhibit 1 - Fraihat Decision, # 2 Exhibit 2 - Declaration of Rose Murray, # 3 Exhibit 3 - Declaration of Joseph Giardina) (Mesa-Estrada, Victoria) (Entered: 04/21/2020) |
| 04/21/2020 | | Minute Entry for proceedings held before Judge James E. Boasberg: Telephone Conference held on 4/21/2020. (Court Reporter Lisa Griffith) (nbn) (Entered: 04/21/2020) |
| 04/21/2020 | | MINUTE ORDER: As discussed in todays telephonic hearing, the Court ORDERS that Plaintiffs' 61 Emergency Motion for Preliminary Injunction is DENIED. Plaintiffs are ultimately seeking relief that is either beyond the scope of their suit or has already been granted. In other words, as the Court has already enjoined Defendants to follow their Parole Directive, see ECF No. 32-33, it is unnecessary to do so again. To the extent that Plaintiffs' Motion recasts their case as one relating to conditions in the detention centers resulting from COVID-19, that is beyond the scope of their suit. In addition, the recent decision in Fraihat v. ICE, see ECF No. 68-1, appears to offer Plaintiffs (and others) the relief they seek here related to the review of high-risk detainees. As discussed, Plaintiffs remain free to file a motion for contempt that contends that Defendants are currently not complying with this Court's injunction and the Parole Directive. So ORDERED by Judge James E. Boasberg on 4/21/2020. (lcjeb2) (Entered: 04/21/2020) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/22/2020 09:26:55 | | |
| **PACER Login:** | ajhalaska | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:19-cv-01593-JEB |
| **Billable Pages:** | 19 | **Cost:** | 1.90 |