1 | STRUCK LOVE BOJANOWSKI & ACEDO, PLC
Daniel P. Struck, AZ Bar #012377
2 | *(admitted pro hac vice)*
Rachel Love, AZ Bar #019881
3 | *(admitted pro hac vice)*
Nicholas D. Acedo, AZ Bar #021644
4 | *(admitted pro hac vice)*
Jacob B. Lee, AZ Bar #030371
5 | *(admitted pro hac vice)*
3100 West Ray Road, Suite 300
6 | Chandler, Arizona  85226
Tel.:  (480) 420-1600
7 | Fax:  (480) 420-1695
dstruck@strucklove.com
8 | rlove@strucklove.com
nacedo@strucklove.com
9 | jlee@strucklove.com

10 | WITHAM MAHONEY & ABBOTT, LLP
Matt Mahoney, Esq., CA Bar # 211184
11 | 401 B Street, Suite 2220
San Diego, CA 92101
12 | Tel.: (619) 407-0505
Fax: (619) 872-0711
13 | mahoney@wmalawfirm.com

14 | Attorneys for Respondent LaRose

15 | **UNITED STATES DISTRICT COURT**

16 | **SOUTHERN DISTRICT OF CALIFORNIA**

17 | Adrian Rodriguez Alcantara, et al.,        NO. 3:20-cv-00756-DMS-AHG

18 |                    Plaintiffs-Petitioners,   **RESPONDENT LAROSE'S**
**OPPOSITION TO MOTION FOR**
19 | v.                                          **CLASS CERTIFICATION**
**RE: OTAY MESA SUBCLASS**
20 | Gregory J. Archambeault, San Diego
Field Office Director, Immigration and       Date: April 28, 2010
21 | Customs Enforcement, et al.,                Time: 1:30 p.m.
Courtroom: Telephonic
22 |                    Defendants-              Judge:  Honorable Dana M. Sabraw
Respondents.
23 |

24 |

25 |

26 |

27 |

28 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 1

ARGUMENT ....................................................................................................... 2

I.    The Standard for Class Certification .................................................. 2

II.   The Court Should Not Certify the Subclass Because Petitioners Fail to Satisfy the Requirements of Rule 23 ................................................... 3

     A.    Petitioners Have Not Established Numerosity ....................................... 3

     B.    Petitioners Have Not Established Commonality or Rule 23(b)(2) ........ 7

     C.    Petitioner Rodriguez Alcantara Is Not Typical of the Subclass .......... 12

     D.    Putative Subclass Members Who Are 55 Years or Older or Who Have A Qualifying Medical Condition Are Already Members of a Certified Class Pursuing the Same Claim ........................................................... 13

III.  If the Court Certifies Any Aspect of the Subclass It Should Be Further Modified ........................................................................................... 16

IV.   Conclusion ....................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Cal. Dep't of Health Servs.*
    487 F.3d 684 (9th Cir. 2007)..................................................................15

*Albino-Martinez v. Adducci*
    No. 2:20-cv-10893, 2020 WL 1872362 (E.D. Mich. April 14, 2020).................12

*Ballard v. Bank of Am., N.A.*
    No. 8:12-CV-1698-JST, 2013 WL 4807193 (C.D. Cal. Sept. 6, 2013)...............13

*Bank Melli v. Pahlavi*
    58 F. 3d 1406 (9th Cir. 1995)..............................................................4, 6

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*
    270 F.R.D. 488 (N.D. Cal. 2010).............................................................13

*Bell v. Wolfish*
    441 U.S. 520 (1979)............................................................................10

*Castro v. Cty. of Los Angeles*
    833 F.3d 1060 (9th Cir. 2016)............................................................10, 11

*Cervantez v. Celestica Corp.*
    253 F.R.D. 562 (C.D. Cal. 2008) ...............................................................6

*Chowning v. Kohl's Dep't Stores, Inc.*
    CV1508673RGKSPX, 2016 WL 7655752 (C.D. Cal. Mar. 2, 2016) .................16

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*
    867 F.3d 1093 (9th Cir. 2017)..................................................................9

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Trust*
    317 F.R.D. 91 ....................................................................................4

*Clardy v. Pinnacle Foods Group, LLC*, 16-CV-04385-JST
    2017 WL 57310 (N.D. Cal. Jan. 5, 2017) ...............................................16

*Cruson v. Jackson Nat'l Life Ins. Co.*
    954 F.3d 240 (5th Cir. 2020)..................................................................16

*Czuchaj v. Conair Corp.*
 No. 313CV01901BENRBB, 2016 WL 4272374 (S.D. Cal. Aug. 15, 2016) ....... 13

*Daigle v. Shell Oil Co.*
 133 F.R.D. 600 (D. Colo. 1990) ................................................................... 6

*Dawson v. Asher*
 No. C20-0409JLR-MAT, 2020 WL 1304557 (W.D. Wash. Mar. 19, 2020) . 11, 12

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*
 431 U.S. 395 (1977) ................................................................ 12, 13

*Ellis v. Costco Wholesale Corp.*
 657 F.3d 970 (9th Cir. 2011) ................................................................ 2, 9

*Fraihat v. U.S. Immigration & Customs Enf't*
 No. EDCV191546JGBSHKX,
 2020 WL 1932393 (C.D. Cal. Apr. 20, 2020) ...................................... 14

*Fraihat v. U.S. Immigration & Customs Enf't*
 No. EDCV191546JGBSHKX
 2020 WL 1932570 (C.D. Cal. Apr. 20, 2020) ........................... 14, 15, 16

