**MONIKA Y. LANGARICA** (SBN 308518)(mlangarica@aclusandiego.org)
**JONATHAN MARKOVITZ** (SBN 301767)(jmarkovitz@aclusandiego.org)
**KIMBERLY GRANO** (SBN 328298)(kgrano@aclusandiego.org)
**BARDIS VAKILI** (SBN 247783)(bvakili@aclusandiego.org)
**DAVID LOY** (SBN 229235)(davidloy@aclusandiego.org)
**ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES**
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4493

Counsel for Plaintiff-Petitioners

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Adrian RODRIGUEZ ALCANTARA, et. al., <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement, et. al., <br><br> Defendant-Respondents. | Case No. 20cv756 DMS (AHG) <br><br> **REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> DATE: APR. 28, 2020 <br> TIME: 1:30 PM <br> HON. DANA M. SABRAW |

The record is clear. If the Court does not act, medically vulnerable people in detention will suffer and may well die of COVID-19. On the undisputed facts, their continued detention is unconstitutional and they must be released.

Defendants do not dispute that they have failed to prevent COVID-19 from infecting dozens of staff and detained people throughout almost every housing unit in Otay Mesa. They admit that a single confirmed case on March 31 has exploded to 85 confirmed cases among the ICE population alone, or 13% of the ICE population, less than four weeks later. LaRose Decl., ECF No. 26-1, ¶ 13. Indeed, the number of confirmed cases among ICE detained persons has quadrupled in the one week since Plaintiffs filed their Complaint.

1

On these undisputed facts, the explosive rate of COVID-19 infection in detention facilities combined with Defendants' admitted practices make it unconstitutional to detain medically vulnerable people at Otay Mesa. Defendants' "process" is not working, and they cannot continue risking the health, safety, and lives of the medically vulnerable people they have a duty to protect. Gov't TRO Opp., ECF No. 23 at 2.

Defendants admit the shortcomings in their response to COVID-19 that have allowed the virus to rapidly spread throughout Otay Mesa. Defendants admit that housing units continue to confine 100 or more individuals who share bathrooms, telephones, and living spaces, including at mealtime. Larose TRO Opp., ECF. No 26 at 10, 11. Even assuming Otay Mesa is at 50% capacity—which Plaintiffs do not concede—the overall population level is irrelevant when individual housing units, where detainees spend nearly all of their time, are at almost 80% capacity. *Id*.

Defendants do not deny that by design, beds cannot be placed at least six feet apart, particularly while six people continue to occupy cells. Gov't TRO Opp. at 10; LaRose TRO Opp. at 10. Defendants have distributed paper facemasks only twice since this pandemic began, once on April 10 and a second time two weeks later, after Plaintiffs filed their Complaint, on April 24. Gov't TRO Opp. At 6; LaRose TRO Opp. At 11. Defendants admit that they do not require detainees to wear facemasks or practice social distancing, yet they ignore the risk this poses for medically vulnerable people forced into close proximity to those detainees. Gov't TRO Opp. at 6; LaRose TRO Opp. at 11. Their own photograph demonstrates this particularly egregious failure. *See e.g.,* ECF 26-2 at 4.

Defendants admit that detained people are responsible for cleaning and sanitizing their own housing units, that cleaning of communal surfaces like toilets and telephones is not required between uses, and that detained people are not given hand sanitizer. Gov't TRO Opp. at 7–8; LaRose TRO Opp. at 9; Beckhelm Decl.,

2

ECF No. 23-2 ¶ 12. Their own admissions doom their case by revealing their indifference to the health and safety of medically vulnerable people.

Defendants' omissions are as telling as their admissions. Although Defendants state that they screen vendors and staff upon entry for their "body temperatures," they ignore the risk posed by asymptomatic staff or vendors who may nevertheless be carriers. Beckhelm Decl. ¶ 16, Farabaugh Decl. ¶ 18. Defendants claim detainees have "daily access to sick calls," but they do not indicate they have increased medical staffing levels to accommodate the heightened demand caused by 85 positive COVID-19 cases, which calls into doubt whether staff can actually see detainees on the same day that they attempt to "access" sick calls. Beckhelm Decl. ¶¶ 11, 18; Farabaugh Decl. ¶ 20. Not everyone with COVID-19 symptoms is being tested, and those who do not meet the requirements are presumably left in their cohorted housing unit. *See* LaRose Decl., ECF No. 26–2, at p. 70 ("mild or no symptoms will not be tested"). Even leaving out the egregious details set forth in Plaintiffs' evidence,[1] the undisputed conditions inside Otay Mesa make it impossible to keep medically vulnerable people safe from COVID-19.

