STRUCK LOVE BOJANOWSKI & ACEDO, PLC
Daniel P. Struck, AZ Bar #012377
*(admitted pro hac vice)*
Rachel Love, AZ Bar #019881
*(admitted pro hac vice)*
Nicholas D. Acedo, AZ Bar #021644
*(admitted pro hac vice)*
Jacob B. Lee, AZ Bar #030371
*(admitted pro hac vice)*
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
jlee@strucklove.com

WITHAM MAHONEY & ABBOTT, LLP
Matt Mahoney, Esq., CA Bar # 211184
401 B Street, Suite 2220
San Diego, CA 92101
Tel.: (619) 407-0505
Fax: (619) 872-0711
mahoney@wmalawfirm.com

Attorneys for Respondent LaRose

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Adrian Rodriguez Alcantara, et al.,<br><br>  Plaintiffs-Petitioners,<br><br>v.<br><br>Gregory J. Archambeault, San Diego Field Office Director, Immigration and Customs Enforcement, et al.,<br><br>  Defendants-Respondents. | NO. 3:20-cv-00756-DMS-AHG<br><br>**RESPONDENT LAROSE'S EMERGENCY EX PARTE MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFF-PETITIONERS' EMERGENCY EX PARTE MOTION FOR SUBCLASS-WIDE TEMPORARY RESTRAINING ORDER**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: TBD<br>Judge:  Honorable Dana M. Sabraw |

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1
I.    Background ................................................................................................... 1
II.   Standard of Review ...................................................................................... 3
III.  The Court Should Reconsider the Temporary Restraining Order ................... 4
      A.   Petitioners Did Not Prove that Respondents Are Likely to Succeed on Their Fifth Amendment Claim ............................................ 4
      B.   At a Minimum, the Court Should Amend the Order and Remove the Declaration Finding a Constitutional Violation ................ 7
IV.  The Court Should Reconsider the Class Certification Order ....................... 12
V.   Conclusion .................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*
   No. C04-02123MJJ, 2007 WL 1239220 (N.D. Cal. Apr. 27, 2007) ................... 11

*Abbott Labs. v. Syntron Bioresearch Inc.*
   No. 98-CV-2359 H (POR), 2000 WL 33967725 (S.D. Cal. Dec. 20, 2000) .......... 3

*Arce v. Douglas*
   793 F.3d 968 (9th Cir. 2015) ................................................................ 9

*Bell v. Wolfish*
   441 U.S. 520 (1979) ........................................................................ 13

*Castro v. Cty. of Los Angeles*
   833 F.3d 1060 (9th Cir. 2015) ................................................... 5, 11, 13

*Chavez v. Plan Benefit Servs., Inc.*
   No. 19-50904, 2020 WL 2046545 (5th Cir. Apr. 29, 2020) ............................ 13

*Dawson v. Asher*
   No. C20-0409JLR-MAT, 2020 WL 1704324 (W.D. Wash. Apr. 8, 2020) ...... 5, 12

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*
   489 U.S. 189 (1989) ........................................................................ 12

*Doe v. McAleenan*
   415 F. Supp. 3d 971 (S.D. Cal. 2019) ..................................................... 8

*Farr v. Paramo*
   No. 16-CV-1279-JLS (MDD), 2018 WL 1156445 (S.D. Cal. Mar. 2, 2018) .... 3, 4

*Fraihat v. U.S. Immigration & Customs Enf't*, No.
   No. EDCV191546JGBSHKX, 2020 WL 1932570 (C.D. Cal.
   Apr. 20, 2020) ........................................................................... 5, 13

*Friends of the Wild Swan v. Weber*
   767 F.3d 936 (9th Cir. 2014) ................................................................ 8

*Gordon v. Cty. of Orange*
   888 F.3d 1118 (9th Cir. 2018) ............................................................... 5

