**MONIKA Y. LANGARICA** (SBN 308518)(mlangarica@aclusandiego.org)
**JONATHAN MARKOVITZ** (SBN 301767)(jmarkovitz@aclusandiego.org)
**KIMBERLY GRANO** (SBN 328298)(kgrano@aclusandiego.org)
**BARDIS VAKILI** (SBN 247783)(bvakili@aclusandiego.org)
**DAVID LOY** (SBN 229235)(davidloy@aclusandiego.org)
**ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES**
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4493

Counsel for Plaintiff-Petitioners

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Adrian RODRIGUEZ ALCANTARA, *et al.*,<br><br>Plaintiff-Petitioners,<br><br>v.<br><br>Gregory J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement, *et al.*<br><br>Defendant-Respondents. | Case No. 20cv756 DMS (AHG)<br><br>**PLAINTIFF-PETITIONERS' POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION TO MODIFY MAY 4 PROTECTIVE ORDER AND OPPOSITION TO DEFENDANT-RESPONDENTS' EX PARTE APPLICATION FOR CONFIRMATION OF PROTECTIVE ORDER** |

Plaintiff-Petitioners ("Plaintiffs") submit this application to modify the Protective Order ("PO"), ECF No. 47, previously entered following Defendant-Respondents' ("Defendants") *ex parte* motion, which was entered at almost the same time Plaintiffs opposed it. Plaintiffs also oppose Defendants' ex parte application for confirmation of the protective order. ECF No. 51. This application is supported by good cause, as the existing protective order (1) inhibits cooperation among the parties in securing the prompt release of subclass members and Plaintiffs' ability to represent subclass members in developing and executing appropriate release plans, and (2)

broadly shields from public scrutiny information in which the public has a strong interest. The relevant privacy interests can be protected through a more limited order requiring that personal identifying information ("PII") be kept confidential and copies of the document itself not be shared. Although Plaintiffs filed a partial opposition to the PO on similar grounds, it appears the Court may have granted the PO before considering Plaintiffs' arguments, understandably in light of the imminence of Defendants' May 4 production at the time. Plaintiffs now seek the Court's consideration of their position on modifying the PO.

*First*, the existing PO inhibits Plaintiffs from representing subclass members in obtaining their prompt release pursuant to this Court's orders. For instance, in its current form, the PO does not create an exception for subclass members to provide informed consent for their counsel to share their inclusion on the list, so that counsel may then in turn communicate with potential sponsors, family members, County health officials, or other community partners for purposes of preparing release plans. Instead, the only people who are privy to the information in the May 4 disclosure are counsel, including immigration counsel (PO ¶ 3), their employees, and "technical personnel" involved in "preparation for trial," (PO ¶ 7), though they would also be bound to secrecy by the PO. Coordinating release plans for subclass members requires communication outside this limited subset of people.

Indeed, the Court's April 30, 2020 Order requires Defendants to immediately release subclass members in compliance with public health guidelines. ECF No. 38. Its May 4, 2020 Order instructs class counsel and Defendants to meet and confer regarding "sponsorship issues discussed during the status conference." ECF No. 50. At the May 4, 2020 status conference, Defendants represented that coordinating the release of subclass members has been time-intensive. Defendants' May 4, 2020 spreadsheet indicates that they have not identified sponsors for at least 13 subclass members recommended for release. Class counsel for Plaintiffs seek to assist in these efforts and to ensure safe release pursuant to the Court's orders, but the PO inhibits

them from doing so. To facilitate the safe release of subclass members as expeditiously as possible, class counsel must be able to identify locations where subclass members can self-quarantine after release, communicate with points-of-contact, and work with potential sponsors or others to develop and execute release plans. Under the terms of the existing PO, it appears that class counsel is not permitted to share any information contained in Defendants' May 4, 2020 spreadsheet with such individuals or organizations. For instance, neither class counsel, nor individual subclass members' immigration attorneys, appear permitted to disclose to the local migrant shelter that an individual on the May 4 list has been recommended for release in order to formalize a release plan for that individual with the shelter. The same would be true for subsequent lists if Defendants' ex parte application to confirm the protective order is granted without modification.

    The Court's May 4, 2020 order further requires the parties to meet and confer about "the detainees identified for continued detention." ECF No. 50. Class counsel will need to investigate whether some of these individuals can be released on appropriate conditions, taking into account the location to where they would be released and with whom they would be staying. This would require class counsel to communicate with the individual's point-of-contact. This appears to be forbidden under the existing PO.

    *Second*, Plaintiffs agree that personally identifying information contained in the May 4, 2020 disclosures ordered by this Court should not be widely disseminated to protect the privacy interests of individuals listed in those disclosures. However, they object to shielding the entirety of those disclosures as a blanket matter, particularly where it inhibits their ability to secure the release of subclass members.

