**MONIKA Y. LANGARICA** (SBN 308518)(mlangarica@aclusandiego.org)
**JONATHAN MARKOVITZ** (SBN 301767)(jmarkovitz@aclusandiego.org)
**KIMBERLY GRANO** (SBN 328298)(kgrano@aclusandiego.org)
**BARDIS VAKILI** (SBN 247783)(bvakili@aclusandiego.org)
**DAVID LOY** (SBN 229235)(davidloy@aclusandiego.org)
**ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES**
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4493

Counsel for Plaintiff-Petitioners

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Adrian RODRIGUEZ ALCANTARA, et al., <br><br> Plaintiff-Petitioners, <br><br> v. <br><br> GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement, et al., <br><br> Defendant-Respondents. | Case No. 20cv756 DMS (AHG) <br><br> **PLAINTIFF-PETITIONERS' OPPOSITION TO DEFENDANT LAROSE'S EX PARTE MOTION FOR RECONSIDERATION** <br><br> DATE: TBD <br> TIME: TBD <br> COURTROOM: TBD <br> JUDGE: HON. DANA M. SABRAW |

Defendant LaRose's Motion for Reconsideration improperly seeks to relitigate matters already considered by this Court. The Court should deny the motion because it raises no new evidence and nothing submitted changes the Court's reasoned analysis and ruling.

**I.     LEGAL STANDARD**

A motion for reconsideration must set forth "what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." CivLR 7.1(i)(1); *see also Kerr v. Am. Home Mortg. Servicing Inc.*, No. 10-CV-1612 BEN, 2010 WL 3154551, at *1 (S.D. Cal. Aug. 9, 2010).

After the Court has granted a temporary restraining order ("TRO"), "[a]mendment by the court upon motion for reconsideration should be used sparingly

1

and is only appropriate in exceptional circumstances." *Renard v. San Diego Unified Port Dist.*, No. 06-CV-2665 H (BLM), 2007 WL 9724156, at *1 (S.D. Cal. Mar. 20, 2007). "On a motion to reconsider" a TRO, "relief should be granted only "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or [its] initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Singleton v. Kernan*, No. 16-CV-02462-BAS-NLS, 2017 WL 4922849, at *2 (S.D. Cal. Oct. 31, 2017). Defendant LaRose meets none of those stringent requirements.

## II.   ARGUMENT
### A. Defendant Larose's submission is not "newly discovered evidence."

Two months after the Governor of California shut down the state, one month after the first case of COVID-19 was confirmed at Otay Mesa, two weeks after being sued for his failure to protect detainees, and several days after admitting that he previously had no idea there were more than eight medically vulnerable people among the detainees he is supposed to protect, Defendant LaRose now argues that the Court should consider supposedly "new" evidence. However, he offers nothing he could not have submitted earlier if he had exercised due diligence to know the material facts already in existence: that he had more than eight medically vulnerable individuals in his custody, strewn throughout the facility he oversees. Instead, he improperly seeks to reargue the TRO based on previously available facts.

"A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court has already ruled." *Singleton*, 2017 WL 4922849, at *2. Defendant LaRose does not show "new or different facts and circumstances" that exist now but "which did not exist" when the Court granted the TRO. CivLR 7.1(i)(1). He offers no justifiable excuse for not presenting evidence previously in existence. A motion for reconsideration cannot "be used as a means to argue new facts or issues that inexcusably were not presented to the court in the

matter previously decided." *Bhatnagar v. Surrendra Overseas Ltd.* 52 F.3d 1220, 1231 (3rd Cir. 1995). A party is not entitled "to take a 'second bite at the apple'" by advancing "arguments that properly should have been presented in an earlier proceeding." *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014).

Indeed, the only explanation Defendant LaRose can offer for his belated submission is that he only learned for the first time, the day before the Court issued the TRO, that he actually had dozens – now confirmed to be over 130 – medically vulnerable people in his custody in Otay Mesa, where for the last month he has presided over the nation's worst COVID-19 outbreak in ICE detention. Apart from ignoring his own responsibility for the policy failures that, quite predictably,[1] created the current crisis in Otay Mesa, the incoherence of his argument should tell the Court all it needs to know about his inability to protect subclass members. Plainly put, the previous failure to submit evidence regarding the treatment of medically vulnerable people cannot be justified by Defendant LaRose's ignorance of the very existence of over 100 medically vulnerable people in his custody, or where they were detained within the facility. "The fact that" Defendant LaRose did "not have such a list [of detainees with medical vulnerabilities] at the ready, six weeks Governor Newsom shut down the entire state and one week after this lawsuit was filed," not to mention one month after COVID-19 was first confirmed in the facility, "speaks volumes about where the safety of the people at" Otay Mesa "falls on [his] list of priorities." *Zepeda Rivas v. Jennings*, No. 20 CV 02731-VC, ECF No. 53 (N.D. Cal. Apr. 29, 2020) (issuing classwide TRO to reduce the ICE detention population in Mesa Verde Detention Facility and Yuba County Jail in light of COVID-19 concerns). The Court should not excuse Defendant LaRose's failure to present evidence based on his failure to identify, much less protect, vulnerable detained people entrusted to his care.

