ANDREW R. HADEN
Acting United States Attorney
KATHERINE L. PARKER, SBN 335097
Chief, Civil Division
SAMUEL W. BETTWY, SBN 94918
Assistant U.S. Attorney
COLIN M. MCDONALD, SBN 286561
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7634/7125/9144 / 619-546-7751 (fax)

Attorneys for the Federal Defendants-Respondents (Respondents)

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN RODRIGUEZ ALCANTARA, et al.,<br><br>        Plaintiffs-Petitioners,<br>    v.<br><br>GREGORY J. ARCHAMBEAULT, San Diego Filed Office Director, ICE; et al.,<br><br>        Defendants-Respondents. | Case No. 20cv0756 DMS AHG<br><br>FEDERAL RESPONDENTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO SUBSTITUTE NEW CLASS REPRESENTATIVE (ECF No. 222)<br><br>Date: August 18, 2023<br>Time: 1:30 p.m.<br>Courtroom: 13A, Carter/Keep<br>Hon. Dana M. Sabraw |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND ....................................................................................2

      A.  THE PETITION ........................................................................2

      B.  TRO AND PROVISIONAL CERTIFICATION OF SUBCLASS ...........3

      C.  DENIAL OF PRELIMINARY INJUNCTION .................................3

      D.  PARTIAL DISMISSAL OF CLAIMS AND PARTIES.........................4

III.   THE PROPOSED CLASS REPRESENTATIVE ...........................................5

IV.    ANALYSIS ...........................................................................................9

      A.  RULE 23 REQUIREMENTS...........................................................9

      B.  MENDOZA'S CLAIMS ARE NOT TYPICAL OF THE
          SUBCLASS .................................................................................9

      C.  MENDOZA WOULD BE AN INADEQUATE CLASS
          REPRESENTATIVE...................................................................12

V.     CONCLUSION....................................................................................13

# TABLE OF AUTHORITIES

CASES

*Amchem Prod., Inc. v. Windsor,*
   521 U.S. 591 (1997)..................................................................... 12

*County of Riverside v. McLaughlin,*
   500 U.S. 44 (1991)......................................................................... 4

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) .............................................. 10, 12

*Est. of Cruz-Sanchez v. United States,*
   No. 17-CV-0569-AJB-NLS, 2022 WL 1056106
   (S.D. Cal. Apr. 7, 2022) ................................................................ 6

*Garland v. Aleman Gonzalez,*
   142 S. Ct. 2057 (2022)................................................................... 4

*Gary Plastic Packaging Corp. v. Merrill Lynch,*
   903 F.2d 176 (2d Cir. 1990) ...................................................... 10

*Gen. Tel. Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982)....................................................................... 9

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .................................................. 12

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) ............................................... 1, 10

*Hoexter v. Simmons,*
   140 F.R.D. 416 (D. Ariz. 1991) ............................................... 10

*Lockhart v. United States,*
   577 U.S. 347 (2016)..................................................................... 12

*Martinez v. CoreCivic,*
   No. CV 20-1309 WJ/CG, 2021 WL 2550319
   (D.N.M. June 22, 2021) .............................................................. 11

*Mendoza-Linares v. Garland,*
   51 F.4th 1146 (9th Cir. 2022) ..................................................... 5

*Microsoft Corp. v. Baker,*
   582 U.S. 23 (2017)....................................................................... 10

*Rodriguez v. W. Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ..................................................... 12

*Sosna v. Iowa,*
   419 U.S. 393 (1975)....................................................................... 4

ii

*United States v. Singh*,
    525 F. Supp. 3d 543 (M.D. Pa. Mar. 11, 2021) ..................................................... 11

*United States v. Williams*,
    No. 5:01-CR-00012-KDB, 2021 WL 966028
    (W.D.N.C.Mar. 15, 2021) ..................................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................... 9, 12

STATUTES

8 U.S.C. § 1252(f)(1) ...................................................................................................... 4

