LAW OFFICES OF
BARDIS VAKILI, PC
BARDIS VAKILI (247783)
(bardis@vakililegal.com)
Cooperating Counsel – ACLU of
San Diego & Imperial Counties
P.O. Box 234160
Encinitas, California 92023
Telephone: (619) 483-3490

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
KYLE VIRGIEN (278747)
(kvirgien@aclu.org)
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493

*Counsel for Plaintiff-Petitioners*

COOLEY LLP
JOHN HEMANN (165823)
(jhemann@cooley.com)
ELLIE W. BARCZAK (329180)
(ebarczak@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA, 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

ALEXANDER GALICKI (308737)
(agalicki@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401-4100
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

ALEXANDRA EBER (*Pro Hac Vice*)
MATT K. NGUYEN (329151)
(aeber@cooley.com)
1299 Pennsylvania Ave, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Adrian RODRIGUEZ ALCANTARA, et al.,

　　　　　Plaintiff-Petitioners,

　　v.

Gregory J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement, et al.,

　　　　　Defendant-Defendants.

Case No.: 3:20-cv-00756-DMS-AHG

**PLAINTIFFS' OPPOSITION TO FEDERAL RESPONDENTS' MOTION TO DISMISS PETITION OR MOTION TO DECERTIFY SUBCLASS**

Case Filed: April 21, 2020

i

1

2

# Table of Contents

3    I.    Introduction ............................................................................................... 1

4    II.   This Case Addresses Live Flaws in Otay Mesa's COVID-Safety Measures

5          and Is Not Moot......................................................................................... 3

6    III.  The Court Properly Certified the Medically Vulnerable Subclass ................. 8

7    IV.   The Existence of the COVID Vaccine Does Not Require Decertification of

8          the Class................................................................................................... 11

9          A.  The Class Definition Has Not Been "Vitiat[ed]" ..................................... 11

10         B.  The Rule 23 Requirements Remain Satisfied for the Medically Vulnerable

               Subclass.............................................................................................. 13

11   V.    Conclusion................................................................................................ 16

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Authorities

**Cases**

*Ahlman v. Barnes*,
   20 F.4th 489 (9th Cir. 2021) .................................................................. 13

*Ahlman v. Barnes*,
   445 F. Supp. 3d 671 (C.D. Cal. 2020) .................................................... 12

*Ahlman v. Barnes*,
   No. SACV 20-835 JGB (SHKx), 2022 WL 3013144
   (C.D. Cal. July 7, 2022) ................................................................... 13, 20

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) .................................................................. 19

*Arnold v. United Artists Theatre Circuit, Inc.*,
   158. F.R.D. 439 (N.D. Cal. 1994) .......................................................... 17

*Bateman v. Am. Multi-Cinema, Inc.*,
   623 F.3d 708 (9th Cir. 2010) .................................................................. 12

*Cf. Brum v. MarketSource, Inc.*,
   No. 2:17-CV-241-JAM-EFB, 2018 WL 3861558
   (E.D. Cal. Aug. 14, 2018) ...................................................................... 18

*Chafin v. Chafin*,
   568 U.S. 165 (2013) .................................................................................. 6

*Chatman v. Otani*,
   No. CV 21-00268 JAO-KJM, 2021 WL 2941990 (D. Haw. July 13, 2021) ......... 7

*Colwell v. Bannister*,
   763 F.3d 1060 (9th Cir. 2014) ................................................................ 11

*Doe v. Wolf*,
   424 F. Supp. 3d 1028 (S.D. Cal. 2020) .................................................. 17

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) .................................................................. 19

*Emps.-Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Anchor Cap.
   Advisors*,
   498 F.3d 920 (9th Cir. 2007) .................................................................. 14

*Fraihat v. U.S. Immigr. & Customs Enf't*,
   16 F.4th 613 (9th Cir. 2021) .................................................................. 13

*Fraihat v. U.S. Immigr. & Customs Enf't*,
   445 F. Supp. 3d 709 (C.D. Cal. 2020) .................................................... 13

*Fraihat v. U.S. Immigr. & Customs Enf't*,
   No. 5:19-cv-01546-JGB-SHK, Dkt. No. 405 (Aug. 21, 2023) ................ 13

*Gordon*,
  849 F.2d ............................................................................................ 6

*Hall v. Marriott Int'l, Inc.*,
  344 F.R.D. 247 (S.D. Cal. 2023) ...................................................... 17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................................... 19

*Heffelfinger v. Elec. Data Sys. Corp.*,
  492 F. App'x 710 (9th Cir. 2012) ..................................................... 15

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  No. 17CV2335-GPC(MDD), 2019 WL 3006465 (S.D. Cal. July 10, 2019) ....... 14

*Johnson v. California*,
  543 U.S. 499 (2005) .......................................................................... 19

