STRUCK LOVE BOJANOWSKI & ACEDO, PLC
Daniel P. Struck, AZ Bar #012377
*(admitted pro hac vice)*
Rachel Love, AZ Bar #019881
*(admitted pro hac vice)*
Nicholas D. Acedo, AZ Bar #021644
*(admitted pro hac vice)*
Jacob B. Lee, AZ Bar #030371
*(admitted pro hac vice)*
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
jlee@strucklove.com

WITHAM MAHONEY & ABBOTT, LLP
Matt Mahoney, Esq., CA Bar # 211184
401 B Street, Suite 2220
San Diego, CA 92101
Tel.: (619) 407-0505
Fax: (619) 872-0711
mahoney@wmalawfirm.com

Attorneys for Defendant-Respondent LaRose

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Adrian Rodriguez Alcantara, et al., | No. 3:20-cv-00756-DMS-AHG |
| Plaintiffs-Petitioners, | **DEFENDANT-RESPONDENT WARDEN LAROSE'S JOINDER TO FEDERAL DEFENDANTS-RESPONDENTS' RESPONSE IN OPPOSITION TO PLAINTIFFS-PETITIONERS' MOTION TO SUBSTITUTE NEW CLASS REPRESENTATIVE (ECF No. 224) AND SEPARATE RESPONSE IN OPPOSITION TO PLAINTIFFS-PETITIONERS' MOTION TO SUBSTITUTE NEW CLASS REPRESENTATIVE (ECF No. 222)** |
| v. | |
| Gregory J. Archambeault, San Diego Field Office Director, Immigration and Customs Enforcement, et al., | |
| Defendants-Respondents. | |
| | Date: November 17, 2023 |
| | Time:      1:30 p.m. |
| | Courtroom: 13A |
| | Judge:  Honorable Dana M. Sabraw |

Hever Alberto Mendoza-Linares is not fit to represent the class that has been certified in this matter. The Federal Defendants-Respondents' ("Federal Defendants") Response in Opposition to Plaintiffs-Petitioners' ("Plaintiffs") Motion to Substitute New Class Representative (Dkt. 224) identified several reasons for which the Court should deny Plaintiffs' Motion, including Mendoza-Linares's multiple COVID-19 vaccinations and boosters, history of refusing COVID-19 testing while at Otay Mesa Detention Center ("OMDC") to avoid being medically isolated if the results were positive, and history of contracting COVID-19 after engaging in a 10-day-long hunger strike that likely weakened his immune system, and Defendant-Respondent Warden LaRose joins their Response in its entirety. Additionally, the Court should deny Plaintiffs' Motion because Mendoza-Linares has literal conflicts with the detainees he would represent if Plaintiffs' Motion were granted—specifically, Mendoza-Linares has a history of provoking and attempting to provoke other detainees into assaulting him so that he can get a U-visa as a crime victim. Finally, Mendoza-Linares is separately seeking release via habeas corpus based in part on his alleged exposure to COVID-19 at OMDC, which, if granted, would moot his claims in this matter, and if denied, may preclude them. For all of these reasons, Warden LaRose respectfully requests that the Court deny Plaintiffs' Motion to Substitute New Class Representative (Dkt. 222).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Factual Background

#### A.    Mendoza-Linares's History of Provoking Other Detainees

Mendoza-Linares has been detained at OMDC off and on since early 2020. (*See* Exhibit 1, Declaration of C. LaRose, at ¶ 6.) He is currently detained at OMDC. (Id.) During that time, he has a demonstrated history of provoking and attempting to provoke other detainees into assaulting him. (Id. at ¶ 7.)

On March 10, 2020, Mendoza-Linares was punched in the face by a detainee in his pod. (Id. at ¶ 8.) Medical staff evaluated Mendoza-Linares and cleared him to

return to general population ("GP"). (Id.) On October 6, 2020, Mendoza-Linares was assaulted by a detainee in his pod, who kicked and punched Mendoza-Linares repeatedly in the torso. (Id. at ¶ 9.) Security staff escorted Mendoza-Linares to medical in a wheelchair. Medical staff kept Mendoza-Linares in medical for 23 hours for observation. (Id.)

