TARA K. MCGRATH
United States Attorney
KATHERINE L. PARKER, SBN 335097
Chief, Civil Division
SAMUEL W. BETTWY, SBN 94918
Assistant U.S. Attorney
COLIN M. MCDONALD, SBN 286561
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7634/7125/9144 / 619-546-7751 (fax)

Attorneys for the Federal Respondents

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN RODRIGUEZ ALCANTARA, et al., | Case No. 20cv0756 DMS AHG |
| Plaintiffs-Petitioners, | FEDERAL RESPONDENTS' REPLY IN SUPPORT OF MOTION TO DISMISS PETITION OR MOTION TO DECERTIFY SUBCLASS |
| v. | |
| GREGORY J. ARCHAMBEAULT, San Diego Filed Office Director, ICE; et al., | DATE: November 17, 2023<br>TIME: 1:30 p.m.<br>CTRM: 13A |
| Defendants-Respondents. | Hon. Dana M. Sabraw |

**FEDERAL RESPONDENTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PETITION OR MOTION TO DECERTIFY SUBCLASS**

INTRODUCTION

Plaintiffs' opposition confirms that the provisional subclass, certified in April 2020, should be decertified and the case dismissed. There is no need for a subclass, and there is no longer a statutory basis for one. Plaintiffs' proposed class representative shows why: he has received three separate COVID vaccinations, caught COVID at OMDC only after going on a hunger strike, swiftly recovered from COVID, consistently refuses medical care at OMDC, and rejects COVID testing to avoid quarantining. As his case demonstrates, substantial developments since April 2020—including the advent of a COVID vaccination and the pandemic's end—have rendered the subclass definition from April 2020 obsolete and eliminated the very premise of this case and the justiciable controversy alleged. To add statistics to that reality, there are no COVID cases at OMDC currently, and there have only been 35 COVID cases at OMDC in the past six months.

Brushing aside the world-altering developments that occurred while this case sat idle for over two years, Plaintiffs pivot to new allegations and claims (primarily respecting the OMDC medical clinic), which are nowhere contained in their petition, which are not of a constitutional dimension, and which are not suitable for equitable or class-wide relief (where individual questions, such as vaccination status, prior recoveries from COVID-19, refusals to take the vaccination, suitability for medication, etc., predominate). If any OMDC detainee believes they have a valid constitutional claim in November 2023, they can raise that in an individual case based on current circumstances, not allegations from April 2020. As it stands, there are no named plaintiffs in this case, and there is no basis to maintain a subclass definition that has been overwritten by the passage of time, caselaw, and scientific development. The Court should dismiss this case as moot. Alternatively, it should decertify the class and, given there are no plaintiffs, dismiss.

A.  <u>The case or controversy presented in the petition no longer exists.</u>

As outlined in the motion to decertify and dismiss, the issues presented in Plaintiffs' petition no longer present a live controversy. To qualify as a case fit for adjudication, "an actual controversy must be extant at all stages of review, not merely at the time the

complaint is filed." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997); *see Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented."). Moreover, where injunctive relief is involved, mootness is determined in light of present circumstances. *Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

Here, as stated in the Petition, filed April 21, 2020, the controversy was as follows:

> We are in the midst of a global pandemic on a scale not seen for a century. Hundreds of thousands of people have died in a matter of months. The Otay Mesa Detention Center is being ravaged by the largest confirmed outbreak of the Coronavirus Disease 2019 ("COVID-19") of any immigration detention center in the United States. Dozens have been infected and hundreds have been potentially exposed. Without this court's timely intervention, many more people will get sick, many will suffer severe symptoms, and some will die.

Petition at ¶ 1. Plaintiffs further stated that,

> This action challenges [ICE's] continued detention of [Plaintiffs] and similarly situated people in the midst of the [COVID-19] pandemic, under conditions and population levels that make social distancing impossible and place them at severe risk, in violation of their Fifth Amendment Due Process Rights.

*Id.* at ¶ 2. Plaintiffs alleged that "[t]here is no specific treatment, vaccine, or cure for COVID-19, and no one is immune. The only way to prevent the chance of serious illness or death from COVID-19 is to practice scrupulous hygiene and social distancing." *Id.* ¶ 6. Plaintiffs sought "immediate release from ICE custody due to the urgent threat to their lives and health posed by COVID-19." *Id.* ¶ 3. Plaintiffs claimed that "[u]nless this Court intervenes to order the Defendants to dramatically reduce the population of [OMDC], Plaintiffs and many other detained individuals will face dramatically increased chances of contracting COVID-19, becoming seriously ill, and dying." *Id.* ¶ 32.

