LAW OFFICES OF
BARDIS VAKILI, PC
BARDIS VAKILI (247783)
(bardis@vakililegal.com)
Cooperating Counsel – ACLU of San Diego & Imperial Counties
P.O. Box 234160
Encinitas, California 92023
Telephone: (619) 483-3490

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
KYLE VIRGIEN (278747)
(kvirgien@aclu.org)
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493

*Counsel for Plaintiff-Petitioners*

COOLEY LLP
JOHN HEMANN (165823)
(jhemann@cooley.com)
ELLIE W. BARCZAK (329180)
(ebarczak@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA, 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

ALEXANDER GALICKI (308737)
(agalicki@cooley.com)
355 S. Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone: (213) 561-3250
Facsimile: (213) 561-3244

ALEXANDRA EBER (*Pro Hac Vice)*
(aeber@cooley.com)
MATT K. NGUYEN (329151)
(mnguyen@cooley.com)
1299 Pennsylvania Ave, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Adrian RODRIGUEZ ALCANTARA, et al.,

Plaintiff-Petitioners,

v.

Gregory J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement, et al.,

Defendant-Respondents.

Case No.: 3:20-cv-00756-DMS-AHG

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO SUBSTITUTE NEW CLASS REPRESENTATIVE**

Case Filed: April 21, 2020

## I. INTRODUCTION

Federal Respondents' ("Federal Defendants") Opposition to Plaintiffs' Motion to Substitute New Class Representative (ECF No. 224) and Defendant-Respondent Warden LaRose's ("Defendant LaRose") (collectively, "Defendants") Joinder (ECF No. 245) do not alter the outcome that Hevber Alberto Mendoza Linares should be appointed as Class Representative.

*First,* leave to substitute a new named plaintiff is "freely allowed" to protect class members' interests, *see Osuegbu v. AMN Healthcare, Inc.*, No. 3:16-CV-02816 JCS, 2016 WL 11735439, at *2 (N.D. Cal. Aug. 25, 2016), and Plaintiffs' Motion to Substitute New Class Representative ("Motion to Substitute") (ECF No. 222) should be granted because the Medically Vulnerable Subclass (the "Class") has already been certified. (ECF No. 38.)

*Second,* Mr. Mendoza Linares satisfies Federal Rule of Civil Procedure 23's typicality and adequacy requirements to represent the Class as he asserts claims that are co-extensive with absent Class Members, satisfying typicality, and seeks the same relief as Class Members, satisfying adequacy. Fed. R. Civ. P. 23(a). The fact that Mr. Mendoza Linares has received a COVID-19 vaccine does not moot his claims: Defendants' argument that it does flies in the face of guidance issued by the U.S. Immigration and Customs Enforcement (ICE) and Centers for Disease Control and Prevention (CDC) that vaccination alone does not eliminate the danger of COVID-19, particularly for medically vulnerable people. Furthermore, Defendants' distracting and prejudicial assertions about Mr. Mendoza Linares are not supported by fact or law and do not justify denying him the opportunity to represent the Class given that he meets all necessary requirements. Plaintiffs respectfully request the Court to grant their Motion to Substitute.[1]

[1] In the alternative, if the Court were to conclude that Mr. Mendoza Linares does not satisfy the requirements of Rule 23 (it should not), Plaintiffs ask that the Court permit Artemio Garcia Illenes and Awais Muhammad to serve as class representatives for

## II. ARGUMENT

### A. Because the Class is certified, leave to substitute Mr. Mendoza Linares as a new Class Representative is "freely allowed."

"[S]ubstitution of new named plaintiffs is freely allowed to protect the rights of putative class members when the original named Plaintiff is no longer adequate to represent the Class." *Osuegbu*, 2016 WL 11735439, at *2 (citing *Wade v. Kirkland*, 118 F. 3d 667, 670 (9th Cir. 1997)). Additionally, "[w]hen deciding whether substitution of plaintiffs may be permitted after the named plaintiff's claims are voluntarily dismissed or otherwise become moot, the ***paramount consideration*** is whether the putative class has been certified." *Hitt*, 2009 WL 4261192, at *5 (emphasis added). Here, the Court has already certified the Class at Otay Mesa (ECF No. 38), and Defendants do not dispute that Mr. Mendoza Linares falls squarely within the Class definition of a medically vulnerable detainee, as he is a former smoker with a diagnosis of hemoptysis detained at Otay Mesa. *See* Fed. Defs.' Opp. at 6 n. 5 ("Being a 'former smoker' was added to the [CDC's] high-risk categories"); *see also* ECF No. 222-1, Mendoza Linares Decl. ¶¶ 3-4. Thus, the "paramount consideration" in deciding whether to permit Mr. Mendoza Linares to be substituted as the new Class Representative has already been satisfied here.

