LAW OFFICES OF
BARDIS VAKILI, PC
BARDIS VAKILI (247783)
(bardis@vakililegal.com)
Cooperating Counsel – ACLU of
San Diego & Imperial Counties
P.O. Box 234160
Encinitas, California 92023
Telephone: (619) 483-3490

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
KYLE VIRGIEN (278747)
(kvirgien@aclu.org)
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493

*Counsel for Plaintiff-Petitioners*

COOLEY LLP
JOHN HEMANN (165823)
(jhemann@cooley.com)
ELLIE W. BARCZAK (329180)
(ebarczak@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA, 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

ALEXANDER GALICKI (308737)
(agalicki@cooley.com)
355 S. Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone: (213) 561-3250
Facsimile: (213) 561-3244

ALEXANDRA EBER (*Pro Hac Vice*)
(aeber@cooley.com)
MATT K. NGUYEN (329151)
(mnguyen@cooley.com)
1299 Pennsylvania Ave, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Adrian RODRIGUEZ ALCANTARA, et al., <br><br> Plaintiff-Petitioners, <br><br> v. <br><br> Gregory J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement, et al., <br><br> Defendant-Respondents. | Case No.: 3:20-cv-00756-DMS-AHG <br><br> **DECLARATION OF HEVER ALBERTO MENDOZA LINARES IN SUPPORT OF PLAINTIFFS' MOTION TO SUBSTITUTE NEW CLASS REPRESENTATIVE** <br><br> Case Filed: April 21, 2020 |

DECL. OF HEVER ALBERTO
MENDOZA LINARES

I, Hever Alberto Mendoza Linares, hereby swear and declare:

1. I am currently incarcerated at Otay Mesa Detention Center ("Otay Mesa"). The information set forth herein is true to the best of my knowledge, information, and belief, and if called upon to testify, I could and would testify to the following.

2. I have been incarcerated at Otay Mesa since February 2020.

3. On August 6, 2021, I received one dose of the Janssen COVID-19 Vaccine ("Johnson & Johnson vaccine") and on December 15, 2021, I received one dose of the Moderna COVID-19 Vaccine (collectively, "COVID-19 vaccine").

4. Despite receiving original doses of the COVID-19 vaccine, in August 2022, while I was placed in the isolation unit for disciplinary segregation, or punishment, I contracted COVID-19.

5. The Otay Mesa isolation unit is comprised of individual cells. I understand that Otay Mesa places individuals in the isolation unit for both medical isolation, when an individual has a suspected or confirmed case of COVID-19 ("medical isolation"), and for disciplinary segregation, where an individual is not sick but is placed in isolation for punishment ("disciplinary segregation.")

6. I believe I contracted COVID-19 while in disciplinary segregation in the isolation unit because I was moved from cell to cell and placed in an un-sanitized, dirty cell where someone had previously been in medical isolation for having COVID-19. From what I could tell, the cells in the isolation unit were not disinfected regularly or at all.

7. I have been housed in the isolation unit for disciplinary segregation, and after I tested positive for COVID-19 in August 2022. I understand that individuals placed in medical isolation are permitted to watch TV and use the telephone, which is not allowed if a detainee is placed in disciplinary segregation. But, when placed in medical isolation, there are only two phones and a few tablets available for

everyone in medical isolation to use, so it's very unlikely that a tablet or the phone will be available. Both medical isolation and disciplinary segregation at Otay Mesa resemble solitary confinement, with little to no contact with others and limited amenities. When I was placed in isolation after contracting COVID-19, I became very depressed and engaged in self-harm by throwing myself into the door because the conditions of my confinement were so unfair.

8. Separate from medical isolation, I understand that when detainees test positive for COVID-19 but there is not space for them to quarantine in the medical unit or in the isolation cells, Otay Mesa places the whole unit "on quarantine" ("quarantined.") When a unit is quarantined, all detainees in the unit lose privileges – we cannot go to the library or gym and we cannot have in-person legal or family visits. I know when my unit has been quarantined because a red sign is erected, indicating that the unit is in quarantine.

