1 | TARA K. McGRATH
United States Attorney
2 | KATHERINE L. PARKER, SBN 335097
Chief, Civil Division
3 | SAMUEL W. BETTWY, SBN 94918
Assistant U.S. Attorney
4 | COLIN M. MCDONALD, SBN 286561
Assistant U.S. Attorney
5 | Office of the U.S. Attorney
6 | 880 Front Street, Room 6293
San Diego, CA 92101-8893
7 | 619-546-7634/7125/9144 / 619-546-7751 (fax)

8 | Attorneys for the Federal Defendants-Respondents (Respondents)

9

10 | **UNITED STATES DISTRICT COURT**

11 | **SOUTHERN DISTRICT OF CALIFORNIA**

12

13 | ADRIAN RODRIGUEZ
ALCANTARA, et al.,
14 |
Plaintiffs-Petitioners,
15 |       v.
16 |
GREGORY J. ARCHAMBEAULT,
17 | San Diego Filed Office Director, ICE;
et al.,
18 |
19 |       Defendants-Respondents.

Case No. 20cv0756-DMS-AHG

RESPONSE IN OPPOSITION TO
PETITIONERS' SECOND MOTION TO
ADD NEW SUBCLASS
REPRESENTATIVES (ECF No. 250)

Date: December 15, 2023
Time: 1:30 p.m.
Courtroom: 13A, Carter/Keep
Hon. Dana M. Sabraw

20

21

22

23

24

25

26

27

28

# I

## INTRODUCTION

On May 22, 2023, the Court ordered Petitioners to file a motion to substitute a new class representative by June 5, 2023. On June 5, 2023, Petitioners filed a motion to substitute Hever Alberto Mendoza Linares (Mendoza) as the new class representative. On July 7, 2023, Respondents opposed the motion, showing why Mendoza would be an unsuitable class representative. On November 9, 2023, Petitioners filed both a reply and the instant motion to substitute two additional class representatives, both of whom have been at OMDC since 2020. Mendoza, Awais Muhammad, and Artemio Illenes-Garcia are in fact the only three detainees at OMDC who have been there since before February 2022. Petitioners did not seek leave to file a late motion and offered no reason why these two new proposed representatives were not included in their original motion. For that reason alone, the motion should be denied.

On the merits, Muhammad and Garcia, like Mendoza, cannot adequately represent any remaining subclass, and they further demonstrate that there is no basis to maintain a subclass and that this case is moot. As shown by their voluminous medical records, both have enjoyed extraordinary access to quality medical care at the OMDC medical clinic and, when indicated, UC San Diego Health. Both have been vaccinated against COVID-19, Muhammad received a booster on March 23, 2023, and Garcia has rejected three separate vaccinations, including the COVID-19 booster and the influenza vaccination. In their removal proceedings, each has received an adverse credibility finding, and each has been declared to lack mental competency. Moreover, as explained below, it does not even appear that Muhammad has a medical condition that places him within the subclass definition.

In any event, given their vaccinated statuses, Garcia and Muhammad cannot claim that their "medical conditions . . . place [them] at heightened risk of severe illness or death from COVID-19 as determined by CDC guidelines." ECF No. 41 at 13. Also, as stated in Respondents' response to Petitioners' motion to add Mendoza as a class representative, any

1

claim of indifference to medical needs is, apart from being baseless, a new claim outside the scope of the allegations and remaining claims in the petition.

The Court should deny Petitioners' motion to substitute Garcia and Muhammad as representatives of the provisional subclass.

## II

## BACKGROUND

The background of this case is well-known to the Court and is primarily set forth in Respondents' response in opposition to Petitioners' motion to substitute Mendoza as a new class representative. *See* ECF No. 224 at 6-8.

To briefly add to the background, Petitioners' three proposed class representatives— Muhammad, Mendoza, and Garcia are the *only* immigration detainees who have been at the facility since 2020. Decl. of Warden C. LaRose, ¶ 4. The immigration detainee with the next-longest detention at OMDC was admitted on February 28, 2022, more than one year after OMDC first began offering the COVID-19 vaccine to detainees. *Id.* ¶ 5. Moreover, OMDC has only 16 immigration detainees who were admitted in 2022. The remainder of the 1,179 immigration detainees at OMDC were admitted on or after January 9, 2023. *Id.* ¶ 6. And as outlined previously, the average length of stay for an immigration detainee at OMDC is 65 days. ECF No. 248-1 at ¶ 3. In other words, as discussed below, the proposed class representatives present highly unique, atypical circumstances.