*Franco-Gonzales*
 No. CV 10-02211 DMG DTBX
 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) ................................... 6, 7

*Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*
 446 U.S. 318 (1980) ................................................................ 7

*Goodnight v. Shalala*
 837 F. Supp. 1564 (D. Utah 1993) ........................................... 3

*Gordon v. Cty. of Orange*
 888 F.3d 1118 (9th Cir. 2018) ................................................. 11

*Habibi v. Barr*
 No. 20cv00618-BAS (RBB), 2020 WL 1864642 (S.D. Cal. Apr. 14, 2020) ....... 12

*Hassoun v. Searls*
 No. 1:19-CV-00370 EAW, 2020 WL 1819670 (W.D.N.Y. Apr. 10, 2020) ......... 12

*In re Checking Account Overdraft Litig.*
 780 F.3d 1031 (11th Cir. 2015) ................................................ 16

*Jennings v. Rodriguez*
  138 S. Ct. 830 (2018) ........................................................................ 8

*Jimenez v. Allstate Ins. Co.*
  765 F.3d 1161 (9th Cir. 2014) ........................................................... 8

*Jordan v. Los Angeles Cty.*
  669 F.2d 1311 (9th Cir. 1982) ........................................................... 6

*Kilbourne v. Coca-Cola Co.*
  No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015) ............ 9

*King v. Great Am. Chicken Corp.*
  No. CV 17-4510-GW(ASX), 2019 WL 6348463 (C.D. Cal. July 18, 2019) ........ 7

*Kingsley v. Hendrickson*
  135 S. Ct. 2466 (2015) .................................................................... 11

*Lopez-Marroquin v. Barr*
  No. 20CV682-LAB (MDD), 2020 WL 1905341 (S.D. Cal. Apr. 17, 2020) ........ 12

*Moreno v. Castlerock Farming & Transp., Inc.*, CIV-F-12-0556 AWI
  2013 WL 1326496 (E.D. Cal. Mar. 29, 2013) ...................................... 16

*Moreno v. DFG Foods, LLC*
  No. 02 C 4019, 2003 WL 21183903 (N.D. Ill. May 21, 2003) .................... 6

*Neal v. Rios*
  No. 1:10CV0021-6LJOSMSHC, 2010 WL 1131646 (E.D. Cal. Mar. 24, 2010) ... 2

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*
  926 F.3d 528 (9th Cir. 2019) ....................................................... 12, 13

*Orantes-Hernandez v. Smith*
  541 F. Supp. 351 (C.D. Cal. 1982) ..................................................... 6

*O'Shea v. Littleton*
  414 U.S. 488 (1974) ........................................................................ 13

*Parsons v. Ryan*
  754 F.3d 657 (9th Cir. 2014) ........................................................ 8, 10

*Pole v. Estenson Logistics, LLC*
  No. CV 15-07196 DDP (EX), 2016 WL 4238635 (C.D. Cal. Aug. 10, 2016) ....... 6

*Ramirez v. Culley*
   No. 2:20-cv-609, 2020 WL 1821305 (D. Nev. April 9, 2020) ..............................12

*Rannis v. Recchia*
   380 F. App'x 646 (9th Cir. 2010) ....................................................................4, 7

*Richey v. Matanuska-Susitna Borough*
   No. 3:14-CV-00170 JWS, 2015 WL 1542546 (D. Alaska Apr. 7, 2015)...............8

*Robidoux v. Celani*
   987 F.2d 931 (2d Cir. 1993)...............................................................................6

*Rodriguez v. Hayes*
   591 F.3d 1105 (9th Cir. 2010)............................................................................2

*Rutledge v. Elec. Hose & Rubber Co.*
   511 F.2d 668 (9th Cir. 1975)..............................................................................3

*Sacal-Micha v. Longoria*
   No. 1:20-CV-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) ........................9

*Schwartz v. Upper Deck Co.*
   183 F.R.D. 672 (S.D. Cal. 1999)......................................................................3, 6

*Sosna v. Iowa*
   419 U.S. 393 (1975) .........................................................................................12

*Sueoka v. United States*
   101 F. App'x 649 (9th Cir. 2004) .....................................................................3, 4

*Tourgeman v. Collins Fin. Servs., Inc.*
   No. 08-CV-1392 JLS (NLS), 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011)..........3

*Verma v. Doll*
   No. 4:20-cv-14, 2020 WL 1814149 (M.D. Pa. April 9, 2020) ...........................12

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ...................................................................................passim

*Walton v. Easton Corp.*
   563 F.2d 66 (3d Cir. 1977)..........................................................................15, 16

*Wang v. Chinese Daily News, Inc.*
   231 F.R.D. 602 (C.D. Cal. 2005) ........................................................................4

*Wells v. Jeffery*
   No. 03-cv-228, 2006 WL 696057 n.7 (D.D.C. Mar. 20, 2006) .............................4

**Statutes**

8 U.S.C. § 1225(b) ...............................................................................................11

8 U.S.C. § 1226(c) ...............................................................................................11

8 U.S.C. § 1231(a)(2) ..........................................................................................11

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................3

Fed. R. Civ. P. 23(a)(1)–(4) ..................................................................................3

Rule 23(a)(1) .........................................................................................................3

Rule 23(b)(2) .........................................................................................................3

**Regulations**

8 C.F.R. § 236.1(c)(8) .........................................................................................11

**Other Authorities**

*Class Certification in the Age of Aggregate Proof*
   84 N.Y.U. L. Rev. 97 (2009) ...............................................................................7

## INTRODUCTION

Petitioners seek to provisionally certify and immediately release a subclass of ICE detainees in light of the COVID-19 pandemic.  Instead of affirmatively *proving* that they are entitled to such extraordinary relief, as they are required to do, Petitioners instead go through the motions, hoping to ride the wave of other similar orders issued around the country.  COVID-19 is undoubtedly a very real and serious issue confronting every detention facility.  But it is not an excuse to bypass Rule 23's stringent requirements or relieve Petitioners from their high burden in *this* case.  Nor does it diminish this Court's obligation to rigorously analyze whether they have in fact satisfied that burden.