Defendants object to including people 45 and older in the medically vulnerable subclass. However, Dr. Amon's opinion is based directly on CDC statistics that document, as of March 16, 2020, the fact that 21-28% of COVID-19 hospitalizations were for people 45-54 years old, while 5.4-10.4% of ICU admissions were for people within the same age cohort. Both percentages are nearly identical to those of people

---

[1] Not only do Defendants fail to deny many of the details in the declarations, *e.g.* Beckhert Decl. ¶ 14 (not denying that bathrooms are not cleaned between uses or that soap may run out between refills), they cannot object to hearsay evidence on an emergency motion for a temporary restraining order or preliminary injunction. See *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Defendants also admit that visitation poses a danger to detained people and they charge detainees for phone calls to their lawyers. LaRose Decl. ¶¶ 65, 69.

(Footnote continues on next page.)

in the 55-64 age cohort.[2] People aged 45-54 may not be at the same risk of death as older cohorts (Dr. Amon does not contend otherwise), but their hospitalization and ICU admission percentages clearly establish their risk of severe COVID-19 illness.

Defendants also misunderstand the controlling legal standard. To establish a Fifth Amendment violation, Plaintiffs need only show Defendants have placed subclass members at "substantial risk of serious harm" and failed to take reasonable available measures—in this case release—to mitigate that risk. *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). It is no defense to contend there have not yet been any "deaths or intubations" from COVID-19 at Otay Mesa, Gov't TRO Opp. at 2. Defendants' own practices continue to place medically vulnerable people at substantial risk of death or intubation. Their luck at avoiding that outcome so far does not excuse their indifference to the risks of infection. In any event, serious harm can and does occur short of death or intubation. Defendants admit there have already been six COVID-19 related hospitalizations, which necessarily involved serious medical harm. Farabaugh Decl. ¶ 15. At current rates of infection, those six cases may easily become the tip of a much larger iceberg. Even without hospitalization, the symptoms of COVID-19 are severe. Any infection by COVID-19 is a serious medical risk that Defendants have unconscionably failed to prevent.

By the time medically vulnerable people are dead or intubated, it is too late. Defendants ignore both the legal and public health imperatives of squashing COVID-19 infection before people are dead or on life support. Their belated and lackluster response to the pandemic demonstrates their disregard for health and safety.[3]

---

[2] *Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) – United States, February 12-March 16, 2020,* Centers for Disease Control and Prevention https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm, accessed April 28, 2020.

[3] Notably, Defendants belatedly attempted to place certain medically vulnerable people in their own protective cohort. However, their process did not identify Plaintiff Rodriguez Alcantara, rendering it necessarily flawed, and insufficient in any event to protect subclass members in light of Defendants' admitted failures.

Defendants are also incorrect that habeas relief is unavailable to subclass members. Because release is the only relief that will remedy the harm they face, the Court has the authority to issue a classwide writ of habeas corpus. *See Wilson v. Williams*, No. 4:20-cv-00794, ECF No. 22, at 11 (N.D. Ohio Apr. 22, 2020) (finding medically vulnerable subclass's claims for release "suitable for habeas relief"). Courts regularly grant habeas relief to order the release of people from immigration detention when necessary to protect their constitutional rights. *See, e.g.*, *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 1082648 (N.D. Cal. Mar. 6, 2020); *Ramos v. Sessions*, 293 F.Supp.3d 1021, 1030–31 (N.D. Cal. Mar. 13, 2018).