| | **Page** |
|---|---|
| *Greenlight Capital, L.P. v. Apple, Inc.* <br> No. 13 CIV. 900 RJS, 2013 WL 646547 (S.D.N.Y. Feb. 22, 2013) | 8 |
| *Habibi v. Barr* <br> No. 20-CV-00618-BAS-RBB, 2020 WL 1864642 (S.D. Cal. Apr. 14, 2020) | 6, 12 |
| *Hansen Beverage Co. v. Vital Pharm., Inc.* <br> No. 08-CV-1545IEG(POR), 2008 WL 5427601 (S.D. Cal. Dec. 30, 2008) | 11 |
| *Johnson v. Kernan* <br> No. CV 16-7996 SJO (FFM), 2018 WL 5880280 (C.D. Cal. Aug. 9, 2018) | 9 |
| *Kingsley v. Hendrickson* <br> 135 S. Ct. 2466 (2015) | 14 |
| *Kuzinich v. Cty. of Santa Clara* <br> 689 F.2d 1345 (9th Cir. 1982) | 10 |
| *Lake v. Wells Fargo Bank, N.A.* <br> No. CV 19-9334 FMO (JCX), 2019 WL 8355842 (C.D. Cal. Nov. 12, 2019) | 7 |
| *Lopez-Marroquin v. Barr* <br> No. 20-CV-682-LAB-MDD, 2020 WL 1905341 (S.D. Cal. Apr. 17, 2020) | 6 |
| *Mitchell v. Garcia* <br> No. CV 17-3136 DMG (FFM), 2017 WL 10900576 (C.D. Cal. May 16, 2017) | 9 |
| *Navajo Nation v. Confederated Tribes* <br> 331 F.3d 1041 (9th Cir. 2003) | 4 |
| *Nichols v. Deutsche Bank Nat. Tr. Co.* <br> No. CIV. 07CV2039-L NLS, 2007 WL 4181111 (S.D. Cal. Nov. 21, 2007) | 7 |
| *O'Neal v. Johnson* <br> No. 2:14-CV-2374 DB PS, 2017 WL 2730977 (E.D. Cal. June 26, 2017) | 3 |
| *Primacy Eng'g, Inc. v. ITE, Inc.* <br> No. 318CV01781 GPCMDD, 2019 WL 2059668 (S.D. Cal. May 9, 2019) | 3 |

**Page**

*Quijada v. Wolf*
   No. 3:20-cv-00744-WQH-AGS, slip op. at 8–10 (S.D. Cal. May 4, 2020) ........... 6

*Rampp v. Ocwen Fin. Corp.*
   No. 11-CV-3017-BTM-NLS, 2014 WL 4912930 n.2 (S.D. Cal.
   Sept. 29, 2014) ....................................................................................................... 10

*S.A. v. Trump*
   No. 18-CV-03539-LB, 2019 WL 990680 n.59 (N.D. Cal. Mar. 1, 2019) ............ 10

*Sch. Dist. No. 1J v. ACandS, Inc.*
   5 F.3d 1255 (9th Cir. 1993) ..................................................................................... 3

*Senate of State of Cal. v. Mosbacher*
   968 F.2d 974 (9th Cir. 1992) .................................................................................. 10

*Starbuck v. City and Cty. of San Francisco*
   556 F.2d 450 (9th Cir. 1977) .................................................................................. 10

*Swanson v. Holder*
   No. 10-CV-2363-IEG NLS, 2012 WL 243314 (S.D. Cal. Jan. 24, 2012) ............ 11

*Textile Unlimited, Inc. v. A.BMH and Co., Inc.*
   240 F.3d 781 (9th Cir. 2001) ................................................................................... 7

*U.S. Philips Corp. v. KBC Bank N.V.*
   590 F.3d 1091 (9th Cir. 2010) ................................................................................. 7

*Univ. of Texas v. Camenisch*
   451 U.S. 390 (1981) ........................................................................................... 8, 10

*Wahoo Int'l, Inc. v. Phix Doctor, Inc.*
   No. 13CV1395-GPC BLM, 2014 WL 2106482 (S.D. Cal. May 20, 2014) ........... 7

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ............................................................................... 12, 13, 14

*Zepeda v. United States I.N.S.*
   753 F.2d 719 (9th Cir. 1983) ................................................................................... 9

**Rules**

Fed. R. Civ. P. 12..................................................................................................9

Fed. R. Civ. P. 12(c) .............................................................................................9

Fed. R. Civ. P. 26..................................................................................................9

Fed. R. Civ. P. 38..................................................................................................9

Fed. R. Civ. P. 39..................................................................................................9

Fed. R. Civ. P. 50(a), (b).......................................................................................9

Fed. R. Civ. P. 56(c) .............................................................................................9

Fed. R. Civ. P. 65(a)(2).......................................................................................10