    Defendants make only vague assertions of "law enforcement sensitive" information, none of which appear implicated by the May 4, 2020 spreadsheet. Even if such information were at issue, Defendants can assert narrowly tailored privileges for specific information. This would allow the Court and the parties to make

3

determinations on the applicability of any privilege or the appropriateness of additional protection in the context of specific aspects of the disclosure. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1148–49 (9th Cir. 2005) (rejecting boilerplate or blanket assertions of privilege); *Al Otro Lado v. Wolf*, No. 17 CV 2366-BAS(KSC), 2020 WL 2097598, at *2 (S.D. Cal. May 1, 2020) ("Blanket assertions of the privilege are insufficient. Rather, the agency must provide precise and certain reasons for preserving the confidentiality of designated material.") (citations and quotation marks omitted); *S.E.C. v. Gowrish*, No. C 09-05883 SI, 2010 WL 1929498, at *1 (N.D. Cal. May 12, 2010) ("Before the government may assert the [law enforcement] privilege, 'the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.'"); *In re Motion to Unseal Court Records*, No. MC 18-00477 JMS-RLP, 2019 WL 1495248, at *2 (D. Haw. Apr. 4, 2019) (in ordering unsealing of documents, finding that "redactions will be made only where essential to preserve higher values").

A more narrowly tailored PO will also ensure that the right of access to judicial proceedings is upheld. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). Only when "special circumstances justify secrecy" should that right be limited. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). Plaintiffs agree that personally identifying information of individuals contained in the disclosures ordered by the Court should be treated as confidential and not filed publicly. This narrowly tailored protection will allow the public to still consider and scrutinize the issues presented by those disclosures, should the parties choose to reference them in any filing or argument. *Id.* at 1068 (citing *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981)). As an alternative to shielding the disclosures in their entirety from public scrutiny, Plaintiffs propose the Court permit the parties to publicly file or reference the disclosures with limited redactions to conceal the PII of the individuals referenced therein. This proposal strikes a proper balance between the

"competing interests of the public and the party who seeks to keep certain judicial records secret." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). This narrow tailoring parallels the procedure laid out by Ninth Circuit rules and this Court's practice. *See, e.g.*, Ninth Cir. Rule 27-13(e) (requiring "the least restrictive scope of sealing"). This approach would make as limited an incursion into the right of the public to view judicial records as possible while protecting individual privacy interests.

Furthermore, the requested modification of the PO would not cause Defendants to violate the Privacy Act. The Privacy Act does not prevent Defendants from disclosing information pursuant to a court order. 5 U.S.C. § 552a(b)(11). Even if there were an interest in additional protection, the redaction of personal identifying information addresses the concerns of the Privacy Act. 5 U.S.C. § 552a(a)(4) (defining "record" as item "that contains [an individual's] name, or the identifying number, symbol, or other identifying particular assigned to the individual").

The protection of private and medically sensitive information can be achieved through a more narrowly tailored protective order that treats personally identifying information – such as names, A-numbers, addresses, and contact information – as confidential, but allows class counsel to consult with organizations and individuals whose participation will be crucial in promptly securing release plans for subclass members.

Accordingly, Plaintiffs propose that only the PII in the spreadsheet be considered confidential in the absence of specific assertions of privilege, and that subclass members are given the opportunity to waive confidentiality as to their own PII through informed consent,[1] so that class counsel can assist in developing release or mitigation plans for them. Alternatively, Plaintiffs propose modifying the existing

---

[1] Because of the safety concerns and practical difficulties involved in visiting subclass members at Otay Mesa, class counsel requests such consent not be required in writing. The Rules of Professional Conduct do not require written consent, only informed consent. Calif. Rule of Prof. Conduct 1.6(a) (requiring only "informed consent" to disclosure, not written consent).

5

protective order to permit, contingent on individual subclass members' informed consent, disclosure of the PII of individual subclass members listed on the May 4, 2020 spreadsheet and any further disclosures to points of contact, organizations, and other individuals who may assist in release planning or receiving released individuals.

Modifications to the PO as proposed by Plaintiffs would facilitate cooperation between the parties while protecting the parties' interests in shielding private information, and thus constitute good cause. ECF No. 47; *cf. Foltz v. State Farm Mutual Auto Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (in considering motion to modify blanket protective order, placing burden on defendant to show good cause for why documents merited continued protection because defendant "ha[d] not asserted, much less shown, specific harm or prejudice that it expects will arise from disclosure of any particular documents").

## CONCLUSION

For good cause, Plaintiff-Petitioners respectfully request that the Court modify the existing protective order to facilitate class counsel's participation in the development and execution of release plans and to protect the public's right of access to the courts.

Respectfully submitted,

DATED: May 5, 2020

ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES

**s/ Bardis Vakili**
BARDIS VAKILI

Attorney for Plaintiff-Petitioners