---

[1] *See* ECF No. 2-2, Declaration of Monika Y. Langarica, Exhibit A, Allen and Rich Letter.

Indeed, in listing his supposedly "new" evidence, Defendant LaRose simply runs down a vague list of "practices" he has already presented to the Court, and by citing his previous submission he admits they are not new at all.[2] LaRose Recon. Mtn., ECF No. 49 at 4:14-27 (citing ECF No. 26-1). Defendant LaRose cannot couch previously available evidence as new evidence simply because "[i]t does not appear" to him that the Court considered it, *id.* at 5:12-14, when the evidence of these practices was robustly argued to the Court. Indeed, the record makes clear the Court did not "fail[] to consider whether these measures were reasonable," LaRose Recon. Mtn. at 6:6-10. The Court explicitly considered them in its Order and necessarily found them unreasonable. *See* Order, ECF No. 41 at 3:19-24, 5:4-18. The fact that Defendant LaRose disagrees with the Court's ruling does not warrant the "extraordinary remedy" of reconsideration. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F. 3d 877, 890 (9th Cir. 2000).

Defendant LaRose concedes that the supplemental Declaration of Dr. Ivens was not "submitted at the time Respondent LaRose filed his Oppositions to the Motions" because it was made "in response" to the Court's TRO. ECF No. 49-1, Declaration of Daniel P. Struck, ¶ 9. Defendant LaRose was "on notice every step of the way" that Plaintiff-Petitioners ("Plaintiffs") contended Mr. Rodriguez Alcantara qualified as medically vulnerable. *Weisgram v. Marley Co.,* 528 U.S. 440, 456 (2000). Indeed, Defendants submitted a declaration from Dr. Ivens *before* the Court granted the TRO. ECF No. 26-3. Defendants "made no attempt to add" to Dr. Ivens's declaration until after they lost. *Weisgram,* 528 U.S. at 456. A "litigant's failure to

---

[2] As examples of this vagueness, Defendant LaRose asserts that he "*attempt[ed]* to identify and separate detainees at heightened risk,", and that he engaged in "screening" of people entering the facility and "providing medical care" without describing the nature of that screening or the specifics of the care provided. LaRose Recon. Mtn at 5:14-27. As Plaintiffs have argued, "screening" individuals entering the building based on self-reporting and temperature checks is wholly insufficient when contagious COVID-19 carriers are often asymptomatic and do not always know they are carriers. ECF No. 32, April 28 Declaration Dr. Joseph J. Amon ("Amon Decl.") at ¶ 10.

4

buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk." *Id.* (quoting *Lujan v. National Wildlife Federation,* 497 U.S. 871, 897 (1990)).

"The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'" *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). The stringent standard for reconsideration does not allow Defendant LaRose to submit a supplemental declaration "in response" to the Court's order only after he lost.[3]

### B. In any event, Defendant LaRose's submissions do not alter the Court's TRO or class certification analyses.

Even if this Court were to accept the previously available evidence as new, the evidence is not of such "a strongly convincing nature to induce the court to reverse its prior decision." *Singleton*, 2017 WL 4922849, at *2.

The evidence does not change anything with regard to the factors relevant to injunctive relief: likelihood of success on the merits, likelihood of irreparable harm, balance of the equities, and public interest.[4] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Defendant LaRose only argues that the evidence impacts likelihood of success. Even then, he is wrong.

Defendant LaRose's declaration does not, and could not possibly, assert what happens in housing units at all times, including, for example, whether soap is always available, or whether staff consistently use personal protective equipment. *See* ECF No. 49-3, May 04 Declaration of Warden LaRose ("LaRose Decl."). Such may

---

[3] Defendant LaRose does not even feign effort at arguing the existence of new evidence to support reconsideration of class certification, merely regurgitating meritless arguments it already made and the Court already rejected. LaRose Recon. Mtn at 12:14-14:10.