RULES

Fed. R. Civ. P. 23(a)(3)................................................................................................... 9

Fed. R. Civ. P. 23(a)(4)................................................................................................. 12

# I

## INTRODUCTION

The provisional subclass' sole proposed class representative, 37-year-old Hever Alberto Mendoza Linares, cannot adequately represent any remaining subclass members. Given the advent of the vaccine, the only remaining medically vulnerable detainees might be those for whom the vaccine is either not feasible or not available, but Mendoza does not fall into those categories. He is fully vaccinated against COVID-19, having received three separate COVID-19 vaccinations—including a booster just six months ago—from the Otay Mesa Detention Center (OMDC). Mendoza therefore cannot claim that his "medical conditions . . . place [him] at heightened risk of severe illness or death from COVID-19 as determined by CDC guidelines." ECF No. 41 at 13. If he intends a claim that OMDC has been deliberately indifferent to his medical needs, that is a new claim outside the scope of the allegations and remaining claims in the petition. No specific allegations of medical neglect were made in the petition. In effect, Mendoza has only a highly individualized claim of medical neglect for alleged failure to address his acid reflux.

Furthermore, as Mendoza's voluminous medical records show, he has repeatedly refused medical care and treatment at OMDC, including refusing COVID testing to avoid quarantine in the event he tested positive. The one time he contracted COVID-19—after being vaccinated and days after he ended a "hunger strike" against all medical advice—he quickly recovered with no complications. This "unique background and factual situation [will] require him to prepare to meet defenses that are not typical" of any remaining subclass members. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Finally, Mendoza cannot adequately represent a subclass that he himself endangered. By refusing COVID testing to avoid finding out if he was positive, he may have been responsible for introducing COVID to the very people he now seeks to represent. The Court should deny the subclass' motion to substitute Mendoza as representative of the provisional subclass.

//

//

1

## II

## BACKGROUND

A.    THE PETITION

On April 21, 2020, in the immediate aftermath of the onset of COVID-19, four Petitioners brought this action, claiming that their continued detention at OMDC violated their Fifth Amendment right to substantive due process. ECF No. 1 at ¶¶ 165-67. Petitioners sought declaratory and injunctive relief to remedy the alleged constitutional violation, demanding the immediate release of medically vulnerable detainees and the reduction of occupancy at OMDC to levels that "permit adequate social distancing, maintenance of hygiene, and provision of medical care, on the ground that continued detention of class members under current conditions violates the Due Process Clause of the Fifth Amendment." *Id.*, Prayer for Relief. Petitioners alleged that, "[f]or no legitimate reason or justification, Defendants are subjecting Plaintiffs to punishment or unreasonable heightened risk of contracting COVID-19, for which there is no vaccine, reliable treatment, or cure." *Id.* at ¶ 167; *see also id.* at ¶ 6 ("there is no specific treatment, vaccine, or cure for COVID-19, and no one is immune") and ¶ 57 ("There is no vaccine against COVID-19, nor is there any known medication to prevent or treat infection.").

Petitioners simultaneously requested that the Court provisionally certify—among other classes—an "Otay Mesa Medically Vulnerable Subclass," which they defined as "All civil immigration detainees incarcerated at the Otay Mesa Detention Center who are age 45 years or older or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19." ECF No. 1-3 at 3.

//

//

//

//

//

//

2

### B.    TRO AND PROVISIONAL CERTIFICATION OF SUBCLASS

On April 30, 2020, the Court granted Petitioners' emergency motion for a temporary restraining order and provisionally certified the following subclass (narrowing Petitioners' request):

> All civil immigration detainees incarcerated at the Otay Mesa Detention Center who are age 60 or over or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19 as determined by CDC guidelines.

ECF No. 38 at 2. As part of the TRO and provisional certification, the Court required Defendants to, among other things, "immediately review subclass members for release, and release all subclass members suitable for release in the discretion of Defendants after considering the subclass members' health, public safety, and mandatory detention requirements . . . ." ECF No. 38 at 2.