*Lasar v. Ford Motor Co.*,
  399 F.3d 1101 (9th Cir. 2005) ............................................................ 6

*Lighthouse Fellowship Church v. Northam*,
  20 F.4th 157 (4th Cir. 2021) ............................................................. 10

*Maney v. Brown*,
  516 F. Supp. 3d 1161 (D. Or. 2021) ................................................... 7

*Martinez v. CoreCivic*,
  No. 20-1309 WJ/CG, 2021 WL 2550319 (D.N.M. June 22, 2021) ............ 10

*Nat'l Ass'n of Radiation Survivors v. Walters*,
  111 F.R.D. 595 (N.D. Cal. 1986) ...................................................... 17

*Nw. Envtl. Def. Ctr. v. Gordon*,
  849 F.2d 1241 (9th Cir. 1988) ............................................................ 6

*O'Connor v. Boeing N. Am., Inc.*,
  184 F.R.D. 311 (C.D. Cal. 1998) ...................................................... 14

*Or. Nat. Res. Council v. U.S. Bureau of Land Mgmt.*,
  470 F.3d 818 (9th Cir. 2006) .............................................................. 6

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ............................................................ 19

*Pintlar Corp.*,
  124 F.3d 1310 (9th Cir. 1997) ............................................................ 6

*Ramsey v. Kantor*,
  96 F.3d 434 (9th Cir. 1996) ............................................................... 6

*Roman v. Wolf*,
  No. ED CV 20-00768 TJH, 2020 WL 6261318
  (C.D. Cal. Sept. 22, 2020) ........................................................ 14, 20

iv

*Romero-Lorenzo v. Koehn*,
2023 WL 2924882 (D. Ariz. Mar. 30, 2023)....................................7, 8, 9, 11, 16

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ...............................................................17

*United States v. Gonzalez*,
No. 00 Cr. 54 (JFK), 2021 WL 2433817 (S.D.N.Y. June 15, 2021)....................10

*United States v. Grummer*,
519 F. Supp. 3d 760 (S.D. Cal. 2021) .....................................................10

*United States v. King*,
No. 1:15-cv-00139-SEB-TAB, 2021 WL 2431348
(S.D. Ind. June 14, 2021)..................................................................10

*United States v. Lopez-Quevedo*,
No. 19-cr-02845-DMS, 2021 WL 5303111 (S.D. Cal. Nov. 15, 2021)..............10

*Wakefield v. Thompson*,
177 F.3d 1160 (9th Cir. 1999) .............................................................11

*Wilson v. Ponce*,
No. CV-20-4451-MWF (MRWx), 2022 WL 2155119
(C.D. Cal. Feb. 2, 2022)...................................................................10

**Other Authorities**
California Dep't of Justice,
"Immigration Detention in California" (July 2022), available
https://oag.ca.gov/system/files/media/immigration-detention-2022.pdf?............18

Management of Nonhospitalized Adults with COVID-19,
Nat'l Insts. of Health (July 21, 2023),
https://www.covid19treatmentguidelines.nih.gov/management/clinical-
management-of-adults/nonhospitalized-adults--therapeutic-management/. .........9

U.S. Immigr. and Customs Enf't,
Post Pandemic Emergency COVID-19 Guidelines and Protocols
Version 2.0, https://www.ice.gov/doclib/coronavirus
/eroCOVID19PostPandemicEmergencyGuidelinesProtocol_
07132023.pdf (July 13, 2023)..........................................8, 9, 11, 15, 16

**Rules**
Fed. R. Civ. P. 23(a)(1)......................................................................17

## I.   Introduction

Federal Defendants' Motion seeks to relitigate issues that this Court has already addressed, arguing that the case is moot and that the subclass does not exist or should be decertified. However, this Court has repeatedly rejected Federal Defendants' arguments, explicitly finding this case is ***not*** moot and that the subclass continues to exist. Moreover, this Court has directed the parties to litigate the immediate issues that prevent the case from moving forward including the pending motion to substitute a new class representative rather than rehash old arguments. The Court should reject Federal Defendants' attempt to skirt its prior orders, should deny the Motion, and should allow the case to proceed to the merits of the subclass' claim.