On or about March 16, 2021, ICE requested an investigation to determine whether Mendoza-Linares had safety issues in L Pod, the GP pod in which he was housed. (Id. at ¶ 10.) Security Threat Group ("STG") Officer Rodriguez interviewed Mendoza-Linares and two other detainees in the pod. (Id.) Although he did not conclude that Mendoza-Linares's safety was at risk, STG Officer Rodriguez did determine that Mendoza-Linares was harassing one of the other interviewed detainees, who was a transgender female—calling her names, pinching his nose when he walked by her, and hanging up the phone as she tried to make a call. (Id.)

On April 13, 2021, Mendoza-Linares was assaulted by another detainee in his pod, who punched Mendoza-Linares in the face and upper torso multiple times. (Id. at ¶ 11.) Responding officers deployed OC spray to the assailant's face when he refused verbal orders to stop assaulting Mendoza-Linares. (Id.) The incident started when Mendoza-Linares tried to change the channel of the television in the pod, telling another detainee who was watching that channel "f--- you" in response to the detainee's protest. (Id.)

Following the April 13, 2021, assault, and because Mendoza-Linares had also been assaulted by other detainees at OMDC on two previous occasions, Unit Manager ("UM") Hogue requested an involuntary protective custody ("PC") investigation to preserve the safety of Mendoza-Linares and the other detainees in his pod, as well as the orderly operations of the facility. (Id. at ¶ 12.) Mendoza-Linares was placed in administrative segregation pending the outcome of the investigation. (Id.)

As part of the PC investigation, STG Officer Rodriguez interviewed Mendoza-Linares and 32 other detainees in L Pod. (Id. at ¶ 13.) Twenty-two detainees reported that Mendoza-Linares was "problematic" in L Pod. (Id. at ¶ 14.) Specifically, they reported that he seemed to constantly be harassing other detainees and "pushing [their] buttons," reporting either that he had harassed them personally or that they had seen him harass others in the pod. (Id.) Per the detainees, Mendoza-Linares's actions included swearing at them, calling them names, trying to provoke them into fighting him, knocking over checkerboards during a game, bullying them, mocking their religious beliefs, spitting on them, threatening to destroy their legal paperwork, attempting to control the TV, using racial slurs, mocking their sexuality, etc. Several opined that the pod was calmer without him there. (Id.)

Six detainees reported that Mendoza-Linares was trying to "get beat up" so that he could appear to be a victim and get a U-visa, which is a visa given to victims of criminal activity who have suffered mental or physical abuse and are helpful to law enforcement in the investigation or prosecution of criminal activity, to avoid criminal prosecution in his home country of El Salvador. (Id. at ¶ 15.) (*See also* https://www.uscis.gov/humanitarian/victims-of-criminal-activity-u-nonimmigrant-status, last accessed October 24, 2023.) One of the six reported hearing Mendoza-Linares tell someone from an advocacy group of this plan. (Ex. 1 at ¶ 15.)

STG Officer Rodriguez concluded that, whether to get a U-visa or for behavioral reasons, Mendoza-Linares was attempting to provoke other detainees to fight or assault him, causing safety and security concerns for Mendoza-Linares and other detainees in L Pod. (Id. at ¶ 16.) Because there were no immediate threats to Mendoza-Linares's safety, however, he was returned to GP on April 23, 2021. (Id. at ¶ 17.)