The case or controversy presented in the Petition has disappeared. The change in circumstances following April 21, 2020—including the development of COVID vaccinations and the end of the pandemic—have "mooted the case stated in [Plaintiffs'] complaint." *Arizonans*, 520 U.S. at 72. The current COVID statistics at OMDC bear this out. As of November 7, 2023, there were zero COVID cases at OMDC, and there have been

2

only 35 COVID cases in the last six months. Decl. of Warden C. LaRose ¶¶ 5-6. Moreover, OMDC is subject to weekly reporting, publicly posted at www.ice.gov/coronavirus. Except for a brief period in December 2022 and January 2023, when the CDC set San Diego County's hospital risk status to medium, OMDC has been on "green" status since September 30, 2022. *Id.* ¶ 10.

As cited previously, various courts—with very limited exception—have adopted the common-sense perspective that lawsuits premised on the dangers of exposure to COVID in the early pandemic era are moot or otherwise unpersuasive in a post-pandemic, post-vaccine world. *See, e.g.,* ECF No. 227 at 5-6 (citing cases); ECF No. 224 at 15 (citing cases). Plaintiffs attempt to distinguish these cases on the basis that they arise in different contexts, but the decisions in those cases are all based on a common conclusion that applies here: the availability of the vaccine and the end of the pandemic completely change the landscape of claims which were premised on the onset of a pandemic, the unavailability of a vaccine, and the high risk of serious injury if exposed to the virus. *Cf.* Petition at ¶ 6 ("There is no specific treatment, vaccine, or cure for COVID-19 and no one is immune.").[1]

Multiple courts in this district alone have recognized that the availability of the vaccine undercuts Fifth Amendment claims premised on potential exposure to COVID. *See, e.g., Sanchez-Rivera v. Archambeault*, No. 21cv1654-LL, 2022 WL 3648450, at *2 (S.D. Cal. Aug. 24, 2022) ("Courts have been refusing to grant release from custody to inmates or detainees with similar medical conditions who have been vaccinated and previously infected."); *Dominguez v. Archambeault*, No. 20cv1384-JO, 2022 WL 17573919, at *2 (S.D. Cal. Nov. 2, 2022) ("Because Petitioner's vaccination reasonably reduces his COVID-19 risks, Petitioner fails to show that he faces unreasonable and substantial risk of suffering

---

[1] Moreover, the issues presented here do not turn on the elemental distinctions between the Fifth and Eighth Amendments. *See, e.g., Battista v. Clarke*, 645 F.3d 449, 453 (1st Cir. 2011) (observing that the Fifth and Eighth Amendment standards are "not all that far apart," with both leaving "ample room for professional judgment, constraints presented by the institutional setting, and the need to give latitude to administrators who have to make difficult trade-offs as to risks and resources").

3

harm due to his confinement conditions and his medical vulnerability as an obese individual."); *Gavilanes-Curiel v. Archambeault*, No. 21cv1471-CAB, 2021 WL 4895222, at *2 (S.D. Cal. Sept. 21, 2021) ("Petitioner has failed to show that conditions at IRDF are unconstitutional, especially since Petitioner himself has been vaccinated.").

In their response brief, Plaintiffs pivot to new "cases or controversies" that are not presented in the Petition and are not cognizable in this action. For instance, they claim that while vaccines are now available, perhaps ICE is not providing the vaccine.[2] Or that unspecified and unalleged "COVID safety lapses" at OMDC violate constitutional rights of detainees irrespective of vaccinated status. Or that failing to stock specific medication—Paxlovid—is a constitutional violation. These are not the controversies alleged in the Petition. They are new. Indeed, several months ago, Plaintiffs even proposed filing an amended complaint that would be "better tailored to align the remedies Plaintiffs seek with the current state of the pandemic and ICE's response to it." ECF No. 209 at 5-6. Their recent opposition brief hints at the same. *See* ECF No. 244 at 7. Notwithstanding their acknowledgment that further pursuit of this case requires a clean slate, Plaintiffs have never moved to amend their Petition—nor would any such request at this stage satisfy Rule 16's demands. *See* ECF No. 210 at 2-7 (addressing leave to amend requirements).