### B. Mr. Mendoza Linares satisfies Rule 23's requirements to serve as Class Representative.

A substitute plaintiff must assert claims "typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3), and must "fairly and adequately protect the interests of the class," Fed. R. Civ. P 23(a)(4). Mr. Mendoza Linares easily meets both requirements and Defendants fail to demonstrate otherwise.

#### 1. Mr. Mendoza Linares's claims are typical of the Class.

"[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class

---

the reasons catalogued in Plaintiffs' Motion to Add Additional Class Representatives, filed concurrently with this Reply.

members; they need not be substantially identical." *Ali v. Franklin Wireless Corp*., 2023 WL 25718, at *4 (S.D. Cal. Jan. 3, 2023) (citing *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010) (abrogated on other grounds)).

Defendants' conclusory and improper statement that Mr. Mendoza Linares's "highly individualized claim of medical neglect" negates typicality, Opp. at 1, necessarily fails. Just because Defendants characterize Mr. Mendoza Linares's claim as "highly individualized" does not make it so. Defendants ignore that Mr. Mendoza Linares asserts the same claims as the Class regarding the adequacy of the protocols and procedures at Otay Mesa in response to the COVID-19 pandemic. *See* ECF No. 222 at 3; Mendoza Linares Decl. ¶¶ 6-13. Instead, Federal Defendants speculate that "the nature of [his] claim ***appears*** to be medical neglect, which does not relate to any allegations or claims of the subclass." (Opp. at 10) (emphasis added). Notwithstanding Federal Defendants' mischaracterization of the Class's allegations, which necessarily involve medical neglect, Federal Defendants' statement is inaccurate given that Mr. Mendoza Linares's claims are squarely grounded in the Complaint's allegations. *See e.g.,* Compl. ¶ 10 ("ICE has failed to meaningfully respond to protect the health and safety of people in its custody"); *see also id.* ¶ 12 ("Plaintiffs and other people detained at Otay Mesa…. recount an atmosphere of desperation and fear within the detention centers, as many worry about contracting the virus in detention with no way to protect themselves.").[2] Mr. Mendoza Linares's claims, like the Class's claims, are based on Otay Mesa's defective COVID-19 measures. "Where the challenged conduct is a policy or practice that affects all class members, … the typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quotation marks and citation omitted). Mr.

[2] Plaintiffs have reengaged in discovery and may seek to amend their complaint in light of information gathered regarding Defendants' continued unconstitutional treatment of the Class.

Mendoza-Linares's injury is identical to the Class's: the substantial risk of serious harm that all medically vulnerable people at Otay Mesa face because of the facility's defective COVID-19 measures. *See id.* at 678 ("[E]very inmate suffers exactly the same constitutional injury when he is exposed to a single statewide [prison] policy or practice that creates a substantial risk of serious harm."). Because Mr. Mendoza Linares's claims are reasonably co-extensive with those of absent class members, he satisfies the permissive typicality requirement. *See Ahlman v. Barnes*, No. SACV20835JGBSHKX, 2022 WL 3013144, at *3 (C.D. Cal. July 7, 2022) ("Plaintiffs argue their claims are typical of the Class because they were subject to the same [jail COVID-19 safety] policies as the Class members. The Court finds that Plaintiffs are typical of the proposed Class.").[3]

**a. Mr. Mendoza Linares's COVID-19 vaccination status does not moot his claims.**

This Court should reject Federal Defendants' misguided argument that Mr. Mendoza Linares's claims "are moot by virtue of his vaccinated status." (ECF at 224 at 13.) Defendants' position is based on assumptions not grounded in science or accepted by other federal agencies or courts. First, Federal Defendants have denied Mr. Mendoza Linares up-to-date vaccinated status. The CDC recommends that everyone receive the Fall 2023 booster to be up to date.[4] Defendants did not inform Mr. Mendoza Linares about this Fall 2023 booster and denied his request to receive it. Mendoza Linares Decl., ¶13. Second, Federal Defendants speculate that "[g]iven the advent of the vaccine, the only remaining medically vulnerable detainees might be those from whom the vaccine is either not feasible or not available." (Opp. at 1). Federal Defendants' statement directly contradicts medical guidance that Federal

[3] Defendants' focus on a paragraph in Mr. Mendoza Linares's Declaration about an illustrative example where he could not get his medication is a red herring because his allegation does not define his claims. (ECF No. 222-1, Decl. of Mendoza Linares ¶ 5.)

[4] CDC, *COVID-19 Stay Up to Date with Vaccines* (Oct. 4, 2023), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html.