9. I understand that the typical timeline to quarantine based on an exposure to a single person who tested positive for COVID-19 is 15 days. But because individuals in my unit successively tested positive for COVID-19, each time someone new tested positive, the 15-day timeline re-set such that quarantine with limited privileges lasted for months. I spent 7 to 8 consecutive months in quarantine at Otay Mesa even though I did not have COVID-19.

10. While in quarantine, Otay Mesa officers would sometimes make COVID-19 tests available ("COVID test"). After being quarantined with my unit for two to three months, I faced social pressure from other detainees in the unit to not take the COVID test for fear of extending the quarantine and the subsequent loss of privileges for the entire unit. Whenever someone would test positive for COVID-19, other individuals in the unit would get angry because the quarantine would be extended. I rejected taking a COVID test on a couple of occasions because I was afraid of being placed into medical isolation, which was depressing and dirty, and

extending the quarantine for others because other detainees would get mad at me for their loss of privileges.

11. I also suffer from acid reflux and was referred by a physician to a gastrointestinal specialist for appropriate treatment of my acid reflux. After a long delay, an appointment was scheduled for me with a gastrointestinal specialist, Dr. Donald V Goens, M.D., a who prescribed the medication, Nexium. That prescription, however, was never filled. My attending physician and nurse at Otay Mesa told me this was because Otay Mesa refused to pay for the medication. Instead, Otay Mesa gave me lansoprazole. At first, I refused to take lansoprazole because it was unfamiliar to me and I know it was not what Dr. Goens prescribed. Once I learned that Dr. Goens said I could take it, I tried taking lansoprazole and it gave me horrible stomach pain. I later refused to take lansoprazole because of the side effects. I learned that Dr. Goens recommended I transition to Nexium instead of lansoprazole but I have not been provided Nexium.

12. While detained at Otay Mesa, I have been assaulted a couple of times by individuals whom I understand suffer from mental illness. I never provoked anyone with the intent of getting assaulted and no assault was related to COVID testing or a failure to get a COVID test. The few physical altercations I have been in will not impact my ability to vigorously represent the Medically Vulnerable Subclass (the "Class") as I want everyone to be treated fairly and in accordance with current health guidelines.

13. As I have learned, Otay Mesa is not providing detainees with information about current COVID-19 vaccination boosters. No one told me about the most recent COVID-19 booster that became available in September of this year. I learned about it from someone who works in the complaints department at Otay Mesa. When I asked to receive the latest booster, I was told I did not need it because of the vaccines I have already received.

3

DECL. OF HEVER ALBERTO MENDOZA LINARES

14. I have filed a Habeas Petition but do not know when the next hearing will be or when my petition will be decided.

15. I understand the responsibilities and am prepared to serve as a class representative in this matter. I have been informed and am aware of the current status of this case.

16. This Declaration was read to me in Spanish, and I authorize Raquel A. Zepeda to sign for me.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 9th day of November, 2023 in San Diego, California.

/s/ Hever Alberto Mendoza Linares
(with permission by R. Zepeda)
_____
Hever Alberto Mendoza Linares

I, Raquel A. Zepeda, do swear to the following statements and information, which I believe to be true and correct to the best of my knowledge.

1. My name is Raquel A. Zepeda. I am an attorney at Cooley LLP and a member of the California bar. I have personal knowledge of the facts herein and, if called to testify, could and would testify competently hereto.

2. On November 1, 2023, I had a phone call with Hever Alberto Mendoza Linares, who is a detainee at the Otay Mesa Detention Center. I took notes and formed them into the above declaration.

3. On November 9, 2023, I read the declaration back to Mr. Mendoza Linares over the phone in Spanish and he confirmed that the information in his declaration is true and correct, to the best of his knowledge.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

4

DECL. OF HEVER ALBERTO
MENDOZA LINARES


EXECUTED this 9th day of November, 2023 in San Francisco, California.

_____
Raquel A. Zepeda