## III

## THE PROPOSED CLASS REPRESENTATIVES

Respondents opposed Petitioners' motion to substitute Mendoza as a class representative because, among other things, he has received over 300 medical appointments at OMDC, has thrice been vaccinated against COVID-19, and has declined COVID-19 testing to avoid quarantining. *See generally* ECF No. 224. Like Mendoza, these newly proposed class representatives are unsuitable to represent any class—and their history of medical treatment at OMDC further confirms there is no need or statutory basis for a subclass in this case.

2

### A.   ARTEMIO GARCIA-ILLENES

Garcia is a native and citizen of Mexico who, on or about December 1, 1990, immigrated to the United States. Exh. 5 (10/13/20 Notice to Appear).[1]

On January 30, 2018, Garcia was convicted in the Superior Court of California, County of San Diego, for the offense of Sexual Penetration of Incompetent Person, in violation of California Penal Code section 289(b), for which he was sentenced to six years in prison. Exhs. 1-4 (abstract of judgment and complaint), 92 (5/3/23 IJ decision).

On October 13, 2020, Garcia was placed in removal proceedings and charged with deportability under 8 U.S.C. 1227(a)(2)(A)(iii) given his aggravated felony conviction. Exhs. 5-8.

Garcia arrived at OMDC in November 2020. On January 25, 2021, he was vaccinated with the Moderna COVID 19 Vaccine, series 1, and on February 18, 2021, he was vaccinated with the Moderna COVID 19 Vaccine, series 2. Exh. 9 (extract from medical records).

On April 1, 2021, the Immigration Judge (IJ) denied Garcia's applications for relief from removal, finding that he was not credible[2] and that his conviction constituted a crime that rendered him ineligible for the relief he was seeking. Exhs. 10-16.

On September 16, 2021, the BIA remanded the case for a new decision pursuant to new evidence regarding Garcia's credibility and directed the IJ to conduct a competency inquiry. Exhs. 17-18. [3]

---

[1] "Exh." refers to the accompanying, true copy of excerpts from the immigration records of Garcia and Muhammad.

[2] Immigration Judge Begovich set forth the basis of her adverse credibility finding in her April 1, 2021 oral decision. Exhs. 10-16. In particular, IJ Begovich confronted Garcia with the sordid details of the police report concerning his sexual assault of the victim who "was 39 years old, but had a mental age of 4 to 8 years old." Exh. 11. She found Garcia's claim that he was "bending over to tie his shoes and the victim fell on top of him" "completely unbelievable." She also noted that his version of what happened was "inconsistent with the two witnesses who actually saw him with his hand down her pants." Exh. 12.

[3] *See* 8 C.F.R. § 1240.4; *Matter of M-A-M-*, 25 I&N Dec. 474, 479–80 (BIA 2011); *Franco-Gonzalez Holder*, 2014 WL 5475097 (C.D. Cal. Oct. 29, 2014).

1    On December 8, 2021, the IJ determined that Garcia was competent and ordered him
2    removed. Exhs. 19-23.

3    Also on December 8, 2021, a nurse at OMDC's medical clinic offered Garcia a
4    COVID-19 booster shot; Garcia refused the booster, telling the nurse, "I don't want it." Exh.
5    24 (extract from medical record).

6    On June 27, 2022, the BIA reversed the IJ's competency determination, finding that
7    Garcia was "not competent to proceed without implementation of safeguards," noting
8    Garcia's "inability to provide coherent and responsive testimony during the hearing." Exhs.
9    25-26. The BIA therefore remanded the case for further proceedings and directed the IJ to
10   order a Qualified Representative for Garcia through the Executive Office for Immigration
11   Review's National Qualified Representative Program. *Id*.

12   On September 20, 2022, Garcia refused to be tested for COVID-19. Exh. 27 (extract
13   from medical record).

14   On January 31, 2023, Garcia's immigration counsel presented the expert testimony
15   of Dr. Julia Kuck in a merits hearing before the IJ that his mental condition affects his
16   capacity to participate in his removal proceedings. The expert testified that Garcia has a
17   "somatic symptom disorder" and "dissociative amnesia, which is selective for
18   autobiographical information," and that his "ability to speak also is limited by pain
19   complaints and concerns and compulsive focus on his physical health." Exhs. 35-36
20   (transcript of Dr. Cook's testimony).