The Court should deny their request for certification because Petitioners have: failed to establish that there are a sufficient number of detainees to warrant class certification; failed to present adequate proof, much less "significant proof," that the conditions at the Otay Mesa Detention Center ("OMDC") are what they say are; failed to show that every putative subclass member's Fifth Amendment claim can be decided simultaneously, despite the many individualized inquiries needed to prove each one; and failed to explain why their class representative can represent the Subclass when he is not even a member.  In addition, an overlapping class pursuing the same allegations and claims was recently certified by another district court.  The Court should not certify a duplicative class in this case.

## BACKGROUND

The Court ordered this Opposition to address only the request to provisionally certify the Otay Mesa Medically Vulnerable Subclass ("Subclass"). (Dkt. 14.)  For brevity, Respondent LaRose incorporates the facts and evidence set forth in the federal Respondents' Response to Motion for Temporary Restraining Order and LaRose's Opposition to Motion for Temporary Restraining Order.

Petitioners define the Subclass to include:

1
2
3
4

> All civil immigration detainees incarcerated at the Otay Mesa Detention Center who are age 45 years or older or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19.

5   (Dkt. 1-3 at 9.)  Petitioner Adrian Rodriguez Alcantara, a current OMDC detainee,

6   is the sole Subclass representative.  (*Id.*)  On behalf of himself and the Subclass, he

7   seeks a temporary restraining order, preliminary injunction, and writ of habeas

8   corpus, directing Respondents to immediately release *all* Subclass members.[1]  (Dkt.

9   2-1 at 39–40.)

10                                            **ARGUMENT**

11   **I.      The Standard for Class Certification.**

12              Petitioners' burden to certify the Otay Mesa Subclass is extraordinarily high.

13   "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v.*

14   *Dukes*, 564 U.S. 338, 350 (2011).  Rather, [a] party seeking class certification must

15   affirmatively demonstrate his compliance with the Rule—that is, he must be

16   prepared to prove that there are *in fact* sufficiently numerous parties, common

17   questions of law or fact, etc."  *Id.* (emphasis in original).  In addition, the Court

18   cannot simply default to certification orders in other, similar cases.  It must conduct

19   a "rigorous analysis" and conclude that Petitioners have established each Rule 23

20   element.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011).

21   Furthermore, "[c]lass action suits brought … in a habeas corpus action are

22   ordinarily disfavored."  *Neal v. Rios*, No. 1:10CV0021-6LJOSMSHC, 2010 WL

23   1131646, at *1 (E.D. Cal. Mar. 24, 2010) (citing *Rodriguez v. Hayes*, 591 F.3d

24   1105, 1117 (9th Cir. 2010)).

25

26   ───────────────
27   [1] There is no personal jurisdiction over Defendants-Respondents with respect to non-habeas subject matter jurisdiction and claims because there has been no service of process. Respondents provide this Response at the direction of the Court and, in doing so, do not waive any available defenses.

28

Rule 23(a) consists of four elements—numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(a)(1)–(4).  Since Petitioners seek injunctive relief (immediate release), they must also satisfy Rule 23(b)(2), which requires proof that Respondents "acted or refused to act on grounds that generally apply to the class." Fed. R. Civ. P. 23(b)(2). Failure to meet "any one of Rule 23's requirements destroys the alleged class action."  *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).

## II.  The Court Should Not Certify the Subclass Because Petitioners Fail to Satisfy the Requirements of Rule 23.

### A.  Petitioners Have Not Established Numerosity.

Petitioners admittedly do not know how many putative Subclass members there are.  But, they contend, this element is "relaxed" because they are seeking only injunctive relief, and thus the Court can infer that the Subclass is sufficiently numerous.  This approach is outdated, and to the extent it is still viable, it does not *eliminate* Petitioners' burden.

This "relaxed" proposition derives from an unpublished Ninth Circuit decision issued in 2004, *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004).  *Sueoka* relied on an even older district court decision, *Goodnight v. Shalala*, 837 F. Supp. 1564 (D. Utah 1993). Both cases predate the Supreme Court's decision in *Wal-Mart*, which changed the class-action landscape.  Petitioners must "*in fact*" prove there are enough Subclass members to warrant class certification. *Wal-Mart*, 564 U.S. at 350 (emphasis in original). Neither conjecture nor speculation is enough to satisfy numerosity.  *See Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392 JLS (NLS), 2011 WL 5025152, at *8 (S.D. Cal. Oct. 21, 2011) (ruling that "unsupported conjecture is insufficient" to satisfy numerosity); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999) ("Mere speculation as to satisfaction of this numerosity requirement does not satisfy Rule 23(a)(1).").

Recognizing that they need at least 40 class members to warrant certification, (*see* Dkt. 1-3 at 18, citing *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)), Petitioners argue that the Court can infer that the Subclass qualifies because they have identified "at least 15 detainees in Otay Mesa who have medical vulnerabilities" (Dkt. 1-3 at 19).  Even assuming an inference is enough to satisfy numerosity, it must still be based on "evidence."  *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Trust*, 317 F.R.D. 91, l00 (N.D. Cal. 2016).[2]  Petitioners have none.