Defendants' attacks on class certification also fail. As to numerosity, Defendants have easy access to the health records and ages of all 649 ICE detainees and wrongly invoke the hearsay rule. Class certification does not require admissible evidence, especially in an emergency when the relevant evidence is in Defendants' control. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004–05 (9th Cir. 2018).[4]

Plaintiffs satisfy the commonality requirement because all members of the subclass face a substantial risk of serious harm or death as a result of Defendants' common practices in Otay Mesa. Rule 23 "does not mandate that every putative class member must share every fact in common." *Hernandez Roman v. Wolf*, No. 5:20-cv-00768, ECF No. 52, at 4 (C.D. Cal. Apr. 23, 2020) (issuing classwide injunction based on risks of COVID-19 for ICE detainees in Adelanto detention center). The fact that "[n]ot everyone is at the same level of risk," Class Cert. Opp. at 10:2, is

---

[4] Defendants mistakenly argue that *Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338 (2011) overturned Ninth Circuit case law providing for a less stringent showing of numerosity in injunctive relief cases. ECF No. 27 at 3. *Dukes* did not involve a dispute about numerosity and could not have overturned Circuit precedent on the issue. *See Aleman Gonzalez v. Barr*, No. 18-16465, 2020 WL 1684034, at *3 (9th Cir. Apr. 7, 2020) (providing that Supreme Court decisions do not overrule circuit precedent unless plainly inconsistent with that precedent). Defendants also ignore post-*Dukes* cases cited by Plaintiffs reaffirming the relaxed standard. *See* ECF 1-3 (citing *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Trust,* 317 F.R.D. 91, 100 (N.D. Cal. 2016)).

irrelevant, because every medically vulnerable person faces substantial risk from the common failure to protect them. *See Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) ("[A]lthough a presently existing risk may ultimately result in different future harm for different inmates … every inmate suffers exactly the same constitutional injury when he is exposed to a single … policy or practice that creates a substantial risk of serious harm.").

Because no statute can authorize continued detention in violation of constitutional rights, *see Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018), the fact that subclass members are detained under different statutory authorities has no relevance to the commonality of their claims, especially when Defendants retain discretion to release anyone regardless of the statute under which they are detained. To the extent that Defendants argue the medically vulnerable subclass lacks commonality because of potential differences in release plans that may be necessary for different persons, "Ninth Circuit case law makes clear that a difference in remedies does not necessarily defeat a showing of commonality." *Ms. L. v. U.S Immigration & Customs Enf't*, 330 F.R.D. 284, 289 (S.D. Cal. 2019) (citing cases).

Defendants are also wrong that this case should be dismissed based on the recently certified nationwide class action in *Fraihat v U.S. Immigration and Customs Enf't*, 2020 WL 1932393 (C.D. Cal Apr. 20, 2020). As Defendants concede, dismissal is only appropriate when two class actions are "identical" to each other. ECF No. 27 at 16. Not only are the proposed subclass here and the *Fraihat* class not identical, the *Fraihat* court only ordered custody redeterminations that may not result in release, not release pursuant to release plans as Plaintiffs seek here. This discretionary remedy cannot address the fast-paced danger unfolding at Otay Mesa.

It is absurd to contend Plaintiffs' motion is moot. First, Plaintiff Rodriguez Alcantara remains in custody, with or without bond. Second, as a matter of law, this case involves an inherently transitory class of medically vulnerable detained persons

that retains live claims regardless of whether any named plaintiff is released, and Plaintiffs have filed a timely motion for class certification that relates back to when the complaint was filed. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011); *Doe v. Wolf*, 424 F. Supp. 3d 1028, 1039 (S.D. Cal. Jan. 14, 2020).

Defendants urge the Court to "allow the process to continue working," Gov't TRO Opp. at 2, but their admissions and omissions make clear it is not working. Over the last month, Otay Mesa has come to host the largest outbreak of any ICE detention facility nationwide. Without this Court's intervention, more people will contract COVID-19, many will become seriously ill, and some may die. For these reasons, the Court is respectfully requested to order immediate release, upon suitable release plans as detailed in the Proposed Order, for all medically vulnerable persons detained at Otay Mesa.

Dated: April 28, 2020                    Respectfully submitted,

                                         ACLU FOUNDATION OF SAN
                                         DIEGO & IMPERIAL COUNTIES

                                         **s/Monika Y. Langarica**

                                         Attorney for Plaintiffs-Petitioners