Respondent Warden C. LaRose moves this Court to reconsider its Orders granting the Temporary Restraining Order and provisionally certifying the Otay Mesa Medically Vulnerable Subclass.[1] The Court's ruling that Petitioners are likely to succeed on their due-process claim failed to consider the many measures that Respondents have taken to protect the members of the Subclass, which preclude a finding that their continued detention amounts to punishment. And when considered in conjunction with new evidence that Subclass members—those that are at higher risk of serious illness—are protected by those measures, Petitioners' constitutional claim cannot succeed. At a minimum, the Court's final adjudication that Respondents are violating the Subclass members' constitutional rights is not only premature and unnecessary to issue the Temporary Restraining Order, but it is legally defective and unsupported. It should be removed from the Order. Finally, the Court's Class Certification Order is flawed because it finds commonality when there are no common questions that can resolve on a classwide basis each Subclass member's claim. Thus, the Subclass cannot be provisionally certified.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Background.

Plaintiffs-Petitioners filed their Complaint – Class Action and Petition for Writ of Habeas Corpus, Emergency Ex Parte Motion for Subclass-Wide Emergency Temporary Restraining Order, and Motion for Class Certification on April 21, 2020. (Dkt. 1, 1-3, 2.) The Emergency Ex Parte Temporary Restraining Order sought the immediate release of all members of the Otay Mesa Medically Vulnerable Subclass ("Subclass"), which Petitioners defined as all Otay Mesa Detention Center ("OMDC") ICE detainees who are 45 years or older, pregnant, or

---

[1] There still has been no service of process, and therefore no personal jurisdiction over Respondent LaRose with respect to the non-habeas claims. In filing this Motion, Respondent LaRose does not waive any available defenses.

have a qualifying medical condition as defined by Centers for Disease Control and Prevention ("CDC") Guidelines.  (Dkt. 2.)

On Thursday, April 23, the Court ordered Respondents to respond to Petitioners' Motions by Wednesday, April 29.  However, the next day, on Friday, April 24, the Court accelerated the response deadline to noon on Monday, April 27.  (Dkt. 13.)  Respondents and their counsel worked tirelessly over the next 72 hours, gathering as much information as possible under the circumstances.  Based on information received from ICE Health Services Corps ("IHSC"), which provides medical care at OMDC, Warden LaRose opined that, as of April 26, there were eight ICE detainees at OMDC who met CDC Guidelines for being at heightened risk of serious illness or death from COVID-19 (65 years or older or a CDC qualifying medical condition), and who were placed in a protective cohort (R Pod).  (Dkt. 26-1, ¶ 39.)  Respondents filed their Responses on April 27, as directed, and provided as much information as possible in the short turn-around time afforded (most of which occurred over the weekend).  (Dkt. 23, 26, 27.)

The following day, on April 28 at 1:30 p.m., the Court held a hearing on the Motions.  (Dkt. 14.) After the hearing, Warden LaRose received additional information from IHSC that had been generated as a result of the *Fraihat* litigation, specifically, a list of those detainees who qualified under the broader *Fraihat* subclass definition.  Warden LaRose promptly informed the Court, filing a Supplement on April 29 and advising that "51-69 ICE detainees may be within the CDC guidelines as being at higher risk for severe illness due to COVID-19."  (Dkt. 34.)  The Court set a hearing for the following morning, April 29.  (Dkt. 35.)  After noting that the new information altered the outcome of its ruling, the Court orally granted, in part, Petitioners' Motions.

The Court's April 30, 2020 written Order provisionally certified the Subclass, but limited it to ICE detainees who are 60 years or older, or have a CDC qualifying medical condition.  (Dkt. 38, ¶ 1.)  The Court also entered a temporary

restraining order ("TRO") that required Respondents to "immediately review subclass members for release, and release all subclass members suitable for release in the discretion of Defendants after considering the subclass members' health, public safety and mandatory detention requirements, with appropriate conditions to protect the public, and the health, safety and well being of each subclass member." (*Id*., ¶ 4.a.)  It further required Respondents to provide Petitioners' counsel a list of all Subclass members by Monday, May 4, at 10:30 a.m. (*Id*., ¶ 4.b.)  The Order also includes the following declaration:

> The Court HEREBY DECLARES that current conditions of confinement for Otay Mesa Medically Vulnerable subclass members held at the Otay Mesa Detention Center are unconstitutional under the Fifth Amendment because the conditions of their confinement place subclass members at substantial risk of serious illness or death.

(*Id*., ¶ 3.)  On May 1, 2020, the Court issued an Order setting forth its reasoning. (Dkt. 41.)