[4] If the Court deems it appropriate, the TRO may be amended to indicate that Plaintiffs have shown a likelihood of success on the merits, consistent with the standard for granting a TRO.

sometimes be available, but "sometimes" is not enough to stop COVID-19 from endangering or killing medically vulnerable people. The record demonstrates such critical resources are often *not* available. *See, e.g.,* ECF No. 1-5, Declaration of Adrian Rodriguez Alcantara, ¶ 11. Defendant LaRose's declaration does not say otherwise. Indeed, Defendant LaRose has failed to properly account for even static facts, including the capacity of housing units in his facility. LaRose Decl. fn. 2. As this Court has already noted, Defendants "admit[] that detainees are not social distancing from each other, which is confirmed in the photos of J pod." Order, ECF No. 41 at 5:17-18. Those same photographs evince both failure to enforce social distancing and lack of use of personal protective equipment. ECF No. 26-1, LaRose Decl., Attachment 12, at 97-98.

Additionally, while Defendant LaRose's declaration mentions some developments surrounding protective measures in housing units, it fails to mention when those changes took effect, a crucial detail for determining the adequacy of his supposed protection of subclass members. *See, e.g.,* LaRose Decl., ¶ 45. In any event, the facility's failure to abate the harm posed by COVID-19 resulted in the current outbreak. There is simply no set of circumstances available now that sufficiently mitigates the risk of harm to medically vulnerable people, particularly in light of the current rate of infection and the facility's dangerous cohorting policy, which severely threatens medically vulnerable people and which Defendant LaRose has reconfirmed. *Id.* at ¶ 32; Amon Decl. ¶ 7. This goes to the ultimate crux of the issue in this case: even if the facility were to take every available measure short of release to protect against transmission, it would not be enough to reasonably protect the health and safety of medically vulnerable subclass members in its custody.[5]

---

[5] Sufficient population reduction to allow for social distancing may reduce the risk for people without medical vulnerabilities who remain in custody, but the time it will take to achieve such a result will place vulnerable subclass members at too high a risk of serious illness or death in the meantime. In any event, any orderly
(Footnote continues on next page.)

6

Despite Defendant LaRose's protestations, the Court was correctly "concern[ed] that Warden LaRose was not able to identify," at the hearing to discuss the protection of medically vulnerable Otay Mesa detainees, "the precise location of those detainees at potentially heightened risk." LaRose Recon. Mtn. at 12:24-27. Such emphasis was not "undue" but a recognition that Defendant LaRose cannot possibly protect subclass members if he has no idea how many there are, who they are, or where in his facility they are held.

Other cases cited by Defendant LaRose did not involve individuals on Defendants' list of medically vulnerable people and so are not relevant to the Court's TRO protecting those people. LaRose Recon. Mtn at 6:5-23. While all people in OMDC are at unreasonable risk of contracting COVID-19, the Court's TRO only concerned the urgent need for release of medically vulnerable people whose risk of severe illness from COVID-19 is heightened. Indeed, those very decisions explicitly declined to address the harm to medically vulnerable people. *See e.g., Habibi v. Barr*, No. 20-CV-00618-BAS-RBB, 2020 WL 1864642, at *4 (S.D. Cal. Apr. 14, 2020) ("Petitioner has not identified (and the Government is not aware of) any medical conditions that put him at higher risk of severe illness or death as a result of contracting COVID-19."); *Lopez-Marroquin v. Barr*, No. 20CV682-LAB (MDD), 2020 WL 1905341, at *5 (S.D. Cal. Apr. 17, 2020) (noting that applicant was "without underlying health problems").

Nor does the motion offer any new argument or evidence to change the Court's provisional class certification order. Instead, Defendant LaRose raises a meritless argument that his complete ignorance of the fact that he had more than 100 medically vulnerable detainees in his custody – a fact common to the entire subclass – somehow cuts against commonality. LaRose Recon. Mtn. at 13:11-14. Even more puzzling,

---

reduction in population must begin with release of the most medically vulnerable, which animated the emergency relief Plaintiffs sought on their behalf.

7

Defendant LaRose attempts to dispute the indisputable, arguing that being "detained at OMDC," where there is a rampant outbreak of COVID-19, and "hav[ing] a qualifying medical condition" under "CDC Guidelines" does not place detained people "at heightened risk of contracting COVID-19." LaRose Recon. Mtn. at 12:25-28 n.4. There can be no greater endorsement for the Court's ruling than the assertion that trapping medically vulnerable people in a locked facility where more than 100 people have tested positive for COVID-19 and hundreds more have been exposed does not place them at heightened risk, a position that is clearly common and applicable to all subclass members.

### III.    CONCLUSION

For the foregoing reasons, this Court should deny Defendant LaRose's Motion for Reconsideration of Order Granting Plaintiff-Petitioners' Emergency Ex Parte Motion for Subclass-Wide Temporary Restraining Order.

Dated: May 05, 2020                              Respectfully submitted,

                                                 ACLU FOUNDATION OF SAN
                                                 DIEGO & IMPERIAL COUNTIES
                                                 **s/Monika Y. Langarica**

                                                 Attorney for Plaintiff-Petitioners