On May 1, 2020, the Court issued a subsequent order expanding on its reasoning for granting the TRO and the provisional class certification. The Court ruled that Plaintiff Alcantara—and only Alcantara—could represent the subclass, satisfying typicality, and that, because there were approximately 51 to 69 detainees at Otay Mesa who qualified as subclass members, numerosity was satisfied. ECF No. 41 at 8:7–9, 11:2–4. Over the following two weeks, Defendants released numerous subclass members and fully complied with all other conditions in the TRO. *See, e.g.*, ECF No. 70-3, ¶¶ 22–25.

### C.    DENIAL OF PRELIMINARY INJUNCTION

On May 11, 2020, Petitioners requested that the Court convert the TRO into a preliminary injunction. ECF No. 60. Petitioners acknowledged that the subclass had been provisionally certified for purposes of the TRO and requested the Court to expand the subclass definition. *Id*. at 22–25.

On May 26, 2020, the Court denied the motion, stating that it was adequately assured "that the constitutional rights of subclass members are now being protected," and noting that Defendants had "taken additional measures to mitigate the spread of the virus at

3

OMDC, which lessen[ed] the need for court intervention." ECF No. 77 at 7-8.[1] The Court found that the subclass was unlikely to succeed on its constitutional claim and that subclass members who remained detained were unlikely to suffer irreparable injury given the change in circumstances (e.g., decrease in capacity and infection rates) and additional measures employed at OMDC. ECF No. 77. The Court also denied Petitioners' request to expand the subclass definition. *Id*. at 2 n.2.

### D.    PARTIAL DISMISSAL OF CLAIMS AND PARTIES

On June 13, 2022, the Supreme Court ruled that 8 U.S.C. § 1252(f)(1) prohibits lower courts from entering injunctions "that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions," which include the statutes that authorize the detention of persons at OMDC. *Garland v. Aleman Gonzalez,* 142 S. Ct. 2057, 2065 (2022).

On November 11, 2022, Respondents moved for judgment on the pleadings, observing that *Aleman Gonzalez* barred Petitioners' request for class-wide release from detention and that all four Petitioners' claims were moot because they had been released from custody and their removal proceedings had been resolved. ECF No. 201. The Court granted the motion in part and denied it in part. ECF No. 221. Under *Aleman Gonzalez*, the Court found that Petitioners' request for class-wide release from detention was "resolved" and "no longer at issue." *Id.* at 4 n.4. The Court further granted the motion with respect to the individual Petitioners' claims, finding their claims to be moot. ECF No. 221 at 6. The Court denied the motion with respect to the subclass, ruling that it continued to exist as a separate entity beyond termination of the class representative's claim. *Id.* at 5-6 (citing *Sosna v. Iowa*, 419 U.S. 393 (1975) and *County of Riverside v. McLaughlin*, 500 U.S. 44 1991)). The Court then ordered the subclass to file a motion to substitute a new class representative.

---

[1] The Court found that Respondents had released ninety-two of 134 class members, that OMDC was operating at thirty-eight percent capacity, that all but four remaining class members were housed in units without any positive COVID cases, and that the remaining four class members were housed in a single-cell arrangement. ECF No. 77 at 1, 7.

4

# III

## THE PROPOSED CLASS REPRESENTATIVE

On June 5, 2023, the subclass moved to substitute Hever Alberto Mendoza Linares (Mendoza) as the new class representative.[2] ECF No. 222. The motion, however, omits an important fact about Mendoza—he is fully vaccinated against COVID-19. Indeed, the OMDC medical clinic has provided Mendoza three separate COVID vaccinations: an initial one-dose Johnson & Johnson vaccination on August 6, 2021, a Moderna booster on December 15, 2021, and another Moderna booster on January 10, 2023—just about six months ago. Ex. 917.[3] Additionally, Mendoza has already had COVID-19 and recovered from it. As further outlined below, in August 2022—about one week after completing a hunger strike—Mendoza tested positive for COVID-19. Ex. 976. By August 17, 2022, Mendoza was asymptomatic and had completed his time in quarantine. *Id.* At that time, Mendoza "report[ed] feeling fine with no further symptoms" and had no "fever or respiratory symptoms." Ex. 975–76.