Plaintiffs originally filed this case in April of 2020, seeking certification of a subclass of medically vulnerable people detained at Otay Mesa Detention Center and a TRO requiring the facility to release certain of those subclass members during an outbreak of COVID at the facility. The Court granted that TRO and certified that subclass. Dkt. 41. The Court did not enter any further preliminary relief. In October of 2020, Defendants moved to decertify the subclass on the basis that it expired with the TRO, which the Court denied. Dkt 109, 130. The parties entered into a negotiated stay with mandated biweekly reporting by Defendants, and then settlement talks. Dkt. 221 at 3. As a result, the case was stayed from July of 2021 to November of 2022. *Id.*

In November of 2022, Defendants declined to extend the stay and moved for judgment on the pleadings on mootness grounds. Dkt. 201, 202, 203. In May of 2023, the Court issued an order addressing that motion. Dkt. 221. The Court dismissed a portion of Plaintiffs' case and conclusively held that the existing claims of the Medically Vulnerable Subclass at the Otay Mesa Detention Center should proceed toward discovery and resolution on the merits. *Id.* at 6.[1] The Court ordered Plaintiffs

---

[1] In this brief, Plaintiffs use ECF page numbers rather than the page numbers of the document.

to file a motion to substitute a new class representative for the Medically Vulnerable Subclass, and set a settlement conference. *Id.*; Dkt. 228. Plaintiffs moved to substitute Hever Alberto Mendoza Linares as a new subclass representative. Dkt. 222. The settlement conference and ensuing negotiations did not result in a settlement, and the parties are now in the process of briefing the motion to substitute and diligently pursuing discovery in support of the Medically Vulnerable Subclass's allegations. Dkt. 238.

The case should now proceed as the Court directed: the parties should litigate whether Mr. Mendoza Linares and/or other members of the Medically Vulnerable Subclass are appropriate as class representatives, and the case should proceed on the merits of the remaining subclass claims. Plaintiffs also anticipate moving soon to add additional class representatives beyond Mr. Mendoza Linares. Plaintiffs have reengaged in discovery and may seek to amend their complaint in light of information gathered regarding Defendants' continued unconstitutional treatment of the subclass. Defendants are, of course, free to oppose Plaintiffs' attempts to add new class representatives and to amend their complaint, and to contest the subclass's claim on its merits.

Rather than engage in this process prescribed by the Court, however, Federal Defendants have flouted the Court's clear statements, insisting again that the case is moot and that the subclass does not exist or should be decertified. Just as the Court correctly rejected these arguments before (as recently as May of this year), Dkt. 221 at 6 ("[T]he class claims arising out of the class members' detention at OMDC are not moot."); Dkt. 130 at 3 ("Expiration of the temporary restraining order and denial of the request for a preliminary injunction … do not warrant decertification of the Subclass."), it should reject them again here.

## II. This Case Addresses Live Flaws in Otay Mesa's COVID-Safety Measures and Is Not Moot.

Federal Defendants argue that this case should be dismissed as moot because "[t]he advent of the vaccine has eliminated the reason for this case." Dkt. 227 at 5. As this Court recognized, Federal Defendants, as "[t]he party asserting mootness," bear a "heavy burden to establish that there is no effective relief remaining for a court to provide." *In re Pintlar Corp.*, 124 F.3d 1310, 1312 (9th Cir. 1997); *see also Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("[A] case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'"); *Ramsey v. Kantor*, 96 F.3d 434, 445 (9th Cir. 1996) ("Defendants bear a 'heavy' burden of demonstrating that plaintiffs' claims are moot."); see Dkt. 130 at 4 (noting Defendants' "heavy burden" to meet a "stringent" standard on mootness). To succeed, Defendants must demonstrate that there has been such a "change in the circumstances existing at the beginning of the litigation [that it] has 'forestalled any occasion for meaningful relief' that the court could grant." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1108 (9th Cir. 2005).[2]

"[I]n deciding a mootness issue, 'the question is not whether the precise relief sought at the time the application for an injunction was filed is still available.'" *Or. Nat. Res. Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d 818, 820 (9th Cir. 2006) (alteration in original) (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir. 1988)). Rather, "[t]he basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Gordon*, 849 F.2d at 1244 (citation omitted). Federal Defendants' argument that "[t]he advent of the vaccine has eliminated the reason for this case," Dkt. 227 at 5, falls well short of this the high bar they face.

---

[2] In the Motion, Federal Defendants appear to attack the continuing validity of the claims of the class as a whole—not the validity of any particular class representative's claims.

***First***, the mere existence of a vaccine is not enough to demonstrate that Federal Defendants are adequately providing people in their custody with the vaccine. Other courts have found that, even though the vaccine is available outside of a facility, inadequacies in the vaccination program within the facility can violate the Constitution. *Maney v. Brown*, 516 F. Supp. 3d 1161, 1182 (D. Or. 2021) (finding a class likely to show a constitutional violation related to a facility's failure to provide them the vaccine with appropriate priority); *Romero-Lorenzo v. Koehn*, 2023 WL 2924882, at *22 (D. Ariz. Mar. 30, 2023) (finding "a question of fact remains about whether … deficiencies [in vaccination efforts] amount to a due process violation"); *id.* (finding a question of material fact whether a facility's "failure to take reasonable available measures to track and target high risk individuals for vaccines and other COVID-19 protections amounts to a due process violation"). Relatedly, another court declined to exclude people from a class simply because they had been vaccinated against COVID, citing "conflicting information about the length of protective immunity following COVID-19 infection and the efficacy of vaccines against the new variants." *Chatman v. Otani*, No. CV 21-00268 JAO-KJM, 2021 WL 2941990, at *12 (D. Haw. July 13, 2021).