During the brief period in which he was back in GP, Mendoza-Linares continued to provoke other detainees, resulting in ICE compliance officers speaking with those detainees. (Id. at ¶ 18.) ICE also reported that Mendoza-Linares asked

ICE personnel questions regarding his safety that suggested to ICE that he intended to "deliberately put[ ] himself in a position to be assaulted." (Id. at ¶ 19.) ICE therefore determined on April 29, 2021, that Mendoza-Linares should remain in PC for the foreseeable future, and ICE personnel informed Mendoza-Linares of that decision on that date. (Id. at ¶ 20.) Mendoza-Linares was later released from PC back to GP on June 8, 2021, where he has continued to harass and attempt to provoke other detainees, resulting in disciplinary segregation. (Id. at ¶ 21.)

### B.    Mendoza-Linares's Petition for Writ of Habeas Corpus

On June 25, 2021, Mendoza-Linares filed a Petition for Writ of Habeas Corpus ("Habeas Petition") in the Southern District of California. (No. 21-cv-01169-BEN-AHG, Dkt. 1.)[1] In that action, Mendoza-Linares seeks release based on, among other things, his "prolonged detention without a hearing on danger and flight risk," the assaults discussed above (and others),[2] and his purported fear "of becoming infected with COVID-19."[3] (Id. at ¶¶ 3, 47–52, 55.)

Regarding COVID-19, Mendoza-Linares complained that he has been quarantined "multiple times" due to transfers to and from OMDC and other facilities and that he was at one point housed in OMDC's M Pod, in which another detainee contracted COVID-19 and died from it. (Id. at 47.) As to the transfers specifically, Mendoza-Linares complained that the repeated transfers and his ongoing detention "continues [sic] to expose him to a greater risk of contracting COVID-19 than he would face if he were not in detention," and that Respondents in that action—including Warden LaRose—"have acted, and continue to act, with deliberate indifference to the known and obvious risk of COVID-19 transmission."

---

[1] The habeas action is separate from Mendoza-Linares's appeal of the Immigration Judge's finding that he is ineligible for asylum, discussed in the Federal Defendants-Respondents' Response. (Dkt. 224 at 5 n.2.)

[2] Mendoza-Linares fails to state that he was the instigator of these assaults.

[3] After filing his Habeas Petition, Mendoza-Linares received three doses of the COVID-19 vaccine, contracted COVID-19 and recovered fully from it, and repeatedly refused COVID-19 testing in order to avoid quarantine/medical isolation if the results were positive. (Dkt. 224 at 5–9.)

(Id. at ¶ 92.) In the habeas action, Mendoza-Linares seeks either outright release or an order requiring his release if he does not receive a hearing before an immigration judge that meets certain requirement within 30 days of the order, as well as declaratory relief and fees and costs. (Id. at pp. 34–35.)

The government filed its Answer to the Habeas Petition on May 6, 2022, arguing with respect to COVID-19 that Mendoza-Linares's receipt of an initial COVID-19 and one booster (as of the date of that filing) protects him from potential future COVID-19-related illness, and that the Court previously rejected release under similar circumstances in *Alvarez v. LaRose*, 445 F.Supp.3d 861, 865-66, 869 (S.D. Cal. 2020) (rejecting habeas petitioners' conditions of confinement claim premised on COVID-19 protocols at OMDC and request for release as a remedy as outside the core scope of habeas corpus). (No. 21-cv-01169-BEN-AHG, Dkt. 7, at 15.)

Mendoza-Linares filed his Reply on May 20, 2022, arguing that his vaccination was irrelevant, as the virus is "rapidly mutating" and continues to pose a threat to him and other detainees with underlying health conditions that render them "particularly vulnerable" to COVID-19. (No. 21-cv-01169-BEN-AHG, Dkt. 8 at 19–20.) Mendoza-Linares further argued that conditions of detention at OMDC increase his risk of contracting COVID-19, such that his continued detention constitutes deliberate indifference to a substantial risk of harm to him, including serious illness or death.[4] (Id. at 20.) As of the filing of this Response, the court in the habeas action has not yet ruled on the Habeas Petition.