These new issues presented are not cognizable in a habeas petition. "A habeas petitioner may only challenge the confinement itself—the validity of the confinement or its duration—and not the conditions of such confinement." *Dominguez v. Archambeault*, No. 20CV1384-JO-AHG, 2022 WL 17573919, at *1 (S.D. Cal. Nov. 2, 2022) (citing *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016)); *see also Pinson v. Carvajal*, 69 F.4th 1059, 1074 (9th Cir. 2023) ("release from confinement is the only available remedy for claims at the writ's core"). "[D]etainees must challenge the conditions of their confinement through civil rights actions rather than through habeas petitions." *Dominguez,* 2022 WL 17573919 at *2 (citing *Nettles*, 830 F.3d at 927); *see also Smith v. Gutierrez*, 2021 WL 4033780, at

---

[2]  That is belied by Plaintiffs' own proposed class representative, who has received three separate COVID vaccinations at OMDC. *See* ECF No. 224 at 9.

4

*1 (C.D. Cal. Aug. 3, 2021) (finding that claim of deliberate indifference to medical needs should have been brought in a civil rights action rather than a habeas action).

Regardless of the form of relief sought, Plaintiffs' new claims invite the Court to micromanage medical decisions at the OMDC medical clinic, relying heavily on the Arizona district court's decision in *Romero-Lorenzo*. That decision is an outlier among other post-vaccine cases mentioned, and is at direct odds with the Ninth Circuit's warnings against such micromanagement. For instance, in *Roman v. Wolf*, 977 F.3d 935 (9th Cir. 2020), the district court had issued a preliminary injunction that, among other things, specified the areas to be cleaned and who should do the cleaning at the Adelanto detention facility. The Ninth Circuit "vacate[d] the provisions of the preliminary injunction that ordered specific measures to be implemented at Adelanto," *id*. at 945, stating that the district court should not "wade into facility administration at a granular level beyond what is required to remedy the constitutional violation identified" and that "[t]hese types of considerations are better left to the 'professional expertise of corrections officials.'" *Id*. at 946 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 n.23 (1979)). In *Fraihat v. ICE*, 16 F.4th 613, 646 (9th Cir. 2021), the Ninth Circuit emphasized its guidance in *Roman*, noting that it had "cautioned" the district court not to "micromanage" administration of conditions at the detention facility. *Id*. at 646 (quoting *Roman* at 946).

With respect to mootness, Plaintiffs incorrectly claim that the Court already rejected this argument in its May 2023 order. The prior motion for judgment on the pleadings was premised on the termination of the *named plaintiffs'* individual claims. The Court found that fact mooted the individual claims and dismissed them. ECF No. 221 at 5. The Court then spotted an issue that "[n]either Defendants nor Plaintiffs addressed . . . in their briefing on the present motions[,]" i.e., that termination of Plaintiffs' claims did not moot the claims of subclass. *Id*. at 6 (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991)). This motion—made apparent by Plaintiffs' attempt to substitute a representative who has been vaccinated three times—addresses issues of the subclass specifically.

### B. Intervening Ninth Circuit caselaw establishes that the provisional subclass terminated when the TRO expired

As set forth in the motion to decertify and dismiss, the Ninth Circuit's decisions in *Fraihat* and *Ahlman*, decided in October 2021 and December 2021, respectively, make clear that the provisional class certification in this case expired with the TRO (and subsequent denial of Plaintiffs' preliminary injunction request). *See* ECF No. 227 at 6–9. In response, Plaintiffs claim those cases stand for the "unremarkable point that, when a court limits its class certification order to the preliminary relief stage, with the intent to revisit the order at a later date, the procedural trigger for the court to revisit its limited class certification is the expiration of the preliminary relief." ECF No. 244 at 14.