Defendants issued themselves,[5] ("ICE Guidance"), and CDC guidance that due to high rates of chronic disease and risk factors, "[e]ven after primary vaccination, a significant proportion of the population might remain at risk and require additional strategies to prevent severe COVID-19 outcomes,"[6] ("CDC Guidance"). Federal Defendants do not dispute that the CDC cautions that "[b]eing a current or former cigarette smoker increases your risk of severe illness from COVID-19." Opp. at 6 n. 5 (citing Centers for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19) People with Certain Medical Conditions*, (Oct. 6, 2020)). Given Mr. Mendoza Linares' history of smoking and difficulty breathing due to complications of hemoptysis, his vaccination status does not eliminate the risk of severe medical complications if his immunity diminishes or if he were to contract a new strain of COVID-19. *See e.g., Chatman v. Otani*, No. CV 21-00268 JAO-KJM, 2021 WL 2941990, at *12 (D. Haw. July 13, 2021) (declining to exclude people from a class because they had been vaccinated, citing "conflicting information about the length of protective immunity following COVID-19 infection and the efficacy of vaccines against the new variants.").

Federal-Defendants' cases are easily distinguishable. ***First***, they all involve claims where petitioners sought release from detention or prison, which is no longer an issue in this case. (ECF No. 221.) The petitioners in *Martinez* sought "immediate release" from custody, *Martinez v. CoreCivic,* 2021 WL 2550319, at *1 (D.N.M. June 22, 2021), and both the *Williams* and *Singh* cases involved individual defendants seeking compassionate release from prison. *See United States v. Williams*, 2021 WL

[5] *See* U.S. Immigr. And Customs Enf., Post Pandemic Emergency COVID-19 Guidelines and Protocols Version 2.0, 6, https://www.ice.gov/doclib/coronavirus/eroCOVID19PostPandemicEmergencyGuidelinesProtocol_07132023.pdf (July 13, 2023) ("studies have shown that vaccinated individuals can become infected and still transmit the virus")

[6] *See* Christina Yek, M.D. et al., *Risk Favors for Severe COVID-19 Outcomes Among Persons Aged >18 Years Who Completed a Primary COVID-19 Vaccination Series,* CDC (Jan. 7, 2022), https://www.cdc.gov/mmwr/volumes/71/wr/mm7101a4.htm.

966028, at *3 (W.D.N.C. Mar. 15, 2021); *United States v. Singh*, 525 F. Supp. 3d 543, 544 (M.D. Pa. 2021). By contrast, in the current action, the Class no longer seeks release from Otay Mesa, but rather corrections to deficiencies in Defendants' COVID-19 policies and procedures. Decl. of Mendoza Linares at ¶ 12. ***Second***, in *Martinez,* petitioners sought a standard of care and protection against COVID-19 that "far exceeds what current guidance states is actually necessary," 21 WL 2550319, at *1, which is not requested here. ***Finally***, both *Williams* and *Singh* involved individual defendants and did not consider protecting the legal interests of absent, medically vulnerable class members. This Court should follow its sister courts in recognizing that constitutional violations may persist for vulnerable class members, despite the existence of a vaccine. *See*, *e.g.*, *Maney v. Brown*, 516 F. Supp. 3d 1161, 1182 (D. Or. 2021) (finding a class likely to show a constitutional violation related to a facility's failure to provide them the vaccine with appropriate priority); *Romero-Lorenzo v. Koehn*, 2023 WL 2924882, at *22 (D. Ariz. Mar. 30, 2023) (finding "a question of fact remains about whether … deficiencies [in vaccination efforts] amount to a due process violation"). Mr. Mendoza Linares's claims are not moot.

**b. Mr. Mendoza Linares's activism does not present unique defenses that would disrupt typicality.**

Federal Defendants' argument that Mr. Mendoza Linares's claims present individualized defenses preventing satisfaction of typicality is a red herring. Defendants do not cite *any* evidence, nor are Plaintiffs aware of any, that suggests that missing meals as part of a hunger strike or otherwise, increases the likelihood of contracting COVID-19 or any other infection. Defendants' mere speculation as to what kind of activity leads to "weakening of [the] immune system" (Opp. at 12) cannot defeat typicality, which is a permissive standard. *See Ali*, 2023 WL 25718, at *4. Mr. Mendoza Linares's claims are typical of the Class.[7]

[7] Moreover, participation in a hunger strike constitutes a protected First Amendment activity, and Defendants cite to no authority that engaging in such protected conduct should undermine Mr. Mendoza Linares's ability to typically