21   On May 3, 2023, the IJ denied Garcia's application for relief from removal. Exhs.
22   91-103. The IJ stated that, despite Garcia's limited competency, he was adequately
23   represented by his Qualified Representative. Exh. 94. The IJ also found Garcia to be not
24   credible, Exh. 95 ("the Court finds Respondent is not a reliable historian"), noting, for
25   example: "While Respondent has repeatedly asserted that his pain is the result of metal

26
27
28

4

1  lodged in his head after he fell and hit his head in 2018, the results of the CT scan evidenced

2  no metal objects in Respondent's head." *Id*.[4]

3  Garcia appealed from the IJ's decision, and his immigration counsel wrote in her

4  August 8, 2023 brief to the BIA that Garcia was "hyper focused on his physical health which

5  includes medical conditions that may or may not exist." Exh. 114.

6  On September 25, 2023, the BIA dismissed the appeal. Exhs. 121-32 (9/25/23 BIA

7  decision). On October 5, 2023, Garcia petitioned for review by the Ninth Circuit. *Garcia-*

8  *Illenes v. Garland*, No. 23-2592 (9th Cir.). Exh. 125 (docket sheet). That petition remains

9  pending.

10  As Garcia's voluminous medical records display, he has received significant medical

11  attention at OMDC and UC San Diego Health, even as recently as November 14, 2023. *See*

12  ALCANTARA-AGI-000001.[5] Moreover, Garcia has repeatedly rejected medical care—

13  including multiple vaccinations—at OMDC, including:

14
- November 8, 2023: refused sick call. ALCANTARA-AGI-000427
15
- October 27, 2023: refused dental cleaning. ALCANTARA-AGI-000428
- October 25, 2023: refused dental sick call and annual dental exam.
16
  ALCANTARA-AGI-000429
- July 3, 2023: refused lab testing. ALCANTARA-AGI-000032
17
- June 27, 2023: refused lab testing. ALCANTARA-AGI-000033
- **September 20, 2022: refused COVID-19 test**. ALCANTARA-AGI-
18
  000433
19
- September 17, 2022: refused lab testing. ALCANTARA-AGI-000041
- September 15, 2022: refused lab testing. ALCANTARA-AGI-000042
20
- August 17, 2022: refused lab testing. ALCANTARA-AGI-000043
- July 27, 2022: refused sick call. ALCANTARA-AGI-000438
21
- July 17, 2022: refused sick call. ALCANTARA-AGI-000439
22
- May 7, 2022: refused lab testing. ALCANTARA-AGI-000442
- April 7, 2022: refused lab testing. ALCANTARA-AGI-000054
23
- January 31, 2022: refused lab testing. ALCANTARA-AGI-000055
- January 22, 2022: refused lab testing. ALCANTARA-AGI-000060
24

25  [4] In the motion, Garcia claims he has asthma. However, during a medical appointment in
   November 2021, he denied having asthma. ALCANTARA-AGI-000694. And in his initial
26  health screening, Garcia did not indicate that he had asthma. *See* ALCANTARA-AGI-
   001126.
27  [5] Garcia's OMDC medical records are being separately filed under seal. Citations to those
   records refer to the bates numbers inserted on the bottom right corner of the records
28  (ALCANTARA-AGI-. . .).

- December 16, 2021: refused a sick call. ALCANTARA-AGI-000449
- December 10, 2021: refused lab testing. ALCANTARA-AGI-450
- December 8, 2021: **refused COVID-19 booster shot.** Exh. 24 (extract from medical record)
- October 27, 2021: **refused influenza vaccination**. ALCANTARA-AGI-000448.
- September 27, 2021: refused lab testing. ALCANTARA-AGI-000083
- August 30, 2021: **refused PNEUMOVAX vaccination**. ALCANTARA-AGI-000446
- May 16, 2021: refused blood pressure check. ALCANTARA-AGI-000447

In short, Garcia's medical records demonstrate that he has extraordinary access to healthcare both within OMDC and at outside hospitals when needed.[6] These records further show that he has refused medical care numerous times—including refusing three separate vaccinations—during his time at OMDC.

## B.   AWAIS MUHAMMAD

Muhammad turned 31 years old in July 2023. He is a native and citizen of Pakistan who entered the United States unlawfully on March 6, 2020, and was placed in removal proceedings. Exh. 126 (Notice to Appear). According to a Report of Investigation that ICE filed with the Immigration Court, ICE "has a national security interest in regards to Awais Muhammad." Exh. 128 (Report of Investigation). Muhammad was placed at OMDC in March 2020.