Petitioners first cite to the declaration of Brendan Cassidy, an elementary school teacher and member of Otay Mesa Detention Center Resistance, an advocacy group whose stated vision is "[s]hutting down the Otay Mesa Detention Center."  (Dkt. 1-3 at 19; Dkt. 1-13 at 2.) *See* https://www.otaymesadetentionresistance.org/about.  Cassidy claims that his "colleagues and I are in touch with 15 people who are currently in detention at the Otay Mesa Detention Center who suffer from underlying medical issues that I understand make them extra vulnerable to COVID-19."  (Dkt. 1-13 at 2, ¶ 3.)  This is hearsay, not admissible evidence.  *See Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 615 (C.D. Cal. 2005) (sustaining hearsay objection to a declarant's statement); *Wells v. Jeffery*, No. 03-cv-228, 2006 WL 696057, at *3 n.7 (D.D.C. Mar. 20, 2006) ("The affidavit or declaration cannot contain hearsay evidence, as such evidence would not be admissible at trial."); *see also Bank Melli v. Pahlavi*, 58 F. 3d 1406, 1412 (9th Cir. 1995) (holding that a declaration not made on personal knowledge is entitled to no weight).  Moreover, the 15 people allegedly include people with "heart problems" and who are "over the age of 60," (Dkt. 1-13 at 2, ¶ 3), and therefore are not necessarily at "high-risk for severe illness from COVID-19," (Dkt. 1-3 at 9 n.3).

---

[2] Petitioners omit this predicate requirement from their citation to *Civil Rights Education & Enforcement Center*.  *See* 317 F.R.D. at 100 ("Because Plaintiffs seek only injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on reasonable inferences ***arising from plaintiffs' other evidence*** that the number of unknown and future members ... is sufficient to make joinder impracticable.") (quoting *Sueoka*) (emphasis added).

*See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html ("Based on what we know now, those at high-risk for severe illness from COVID-19 are … People 6__5__ years and older [and] People who have ***serious*** heart ***conditions*** ….").  Removing those individuals from his tally, and assuming and accounting for the possibility that some of these individuals have multiple high-risk conditions, Cassidy's declaration is neither helpful nor insightful, and cannot serve as a platform for any inference.

Petitioners' reliance on news articles are similarly unavailing.  In addition to being hearsay lacking foundation, the data is incorrect, unhelpful, and/or stale.  For example, Petitioners estimate that there are "dozens" of class members because one news article surmised that "about 18% of ICE detainees are over age 40 and about 5% are over age 50 at the time of detention."  (Dkt. 1-3 at 19 & n.16, citing https://www.americanimmigrationcouncil.org/sites/default/files/research/the_landscape_of_immigration_detention_in_the_united_states.pdf.)  But that data was based on "___all___ individuals who were detained by ICE ***during fiscal year 2015***."  (*Id*., article at 10.)  Petitioners provide no current information regarding the age composition of detainees at OMDC in 2020, much less at the time they filed their Petition.[3]

Petitioners also contend that there are "well over 40" class members who are "medically vulnerable" because another article estimates "[a]bout four in ten adults in the U.S have a higher risk of developing serious illness if they become infected with the novel coronavirus." (Dkt. 1-3 at 19 & n.15, citing https://www.kff.org/global-health-policy/issue-brief/how-many-adults-are-at-risk-of-serious-illness-if-infected-with-coronavirus/.) That conclusion, however, was based on 2018 statistics for "U.S. adults" who were "ages 65 or older … and adults between the ages of 18 and 64 with heart disease, chronic obstructive pulmonary disease (COPD),

---

[3] It also appears that Petitioners' numbers are wrong. (*See id*., article at 10 [stating that the "age of entry into detention" for those 41-50 years old is 11.4%, and 3.8% for those over 50 years old].) These percentages also include detainees outside the putative Subclass (those 41–44 years old).

uncontrolled asthma, diabetes, or a BMI greater than 40." (*Id.* article.)  It did not analyze medical vulnerabilities of non-U.S. adults in 2020, much less adults detained at OMDC, and in fact included only "non-institutionalized civilian adults" and excluded adults living in "institutional settings."  (*Id.*)  Moreover, it did not base this conclusion on any analysis of healthy adults between the ages of 45 and 64.  (*Id.*)

From here, Petitioners turn to "common sense" and "general knowledge." (Dkt. 1-3 at 19–20.)  This is nothing more than impermissible speculation.[4]  *See Schwartz*, 183 F.R.D. at 681 ("A higher level of proof than mere common sense impression or extrapolation from cursory allegations is required.").

Petitioners last argue that they do not need to establish numerosity as long as they can demonstrate that it is impracticable for detainees to bring individual suits. (*Id.* at 20–21.)  This eschews the proper analysis.  Impracticability is considered only when Petitioners have provided evidence of a specific number of putative class members to determine whether that number is sufficient.  *See Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1319 (9th Cir. 1982).  Indeed, in all of the cases Petitioners cite for their impracticability argument, the plaintiffs had identified a minimum number of class members.[5]  Petitioners have not done so here.[6]  Nonetheless, their

---

[4] The genesis of Petitioners' "common sense" proposition is *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982), a case that predates, and can no longer be squared with, *Wal-Mart*'s admonition that plaintiffs must "affirmatively demonstrate" numerosity. 564 U.S. at 350–51.