## II. Standard of Review.

A party may apply for reconsideration "[w]henever any motion or any application or petition for any order or other relief had been made to any judge and has been refused in whole or in part." CivLR 7.1(i)(1). "Generally, reconsideration of a prior order is 'appropriate if the district court … committed clear error or the initial decision was manifestly unjust.'" *Farr v. Paramo*, No. 16-CV-1279-JLS (MDD), 2018 WL 1156445, at *1 (S.D. Cal. Mar. 2, 2018) (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). "Reconsideration may also be appropriate when a court 'has misunderstood a party's argument or made an error of apprehension,'" *Primacy Eng'g, Inc. v. ITE, Inc.*, No. 318CV01781 GPCMDD, 2019 WL 2059668, at *3 (S.D. Cal. May 9, 2019) (quoting *O'Neal v. Johnson*, No. 2:14-CV-2374 DB PS, 2017 WL 2730977, at *1 (E.D. Cal. June 26, 2017)), or because of "new facts," *Abbott Labs. v. Syntron Bioresearch Inc.*, No. 98-CV-2359 H (POR), 2000 WL 33967725, at *2 (S.D. Cal. Dec. 20, 2000).

Granting reconsideration, though an extraordinary remedy, "is committed to the sound discretion of the court." *Farr*, 2018 WL 1156445, at *1 (quoting *Navajo Nation v. Confederated Tribes*, 331 F.3d 1041, 1046 (9th Cir. 2003)).

Respondent LaRose seeks reconsideration because he believes the Court committed clear error and/or overlooked certain evidence and argument in granting the TRO and certifying the Subclass. In addition, Respondent LaRose seeks reconsideration based on evidence that the Court did not have before it at the time it ruled. Specifically, the Court was not aware of the specific housing situation of the Subclass members or mitigation efforts directed toward them. When Respondent LaRose received the expanded list of possible Subclass members following the April 28 hearing, he promptly informed the Court so that it had that information before issuing a ruling. At the April 30 hearing, the Court inquired as to these detainees' whereabouts and conditions, which counsel did not have readily available but offered to provide. (*See* Dkt. 41 at 3 [noting that counsel "did not know where those detainees [the new list of Subclass members] were being housed, i.e., whether they were in a protective cohort or in one of the other ten available housing units, all of which, save one (J Pod), had at least one confirmed case of COVID-19."].) The Court granted the TRO and provisionally certified the Subclass at that hearing without the additional information. Respondent LaRose provides that requested information now because it is relevant to the Court's Orders and undermines their foundation. With a complete record, those Orders should be reconsidered and vacated.

**III.   The Court Should Reconsider the Temporary Restraining Order.**

    **A.   Petitioners Did Not Prove that Respondents Are Likely to Succeed on Their Fifth Amendment Claim.**

The Court found that the continued confinement of Subclass members at OMDC during the COVID-19 pandemic amounts to punishment in violation of the Fifth Amendment—essentially finding that, unless Respondents completely

eliminate any risk of COVID-19, their detention is unconstitutional. (Dkt. 41 at 15–17.) This is not what the Fifth Amendment requires. *See Dawson v. Asher*, No. C20-0409JLR-MAT, 2020 WL 1704324, at *12 (W.D. Wash. Apr. 8, 2020) ("[U]nder the Fifth Amendment, Respondents are not required to eliminate any risk to Petitioners. Instead, Respondents are required to provide for their 'reasonable safety.'"). Respondents must provide for the "reasonable safety" of detainees in their care and take "objectively" reasonable measures to abate any risk. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018); *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2015); *Fraihat v. U.S. Immigration & Customs Enf't*, No. EDCV191546JGBSHKX, 2020 WL 1932570, at *22 (C.D. Cal. Apr. 20, 2020).

It does not appear that the Court considered the evidence put forward by Respondents regarding the reasonable measures they have taken to abate the risk to Subclass members. This includes: working with CoreCivic corporate headquarters, CoreCivic's government partners, and local health authorities to ensure that Respondents' practices are up to date; attempting to identify and separate detainees at heightened risk; screening staff, new detainees, and facility visitors; suspending new detainee admissions; restricting detainee movement within the facility; requiring staff to use personal protective equipment ("PPE"); restricting detainee participation in Voluntary Work Program assignments; providing medical care; providing face masks, soap, and cleaning and disinfecting supplies to detainees; educating detainees on the symptoms of COVID-19 and ways to combat it, including through the use of face masks, social distancing, and hand washing, by posting educational signs, and by conducting regular Town Hall Meetings in each housing unit; enhancing the facility's already robust sanitation practices and adapting meal service, laundry service, commissary service, library service, and legal visitation procedures. (Dkt. 26-1, ¶¶ 17–133, 146–150, 153–161.) Respondents have also continued to update their screening procedures and detainee