Overlooking these significant facts, the subclass claims that Mendoza is "medically vulnerable within the meaning of the Class definition because he is a former smoker and has hemoptysis and difficulty breathing brought on by severe acid reflux." ECF No. 222 at 2. However, the CDC guidelines do not indicate that acid reflux constitutes a high-risk COVID condition. *See generally* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

---

[2] Mendoza has been in immigration custody since February 10, 2020 (though, contrary to his declaration, not always at OMDC). On that date, Mendoza "jumped the border fence near Tecate, California and was immediately apprehended by U.S. authorities." *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1148 (9th Cir. 2022). Since then, a series of petitions and appeals have kept Mendoza in the United States in immigration custody. Most recently, on October 24, 2022, the Ninth Circuit dismissed Mendoza's petition for review of an Immigration Judge's finding that he was ineligible for asylum. *Mendoza-Linares*, 51 F.4th 1146. On July 5, 2023, the Ninth Circuit denied Mendoza's petition for rehearing en banc. *Mendoza-Linares v. Garland*, No. 20-71582, 2023 WL 4341452 (9th Cir. July 5, 2023).

[3] Mendoza's OMDC medical records are being separately filed under seal. Citations to those records refer to the bates numbers inserted on the bottom right corner of the records (e.g., Ex. 917 = MENDOZA-MR-000917).

precautions/people-with-medical-conditions.html (updated May 11, 2023). In any event, while Mendoza claims that his acid reflux has not been treated during his detention, his medical records show that he has been extensively evaluated and treated for acid reflux. [*See, e.g.*, Exs. 1850-53 (hospital records), 2016-2028 (hospital referrals from to 1/18/22 to 3/24/23).] It appears that he disagrees with the medicine prescribed by the GI specialist. [*See* Ex. 1289 ("GI specialist recommended lansoprazole 30mg BID; medication received 05/20/2023. Patient has refused medication daily.").[4]

Beyond acid reflux, Mendoza claims he is medically vulnerable because he is a former smoker.[5] In his declaration, he claims he "smoked cigarettes for approximately 10 years before becoming incarcerated." ECF No. 222-1 at 2. The extent of Mendoza's prior smoking is unclear. For instance, on February 14, 2020—before the onset of COVID—Mendoza reported that he "use[d] to smoke 2-3 cigarettes per day but has now quit." Ex. 1829. Then, by July 21, 2020—after the CDC indicated smokers "might" be at an increased risk from COVID—Mendoza claimed to have previously smoked 8-10 cigarettes per day. Ex. 1474. Regardless of that discrepancy,[6] according to multiple x-rays and auscultations, his lungs and lung function are normal. Exs. 340 (April 13, 2021: "Pulmonary: CTAB[7] with no adventitious lung sounds"); 769 (July 29, 2022: "Pulmonary: CTAB with no adventitious

---

[4] In the event Mendoza claims that alleged failure of the OMDC medical clinic is leading to lung problems, that further demonstrates the individualized nature of his claims.

[5] Being a "former smoker" was added to the high-risk categories in October 2020. *Compare* https://web.archive.org/web/20200625180132/https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (June 25, 2020 CDC update; smoking "might" pose an increased risk), *with* https://web.archive.org/web/20201015222807/https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Oct. 6, 2020 CDC update; smoking moved to a high-risk category). Accordingly, Mendoza would not have been identified as a class member when the Court provisionally certified the subclass in April 2020.

[6] Even with the higher number, Mendoza would fall into a "light smoker" category. *See* https://www.cdc.gov/pcd/issues/2015/14_0547.htm ("very light smoker" ≤ 5 cigarettes per day; "light smoker" 6–16 cpd; "heavy smoker" >16 cpd).