Here, Federal Defendants point to the general availability of the vaccine but present no evidence whatsoever of a meaningful vaccination program within the facility. For example, they present no evidence that a significant portion of the facility is vaccinated and boosted—a factor that courts have considered in determining whether vaccination and booster policies violate the constitution. *E.g.*, *Romero-Lorenzo*, 2023 WL 2924882, at *21 (finding "a genuine issue of material fact that a reasonable official in the circumstances at [the facility] would have appreciated the high degree of risk involved to USMS detainees from the facility's low vaccination rates, including low booster rates") (quotation marks, alterations, and citation omitted). They also offer no information about whether Otay Mesa "offer[s] COVID-19 boosters to detainees on intake," "enter[s] notes or reminders in their electronic

medical system to track a detainees' eligibility for boosters and/or schedule them for boosters," or "effectively track[s] and target[s] high risk or immunocompromised detainees for vaccinations"—all of which a court has found may be required for a booster program to be constitutionally adequate. *Romero-Lorenzo*, 2023 WL 2924882, at *21.

***Second***, COVID safety lapses at Otay Mesa violate class members' constitutional rights even if they have received the vaccine. Federal Defendants' own guidance admits that vaccination is not an absolute protection because "studies have shown that vaccinated individuals can become infected and still transmit the virus." U.S. Immigr. and Customs Enf't, Post Pandemic Emergency COVID-19 Guidelines and Protocols Version 2.0, 6, https://www.ice.gov/doclib/coronavirus/eroCOVID19PostPandemicEmergencyGuidelinesProtocol_07132023.pdf (July 13, 2023) [hereinafter "ICE Requirements"]. These concerns remain uniquely salient for the Medically Vulnerable Subclass, whose personal characteristics (i.e., age and/or preexisting medical conditions) and carceral status render them uniquely vulnerable to contracting COVID and experiencing severe symptoms and heightened risk of hospitalization and/or death. Federal Defendants' mootness arguments make no mention—much less present compelling evidence—of other steps Otay Mesa is taking to protect people, including the Medically Vulnerable Subclass, from COVID. Federal Defendants thus fail to show mootness for the additional reason that they are not taking the measures necessary to protect even people who are fully vaccinated.

For example, Federal Defendants continue to fall short in providing Paxlovid and other antiviral medications against COVID, which remain an important protection for vaccinated people, especially the Medically Vulnerable Subclass. Federal Defendants' COVID requirements discuss antiviral medications and point facilities to the National Institutes of Health guidelines for specifics. ICE Requirements at 16. The National Institutes of Health, in turn, explains that "some

patients continue to have an increased risk of disease progression" even after vaccination, "and it is in those people that [antiviral] therapies are most likely to be beneficial." Management of Nonhospitalized Adults with COVID-19, Nat'l Insts. of Health (July 21, 2023), https://www.covid19treatmentguidelines.nih.gov/management/clinical-management-of-adults/nonhospitalized-adults--therapeutic-management/.

According to the National Institutes of Health, antiviral drugs should still be considered after vaccination for "older patients (i.e., those aged >50 years and especially those aged ≥65 years)," "patients who are unlikely to have an adequate immune response to COVID-19 vaccines due to a moderate to severe immunocompromising condition or the receipt of immunosuppressive medications," and those with "a prolonged amount of time since the most recent vaccine dose (e.g., >6 months)" or "conditions such as obesity, diabetes, and chronic respiratory, cardiac, or kidney disease." *Id.* Despite the need for this medication, Federal Defendants have admitted that Otay Mesa does not stock Paxlovid, claiming instead that the medical clinics at the facility can "obtain it from local pharmacies" if necessary. Dkt. 210 at 3. Another court has addressed this exact same failure to keep a stock of Paxlovid on hand, rejecting the defendants' argument "that it is sufficient for Fifth Amendment purposes that [they] can obtain these medications from local pharmacies when needed." *Romero-Lorenzo*, 2023 WL 2924882, at *24. That court found that "[a] fact finder could … conclude that not having antiviral medications readily available to treat … COVID-19 positive detainees is not objectively reasonable." *Id.* at *25. Thus, this case is also not moot because Defendants violate the Fifth Amendment rights even of class members who are fully vaccinated.