## II.   Legal Argument

For the reasons stated in the Federal Defendants' Response, Plaintiffs fail to show typicality and adequacy under Fed. R. Civ. P. 23(a) as to Mendoza-Linares.

---

[4] About two and a half months after filing his Reply to his Habeas Petition, Mendoza-Linares tested positive for COVID-19 on August 6, 2022. By August 17, 2022, Mendoza-Linares reported he felt "fine," with no further symptoms, including fever or respiratory symptoms. (Dkt. 224 at 7.)

His history of using other detainees as tools to secure his release from immigration detention and his separate habeas action further cut against a finding that Mendoza-Linares will adequately represent the class in this matter.

Rule 23(a)(4) requires Plaintiffs to demonstrate that Mendoza-Linares will fairly and adequately protect the interests of the class. To determine whether they have done so, the Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011)). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

### A.      Mendoza-Linares Has Conflicts of Interest with the Class.

Far from there being an "absence of antagonism" between Mendoza-Linares and the class, as demonstrated above, Mendoza-Linares has repeatedly engaged in literal, physical conflicts with the class. By provoking other detainees (i.e., potential class members) into assaulting him, Mendoza-Linares hopes to cast himself in the role of a victim so that he can obtain a U-visa that would allow him to stay in the United States and avoid criminal prosecution in El Salvador. (Ex. 1 at ¶ 15.)

Of course, success in that venture would potentially put the other detainees' immigration cases at risk, as a history of violence while in immigration detention could be held against them as a reason to deport them. It strains credulity to believe that, despite using his fellow detainees in this manner, Mendoza-Linares will nevertheless strive to adequately represent their interests in this lawsuit. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) ("An absence of material conflicts of interest between the named plaintiffs and their counsel with

other class members is central to adequacy and, in turn, to due process for absent members of the class."); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").

### B. Mendoza-Linares Will Not Prosecute the Action Vigorously on Behalf of the Class.

At the same time Plaintiffs are putting him forward to represent the class in this matter, Mendoza-Linares is seeking to secure his own release from OMDC through his habeas action. If he succeeds—i.e., if the court grants his Habeas Petition and orders his release—his individual claims in this case will be moot, and Plaintiffs will again have to identify a new proposed class representative. (*See* Dkt. 221 at 5–6) (finding the individual claims of released class representatives to be moot and ordering Plaintiffs to move to substitute a new class representative.) If he fails—i.e., if the court denies his Habeas Petition—his claims in this matter may be barred by claim and/or issue preclusion. *See Save Bull Trout v. Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022) ("Claim preclusion applies where the earlier suit (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies.") (internal citations and quotations omitted); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1021 (9th Cir. 2012) ("Issue preclusion bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.") (internal citations and quotations omitted). Either way, the likelihood that Mendoza-Linares will vigorously represent the class—whatever it might be currently—will disappear once the habeas court rules on his Habeas Petition, forcing this Court and the parties to repeat the exercise of

1   identifying and vetting a new class representative.

2   **III.    Conclusion**

3        For the reasons stated above and in the Federal Defendants' Response,

4   Mendoza-Linares is not an appropriate class representative. The Court should deny

5   Plaintiffs' Motion.

6        Dated:  October 26, 2023

7

8                                    By s/ Jacob B. Lee
                                     Daniel P. Struck
9                                    dstruck@strucklove.com
                                     Rachel Love
10                                   rlove@strucklove.com
                                     Nicholas D. Acedo
11                                   nacedo@strucklove.com
                                     Jacob B. Lee
12                                   jlee@strucklove.com
                                     STRUCK LOVE BOJANOWSKI & ACEDO, PLC
13
                                     Matt Mahoney, Esq.
14                                   WITHAN MAHONEY & ABBOTT, LLP
                                     mahoney@wmalawfirm.com
15
                                     Attorneys for Defendant-Respondent
16                                   LaRose

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 26, 2023, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

Dated:  October 26, 2023

By s/ Jacob B. Lee _____