Plaintiffs' point is not clear, and they fail to cite any language in *Fraihat* or *Ahlman* to support it. Instead, Plaintiffs turn to the procedural history and specific language of the district courts' provisional certifications, s*ee* ECF No. 244 at 14-15, neither of which played any part in the Ninth Circuit's analysis in *Fraihat* or *Ahlman*. *Fraihat*'s point was simple: "The district court's class certification ruling depended on, and was in service of, its preliminary injunction. If the preliminary injunction is infirm, the class certification order necessarily falls as well, regardless of whether class certification was otherwise proper under [Rule 23]." *Fraihat*, 16 F.4th at 635. The circumstance here is directly analogous: the Court "provisionally certified" the subclass "in connection with the Court's issuance of the temporary restraining order." ECF No. 130 at 1. Thereafter, the TRO expired, and the Court denied Plaintiffs' request for a preliminary injunction. At that point, as *Fraihat* says, "regardless of whether class certification was otherwise proper" under Rule 23, the certification order "falls." *Fraihat*, 16 F.4th at 635. Plaintiffs fail to address this straightforward point. *Ahlman* is similarly straightforward. There, where an injunction expired, the Ninth Circuit found that the "provisional class certification [also] expired and no longer ha[d] any legal effect." *Ahlman v. Barnes*, 20 F.4th 489, 495 (9th Cir. 2021). In tandem, these cases govern the outcome here and clarify that the provisional class certification expired alongside the TRO. Plaintiffs suggest that the Court could simply issue

6

an order clarifying that its prior order denying decertification granted "certification of a permanent class[.]" ECF No. 244. But Plaintiffs never sought – and Defendants never had the opportunity to contest – certification of a permanent class.[3]

Plaintiffs state that "this Court has already made clear it did not provisionally certify the subclass solely for the TRO." ECF No. 244 at 15 (emphasis omitted). Federal Respondents recognize that the Court previously denied Defendants' motion to decertify, finding that "the denial of a preliminary injunction, standing alone, does not appear to be the kind of 'subsequent development in the litigation' that warrants decertification." ECF No. 130 at 2. However, the Court's order was issued before the Ninth Circuit's opinions in both *Fraihat* and *Ahlman*, which make clear that decertification of a provisional class is automatic where interim relief expires or where the interim relief ordered is deficient. Those decisions clarify that there is no subclass in this case.

C. In the alternative, the subclass should be decertified because it is obsolete

As the Federal Defendants argued in their motion, if a subclass still exists, the Court should exercise its discretion to decertify the class because the subclass definition has been rendered obsolete. In response, Plaintiffs question whether the Court has such authority. ECF No. 244 at 16. But Rule 23 "provides district courts with broad discretion to . . . revisit [its] certification throughout the legal proceedings before the court." *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001); *see also Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). Surely that broad discretion includes the ability to decertify upon discerning that a subclass definition has been overwritten by intervening events. *See, e.g., Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (noting that district courts "must be vigilant to ensure that

---

[3] In their motion for class certification, Plaintiffs "request[ed] that the Court *provisionally certify* the [subclass] and issue a temporary restraining order, preliminary injunction, and writ of habeas corpus forbidding continued detention of that subclass during the COVID-19 pandemic." ECF No. 1-3 at 9–10 (emphasis added).

7

a certified class is properly constituted" and "make appropriate adjustments to the class definition as the litigation progress[es]").

Plaintiffs otherwise claim that the subclass definition has not been vitiated, claiming that medical vulnerability "remains crucially important in implementing COVID protections." ECF No. 244 at 17. In making that claim, Plaintiffs trivialize the most significant development in the fight against COVID-19—a vaccine. When the subclass definition was written, there was no vaccine and very little was known about COVID-19. But at this stage of COVID-19 understanding, "the prevailing scientific view is that even vaccinated individuals with medical comorbidities do not have a significant risk of severe disease or death if they contract COVID-19." *United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2023 WL 6961985, at *8 (D. Kan. Oct. 20, 2023); *see* CDC, Covid-19 Treatments and Medications, www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html (last updated Oct. 4, 2023) ("Being vaccinated makes you much less likely to get very sick."); *United States v. Martinez*, 2021 WL 927360, at *3 (S.D. Cal. Mar. 10, 2021) (denying release because although "[o]besity and hypertension are among the conditions identified by the CDC as potentially increasing an individual's risk of serious illness from the virus . . . Defendant's vaccination significantly mitigates the risk that she will contract COVID-19, much less become seriously ill.") (internal citations omitted)). The Court should take these advances into account. *See, e.g., Brach v. Newsom*, 38 F.4th 6, 9 (9th Cir. 2022) ("Much has changed since the COVID-19 pandemic began. One thing that has stayed the same is that federal courts may not rule on moot or hypothetical questions.").