**2. Mr. Mendoza Linares would fairly and adequately protect the interests of the class.**

To determine legal adequacy under Rule 23(a)(4), a court considers two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019). There are no conflicts of interest where "all Class members seek the same relief and thus share the same interest." *In re Packaged Seafood Prod. Antitrust Litig.*, 332 F.R.D. 308, 320 (S.D. Cal. 2019), vacated and remanded sub nom. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021), *on reh'g en banc*, 31 F.4th 651 (9th Cir. 2022), and *aff'd sub nom.*, 31 F.4th 651 (9th Cir. 2022). No Defendant challenges adequacy as to counsel; only Defendant LaRose challenges Mr. Mendoza Linares's adequacy as a named plaintiff. (Opp. at 12.) Because Mr. Mendoza Linares seeks the same relief as other Class Members, namely Defendants' compliance with prevailing public health standards (Compl. ¶ 148) and adherence to ICE Guidance, there is no conflict of interest. Plaintiffs also reject Defendant LaRose's argument that Mr. Mendoza Linares would not vigorously prosecute the case on behalf of the Class.

**a. Mr. Mendoza Linares's reasonable fear of quarantine at Otay Mesa does not present a conflict of interest.**

While Federal Defendants allege that antagonism exists between Mr. Mendoza Linares and class members because Mr. Mendoza Linares allegedly refused to test for COVID-19 on a few instances to avoid isolation if he tested positive,[8] Federal

---

represent the class. *See Stefanoff v. Hays Cty.*, 154 F. 3d 523, 527 (5th Cir. 1998) (per curiam) ("a hunger strike may be protected by the First Amendment if it was intended to convey a particularized message"); *Dumbrique v. Brunner,* No. 14-cv-2598-HSG, 2016 WL 3268875, at *7 (N.D. Cal. June 15, 2016); *see also Bridges v. Wixon*, 326 U.S. 135, 148 (1945).

[8] In violation of Federal Rules of Civil Procedure (FRCP) 26 and 37, Defendants improperly attached over 2,000 pages of never-before produced documents as exhibits to their Opposition that should have been produced to Plaintiffs in discovery

Defendants fail to present any evidence of actual antagonism between Mr. Mendoza Linares and the Class. In fact, because isolation at Otay Mesa is punitive, *see* Mendoza Linares Decl. ¶ 7, many Class members may share Mr. Mendoza Linares's reluctance to test for COVID-19 for fear of facing demoralizing isolation in an Otay Mesa segregation cell, *id.* ¶¶ 9-10.[9] While ICE Guidance instructs that medical isolation must differ operationally from disciplinary segregation, ICE Guidance at 7 n.7, ("Cohorting, quarantining, and holding in medical isolation is not punitive in nature and must be operationally distinct from administrative or disciplinary segregation"), the reality at Otay Mesa starkly contrasts from ICE Guidance. Mendoza Linares Decl. ¶ 7.

To complicate matters, if someone in a unit tests positive for COVID-19, the whole unit is put on quarantine, resulting in no access to visitors (including counsel), the library, or the gym. *Id.* ¶ 8. While isolated quarantine is intended to last 15 days, if the pod is quarantining together and new detainees test positive in a staggered fashion, every new positive COVID-19 test results in 15 more days of quarantine and further testing that can result in 7-8 months of successive quarantining. *Id.* ¶ 9. This policy, too, creates an incentive not to test, which could trigger a quarantine or elongate an existing quarantine. Any speculated "antagonism" between Mr.

---

months ago. *See Sec. & Exch. Comm'n v. Johnson*, 2023 WL 2628678, at *8 (C.D. Cal. Feb. 17, 2023), *reconsideration denied*, 2023 WL 3526149 (C.D. Cal. Mar. 20, 2023) (excluding Defendant's 16 exhibits where Defendant's belated introduction of exhibits violated Rule 26's disclosure requirements and Defendant failed to meet its burden to show that failure to disclose was substantially justified or harmless under Rule 37). Because Defendants have a continuing obligation to timely supplement discovery under FRCP 26, Plaintiffs request that Defendants promptly make any supplemental productions responsive to Plaintiffs' discovery requests.

[9] *See also* David H. Cloud et al., *Medical Isolation and Solitary Confinement: Balancing Health and Humanity in US Jails and Prisons During COVID-19*, J. Gen. Internal Med. (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7338113/ ("In many correctional facilities, the only available spaces for implementing quarantine or medical isolation are those typically used for punishing people with solitary confinement"); *see also id.* ("The hallmarks of solitary confinement—social isolation, physical idleness, and sensory deprivation—lead to immense psychological suffering and lasting trauma, and too often result in self-harm, violence, and suicide, even after only relatively short periods of time.").