In his October 25, 2023 sworn statement, Muhammad states: "When I contracted COVID the first time, my symptoms were very bad. I really felt like I was going to die. The doctors in the detention center tried to treat me, but it did not work. I had pain everywhere, difficulty breathing, and light-headedness." ECF No. 250-2, ¶ 3. His medical records reveal the contrary, however.

---

[6] That is likely part of the reason Garcia's immigration counsel referred to OMDC as a "structured and safe environment" for Garcia in a February 2023 brief to the IJ:

> [Garcia] requires more care than he is currently receiving at Otay Mesa Detention Center. Nonetheless, if removed to Mexico Mr. Garcia Illenes will be forced out of *his current structured and safe environment* and be vulnerable to harm from different sources.

Exh. 82 (February 2023 brief) (emphasis added).

6

On April 29, 2020, Muhammad took a COVID-19 test after complaining of body aches and a headache. ALCANTARA-AM-000985; ALCANTARA-AM-001114. The next day, while awaiting results of the COVID test, Muhammad received a follow-up appointment. At that time, Muhammad's lungs showed "good air movement," and "no cough" was noted. ALCANTARA-AM-000995. Muhammad's COVID test came back positive on May 2, 2020. ALCANTARA-AM-001114. On that date, Muhammad appeared to be "in no acute distress." His lungs were "normal" and "clear to auscultation." ALCANTARA-AM-000993. Muhammad's main concern that day appears to be acid reflux: "Patient states that after dinner he feels like he is having acid reflux and is burping a lot that is uncomfortable. Because of this he is having a headache and ran out of his acetaminophen." *Id.*

During his stint with COVID-19, Muhammad received constant medical care from OMDC staff. *See, e.g.,* ALCANTARA-AM-000966-995. Records of that care reveal that he recovered quickly and never became seriously ill.[7] For instance:

> 5/4/2020: Vital signs taken, normal. ALCANTARA-AM-000990
> 5/5/2020: 27yo male to sc for nausea for 2days. pt is covid positive. *denies* f/c, cough, loose stool, never vomited. takes about 1 cup of water daily. ate a biscut in AM, some chicken for dinner so far due to nausea. recently seen for HA given apap w/ some improvment. *denies* vision change, dizziness.
> …
> General/Constitutional:
> Dizziness *Denies*. Vision Changes *Denies*. Chills *denies*. Fever *denies*. Lightheadedness *denies*.
> Gastrointestinal:
> Abdominal pain *denies*. Constipation *denies*. Decreased appetite admits. Diarrhea *denies*. Heartburn *denies*.

---

[7] Muhammad was 27 years old at the time. His experience is consistent with the CDC's findings regarding the correlation between age and COVID outcomes. According to the CDC, "Age remains the strongest risk factor for severe COVID-19 outcomes, with risk of severe outcomes increasing markedly with increasing age. Based on data from the National Vital Statistics System (NVSS) at NCHS (Risk for COVID-19 Infection, Hospitalization, and Death By Age Group), compared with ages 18–29 years, the risk of death is 25 times higher in those ages 50–64 years, 60 times higher in those ages 65–74 years, 140 times higher in those ages 75–84 years, and 340 times higher in those ages 85+ years." https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last updated Feb. 9, 2023).

7

Vomiting *denies*. Weight loss *denies*.

Neurologic:

Numbness or burning on face, hands, or feet *Denies*. Disorientation *Denies*. Balance difficulty *denies*. Difficulty speaking *denies*. Loss of strength *denies*. Tingling/Numbness *denies*.

…

97.8 F

ALCANTARA-AM-000985 (emphasis added).

5/6/2020: temperature of 97 F. ALCANTARA-AM-000982.

5/7/2020: 97.5 F; not in pain. ALCANTARA-AM-000980.

5/8/2020: 98.4 F; not in pain. ALCANTARA-AM-000978.

5/9/2020: 98.0 F; not in pain. ALCANTARA-AM-000976.

5/10/2020: 98.2 F; not in pain. ALCANTARA-AM-000974.[8]

According to Muhammad, he contracted COVID-19 a second time, ECF No. 250-2, ¶ 3, but his medical records do not reflect that.

By May 15, 2020, Muhammad reported that he had not had any COVID-19 symptoms for seven days. ALCANTARA-AM-000962 ("detainee stated not having any covid19 symptoms for 7 days"). At that appointment, Muhammad was "in no acute distress," was "alert," "oriented," his temperature was 97.6 F, he denied being in any pain, and he was "not complaining of any signs and symptoms of covid19." *Id.*; *see also* ALCANTARA-AM-000958-961 (daily follow-up checks on 5/16/2020 and 5/17/2020). In short, Muhammad's current claims about his stint with COVID are not credible.