[5] (*See* Dkt. 1-3 at 20, citing *Pole v. Estenson Logistics, LLC*, No. CV 15-07196 DDP (EX), 2016 WL 4238635, at *4 (C.D. Cal. Aug. 10, 2016) ["Out of an abundance of caution, however, the court proceeds to consider whether even a seventeen-member class would meet the numerosity requirement in this case."]; *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) [involving over 100 class members]; *Franco-Gonzales*, 2011 WL 11705815, at *9 [55 class members]; *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 603 (D. Colo. 1990) [78 class members]; *Moreno v. DFG Foods, LLC*, No. 02 C 4019, 2003 WL 21183903, at *7 (N.D. Ill. May 21, 2003) [100 class members]; *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) [3,965 class members].)

[6] On April 26, 2020, there were only eight ICE detainees identified as having heightened COVID-19 risk factors under ICE guidelines (60 years or older or qualifying medical condition). (Declaration of LaRose, ¶ 39; Declaration of

1    conclusory and/or unsworn allegations that class members cannot file their own

2    actions because they lack counsel (Dkt. 1-3 at 20, citing Dkt. 1, ¶ 158 & Dkt. 1-10,

3    ¶ 15) is undermined by the fact that both OMDC Petitioners are represented in their

4    individual immigration matters and successfully secured parole (Dkt. 1-5, ¶¶ 3, 15,

5    Dkt. 1-6, ¶ 3), as well as the many individual habeas actions that have granted

6    individual relief (Dkt. 1, ¶ 21; Dkt. 2-1 at 14 n.6).

7    **B.   Petitioners Have Not Established Commonality or Rule 23(b)(2).**

8    For purposes of commonality, what matters "is not the raising of common

9    'questions'—even in droves—but, rather the capacity of a classwide proceeding to

10   generate common answers apt to drive the resolution of the litigation. *Wal-Mart*,

11   564 U.S. at 350 (quoting Nagareda, *Class Certification in the Age of Aggregate*

12   *Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009)). Thus, an assertion that putative class

13   members "have all suffered a violation of the same provision of law" does not

14   support a finding of commonality. *Id*. Nor is it enough to simply phrase a common

15   question, "Is that an unlawful [] practice?" *Id*. at 349; *see also King v. Great Am.*

16   *Chicken Corp.*, No. CV 17-4510-GW(ASX), 2019 WL 6348463, at *3 (C.D. Cal.

17   July 18, 2019) (noting that a plaintiff cannot substitute, "by linguistic sleight-of-

18   hand," a practice for "what is, in reality, simply each worker's individual

19   experience"). The answer to the common question must "resolve an issue that is

20   central to the validity of each" class member's claim "in one stroke." *Id*. at 350.

21   Dissimilarities within a proposed class potentially impede the generation of

22   common answers. *Id*.

23

24   _____

     Beckhelm, ¶ 21 n.3.) This is not enough to certify. *See Franco-Gonzales v.*

25   *Napolitano*, No. CV 10-02211 DMG DTBX, 2011 WL 11705815, at *6 (C.D. Cal.
     Nov. 21, 2011) (citing *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity*

26   *Comm'n*, 446 U.S. 318, 330 n.14 (1980)) ("Thus, while the Supreme Court has
     noted that putative classes of 15 are too small to meet the numerosity requirement,

27   district courts in this Circuit have found that classes with as few as 39 members met
     the numerosity requirement.") (internal citation omitted); *see also Rannis*, 380 F.

28   App'x at 651.

The commonality requirement is especially rigorous when classwide relief under Rule 23(b)(2) is sought. As the Supreme Court recently noted in reviewing a Ninth Circuit immigration detention case, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) (quoting *Wal-Mart*, 564 U.S. at 360). The Supreme Court has also questioned whether a Rule 23(b)(2) class action could appropriately resolve a due process claim given that they are best resolved on a case-by-case basis. *Id.* Nonetheless, under Rule 23(b)(2), Petitioners must show that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360.

Petitioners' analysis fails for two threshold reasons. First, their Motion fails to state, much less explain, the elements of their Fifth Amendment claim. (Dkt. 1-3.) "Whether a question will drive the resolution of the litigation necessarily depends on the nature of the underlying legal claims that the class members have raised." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014); *see also Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) ("[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims."). Without explaining how the common questions will uniformly resolve every putative Subclass member's claim, they cannot satisfy their burden under Rule 23. *See Richey v. Matanuska-Susitna Borough*, No. 3:14-CV-00170 JWS, 2015 WL 1542546, at *5 (D. Alaska Apr. 7, 2015) (plaintiffs failed to meet their burden of demonstrating commonality where they failed to identify the elements of their claims or explain why a determination of their proposed common questions was central to the validity of them).

Second, Petitioners fail to establish a factual basis for the alleged practice that they say is the basis for their claim. To certify a claim based on a practice, Petitioners must present "significant proof" that a practice in fact exists and that the

entire class was subjected to it. *Wal-Mart*, 564 U.S. at 353; *Ellis*, 657 F.3d at 983. Petitioners allege that OMDC is failing to abate or mitigate the risk of infection of COVID-19 and implement adequate social distancing measures. (Dkt. 1-3 at 7, 15–17, 22.) But they provide only a smattering of first-hand evidence of these alleged conditions through the declarations of *only* two detainees (Rodriguez Alcantara and Osorio Reyna). (*Id.* at 15–17.) This is "worlds away" from the requisite "significant proof" of these alleged practices.[7] *Wal-Mart*, 564 U.S. at 355; *see also Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL 5117080, at *12 (S.D. Cal. July 29, 2015) ("Further, the only evidence that Plaintiff offers with respect to Coca–Cola's purported de facto policy of pressuring its drivers to work through lunch is anecdotal evidence in the form of almost identical putative class member declarations, which is not 'significant proof' of a common policy or practice."); *see also Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1104 (9th Cir. 2017) ("[M]erely pointing to a pattern of harm, untethered to the defendant's conduct, is insufficient."). Without significant proof that the alleged practices in fact exist, Petitioners cannot satisfy commonality.