education about COVID-19 in response to the evolving CDC guidelines. (Supp. Dec. of LaRose, ¶ 22.) The dayrooms in OMDC's housing pods are sufficiently large to allow detainees to socially distance themselves from each other, especially where the facility is currently operating at less than 48% of its design capacity—a fact the Court did not address. (*Id.*, ¶¶ 11, 23–60.)

The Court failed to consider whether these measures were reasonable, or find that Respondents acted in an objectively unreasonable manner in implementing them. Instead, the Court improperly equated *any* exposure to COVID-19 at OMDC as unreasonable, which puts its ruling at odds with at least three other District Judges who have denied release requests by OMDC detainees. *See Quijada v. Wolf*, No. 3:20-cv-00744-WQH-AGS, slip op. at 8–10 (S.D. Cal. May 4, 2020), Dkt. 19 (denying temporary restraining order seeking release from OMDC based on COVID-19 response, finding that a detainee's "mere presence in OMDC is insufficient to demonstrate a likelihood that he will suffer severe illness or death as a result of continued detention"); *Lopez-Marroquin v. Barr*, No. 20-CV-682-LAB-MDD, 2020 WL 1905341, at *5 (S.D. Cal. Apr. 17, 2020) (denying habeas petition where petitioner "failed to demonstrate … that Respondent's actions are 'objectively unreasonable,' which is the required standard"); *Habibi v. Barr*, No. 20-CV-00618-BAS-RBB, 2020 WL 1864642, at *4–6 (S.D. Cal. Apr. 14, 2020) (denying temporary restraining order seeking release from OMDC based on COVID-19 response, based in part on "the adequacy of the measures that the Government has taken to abate the spread of the virus and provide for detainees' reasonable safety at OMDC").

The Court also placed undue emphasis on the location in which each Subclass member is housed, expressing concern that Warden LaRose was not able to identify (at the April 30 hearing) the precise location of those detainees at potentially heightened risk. Detainees within the Subclass are housed in the following pods: A, C-1, C-2, D, F, J, K, L, M, N, P, and R pods. (Supp. Dec. of

LaRose, ¶¶ 28–32.)[2] Each of these pods is currently on cohort/quarantine status (and has been since April 3, 2020), and all facility-wide measures to abate the risk of COVID-19 at OMDC have been implemented in each pod. (*Id.*, ¶¶ 21, 25–60.) This further insulates the Subclass from a substantial risk of serious harm.

The Court should reconsider its analysis, particularly in light of this evidence, and find that Petitioners have not established a likelihood of success on the merits of their due-process claim.

### B. At a Minimum, the Court Should Amend the Order and Remove the Declaration Finding a Constitutional Violation.

A temporary restraining order "is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Nichols v. Deutsche Bank Nat. Tr. Co.*, No. CIV. 07CV2039-L NLS, 2007 WL 4181111, at *2 (S.D. Cal. Nov. 21, 2007) (quoting *Textile Unlimited, Inc. v. A.BMH and Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001)). In fact, the purpose of a temporary restraining order "is to preserve the status quo before a preliminary injunction hearing may be held," and "[t]he purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered." *Lake v. Wells Fargo Bank, N.A.*, No. CV 19-9334 FMO (JCX), 2019 WL 8355842, at *1 (C.D. Cal. Nov. 12, 2019) (citing *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010), and *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, No. 13CV1395-GPC BLM, 2014 WL 2106482, at *2 (S.D. Cal. May 20, 2014)).

Because a temporary restraining order does not adjudicate the merits of a claim, a petitioner need only show, and a court need only find, that the petitioner is

---

[2] After the initial group of heightened-risk detainees was placed in R Pod, no new detainees were transferred into the pod, including after Warden LaRose learned of the additional detainees identified by IHSC, as doing so would result in cross-exposure of detainees and defeat the purpose and efficacy of the protective cohort. (Supp. Dec. of LaRose, ¶ 32.) As a result of these measures, there have been no COVID-19-positive detainees in R Pod. (*Id.*, ¶ 27.)