[7] "CTAB" means "Lungs Clear to Auscultation Bilaterally." *See Est. of Cruz-Sanchez v. United States*, No. 17-CV-0569-AJB, 2022 WL 1056106, at *3 (S.D. Cal. Apr. 7, 2022).

lung sounds"); 976 (August 17, 2022: "Pulmonary: CTAB with no adventitious lung sounds"); 1452 (July 28, 2020: "LUNGS: normal, clear to auscultation bilaterally, no wheezes, rales, rhonchi"); 1464 (July 24, 2020: "LUNGS: normal, good air movement"); 1476 ("LUNGS: normal, clear to auscultation bilaterally"); 1477 ("Patient has normal pulmonary exam"); 1849 (x-ray finding: "There is no pulmonary consolidation").

In July 2022, Mendoza went on a "hunger strike" to protest discipline he received at OMDC. Ex. 1 at 769. That lasted for about ten days, until July 29, 2022. *Id.* at 769–70. As mentioned above, about one week later, on August 6, 2022, Mendoza tested positive for COVID-19. *Id.* at 976. By August 17, 2022, Mendoza "report[ed] feeling fine with no further symptoms" and had no "fever or respiratory symptoms." *Id.* at 975–76.

Mendoza has received significant medical attention at OMDC. During the course of his time in immigration custody, Mendoza has been seen at the OMDC medical clinic over 300 times and about seven times at the UC San Diego Health clinic in Hillcrest. *See generally* Medical Records.

Mendoza has also repeatedly refused to accept medical services. *See, e.g.,* Exs. 682–716 (series of "refusal to accept medical treatment" forms). For instance:

- On November 8, 2020, Mendoza "demand[ed] to see a provider today but refused to be seen by the provider on duty." Ex. 86.
- On November 13, 2020, Mendoza "came to medical clinic for sick call and refused services." Ex. 83.
- On December 19, 2020, Mendoza "refused to take his medications." Ex. 71.
- On January 28, 2021, Mendoza "was offered a limited oral evaluation to determine if there was a specific area bothering him or causing bleeding, and patient refused. Patient then said to return him to his housing unit if we weren't going to do the cleaning for him, and stood up out of the dental chair." Ex. 150.

7

- On March 11, 2021, Mendoza "refused to be seen. Pt. stated that: 'I don't want to be seen by you.'" Ex. 57.

- On March 27, 2022, Mendoza "refused to have RN perform a more detailed assessment and told nurse to go away." Ex. 503.

- On April 16, 2022, Mendoza "refused [a] sick call" and "refused to come to clinic to sign refusal form." Ex. 840.

- On May 12, 2022, Mendoza "refused appointment to be seen for follow-up of throat pain and poor appetite" and "refused to sign the medical refusal form." Ex. 821.

- On May 17, 2022, Mendoza "walked out of the appointment without being physically examined"; at the same appointment, Mendoza was informed that his symptoms would not improve if he "continue[d] to refuse his medication." Ex. 808–09.

- On May 25, 2022, Mendoza "refused appointment for annual health appraisal" and "refused to sign medical refusal form." Ex. 807.

- On May 26, 2022, Mendoza "refused 2nd attempt appointment for annual health appraisal." Ex. 806.

- On June 8, 2022, Mendoza "came to medical and refused third attempt for annual health appraisal." Ex. 801.

- In July 2022, Mendoza refused to eat, declaring a "hunger strike" for what he claimed was unfair treatment. Ex. 785. During his strike, he refused physical exams or attempts to take his vitals. *Id.*

- On July 23, 2022, after having skipped 10 meals, Mendoza "refused to have baseline labs drawn and . . . refused to move to be housed in the medical unit for observation." Ex. 789. The hunger strike continued until about July 29, 2022. Ex. 769–770.