Federal Defendants' case law finding claims moot after the vaccine was released does not apply here. Federal Defendants cite opinions holding that claims *seeking release* were no longer valid after the availability of the COVID vaccine. *Martinez v. CoreCivic*, No. 20-1309 WJ/CG, 2021 WL 2550319, at *1 (D.N.M. June

6

22, 2021) (noting the claims sought "'immediate release' from custody"); *United States v. Lopez-Quevedo*, No. 19-cr-02845-DMS, 2021 WL 5303111, at *1 (S.D. Cal. Nov. 15, 2021) (addressing a claim for "compassionate release"); *United States v. Grummer*, 519 F. Supp. 3d 760, 761 (S.D. Cal. 2021) (same); *United States v. King*, No. 1:15-cv-00139-SEB-TAB, 2021 WL 2431348, at *1 (S.D. Ind. June 14, 2021) (same); *United States v. Gonzalez*, No. 00 Cr. 54 (JFK), 2021 WL 2433817, at *1 (S.D.N.Y. June 15, 2021) (same). These opinions are inapposite because Plaintiffs no longer seek release, but, as described above, seek to remedy failures in the COVID-protection policies and procedures within the facility. Dkt. 221 at 4. The court in *Wilson v. Ponce* did not find the case moot, instead finding that the respondents met the lower bar of defeating an Eighth Amendment claim on its merits. No. CV-20-4451-MWF (MRWx), 2022 WL 2155119, at *3 (C.D. Cal. Feb. 2, 2022). That court did so only after finding that the respondents had shown that they "do more than simply offer the vaccine to inmates…." *Id.* As explained above, the Federal Defendants do not even attempt any such showing here. And *Lighthouse Fellowship Church v. Northam* involved the entirely unrelated context of a mootness challenge to a First Amendment claim against a long-ago-withdrawn executive order closing churches in the early days of the COVID emergency. 20 F.4th 157, 163 (4th Cir. 2021).

Federal Defendants also make a passing reference to the end of the government's declaration of a public health emergency related to COVID. It is unclear whether the Federal Defendants consider this end of the public health emergency to be an independent basis for mootness, but to the extent they do, this argument fails. Courts regularly find constitutional violations for failure to provide adequate medical care even in the absence of a nationwide public health emergency. *E.g.*, *Colwell v. Bannister*, 763 F.3d 1060, 1071 (9th Cir. 2014) (recognizing constitutional claim for failure to adequately treat monocular blindness); *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) (recognizing constitutional claim

for medication to treat organic delusional disorder). Federal Defendants "fail to link these changes [in the emergency declaration] to the specific [Otay Mesa COVID] prevention measures" they have put into place and thus cannot show that the change in the emergency declaration has had any effect on the specific conditions in the facility. *Romero-Lorenzo*, 2023 WL 2924882, at *31. Indeed, the Federal Defendants' own guidance shows that the end of the emergency declaration does not remove the need for protective measures in detention facilities. This guidance recognizes that "[o]n May 11, the public health emergency related to COVID-19 ended." ICE Requirements at 6. It explains that the Federal Defendants released a "new version of the COVID-19 guidance [that] focuses on transitioning back to a normal footing regarding the control and treatment of COVID-19 while adhering to continuing CDC guidance." *Id.* This "new version" of the Federal Defendants' COVID guidance continues to require that facilities do not just rely passively on the existence of the vaccine but instead "provide and encourage up to date COVID-19 vaccination for staff members and detainees (including additional doses for people who are immunocompromised and others who are eligible for them, and boosters)." *Id.* at 10. It also "recommends that each detainee newly diagnosed with COVID-19 be assessed for possible treatment with [antiviral] medication." *Id.* at 16. And contrary to Defendants' arguments, the end of the public health emergency cannot moot the case when emerging COVID variants continue to pose heightened risk of injury to persons, including the subclass. Defendants' motion provides no evidence that they comport with this guidance. Thus, the end of the national emergency does not end the Plaintiff class's constitutional rights to adequate COVID protections.

### III.   The Court Properly Certified the Medically Vulnerable Subclass

Federal Defendants argue that the subclass no longer exists because the Court's class certification order terminated when the TRO expired. Dkt. 227 at 6-9. This is not the first time the Federal Defendants have raised this meritless argument, and the Court has correctly rejected it. Dkt. 130 at 3 (rejecting the Defendants' argument that

"the Court provisionally certified the Subclass for the purpose of issuing the temporary restraining order"). As the Court has repeatedly explained as recently as five months ago, this argument relies on the "false premise" that "the issuance of [the TRO] was … the basis for the Court's certification decision." *Id.*; *see also* Dkt. 221 at 5-6. To the contrary, the Court's certification "decision was based on the Court's separate and independent finding that the requirements for class certification were met." Dkt. 130 at 3. "District courts are in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (quotation marks and citation omitted). It is for this reason that "[t]he decision to grant or deny class certification is within the trial court's discretion." *Id.* at 277 (citation omitted). The Court's sound approach to class certification here was and remains well within this discretion.