Finally, Plaintiffs overlook their own purpose in requesting provisional certification, i.e., to service a TRO that would "direct[] Defendant-Respondents to immediately refrain from maintaining in custody and release from Otay Mesa all subclass members[.]" ECF No. 2 at 1-2. The Court granted Plaintiffs' request at that time. However, given intervening precedent, that request would now be a nonstarter. *See Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2060 (2022) ("§ 1252(f)(1) generally prohibits lower courts from entering

8

injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the referenced INA statutory provisions."); ECF No. 221 at 4 (order stating "[t]he parties here appear to agree that this holding applies to Plaintiffs' request for class-wide release from detention. . . . Accordingly, that request for relief is no longer at issue."). The Court should not continue certification of a subclass that, as a matter of law, can no longer serve the purpose for which it was sought, created, and used. Both legally and factually, the subclass is obsolete.

### D. <u>In any case, the subclass should be decertified under Rule 23</u>

The traditional Rule 23 rubric also establishes that the Court should decertify the subclass. To begin, Hever Alberto Mendoza Linares is not an adequate class representative, a point that Plaintiffs appear to concede by stating that, at some point in the future, they will propose someone else to serve as class representative. *See* ECF No. 244 at 18. However, Plaintiffs have known for over three years that new class representatives were needed to represent the subclass. At this stage, the Court should not give them another do-over in their quest to find someone to represent the subclass. Otherwise, with respect to Rule 23's requirements of typicality and adequacy, Plaintiffs make no arguments at all, effectively conceding that Mendoza is not a suitable class representative and that Rule 23's requirements are not met.

As for commonality, Plaintiffs offer only one question they contend is common among the subclass, i.e., whether failing to stock an antiviral drug (Paxlovid) at the OMDC clinic constitutes a constitutional deprivation. This crystalizes the reality that Plaintiffs' claims have shifted from conditions of confinement to claims about medical negligence. Nowhere in their Petition do Plaintiffs allege that OMDC's medical center improperly treats detainees who have contracted COVID-19. Accordingly, from the start, Plaintiffs' proffered "common question" fails because it is not even within the confines of the Petition or proper for habeas relief. *See Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) ("In this case, as in all class actions, commonality cannot be determined without a precise understanding of the nature of the underlying claims."). Plaintiffs' claim fails on substance, too. Paxlovid is

not a drug that is simply handed out. Its usage sheet specifies that "PAXLOVID is not authorized for use as pre-exposure or post-exposure prophylaxis for prevention of COVID-19." Fact Sheet for Healthcare Providers: EUA for Paxlovid, p. 1. https://www.fda.gov/media/155050/download (last revised Nov. 2023). Moreover, "[s]evere, life-threatening, and/or fatal adverse reactions due to drug interactions have been reported in patients treated with PAXLOVID." *Id.* at 8. Accordingly, the emergency use authorization includes a lengthy table of drug interactions medical providers must take into account before prescribing Paxlovid to any individual patient. *See id.* at 12–21. This underscores the reality that prescribing Paxlovid is a discretionary medical decision. *See* CDC, Interim Clinical Considerations for COVID-19 Treatment in Outpatients, Oct. 4, 2023, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/outpatient-treatmentoverview.html ("Clinicians should be aware of the eligibility criteria and the potential for drug interactions with the use of Paxlovid that may preclude Paxlovid use or may require temporary discontinuation of other medications"). Plaintiffs cannot persuasively derive a "common question" from this highly individualized medical decision. At the outset of this case, certain things could be dealt with in one stroke—such as reducing the population of OMDC to reduce the spread of COVID-19. That is no longer the case.

## CONCLUSION

This case should be dismissed. The case or controversy alleged in April 2020 is moot. The new controversies offered are not alleged, nor are they cognizable here. There are no remaining petitioners, only a subclass that was sought to support a TRO that intervening precedent would now preclude. The subclass definition has been overwritten by historic medical advances in the years following April 2020, and there is no reason—or statutory basis—at this stage to continue to maintain the subclass. For all these reasons, the Court should dismiss the Petition with prejudice.

//

//

//

| | | |
|---|---|---|
| 1 | DATED: November 9, 2023 | Respectfully submitted, |
| 2 | | TARA K. MCGRATH<br>United States Attorney |
| 3 | | KATHERINE L. PARKER<br>Chief, Civil Division |
| 4 | | |
| 5 | | *s/ Colin M. McDonald*<br>SAMUEL. W. BETTWY |
| 6 | | COLIN M. MCDONALD<br>Assistant U.S. Attorneys |
| 7 | | Attorneys for Respondents |