Mendoza Linares and the Class created by his alleged refusal to test for COVID-19 is alleviated by understanding the underlying reasons motivating the alleged refusal.[10] No material conflict of interest exists because improved conditions in medical isolation in compliance with ICE Guidance would improve testing and benefit of both Mr. Mendoza Linares and the Class.

**b. That Mr. Mendoza Linares was allegedly previously assaulted does not create a conflict of interest.**

Defendant-Respondent LaRose's argument that Mr. Mendoza Linares's alleged three physical conflicts with Class Members would compromise his ability to adequately represent the Class strains credulity. ***First***, the facts presented by Defendant LaRose do not support Defendants' theory that Mr. Mendoza Linares provoked detainees to assault him. For example, Defendants recount an incident where Mr. Mendoza Linares was "punched…in the face and upper torso multiple times," which allegedly "started when Mendoza-Linares tried to change the channel of the television in the pod." (Joinder at 3). Changing the TV channel hardly seems like the calculated provocation Defendants attempt to portray. ***Second***, Defendants cite to no authority that suggests that a physical altercation with a detainee, who Defendants do not even allege is a Class Member, is sufficient to defeat adequacy to represent the Class. Rather, the one case that Defendant LaRose cites, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) is entirely inapposite. *Rodriguez* involved a conflict of interest where class counsel entered into incentive agreements

[10] Federal Defendants' allegation that Mr. Mendoza-Linares refused to take his acid reflux medication is not at all relevant to his ability to adequately represent the Class. In any event, Mr. Mendoza Linares initially refused to take lansoprazole because it differed from Nexium, the medication prescribed to him by his physician, Dr. Goens, and which Dr. Goens stated was preferable. Mendoza-Linares Decl. ¶ 11; MENDOZA-MR-002044 (Dr. Goens's prescription stating, "would recommend transition to Nexium in place of lansoprazole"). Mr. Mendoza Linares was told he would not be given Nexium because of the cost. Mendoza-Linares Decl. ¶ 11; *see also* MENDOZA-MR-001245 ("Zuzana called to report that this patient is in the custody of ICE and they do not want to pay for the cost of Nexium"). Mr. Mendoza Linares later refused to take lansoprazole because it gave him horrible stomach pain. Mendoza-Linares Decl. ¶ 11.

with the class. 563 F.3d at 959. By contrast, here, counsel has not entered into any similar agreement. ***Finally***, Defendants provide no legal basis for the claim that "a history of violence while in immigration detention could be held against [other detainees] as a reason to deport them." (Joinder at 7.) These instances do not represent a conflict of interest that would disqualify Mr. Mendoza Linares from adequately representing the Class.

**c. Mr. Mendoza Linares's pending habeas petition will not prevent him and his counsel from vigorously prosecuting the action on behalf of the Class.**

Defendant LaRose's speculation that Mr. Mendoza Linares will not be able to adequately represent the Class if his habeas petition has been decided raises a concern that is not ripe. (Joinder at 8.) Defendants do not identify any authority that suggests that a hypothetical ruling that could impact the role of a named plaintiff destroys adequacy. At this time, there is no set date as to when the court will rule on Mr. Mendoza Linares's habeas petition. Mendoza Linares Decl. ¶ 14. It would be impractical and imprudent to deny Mr. Mendoza Linares the opportunity to serve as a Class Representative based on a hypothetical ruling. Even if the habeas court were to rule on Mr. Mendoza Linares's habeas petition while this litigation is ongoing, because Plaintiffs are moving to add two additional class representatives, Artemio Garcia Illenes and Awais Muhammad, issue preclusion, in the unlikely event it would even apply, will not prevent this litigation from continuing and there will be no delay in needing to identify or vet a new class representative should that need arise.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Substitute and appoint Hever Alberto Mendoza Linares as Class Representative. Additionally, and in the alternative, Plaintiffs request that the Court grant their Motion to Add New Plaintiffs, Artemio Garcia Illenes and Awais Muhammad, that Plaintiffs filed concurrently with this Reply.

Dated: November 9, 2023

Respectfully Submitted,

By: */s/ John Hemann*

John Hemann
Alexander Galicki
Alexandra Eber (*Pro Hac Vice*)
Ellie W. Barczak
Matt K. Nguyen
jhemann@cooley.com
agalicki@cooley.com
aeber@cooley.com
ebarczak@cooley.com
mnguyen@cooley.com

COOLEY LLP

Bardis Vakili
bardis@vakililegal.com

LAW OFFICES OF
BARDIS VAKILI, PC

Kyle Virgien
kvirgen@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

*Counsel for Plaintiffs*