On March 29, 2021, the IJ denied Muhammad's application for relief from removal and ordered him removed to Pakistan. The IJ also determined that Muhammad "was not a credible witness." Exhs. 131, 135. On May 25, 2021 Muhammad appealed to the BIA, and on August 19, 2021, the BIA affirmed the IJ's decision. Exh. 139.

On May 19, 2021, Muhammad was vaccinated with the Moderna COVID-19 vaccine, series 1, at the OMDC medical clinic, and on June 16, 2021, he was vaccinated with the Moderna COVID-19 vaccine, series 2. Exh. 144 (extract from medical records).

---

[8] *See also* daily follow-up medical checks 5/11/2020 through 5/14/2020, ALCANTARA-AM-000972–966.

20cv0756-DMS-AHG

On August 27, 2021, Muhammad petitioned for review by the Ninth Circuit, *Muhammad v. Garland*, No. 21-649 (9th Cir.), Exh. 141 (docket sheet), but then the administrative removal proceedings were reopened, and on June 30, 2022, the case was remanded to the IJ for further proceedings. Exh. 143.

On March 7, 2023, Muhammad received the Moderna COVID-19 bivalent booster at the OMDC medical clinic. Exh. 144 (extract from medical records).[9]

On April 11, 2023, the IJ found that Muhammad is not competent to represent himself and granted numerous safeguards. Exh. 150 ("the respondent is suffering from a mental disorder that impairs his ability to perform a function required by the definition of competence to represent oneself.").

Muhammad appears to claim that he is receiving inadequate medical care at OMDC, ECF No. 250-2, but during his time at OMDC, he has rejected medical care at least 35 times:

- 9/24/20   sick call, ALCANTARA-AM-000737
- 4/19/21   tooth extraction, ALCANTARA-AM-000733
- 6/9/21    tooth extraction, ALCANTARA-AM-000732
- 1/22/22   tooth extraction, ALCANTARA-AM-000730
- 6/9/22    tooth extraction, ALCANTARA-AM-000724
- 6/24/22   tooth extraction, ALCANTARA-AM-000722
- 8/10/22   tooth extraction, ALCANTARA-AM-000721
- 8/30/22   tooth extraction, ALCANTARA-AM-000720
- 9/27/22   hunger strike evaluation, ALCANTARA-AM-000718
- 9/28/22   hunger strike evaluation, ALCANTARA-AM-000717
- 9/30/22   hunger strike evaluation, ALCANTARA-AM-000716
- 10/1/22   hunger strike evaluation, ALCANTARA-AM-000715
- 10/2/22   hunger strike evaluation, ALCANTARA-AM-000714
- 10/4/22   hunger strike evaluation (at 8am, 9am, 10am), ALCANTARA-AM-000712-13
- 10/5/22   hunger strike evaluation, ALCANTARA-AM-000711
- 10/8/22   hunger strike evaluation, ALCANTARA-AM-000710
- 10/10/22 hunger strike evaluation, ALCANTARA-AM-000709
- 10/11/22 hunger strike evaluation, ALCANTARA-AM-000708
- 10/19/22 hunger strike evaluation, ALCANTARA-AM-000707
- 10/20/22 hunger strike evaluation, ALCANTARA-AM-000706
- 10/21/22 sick call to check vital signs (8am, 10:30am), ALCANTARA-AM-000704-05

[9] Muhammad's OMDC medical records are being separately filed under seal. Citations to those records refer to the bates numbers inserted on the bottom right corner of the records (ALCANTARA-AM-. . .).

9

- 10/27/22 sick call to check vital signs, ALCANTARA-AM-000703
- 10/30/22 sick call to check vital signs, ALCANTARA-AM-000702
- 11/7/22  sick call, ALCANTARA-AM-000701
- 11/8/22  sick call, ALCANTARA-AM-000700
- 12/23/22 tooth extraction, ALCANTARA-AM-000699
- 1/5/23    dental, ALCANTARA-AM-000698
- 1/6/23    tooth extraction, ALCANTARA-AM-000697
- 1/11/23  groin pain, ALCANTARA-AM-000696
- 4/26/23  mental health, ALCANTARA-AM-000693
- 5/25/23  tooth extraction, ALCANTARA-AM-000692
- 7/10/23  medication, ALCANTARA-AM-000686
- 7/19/23  sick call, ALCANTARA-AM-000685

Like Garcia, Muhammad's medical records demonstrate that he has extraordinary access to healthcare at OMDC.