The validity of each Subclass member's Fifth Amendment claim is also incapable of resolution in one stroke or conducive to classwide relief. Each claim will require a case-by-case analysis and review of their individual circumstances. *See Sacal-Micha v. Longoria*, No. 1:20-CV-37, 2020 WL 1518861, at *5 (S.D. Tex. Mar. 27, 2020) (collecting decisions by other district courts considering similar claims to "demonstrate the fact-specific nature" of this analysis).

First, each Subclass member has vastly different risk profiles for COVID-19 based on their age, medical condition, and a host of other factors. *See*

---

[7] Although they submit the declarations of two immigration attorneys (Luis Gonzalez and Dorien Ediger-Seto), they merely provide second-hand hearsay accounts or knowledge based on observations made during their last visitation in March 17 and March 20, respectively. (Dkt. 1-9, ¶¶ 3, 14, 25; Dkt. 1-10, ¶¶ 3, 14.) Thus, they do not reflect the current conditions in the facility.

1   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-
2   higher-risk.html. Not everyone is at the same level of risk.  (Declaration of Ivens,
3   ¶¶ 18–21.)   Against the backdrop of each Subclass member's circumstances, the
4   Court must decipher: (1) whether each Subclass member is actually at risk of
5   exposure to COVID-10; (2) the extent of their risk, i.e., whether it is a "substantial
6   risk" and (3) whether exposure and infection poses a substantial risk of "serious
7   harm."  *See Ortuno v. Jennings*, No. 20-CV-02064-MMC, 2020 WO 1701724, at
8   *3 (N.D. Cal. Apr. 8, 2020) (after reviewing petitioners' medical records, court
9   determined that they were not vulnerable to COVID-19, despite their claims that
10   they were); *see generally Castro*, 833 F.3d at 1071.   Indeed, Petitioners
11   acknowledge that the Court will have to decipher "the degree of risk and
12   imminence of harm."  (Dkt. 1-3 at 23.)  The unique nature of COVID-19, and its
13   differing effects on individuals depending on their personal risk factors, impede a
14   common classwide answer.  *Cf. Parsons*, 754 F.3d at 678 (in Eighth Amendment
15   case, the "glue" satisfying commonality was the existence and constitutionality of
16   systemwide policies and practices).

17       Second, whatever their risk level, the Court must determine whether the
18   facility was aware of each detainee's vulnerable condition and consider the
19   measures taken to abate their specific risk.  (*See, e.g.*, Declarations of Beckhelm,
20   ¶¶ 8–9, Farabaugh, ¶¶ 11–12.)  *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060,
21   1071 (9th Cir. 2016); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (conditions
22   amount to punishment only if defendant acted with "express intent" to punish that
23   is not "reasonably related to a legitimate governmental objective"). Respondents
24   have thoroughly rebutted Petitioners' general allegations and demonstrated that the
25   conditions at OMDC regarding overcrowding, distancing, adequacy of cleaning,
26   and medical care are simply false. (*See* Declarations of Beckhelm, ¶¶ 10–19,
27   Farabaugh, ¶¶ 9–14, LaRose, ¶¶ 19–169, Ivens, ¶¶ 15–16.)  Moreover, resolving
28   whether each putative Subclass member is receiving appropriate protection and care

consistent with his or her individual risk profile and specific medical concerns involves "wide factual variation." *Dukes*, 546 U.S. at 530.

Third, the Court must consider whether those measures were objectively reasonable under the circumstances, which "turns on the 'facts and circumstances of each particular case," and whether the lack of precautions caused each Subclass member's injury. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *Castro*, 833 F.3d at 1071; *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018).

Fourth, because detainees are held under differing statutory authorities, considerations regarding release vary from one detainee to another. *See*, *e.g.*, 8 U.S.C. § 1225(b) (requiring mandatory detention for aliens pending final determination in credible fear proceedings); 8 U.S.C. § 1226(c) (requiring mandatory detention for aliens who have committed certain criminal offenses); 8 U.S.C. § 1231(a)(2) (requiring mandatory detention during the 90-day removal period after a final order of removal is entered). Even where a detainee is eligible for release, release decisions depend on inherently individualized factors, 8 C.F.R. § 236.1(c)(8), including danger to the community or flight risk. *See Dawson v. Asher*, No. C20-0409JLR-MAT, 2020 WL 1304557, at *2 (W.D. Wash. Mar. 19, 2020) ("[P]reventing detained aliens from absconding and ensuring that they appear for removal proceedings is a legitimate governmental objective.").

Finally, the Court must determine whether the detainee can be released into a situation that will not place them or the general public at a heightened risk of contracting COVID-19. (*See*, *e.g.*, Dkt. 1-5, ¶ 17 [Rodriguez Alcantara avowed that he "would like to stay in the San Diego area in the short term, just in case my partner [Osorio Reyna] is also released"]; Dkt. 1-6, ¶ 10 [Osorio Reyna avowed that he "would be willing to stay in San Diego" for 14 days before traveling to Florida with his partner, Rodriguez Alcantara].) *See Kingsley*, 135 S. Ct. at 2473.