1 *likely* to succeed on the merits, not that they *have* succeeded. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014); *see also Doe v. McAleenan*, 415 F. Supp. 3d 971, 977 (S.D. Cal. 2019) ("While Petitioners carry the burden of demonstrating likelihood of success, they are not required to prove their case in full at this stage but only such portions that enable them to obtain the injunctive relief they seek."); *Greenlight Capital, L.P. v. Apple, Inc.*, No. 13 CIV. 900 RJS, 2013 WL 646547, at *4 (S.D.N.Y. Feb. 22, 2013) ("[T]he Court need not determine that Greenlight and Gralnick *have* succeeded on the merits to issue an injunction. It need only decide that they *likely may*.") (emphasis in original).

Indeed, in their Emergency Ex Parte Motion for Temporary Restraining Order, Petitioners sought to show only a likelihood of success. (Dkt. 2-1 at 30–36.) And the Court's Order supporting the TRO finds only that "Plaintiffs have demonstrated a likelihood of success on their due process claim." (Dkt. 41 at 17; *see also id.* at 16:1–18 [collecting similar cases that employed the likelihood-of-success standard].) In fact, the Court recognized that "Plaintiffs … are not required to prove their case in full at this stage but only such portions that enable them to obtain the injunctive relief they seek," and that "it is improper to advance a decision on the merits to the class certification stage." (*Id.* at 7, 15, citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).)

Despite this, the Court declared a constitutional violation: "current conditions of confinement for Otay Mesa Medically Vulnerable subclass members held at the Otay Mesa Detention Center are unconstitutional under the Fifth Amendment." (Dkt. 41 at 17.) This was unnecessary and improper. As just discussed, a temporary restraining order is not an adjudication on the merits; the standard for securing a temporary restraining order is not enough to find a constitutional violation; and the Court found only a *likelihood* of success on the merits. The Court's declaration goes beyond this, and effectively grants Petitioners the final relief they seek in their Complaint: a declaratory judgment. (*See* Dkt. 1, Prayer for

1 Relief, ¶ e.) The Court should amend its Order and remove its declaration of a constitutional violation.

The declaration is also an improper adjudication of the merits at this stage of the proceedings, in violation of Respondents' right to due process. First, no Respondents have even been served. Thus, the Court lacks jurisdiction to issue a final declaratory judgment that they have violated the Subclass members' Fifth Amendment rights. *See Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."); *see also Johnson v. Kernan*, No. CV 16-7996 SJO (FFM), 2018 WL 5880280, at *1 (C.D. Cal. Aug. 9, 2018) ("Because process has not been served on defendants, this Court does not have jurisdiction over any defendant."); *Mitchell v. Garcia*, No. CV 17-3136 DMG (FFM), 2017 WL 10900576, at *1 (C.D. Cal. May 16, 2017) (same).

Second, even if they had been served, Respondents have not had a full and fair opportunity to litigate the merits of Petitioners' Fifth Amendment claims. Among other procedural protections, they have not been given adequate time to investigate the allegations and file a responsive pleading, *see* Fed. R. Civ. P. 12, to conduct discovery, *see* Fed. R. Civ. P. 26, or to present evidence and argument in defense of the claims on the pleadings, on summary judgment, or at a trial, *see* Fed. R. Civ. P. 12(c), 38, 39, 50(a), (b), and 56(c). Respondents did not even have an opportunity to depose Plaintiffs' *twelve* declarants or otherwise test their evidence. Respondents had approximately 72 hours (over a weekend) to mount a defense to the TRO, with no notice that a final adjudication on the merits was at stake. The lack of notice and due process is precisely why a temporary restraining order cannot be a substitute for a final adjudication on the merits of a claim. *See Arce v. Douglas*, 793 F.3d 968, 976 (9th Cir. 2015) (holding it is "generally inappropriate for a court to issue … a final judgment on the merits of a claim at the preliminary

injunction stage, because it is unlikely that the merits of a claim will be fully ventilated at the early stage of a litigation at which a preliminary injunction is normally addressed"); *Senate of State of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992) ("In general, that kind of judgment on the merits in the guise of preliminary relief is a highly inappropriate result."); *S.A. v. Trump*, No. 18-CV-03539-LB, 2019 WL 990680, at *15 n.59 (N.D. Cal. Mar. 1, 2019) (noting that *Camenisch* held "it is inappropriate to enter a final judgment (such as a summary judgment) at the preliminary-injunction stage" because the findings and conclusions of law are precisely that: "preliminary") (internal citation omitted); *see also Camenisch*, 451 U.S. at 395 ("[T]he parties should normally receive clear and unambiguous notice [of the court's intent to consolidate the trial and the hearing] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.") (citation omitted) (alteration in original); Fed. R. Civ. P. 65(a)(2) (court must "order the trial of the action on the merits to be advanced and consolidated with the hearing of the application").[3]