- On March 17, 2023, Mendoza "adamantly refused to sign refusal form as he did not wish to be put into quarantine if he was positive for COVID or the flu." Ex. 1235.

8

- On March 20, 2023, Mendoza refused to be tested for COVID, stating "I don't want to do it because if it's positive I don't want to quarantine." Ex. 1232.

- On March 27, 2023, Mendoza refused a COVID test without explanation. Ex. 1237.

- On March 29, 2023, despite a fever, cough, dizziness, and body aches, Mendoza refused to be tested for COVID, "because he does not want to be quarantined and he wants to stay in his housing unit without restrictions." Ex. 1228–29.

- On April 2, 2023, Mendoza refused a COVID test on the basis that he didn't want to find out and be quarantined. Ex. 1227.

- On April 19, 2023, Mendoza refused medication for his acid reflux, desiring a different medication. Ex. 1224.

- On May 30, 2023, Mendoza again refused medication for his acid reflux. Ex. 1289.

- On June 10, 2023, Mendoza "refused to come to the clinic for sick call and refused to sign refusal." Ex. 2041.

- On June 22, 2023, Mendoza refused a medical evaluation. Ex. 2056.

IV

ANALYSIS

A.   RULE 23 REQUIREMENTS

"[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). To that end, a proffered class representative must: (1) have claims "typical" of the class, and (2) be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)–(4). Mendoza does not meet either prong.

9

### B.    MENDOZA'S CLAIMS ARE NOT TYPICAL OF THE SUBCLASS

To demonstrate typicality, the subclass must show that Mendoza's claims are typical of the class. *See* Fed. R. Civ. P. 23(a)(3). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon*, 976 F.2d at 508 (citation omitted).

Significantly, in *Hanon*, the Ninth Circuit joined several other circuits in holding that a "named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 180 (2d Cir. 1990[8])). In *Hanon*, that meant a proposed class representative did not meet Rule 23(a)'s typicality requirement where his "unique background and factual situation [would] require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class." *Id.* at 508 (citing *Hoexter v. Simmons*, 140 F.R.D. 416, 422–23 (D. Ariz. 1991) (named plaintiffs may not serve as class representatives because their prior litigation experience as plaintiffs was so extensive it would inevitably subject them to unique defenses concerning their reliance on the market's integrity in purchasing stock)); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (under *Hanon*, reversing and remanding for district court to consider whether unique defenses prevented proposed class representatives from satisfying Rule 23(a)'s typicality requirement).

In this case, Mendoza cannot satisfy Rule 23's typicality requirement. As discussed above, the nature of his claim appears to be medical neglect, which does not relate to any allegations or claims of the subclass. His unique circumstances—including his lengthy

---

[8] Abrogated on other grounds by *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017).

history of rejecting medical care at OMDC and refusal to be tested for COVID-19—present clear and unique defenses that will predominate his attention in resulting litigation. *See Hanon*, 976 F.2d at 508. Moreover, Mendoza is fully vaccinated against COVID-19—and caught and recovered from it—so he cannot persuasively claim he faces a heightened risk of severe illness or death from the virus.

Just as the claims of the predecessor subclass representatives became moot when they were released from custody and their removal proceedings were resolved, Mendoza's claims are moot because of the availability of the COVID-19 vaccine, which he has received three times. *See Martinez v. CoreCivic*, No. CV 20-1309 WJ/CG, 2021 WL 2550319, at *8 (D.N.M. June 22, 2021) (the availability of the "vaccine must smother all attempts by prisoners or pre-trial detainees to request COVID-19-related relief based upon the theory that the risk of infection violates the constitution"); *see id.* at 7 ("the mere availability of the vaccine at CCCC also moots this action (and strips standing from all detainees for all future risk-based coronavirus actions)"); *United States v. Williams*, No. 5:01-CR-00012-KDB, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021) ("Being vaccinated against COVID-19 seriously undermines Defendant's assertion that 'extraordinary and compelling reasons' warrant his release from prison."); *United States v. Singh*, 525 F. Supp. 3d 543, 546–47 (M.D. Pa. Mar. 11, 2021) ("[T]he Court concludes that Singh's recent vaccination mitigates his risk from COVID-19 to such an extent that COVID-19, in combination with Singh's underlying conditions, no longer presents an extraordinary and compelling reason to grant compassionate release.").