The opinions Federal Defendants cite do not change the basis for the Court's reasoning, nor do they justify dismissal. Instead, these opinions stand for the unremarkable point that, when a court limits its class certification order to the preliminary relief stage, with the intent to revisit the order at a later date, the procedural trigger for the court to revisit its limited class certification is the expiration of the preliminary relief. In *Ahlman v. Barnes*, the trial court expressly certified a "provisional" class only "[f]or purposes of the emergency injunctive relief." 445 F. Supp. 3d 671, 684 (C.D. Cal. 2020) [hereinafter "*Ahlman I*"]. The Ninth Circuit opinion that the Defendants cite simply recognized this fact, noting that the "provisional class certification expired along with the preliminary injunction," because it was specifically limited to a 90-day term. *Ahlman v. Barnes*, 20 F.4th 489, 495 (9th Cir. 2021) [hereinafter "*Ahlman II*"]. However, the district court elected for that case to proceed as a putative class action, without any permanently certified class, until the court granted the plaintiffs' motion to certify a settlement class eight months later. *Ahlman v. Barnes*, No. SACV 20-835 JGB (SHKx), 2022 WL 3013144, at *4 (C.D. Cal. July 7, 2022) [hereinafter "*Ahlman III*"]. In *Fraihat*, too, the court

ordered a "provisional certification" of a class encompassing people detained at every ICE facility nationwide. *Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709, 736 (C.D. Cal. 2020). The Ninth Circuit rejected the district court's nationwide preliminary injunction as insufficiently supported by evidence of nationwide problems. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 645 (9th Cir. 2021). In doing so, it held that the provisional class certification order "necessarily falls as well." *Id.* at 635. The *Fraihat* litigation, too, has proceeded before the district court without any further class certification order as the parties pursue settlement. *E.g.*, *Fraihat v. U.S. Immigr. & Customs Enf't*, No. 5:19-cv-01546-JGB-SHK, Dkt. No. 405 (Aug. 21, 2023) (joint status report providing settlement progress). Should the *Fraihat* parties settle, that court will presumably certify a settlement class as well.

By contrast, this Court has already made clear it ***did not*** provisionally certify the subclass solely for the TRO. Therefore, nothing in these orders disturbs this Court's "separate and independent finding [from the TRO] that the requirements for class certification were met." Dkt. 130 at 3. Additionally, even if the Court were to credit Defendants' interpretation of *Ahlman* and *Fraihat* as limiting its class certification order to the timeframe when the TRO was active, the result would not be dismissal.[3] Instead, the Court would simply issue an order clarifying that its prior order denying decertification, Dkt. 130, constituted an order granting certification of a permanent class for the same reasons it granted certification before. *See*, *e.g.*, *Roman v. Wolf*, No. ED CV 20-00768 TJH, 2020 WL 6261318, at *2 (C.D. Cal. Sept. 22, 2020) (granting non-provisional class certification because "the Petitioners-Plaintiffs' motion for provisional class certification provided a sufficient factual and legal basis to support class certification on a non-provisional basis").

---

[3] The opinion Defendants cite to argue that this case is moot if the class was certified only provisionally does not apply. That opinion stands for the unrelated proposition that, if a named plaintiff voluntarily dismisses a putative class action, that putative class action becomes moot. *Emps.-Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Anchor Cap. Advisors*, 498 F.3d 920, 924 (9th Cir. 2007).

## IV.   The Existence of the COVID Vaccine Does Not Require Decertification of the Class

Federal Defendants alternatively seek to decertify the class, once again in defiance of the Court's May order regarding the Medically Vulnerable Subclass. Dkt. 221 at 5-6. Just as class certification falls within the Court's discretion, "[t]he district court has discretion on whether to decertify a class." *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2019 WL 3006465, at *2 (S.D. Cal. July 10, 2019). Class certification is not defeated merely because "facts fluctuate over the class period and vary as to individual claimants," and nothing has materially changed in the last five months to warrant such a drastic deviation from this Court's recent guidance. *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998). Instead, "[t]he standard for class decertification is the same as class certification" and depends on whether "the requirements of Rules 23(a) and (b) are met...." *Id.* Defendants appear to make two arguments for decertification. Both fail.

### A. The Class Definition Has Not Been "Vitiat[ed]"

First, Federal Defendants appear to argue that, without even considering the Rule 23 requirements, the Court should decertify the subclass because the vaccine "vitiat[ed] the very definition of the subclass" and rendered it "obsolete." Dkt. 227 at 9. As noted above, Defendants are incorrect that the existence of the vaccine alone sufficiently protects the subclass. Further, Federal Defendants' argument cites a single, unpublished Ninth Circuit opinion remanding and noting that, on remand, the district court can consider decertification. *Heffelfinger v. Elec. Data Sys. Corp.*, 492 F. App'x 710, 714 (9th Cir. 2012). This opinion does not support an argument untethered from Rule 23 that a class may be decertified when its definition has been "vitiat[ed]."