## IV

## ANALYSIS

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Among other things, a proffered class representative must be a class member and be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The proposed class representatives do not meet these requirements.

### A.    MUHAMMAD DOES NOT APPEAR TO BE A SUBCLASS MEMBER

Petitioners claim that Muhammad is "medically vulnerable within the meaning of the class definition," ECF No. 250 at 4, but they do not attempt to explain how his medical condition makes him a subclass member. They claim that Muhammad has "significant respiratory problems as well as severe pain in his throat, eyes, back and extremities. He also suffers intermittent bouts of tunnel vision, dizziness, and chronic low blood pressure." ECF No. 250 at 4–5 (citation omitted). However, none of those alleged issues appears on the CDC's high-risk list, *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.[10] There is nothing in Muhammad's

---

[10] The subclass definition is: "All civil immigration detainees incarcerated at the Otay Mesa Detention Center who are age 60 or over or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19 as determined by CDC guidelines." ECF No. 41 at 13.

1   voluminous medical records that indicates he is a subclass member, so Petitioners' motion

2   should be denied as to him for this threshold reason. *See Betts v. Reliable Collection Agency,*

3   *Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) (referring to "the fundamental requirement that

4   the representative plaintiff must be a member of the class he represents.").

5       B.    INADEQUACY UNDER FED. R. CIV. P. 23(a)(4)

6       The subclass representatives must not have any conflicts of interest with other class

7   members, and they must be able to act vigorously on behalf of the subclass members. *See*

8   *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). As explained below, neither Garcia

9   nor Muhammad can satisfy these requirements. It has been formally determined in removal

10  proceedings that each lacks credibility and mental competency, both repeatedly refuse

11  medical care, and both are preoccupied with issues that are specific to them and inconsistent

12  with the interests of other detainees at OMDC.

13      As for credibility, "[t]he honesty and credibility of a class representative is a relevant

14  consideration when performing the adequacy inquiry because an untrustworthy plaintiff

15  could reduce the likelihood of prevailing on the class claims." *Nunez v. BAE Sys. San Diego*

16  *Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1035 (S.D. Cal. 2017) (quotation omitted); *see also*

17  *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986) ("[I]t is self-

18  evident that a Court must be concerned with the integrity of individuals it designates as

19  representatives for a large class of plaintiffs.").

20      While credibility problems do not "automatically" render a proposed class

21  representative inadequate, *see Harris v. Vector Marketing Corp.*, 753 F. Supp. 2d 996, 1015

22  (N.D. Cal. 2010), particularly "sharp" credibility attacks, jeopardizing the interest of absent

23  class members, may render putative class representatives inadequate. *Id.* Relatedly, it is

24  "[w]ithin the Court's sound discretion" to deny class certification "if there is a strong

25  indication that Plaintiff's testimony 'might not be credible.'" *Hall v. Nat'l Recovery Sys.,*

26  *Inc.*, No. 96-132, 1996 WL 467512, at *5 (M.D. Fla. Aug. 9, 1996) (quoting *Amswiss Int'l*

27

28

11

*Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 671 (N.D. Ga. 1975)).[11] When courts have found integrity and credibility to be "relevant considerations," the analysis has been focused on factors "that are both directly relevant to the litigation and supported by confirmed examples of dishonesty." *Kouchi v. Am. Airlines, Inc.*, No. CV 18-7802 PSG (AGRx), 2021 WL 6104391, at *9 (C.D. Cal. Oct. 27, 2021) (internal quotation marks omitted).

Here, lack of credibility weighs heavily against both Garcia and Muhammad as adequate class representatives. The IJ found that Garcia was "not a reliable historian" regarding his health, Exh. 95, noting that "[w]hile [Garcia] has repeatedly asserted that his pain is the result of metal lodged in his head after he fell and hit his head in 2018, the results of the CT scan evidenced no metal objects in [Garcia's] head." *Id.* In the instant motion, Garcia claims he has asthma, ECF No. 250-1, ¶ 3, but he did not reveal that during his initial health screening, ALCANTARA-AGI-001126, and during a medical appointment in November 2021, he denied having asthma. ALCANTARA-AGI-000694. He claims that he has contracted COVID at OMDC, ECF No. 250-1, ¶ 3, but it is not reflected in his medical records.[12] He avers: "I want to have the latest version of the vaccine, because I want to be as protected against COVID as possible," yet he rejected the booster when it was offered to him in December 2021, and he refused to be tested in September 2022. As recently as August 2023, Garcia's own attorney summarized Garcia as being "hyper focused on his physical health which includes *medical conditions that may or may not exist*." Exh. 114 (emphasis added). In sum, Garcia's distorted perception of his own health makes him an inadequate class representative.