Thousands of ICE detainees have sought release based on COVID-19 across the country.  As Petitioners point out, many have secured their release.  But many other courts have denied their release after considering their particular circumstances, including denying release from OMDC.  *See, e.g.*, *Lopez-Marroquin v. Barr*, No. 20CV682-LAB (MDD), 2020 WL 1905341, at *4–5 (S.D. Cal. Apr. 17, 2020); *Habibi v. Barr*, No. 20cv00618-BAS (RBB), 2020 WL 1864642, at *6 (S.D. Cal. Apr. 14, 2020); *Kydyrali v. Wolf et al*, No. 20cv00539-AJB (AGS) (S.D. Cal. Apr. 8, 2020); *see also Murai v. Adducci*, No. 3:20-cv-10816-RHC-PTM, ECF No. 8 (E.D. Mich. April 16, 2020); *Saillant v. Hoover*, No. 1:20-cv-6090JPW, ECF No. 4 (M.D. Pa. April 16, 2020); *Albino-Martinez v. Adducci*, No. 2:20-cv-10893, 2020 WL 1872362 (E.D. Mich. April 14, 2020); *Hassoun v. Searls*, No. 1:19-CV-00370 EAW, 2020 WL 1819670, at *1 (W.D.N.Y. Apr. 10, 2020); *Ramirez v. Culley*, No. 2:20-cv-609, 2020 WL 1821305 (D. Nev. April 9, 2020); *Saini v. Barr*, No. CV-20-649-PHX-JJT, ECF No. 24 (D. Ariz. April 9, 2020); *Verma v. Doll*, No. 4:20-cv-14, 2020 WL 1814149 (M.D. Pa. April 9, 2020); *Umarbaev v. Lowe*, 1:20-cv-413 (M.D. Pa. April 9, 2020); *Dawson*, 2020 WL 1304557.  This demonstrates not only that the dissimilarities within the putative Subclass impede the generation of common answers, but that classwide relief is not appropriate.

## C.   Petitioner Rodriguez Alcantara Is Not Typical of the Subclass.

Even assuming that Petitioners can establish numerosity, commonality, and classwide relief under Rule 23(b)(2), Petitioner Rodriguez Alcantara—who is the only Subclass representative (Dkt. 1-3 at 9)—is not typical of the Subclass.  "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."  *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (a "class representative must be part of the class").  If a named plaintiff is not a member of the class, he lacks typicality and therefore may not seek relief on their behalf.  *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926

F.3d 528, 532 (9th Cir. 2019) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Petitioners define the Subclass to include all OMDC detainees who are either "45 years or older ***or*** who have medical conditions that place them at heightened risk of severe illness or death from COVID-19." (Dkt. 1, ¶ 155, emphasis added; Dkt. 1-3 at 9, emphasis added.) Although Rodriguez Alcantara alleges that he has a qualifying medical condition (HIV), CDC guidelines state only that people with "poorly controlled HIV" are at higher risk. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Rodriguez Alcantara does not allege that Otay Mesa is failing to control his HIV. To the contrary, he admits that he is getting adequate care. (Dkt. 1-5, ¶¶ 5–6.) Thus, he has not established that he is at heightened risk for serious illness or death.

Furthermore, Rodriguez Alcantara does not satisfy the other Subclass criterion—45 years or older—because he is only 33 years old. (Dkt. 1-5, ¶¶ 2, 5.) Thus, at a minimum, he cannot represent that aspect of the Subclass, i.e., those who are 45 years or older with no qualifying medical condition. He can only represent a Subclass that consists of detainees who, like him, have a qualifying medical condition (albeit, of any age). *See Czuchaj v. Conair Corp.*, No. 313CV01901BENRBB, 2016 WL 4272374, at *3 (S.D. Cal. Aug. 15, 2016); *Ballard v. Bank of Am., N.A.*, No. 8:12-CV-1698-JST, 2013 WL 4807193, at *5 (C.D. Cal. Sept. 6, 2013); *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 497 (N.D. Cal. 2010). Thus, the Subclass can only be certified, if at all, to that extent. *NEI Contracting*, 926 F.3d at 532.

### D. Putative Subclass Members Who Are 55 Years or Older or Who Have a Qualifying Medical Condition Are Already Members of a Certified Class Pursuing the Same Claim.

As noted above, the putative Subclass in this case is defined as all OMDC detainees who are "45 years or older or who have medical conditions that place them at heightened risk of severe illness or death from COVI-19." (Dkt. 1, ¶ 155;

Dkt. 1-3 at 9.)  The qualifying medical conditions are those defined by the Center for Disease Control ("CDC").  (Dkt. 1, ¶ 155 & n.9; Dkt. 1-3 at 12.)  Petitioners filed their Petition for Writ of Habeas Corpus, Motion for Restraining Order, and Motion for Class Certification on April 21, 2020.  (Dkt. 1, 1-2, 1-3, 3.)

One day earlier, however, on April 20, 2020, a district court in the Central District of California provisionally certified a class consisting of "[a]ll people who are detained in ICE custody" and who are "over the age of 55" or have "cardiovascular disease (congestive heart failure, history of myocardial infarction, history of cardiac surgery); high blood pressure; chronic respiratory disease (asthma, chronic obstructive pulmonary disease including chronic bronchitis or emphysema, or other pulmonary diseases); diabetes; cancer; liver disease; kidney disease; autoimmune diseases (psoriasis, rheumatoid arthritis, systemic lupus erythematosus); severe psychiatric illness; history of transplantation; and HIV/AIDS." *Fraihat v. U.S. Immigration & Customs Enf't*, No. EDCV191546 JGBSHKX, 2020 WL 1932393, at *1 (C.D. Cal. Apr. 20, 2020); *Fraihat v. U.S. Immigration & Customs Enf't*, No. EDCV191546JGBSHKX, 2020 WL 1932570, at *29 (C.D. Cal. Apr. 20, 2020).  Like Petitioners here, the *Fraihat* class alleges that ICE is failing to comply with CDC guidelines with respect to the prevention and mitigation of COVID-19 infection—at all immigration detention facilities, including OMDC—in violation of their Fifth Amendment rights. *Fraihat*, 2020 WL 1932570, at *9, 11, 21.  The district court not only certified a class consisting of *all* ICE detainees who are 55 years or older or who had a qualifying medical condition that put them at heightened risk of severe illness and death upon contracting COVID-19, but it appointed class counsel and entered the following preliminary injunction:

- Defendants shall provide ICE Field Office Directors with the Risk Factors identified in the Subclass definition;

- Defendants shall identify and track all ICE detainees with Risk Factors. Most should be identified within ten

days of this Order or within five days of their detention, whichever is later;

• ***Defendants shall make timely custody determinations for detainees with Risk Factors, per the latest Docket Review Guidance. In making their determinations, Defendants should consider the willingness of detainees with Risk Factors to be released, and offer information on post-release planning, which Plaintiffs may assist in providing***;

• Defendants shall provide necessary training to any staff tasked with identifying detainees with Risk Factors, or delegate that task to trained medical personnel;

• The above relief shall extend to detainees with Risk Factors regardless of whether they have submitted requests for bond or parole, have petitioned for habeas relief, have requested other relief, or have had such requests denied;

• Defendants shall promptly issue a performance standard or a supplement to their Pandemic Response Requirements ("Performance Standard") defining the minimum acceptable detention conditions for detainees with the Risk Factors, regardless of the statutory authority for their detention, to reduce their risk of COVID-19 infection pending individualized determinations or the end of the pandemic;

• Defendants shall monitor and enforce facility-wide compliance with the Pandemic Response Requirements and the Performance Standard.

*Fraihat*, 2020 WL 1932570, at *29 (emphasis added). These measures "remain in place as long as COVID-19 poses a substantial threat of harm to members of the" Fraihat class. Subclasses." *Id*.

A comparison of the two actions reveals that Petitioners and the putative Subclass members in this case (ICE detainees detained at OMDC) are members of the *Fraihat* certified class (all ICE detainees), and raise the same allegations and constitutional claim. "Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (quoting *Walton v. Easton Corp.*, 563 F.2d 66, 70–71 (3d Cir. 1977)). In that circumstance, a district court has the discretion to dismiss the later-

filed action. *Id.* "This discretionary rule also applies to class actions." *Clardy v. Pinnacle Foods Group, LLC*, 16-CV-04385-JST, 2017 WL 57310, at *3 (N.D. Cal. Jan. 5, 2017); *Moreno v. Castlerock Farming & Transp., Inc.*, CIV-F-12-0556 AWI, 2013 WL 1326496, at *1 (E.D. Cal. Mar. 29, 2013). "Numerous district courts have exercised their discretion and applied the rule against duplicative actions to dismiss later-filed, identical class actions." *Chowning v. Kohl's Dep't Stores, Inc.*, CV1508673RGKSPX, 2016 WL 7655752, at *2 (C.D. Cal. Mar. 2, 2016).

This Court should exercise that discretion here and deny certification of the Subclass to the extent that it includes detainees who are 55 years or over or have a qualifying medical condition. The district court in *Fraihat* is already monitoring OMDC and has jurisdiction over those detainees' claims. *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250 (5th Cir. 2020) (quoting *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015)) ("Certification of a class is the critical act which reifies the unnamed class members and, critically, renders them subject to the court's power.").[8]

## III. If the Court Certifies Any Aspect of the Subclass It Should Be Further Modified.

At a minimum, the Court should modify the class definition to exclude any detainee who is statutorily ineligible for release, or who has filed an individual habeas petition or other motion for release based on COVID-10 since the matter is

---

[8] If the Court agrees that the Subclass cannot include detainees who are 55 years or older or who have a qualifying medical condition (Section II.D, *supra*), the Subclass can only be certified at all if the Court determines that Rodriguez Alcantara is a typical class representative (Section II.C, *supra*). If the Court determines that he can nonetheless proceed as a class representative, the Subclass must still be limited to detainees who are 45 to 54 years of age with no qualifying medical condition so as not to interfere with the *Fraihat* class. As discussed in LaRose's Response to the Motion for Temporary Restraining Order, Petitioners have failed to establish that detainees in that age range are at a heightened risk of serious harm. (*See also* Declaration of Ivens, ¶¶ 17-21.) If the Court determines that Rodriguez Alcantara is not typical of the Subclass because he is only 33 years old, then the Subclass cannot be certified at all.

already before another court. *See Hamama v. Adducci*, No. 17-cv-11910 (E.D. Mich. Jan. 2, 2018), Dkt. 191 ("The definitions specifically exclude from the subclasses those who have filed individual habeas petitions.").  It should also exclude detainees who are eligible for release upon posting a bond.  That is a reasonable limitation because there already exists an independent basis for release.

## IV.   Conclusion

For these reasons, the Court should not certify the Subclass. Alternatively, the Subclass should be modified as proposed.

Dated:  April 27, 2020          STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By s/ Daniel P. Struck
Daniel P. Struck
Rachel Love
Nicholas D. Acedo
Jacob B. Lee
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
jlee@strucklove.com

Matt Mahoney, Esq.
WITHAM MAHONEY & ABBOTT, LLP
mahoney@wmalawfirm.com

Attorneys for Respondent LaRose