Third, the Court's declaration of a constitutional violation undermines the basic principle that temporary restraining orders, like preliminary injunctions, are tentative rulings that have no preclusive effect on the claims and issues in future litigation. *See Kuzinich v. Cty. of Santa Clara*, 689 F.2d 1345, 1350–51 (9th Cir. 1982) ("[I]ssues litigated in a preliminary injunction action ... do not form a basis for collateral estoppel."); *Starbuck v. City and Cty. of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) ("[G]ranting a preliminary injunction ... is not a final judgment sufficient for collateral estoppel purposes."); *Rampp v. Ocwen Fin. Corp.*, No. 11-CV-3017-BTM-NLS, 2014 WL 4912930, at *3 n.2 (S.D. Cal. Sept. 29, 2014) ("The Court rejects Plaintiff's argument that Defendants' arguments are foreclosed by *res judicata*, because the Court's determinations as to Plaintiff's

---

[3] By contrast, it appears Petitioners had approximately six weeks to prepare their Motions and declarations.

motion for preliminary injunctive relief are not final judgments on the merits."); *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, No. C04-02123MJJ, 2007 WL 1239220, at *13 (N.D. Cal. Apr. 27, 2007) ("Ninth Circuit precedent … supports the conclusion that preliminary injunction decisions should generally be considered tentative.").

The Court's declaration, however, makes this less clear. *See Swanson v. Holder*, No. 10-CV-2363-IEG NLS, 2012 WL 243314, at *4 (S.D. Cal. Jan. 24, 2012) (noting "there is a serious question[] as to whether a determination made in a preliminary injunction proceeding is a 'final judgment on the merits' for the purposes of issue preclusion"). Although the Ninth Circuit has not specifically addressed the issue, some circuit courts have recognized that such factual findings can have preclusive effect if "sufficiently firm" to obviate the need for re-litigation. *See Hansen Beverage Co. v. Vital Pharm., Inc.*, No. 08-CV-1545IEG(POR), 2008 WL 5427601, at *2–3 (S.D. Cal. Dec. 30, 2008). Indeed, the Court's declaration has already caused confusion. For instance, the petitioners (United States Marshals Service detainees at OMDC) in a similar action, *Alvarez v. LaRose*, No. 3:20-cv-00782-DMS-AHG (S.D. Cal.), have taken the position that the declaration has preclusive effect as to liability in that case, even though their claims are based on different facts.

Finally, the Court's declaration that the conditions at OMDC are violating the Subclass members' Fifth Amendment due process rights is not supported by its finding that "the conditions of their confinement place subclass members at substantial risk of serious illness or death." (Dkt. 38, ¶ 3.) As discussed above, Petitioners must prove more to establish a Fifth Amendment claim. *See Castro*, 833 F.3d at 1071 (elements include an intentional decision, unreasonable measures to abate the risk, and causation). Thus, the finding purportedly supporting the Court's declaration is deficient.

The Court's analysis also does not support the declaration. Indeed, the only "condition" the Court considered was the general risk of a Subclass member being exposed to COVID-19. Because of that alleged risk, the Court concluded that "the continued confinement of the … Subclass is excessive …." (Dkt. 41 at 17.) In other words, the Court found that the detention itself amounted to punishment because of the general risk of infection; therefore, the only way to guarantee their safety is to release them. But the Fifth Amendment does not require Respondents to eliminate any risk of COVID-19 infection; it requires only that they take reasonable measures to mitigate the risk so that detainees are "reasonably safe" during their detention. *Dawson*, 2020 WL 1704324 at *12 (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)); *see also Habibi*, 2020 WL 1864642 at *6. The Court does not address this critical component of Plaintiffs' due process claim. Thus, there is no support for the final declaration.

## IV. The Court Should Reconsider the Class Certification Order.

Despite recognizing that commonality requires a "common question" that is capable of generating a common answer "apt to drive the resolution of the litigation," (Dkt. 41 at 8, quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)), the Court never identified a common question that can and will accomplish this. Instead, it noted that Subclass members had a "common feature"—"all subclass members are confined in Otay Mesa, and all are at high risk for severe illness or death from COVID-19."[4] (*Id.* at 8–9.) This is not enough. The "mere claim … that [Subclass members] … have suffered a [constitutional] injury … gives no cause to believe that all their claims can productively be litigated at once.