Finally, if Mendoza claims OMDC's COVID-19 protocols caused him to contract COVID-19 in August 2022,[9] that claim presents individualized defenses. Indeed, just before contracting COVID-19 (for apparently the only time), Mendoza went on a "hunger strike" and refused to eat for various days. As of July 24, 2022, Mendoza had missed fifteen meals. Ex. 789. He refused vitals and a physical exam on that day. *Id.* On July 27, 2022, Mendoza reported "dizziness, palpitations," and a "rumbling" stomach. Ex. 777. He planned to drink

---

[9] Assuming such a claim is even viable given the complaint's allegations from April 2020.

11

water that day, but "report[ed] not planning to eat." *Id.* On July 28, 2022, Mendoza reported "feeling weakness, stomach ache, and back pain." Ex. 773. Finally, on July 29, 2022, Mendoza ended his hunger strike. Ex. 769–770. However, he declined medications for his abdominal discomfort. Ex. 770. About one week later, Mendoza tested positive for COVID-19. Ex. 976. Mendoza's own weakening of his immune system presents individualized defenses to any claim that OMDC's COVID-19 protocols caused him to contract the virus.

Mendoza brings atypical claims that give rise to new, fact-specific defenses. He fails Rule 23's typicality requirement.

## C.   MENDOZA WOULD BE AN INADEQUATE CLASS REPRESENTATIVE

The subclass also cannot show Mendoza meets Rule 23's adequacy requirement. That requires demonstrating that Mendoza will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). Courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (overruled on other grounds by *Dukes*, 564 U.S. at 338). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985.

Here, antagonism exists between Mendoza and other class members. For instance, earlier this year, Mendoza steadfastly refused to be tested for COVID-19, because he did not want to quarantine if determined to be positive. *See* Exs. 1235, 1227–29, 1232, 1237. He cannot now credibly maintain that he will adequately represent a class of detainees alleging OMDC has created unreasonable risk of serious harm by failing to appropriately combat COVID-19. *See, e.g., Lockhart v. United States*, 577 U.S. 347, 369 (2016) (J. Kagan, dissenting) ("Remember the old adage about the pot and the kettle?"). Other class members, for instance, could have contracted COVID-19 from Mendoza given his steadfast refusal to be tested. This presents a conflict for Mendoza. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) ("An absence of material conflicts of interest between the

named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class."); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."). It would be incongruent to permit Mendoza—who disregarded COVID-19 safety precautions for self-serving reasons—to represent a class intent on pressing constitutional claims against OMDC for its COVID-19 response. Mendoza would therefore not be an adequate class representative.

V

CONCLUSION

Mendoza would not be an appropriate class representative. He presents atypical claims with apparent individualized defenses. His claims are moot by virtue of his vaccinated status. And his refusal of medical care, including refusing COVID-19 testing for purely self-serving reasons, makes him an inadequate class representative. The subclass' motion to substitute Mendoza as class representative should be denied.


DATED: July 7, 2023                    Respectfully submitted,

                                        ANDREW R. HADEN
                                        Attorney for the United States,
                                        Acting under Authority Conferred
                                        by 28 U.S.C. § 515

                                        KATHERINE L. PARKER
                                        Chief, Civil Division

                                        s/ *Samuel W. Bettwy*
                                        SAMUEL. W. BETTWY
                                        Assistant U.S. Attorney

                                        s/ *Colin M. McDonald*
                                        COLIN M. MCDONALD
                                        Assistant U.S. Attorney

                                        Attorneys for Defendants-Respondents

13