Despite the absence of any legal basis for Federal Defendants' argument, they are wrong as a factual matter that further developments in the pandemic have vitiated

the definition of the Medically Vulnerable Subclass.[4] To the contrary, medical vulnerability, as defined by age and risk factors, remains crucially important in implementing COVID protections. Federal Defendants' own COVID requirements define risk in a way that closely tracks the Medically Vulnerable Subclass definition: "Persons at increased risk may include older adults and persons of any age with serious underlying medical conditions." ICE Requirements at 15 (citing CDC guidance for specific risk factors). These requirements recognize that these people are increased risk and continue to require special protection. ICE Requirements at 10 ("COVID-19 positive detainees determined to be at increased-risk of complications from COVID- 19 … may require a higher level of monitoring or care and should be housed in the medical housing unit or infirmary area of the facility or, if unavailable, hospitalized as detailed below."), 15 ("The initial medical evaluation must determine whether a symptomatic individual is at increased risk for severe illness from COVID-19."). This guidance also admits that the set of people eligible for Paxlovid tracks the Medically Vulnerable Subclass—even as Defendants expressly concede they have not adhered to that guidance. *Id.* at 16 (explaining that "antiviral products" such as Paxlovid are intended for "patients with mild to moderate symptoms and risk factors"). The Medically Vulnerable Subclass definition is thus highly relevant to Federal Defendants' failure, described above, to stock this medication and prescribe it to members of the Medically Vulnerable Subclass when they experience severe COVID symptoms. *See supra* at 3. Other courts, too, have recognized that it remains important to identify medically vulnerable people for increased protection. *See, e.g.*, *Romero-Lorenzo*, 2023 WL 2924882, at *22 ("[A] question of fact remains about whether [the facility]'s failure to take reasonable available measures to track and target high risk individuals for vaccines and other COVID-19 protections amounts to

---

[4] The Medically Vulnerable Subclass consists of "[a]ll civil immigration detainees incarcerated at the Otay Mesa Detention Center who are age 60 or over or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19 as determined by CDC guidelines." Dkt. 41 at 13.

a due process violation."). The Court should deny Federal Defendants' request to decertify the class as vitiated.

### B. The Rule 23 Requirements Remain Satisfied for the Medically Vulnerable Subclass

Federal Defendants also argue that the Medically Vulnerable Subclass should be decertified as no longer meeting the requirements of Rule 23(a). Federal Defendants raise arguments for all four prongs of Rule 23(a), but their arguments for Rule 23(a)(3) and (4) (typicality and adequate representation) merely refer to their briefing on Plaintiffs' motion to substitute a new class representative. Dkt. 227 at 11 (citing Dkt. 224 at 13-17). Federal Defendants fail on those requirements for the same reasons Plaintiffs set out in their briefing on their motion to substitute, Dkt. 222 (and any future briefing Plaintiffs may file involving adding additional class representatives). For purposes of this opposition, Plaintiffs focus on Federal Defendants' unique arguments involving the Rule 23(a)(1) and (2) factors of numerosity and commonality.

#### 1. The Existence of the Vaccine Has No Effect on Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). "The plaintiff need not state the exact number of potential class members; nor is a specific minimum number required." Dkt. 41 at 7 (citing *Arnold v. United Artists Theatre Circuit, Inc.*, 158. F.R.D. 439, 448 (N.D. Cal. 1994)). "Although the numerosity requirement is not tied to a strict numerical threshold, trial courts have generally found that classes of at least 40 members satisfy the requirement." *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 272 (S.D. Cal. 2023). Moreover, "where the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met, regardless of class size." *Nat'l Ass'n of Radiation Survivors v.*

*Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986) (internal quotations omitted). Indeed, this Court has held that an estimate of "46 people" in a transient class with unknown future members was "an adequate approximation that class members are sufficiently numerous and demonstrate joinder of all members would be significantly difficult and impracticable." *Doe v. Wolf*, 424 F. Supp. 3d 1028, 1040 (S.D. Cal. 2020) (citing cases).

Here, Federal Defendants fall well short of proving that the Medically Vulnerable Subclass has dropped below the numerosity threshold. At the time of the TRO, there were 134 subclass members in the facility. Dkt. 77 at 1. Federal Defendants released some subclass members pursuant to the TRO, and have since repopulated the facility. A recent report from the California Attorney General noted that on October 4, 2021, there were 815 individuals in ICE custody at Otay Mesa, 443 of whom were at "high risk" for COVID-19 under the class definition from the *Fraihat* litigation.[5] Those numbers are almost certainly higher now, two years later, as ICE has increased its systemwide population. While the *Fraihat* class definition is admittedly broader than the subclass definition here, even at those lower 2021 numbers, if only 10% of *Fraihat* class members were also subclass members in this case, numerosity would be met. In addition, because the subclass definition includes persons who are of a certain age and/or are diagnosed with certain conditions, persons who may not have initially qualified for the subclass may subsequently become eligible.