---

[11] *See Smyth v. Carter*, 168 F.R.D. 28, 33 (W.D. Va. 1996) (citing *Greene v. Brown*, 451 F. Supp. 1266, 1275–76 (E.D. Va. 1978) (denying to permit class representation by "a person lacking either in candor or in understanding" who was "not willing to be entirely open and candid in discovery" despite capabilities of her attorney)); *Kilpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987) ("named plaintiffs might not qualify as adequate class representatives because they do not possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative.") (internal quotations omitted).
[12] *See* ALCANTARA-AGI-000403 (on 1/25/2021, denied ever testing positive to COVID-19).

In addition, Garcia lacks mental competency. Although it is not an automatic disqualifier, *see Surowitz v. Hilton Hotels*, 383 U.S. 363, 366 (1966), it is another among multiple factors that cut against his adequacy to represent the subclass.

Because Garcia has refused to be tested for COVID-19 and has declined the booster, he cannot credibly maintain that OMDC has placed him in conditions that increase his risk of injury from COVID-19. Garcia cannot have it both ways. *See, e.g.*, *United States v. King*, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("In declining vaccination, Defendant declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction.") (quotation and formatting omitted); *Martinez v. CoreCivic*, No. CV 20-1309 WJ/CG, 2021 WL 2550319, at *7 (D.N.M. June 22, 2021) ("Furthermore, Von Rotz has refused the vaccine, i.e., the epitome of protection against the virus absent natural immunity. A refusal itself moots this action."). Further, Garcia's refusal to take the booster and test for COVID-19 creates antagonism between him and other OMDC detainees who may have been exposed to COVID-19 because of his own decisions. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) ("Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."). Garcia cannot adequately represent a class intent on pressing constitutional claims against OMDC for its COVID-19 response.

Nor can Muhammad. As outlined above, Muhammad has not established that he fits within any high-risk COVID category, especially given his rapid recovery in 2020. He does not appear to be a member of the class he seeks to represent. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (quotation omitted). Like Garcia, Muhammad lacks competency and credibility. As set forth above, it appears that he misrepresented to this Court his experience when he contracted COVID-19 in April 2020. And like Mendoza, Muhammad has self-interests that are at odds with those

13

of the subclass and, for that matter, all detainees at OMDC. He has a history of hunger-striking and refusing medical care. Muhammad cannot adequately represent the subclass either.

In sum, for all the above reasons, neither Garcia nor Muhammad would be an adequate subclass representative.

### C.   LACK OF TYPICALITY UNDER FED. R. CIV. P. 23(a)(3)

Just as Respondents explained about Mendoza's claims, ECF No. 224 at 14-16, neither Muhammad nor Garcia can satisfy Rule 23's typicality requirement. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Broadly speaking, Mendoza, Garcia, and Mohammed comprise a unique, discrete group. They are the only three detainees who have been detained at OMDC since before introduction of the vaccine,[13] and they are the only three that have been at OMDC since before February 2022. Decl. of Warden C. LaRose at ¶¶ 4-5. All other detainees and potential subclass members represent a new generation of detainees for whom the average stay is 65 days. ECF No. 248-1 at ¶ 3. Unlike Mendoza, Garcia, and Muhammad, current potential subclass members lived in the world at large during the pandemic with ample opportunities to become vaccinated. During their relatively brief sojourn at OMDC, detainees are provided with access to high-quality medical care, which can hardly be characterized as "punishment." Mendoza, Garcia, and Muhammad's grievances relate more to their prolonged removal proceedings, not to whether they have adequate access to COVID-19 boosters and anti-viral therapies. From the start, then, their circumstances are entirely atypical of the remaining population at OMDC.

///

///

---

[13]   HHS, COVID-19 Vaccines, https://www.hhs.gov/coronavirus/covid-19-vaccines/ ("Vaccinations in the United States began on December 14, 2020.").