---

[4] The Court stated that Respondents "do not dispute [that] these assertions" satisfy the commonality requirement (Dkt. 41 at 8), but that is incorrect. Respondents do not dispute that the Subclass is *defined* as including detainees who are detained at OMDC and who have a qualifying medical condition according to CDC Guidelines. But Respondents *do* dispute that Subclass members are at heightened risk of contracting COVID-19 merely by the fact that they are detained at OMDC and have a qualifying medical condition.

LaRose's Motion for Reconsideration        12        3:20-cv-00756-DMS-AHG

1  Their claims must depend upon a common contention … that it is capable of
2  classwide resolution—which means that determination of its truth or falsity will
3  resolve an issue that is central to the validity of each one of the claims in one
4  stroke." *Wal-Mart*, 564 U.S. at 350.

5  That cannot be done here. To resolve Petitioners' constitutional claim, they
6  must show that: (1) Respondents made an intentional decision with respect to the
7  conditions of detention at OMDC; (2) those conditions put Petitioners at substantial
8  risk of serious harm; (3) Respondents did not take reasonable available measures to
9  abate that risk; and (4) by not taking such measures, Respondents caused
10 Petitioners' injuries. *See Castro*, 833 F.3d at 1071; *see also Fraihat*, 2020 WL
11 1932570, at *22 (applying this standard). These elements require Petitioners to
12 show that Respondents were aware of the medical vulnerabilities of each subclass
13 member, and require an investigation into the measures taken to protect each one
14 individually. The Court's commonality analysis, however, does not consider these
15 individualized determinations. *See Chavez v. Plan Benefit Servs., Inc.*, No. 19-
16 50904, 2020 WL 2046545, at *2 (5th Cir. Apr. 29, 2020) ("[A] district court …
17 must explain and apply the substantive law governing the plaintiffs' claims to the
18 relevant facts and defenses, articulating why the issues are fit for classwide
19 resolution. The court should respond to the defendants' legitimate protests of
20 individualized issues that could preclude class treatment.").

21 Instead, the Court jumped past these individual queries and certified based on
22 the common contention: "whether the continued confinement or conditions of
23 confinement of subclass members in Otay Mesa, in light of the spread of COVID-
24 19 throughout the facility, amounts to punishment." (Dkt. 41 at 9, citing *Bell v.
25 Wolfish*, 441 U.S. 520, 535 (1979).) Not only is this inadequate under *Wal-Mart*,
26 564 U.S. at 360 ("This does not mean merely that they have all suffered a violation
27 of the same provision of law."), but, as just discussed, whether the conditions
28 amount to punishment requires a case-by-case analysis. *See Castro*, 833 F.3d at

1071 (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)) (determining whether conduct is "objectively unreasonable" "will necessarily turn on the facts and circumstances of each particular case.") (internal quotation marks omitted). Particularly here, where the Court has recognized that Petitioners' claim is "not based on any specific policy or practice" (Dkt. 41 at 7), their Fifth Amendment claim cannot be answered "yes" or "no" as to all Subclass members' claim in one stroke. *See also Wal-Mart*, 564 U.S. at 352 (holding that, in resolving a Title VII claim where "the crux of the inquiry is the reason for a particular employment decision," there must be "some glue holding the alleged reasons for all those decisions together").[5]

## V. Conclusion.

For these reasons, the Court should vacate the Temporary Restraining Order and the Class-Certification Order (Dkt. 38, 41).

Dated:  May 4, 2020      STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By s/ Daniel P. Struck
Daniel P. Struck
Rachel Love
Nicholas D. Acedo
Jacob B. Lee
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
jlee@strucklove.com

Matt Mahoney, Esq.
WITHAM MAHONEY & ABBOTT, LLP
mahoney@wmalawfirm.com

Attorneys for Respondent LaRose

---

[5] Respondents maintain that Alcantara is not typical of the class because he is not 60 years or older and his medical records (which Respondents did attach) establish that he does not have a qualifying medical condition under CDC Guidelines. (See Dkt. 25; Supp. Dec. of Dr. Ivens.) *See also* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed on May 4, 2020); https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/hiv.html (last accessed on May 4, 2020). However, Alcantara has already been released pursuant to the TRO.