However, Federal Defendants do not even attempt to produce any evidence that the number of people who meet the subclass definition is below 40 or is otherwise not numerous. The absence of evidence is especially notable because Defendants are the ones in possession of current information regarding individuals in their custody who meet the subclass definition. *Cf. Brum v. MarketSource, Inc.*,

---

[5] California Dep't of Justice, "Immigration Detention in California" at 38 (July 2022), available https://oag.ca.gov/system/files/media/immigration-detention-2022.pdf?

No. 2:17-CV-241-JAM-EFB, 2018 WL 3861558, at *3 (E.D. Cal. Aug. 14, 2018) (compelling discovery responses regarding numerosity where "defendants are the parties in possession and control" of information necessary for class certification).

Instead of producing actual evidence in their possession, Federal Defendants merely rehash their mootness argument, claiming that "there is no longer a sizable subclass, if any, to protect" because the vaccine "has significantly reduced the risk of severe illness." Dkt. 227 at 10. Whether or not someone is a subclass member is based entirely on their medical conditions and age. Dkt. 41 at 13. The existence of the vaccine has no bearing on either of these factors, so it does not affect the subclass's numerosity. Federal Defendants' view that the existence of the vaccine decreases risk is a mootness argument and is irrelevant to the question of how many subclass members exist. Their numerosity argument therefore fails.[6]

### 2.  The Medically Vulnerable Subclass Retains Common Questions of Fact or Law

Commonality requires that "plaintiffs' claims must depend upon a common contention, such that determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (citation omitted). This element has "'been construed permissively,' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Federal Defendants argue that the commonality element is no longer satisfied because "there is no longer a one-size-fits-all resolution" to the subclass's claims. Dkt. 227 at 11.[7] This argument fails. In cases such as this one where plaintiffs seek

---

[6] Defendants' apparent position that subclass members are no longer medically vulnerable to serious harm from COVID-19 only underscores the ongoing need for this litigation.

[7] The Defendants misconstrue the subclass-wide claims as including Mr. Mendoza Linares' issues obtaining medication for his acid reflux. Dkt. 227 at 11. This case

injunctive relief, commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the [] class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (*abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)). Each member of the Medically Vulnerable Subclass challenges the same set of system-wide practices or policies—including but not limited to Federal Defendants' admitted failure to stock an antiviral drug that by their own guidance should be made available to all subclass members. Even if the risk from COVID "may ultimately result in different future harm for different detainees— ranging from no harm at all to death—every detainee, here, allegedly suffers exactly the same constitutional injury" and thus satisfies the commonality inquiry. *Roman*, 2020 WL 6261318, at \*2 (citation and quotation omitted). It is for this reason that courts have continued to certify classes in systemic challenges to COVID-safety measures even after the existence of a vaccine, especially in the wake of new COVID variants that continue to emerge. *E.g.*, *Ahlman III*, No. SACV20835JGBSHKX, 2022 WL 3013144, at \*3 (C.D. Cal. July 7, 2022) ("All class members' claims flow from the same alleged injury—Defendants' allegedly inadequate COVID-19 mitigation efforts in the jail. Plaintiffs seek institution-wide injunctive relief. Accordingly, the relevant questions such as deliberate indifference will be decided on a classwide, rather than individual, basis."). Federal Defendants therefore fail to demonstrate a lack of commonality.

## V.   Conclusion

For the foregoing reasons, the Court should reject Federal Defendants' attempts to relitigate the issues of mootness and certification of the subclass, and it should allow the case to proceed to substitution of a new class representative and resolution on the merits of the subclass's claim.

---

involves failures to protect the subclass from COVID risks—not Mr. Mendoza Linares' issues with acid reflux treatment at the facility.

1

2   Dated:        October 26, 2023              Respectfully Submitted,

3

4                                              By: */s/ Kyle Virgien*

5                                                 Kyle Virgien

6                                                 AMERICAN CIVIL LIBERTIES
                                                  UNION FOUNDATION
7
                                                  John Hemann
8                                                 Alexander Galicki
                                                  Alexandra Eber (*Pro Hac Vice*)
9                                                 Ellie W. Barczak
                                                  Matt K. Nguyen
10
                                                  COOLEY LLP
11
                                                  Bardis Vakili
12
                                                  LAW OFFICES OF
13                                                BARDIS VAKILI, PC
                                                  Cooperating Counsel – ACLU of
14                                                San Diego & Imperial Counties

15

16

17                                                Counsel for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28