14

Separately, in *Hanon*, the Ninth Circuit joined several other circuits in holding that a "named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 180 (2d Cir. 1990)[14]). In *Hanon*, that meant a proposed class representative did not meet Rule 23(a)'s typicality requirement where his "unique background and factual situation [would] require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class." *Id.* at 508 (citing *Hoexter v. Simmons*, 140 F.R.D. 416, 422–23 (D. Ariz. 1991) (named plaintiffs may not serve as class representatives because their prior litigation experience as plaintiffs was so extensive it would inevitably subject them to unique defenses concerning their reliance on the market's integrity in purchasing stock)); *see also Ellis*, 657 F.3d at 984 (under *Hanon*, reversing and remanding for district court to consider whether unique defenses prevented proposed class representatives from satisfying Rule 23(a)'s typicality requirement).

Here, for both Muhammad and Garcia, their medical histories, plus their credibility and competency issues, give rise to atypical, fact-specific issues. Garcia previously rejected a COVID-19 booster and testing, which creates immediate clash between him and other OMDC detainees. Courts reject out-of-hand claims pertaining to COVID-19 exposure where detainees or inmates have refused to vaccinate. *See Martinez v. CoreCivic*, 2021 WL 2550319, at *8 (the availability of the "vaccine must smother all attempts by prisoners or pre-trial detainees to request COVID-19-related relief based upon the theory that the risk of infection violates the constitution"). Muhammad has a history of hunger-striking and refusing medical care, so he cannot credibly advocate for better medical treatment at OMDC. Moreover, Muhammad has caught and recovered from COVID-19 (twice, according to him), and received a complete COVID-19 vaccination series and a booster at OMDC. His extensive medical records disprove any claims of indifference to medical needs. And, as stated above, Muhammad has not even established that he fits within the

---

[14] *Abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017).

1  class definition, and given his lack of credibility, he would have to "prepare to meet" that

2  atypical defense, namely whether he is a class member at all. *See Hanon*, 976 F.2d at 508.

3       Neither Garcia nor Muhammad are typical of other detainees at OMDC, which makes

4  them inappropriate subclass representatives.

5       D.     MOOTNESS DUE TO COVID-19 VACCINATION STATUS

6       Like the claims of Mendoza, the claims of both Muhammad and Garcia are moot

7  because of the availability of the COVID-19 vaccine. Garcia was vaccinated twice and has

8  refused a booster, and Muhammad has been vaccinated twice and received a booster on

9  March 23, 2023. *See Martinez*, 2021 WL 2550319, at *7 ("the mere availability of the

10  vaccine at CCCC also moots this action (and strips standing from all detainees for all future

11  risk-based coronavirus actions)"); *United States v. Williams*, No. 5:01-CR-00012-KDB,

12  2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021) ("Being vaccinated against COVID-19

13  seriously undermines Defendant's assertion that 'extraordinary and compelling reasons'

14  warrant his release from prison."); *United States v. Singh*, 525 F. Supp. 3d 543, 546–47

15  (M.D. Pa. Mar. 11, 2021) ("[T]he Court concludes that Singh's recent vaccination mitigates

16  his risk from COVID-19 to such an extent that COVID-19, in combination with Singh's

17  underlying conditions, no longer presents an extraordinary and compelling reason to grant

18  compassionate release."); *United States v. Folkes*, No. 18-CR-257-KAM, 2022 WL

19  1469387, at *6 (E.D.N.Y. May 10, 2022) ("Courts have nearly uniformly denied

20  compassionate release to defendants who either have been vaccinated against COVID-19

21  or were offered yet refused the vaccine.").

22  ///

23  ///

24  ///

25

26

27

28

16

V

CONCLUSION

Neither Muhammad nor Garcia would be an appropriate class representative. Apart from the fact that the claims of both are moot by virtue of their COVID-19 vaccination status and the availability of boosters, Muhammad's alleged medical conditions do not even fall within the subclass definition, Garcia has repeatedly refused medical care, including a COVID-19 booster and COVID-19 testing, both have received adverse credibility findings in their removal proceedings, both have been declared incompetent in those proceedings, and both have stays at OMDC dating back to 2020 that bear no resemblance to the current population at OMDC. Petitioners' motion to substitute Muhammad and Garcia as class representatives should be denied.

DATED: December 1, 2023                         Respectfully submitted,

                                                TARA K. McGRATH
                                                United States Attorney

                                                KATHERINE L. PARKER
                                                Chief, Civil Division

                                                s/ *Samuel W. Bettwy*
                                                SAMUEL. W. BETTWY
                                                Assistant U.S. Attorney

                                                s/ *Colin M. McDonald*
                                                COLIN M. MCDONALD
                                                Assistant U.S. Attorney

                                                Attorneys for Defendants-Respondents

17