# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ADRIAN RODRIGUEZ ALCANTARA, et al., | Case No. 20cv0756-DMS-AHG |
| Plaintiffs-Petitioners, | |
| v. | **EXHIBITS** |
| GREGORY J. ARCHAMBEAULT, San Diego Filed Office Director, ICE; et al., | |
| Defendants-Respondents. | |

**GARCIA EXHIBITS**

| | |
|---|---:|
| 2018-01-30 conviction records | 1-4 |
| 2020-10-13 Notice to Appear | 5-8 |
| 2021-02-18 COVID vaccines | 9 |
| 2021-04-01 IJ decision | 10-16 |
| 2021-09-16 BIA decision | 17-18 |
| 2021-12-08 IJ decision (found competent) | 19-23 |
| 2021-12-08 refused booster | 24 |
| 2022-06-27 BIA decision | 25-26 |
| 2022-09-20 refused COVID test swab | 27 |
| 2023-01-31 transcript Dr testimony (somatic symptom disorder) | 28-80 |
| 2023-02-00 Respondent's brief to IJ (re safe environment) | 81-90 |
| 2023-05-03 IJ decision | 91-103 |
| 2023-05-22 G-28 (Yolanda Felix) | 104-05 |
| 2023-08-08 Respondent's brief to BIA (hyper-focused on medical) | 106-20 |
| 2023-09-25 BIA order | 121-23 |
| 2023-10-05 9th Circuit docket sheet, *Garcia v. Garland*, No. 23-2592 | 124-25 |

**MUHAMMAD EXHIBITS**

2020-06-18 Notice to Appear                                                    126-27

2020-08-05 ROI (national security concern)                                        128

2021-03-29 IJ decision                                                         129-36

2021-03-29 IJ minute order                                                     137-38

2021-08-19 BIA decision without opinion                                           139

2021-08-27 9th Circuit docket sheet, *Muhammad v. Garland*, No. 21-649          140-42

2022-06-30 BIA remand order                                                       143

2023-03-23 COVID-19 shots                                                         144

2023-04-11 IJ decision (not competent)                                         145-51

1

Allegations: Admits All • Charges: Concedes All
Case 3:20-cv-00756-DMS-AHG Document 254-2 Filed 12/01/23 PageID.10113 Page 3 of 153
Uploaded on: 10/15/2020 at 10.08.26 a.m. (Pacific Daylight Time) Base City: OTM

GB

**FELONY ABSTRACT OF JUDGMENT—DETERMINATE**
**SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM**
*(Not to be used for multiple count convictions or for 1/3 consecutive sentences)*

CR-290.1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
SAN DIEGO

| PEOPLE OF THE STATE OF CALIFORNIA vs | DOB: | CASE NUMBER |
|---|---|---|
| DEFENDANT: Garcia, Artemio Illenes | | SCD275258 |
| AKA: | | |
| CII NO : 37373801 | | |
| BOOKING NO. 18103302  BH5789  ☐ NOT PRESENT | | |

FELONY ABSTRACT OF JUDGMENT   ☐ AMENDED ABSTRACT
☑ PRISON COMMITMENT   ☐ COUNTY JAIL COMMITMENT

| DATE OF HEARING 09-26-18 | DEPT. NO. 1102 | JUDGE Timothy Walsh | |
|---|---|---|---|
| CLERK A. Tenorio | REPORTER C. Montes | PROBATION NO. OR PROBATION OFFICER 21429812 | ☐ IMMEDIATE SENTENCING |
| COUNSEL FOR PEOPLE S. Pirrello | | COUNSEL FOR DEFENDANT B. McNeil | ☑ APPOINTED |

1. Defendant was convicted of the commission of the following felony:

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YEAR) | JURY | COURT | PLEA | TERM (L, M, U) | SERIOUS FELONY | VIOLENT FELONY | TIME IMPOSED YRS | MOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | PC | 289(b) | Sexual Penetration of incompetent person | 2017 | 01-30-18 | | | X | M | | | 6 | 0 |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed, "S" for stayed, or "PS" for punishment struck. DO NOT LIST ENHANCEMENTS FULLY STRICKEN by the court.

| COUNT | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S" or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed, "S" for stayed, or "PS" for punishment struck. DO NOT LIST ENHANCEMENTS FULLY STRICKEN by the court.

| ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S" or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |

4. Defendant sentenced: ☐ to county jail per PC 1170(h)(1) or (2) ☐ per PC 667(b)-(i) or PC 1170.12 (strike prior)
☐ to prison per PC 1170(a) or 1170(h)(3) due to ☐ current or prior serious or violent felony ☐ PC 290 or ☐ PC 186.11 enhancement
☐ PC 1170(a)(3). Pre-confinement credits equal or exceed time imposed. ☐ Defendant ordered to report to local parole or probation office upon release.

5. FINANCIAL OBLIGATIONS (plus any applicable penalty assessments):
Restitution Fine(s): $ 1800 per PC1202.4 (b) forthwith per PC 2085.5 if prison commitment. $ 1800 per PC 1202.45 suspended unless parole is revoked.
$ _____ per PC 1202.44 is now due, probation having been revoked.
Restitution per PC1202.4 (f): ☐ $ _____ ☐ Amount to be determined to ☐ * victim(s) ☐ Restitution Fund
* Victim name(s), if known, and amount breakdown in item 8, below. *☐ Victim name(s) in probation officer's report.
Fine(s): $ _____ per PC 1202.5, $ _____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☑ Includes: ☐ $ _____ Lab Fee per HS 11372.5(a) ☐ $ _____ Drug Program Fee per HS 11372.7(a) for each qualifying offense.
☑ Court Operations Assess.: $ 40 per PC 1465.8. ☑ Conviction Assess.: 30 per GC 70373. ☑ Other $ 154 per (specify): GC2955

6. TESTING: a. ☑ Compliance with PC 296 verified b. ☐ AIDS per PC 1202.1 c. ☐ other (specify): _____
7. IMMEDIATE SENTENCING: ☐ Probation to prepare and submit a post sentence report to CDCR por PC 1203c. Deft's Race / National Origin _____
8. Other orders (specify): Fee imposed $300 per PC290.3

| 9. TOTAL TIME IMPOSED: | 6 | 0 |
|---|---|---|

10. ☐ MANDATORY SUPERVISION: Execution of a portion of the total jail time imposed in item 9 is suspended and deemed a period of mandatory supervision under PC 1170(h)(5)(B) as follows. Suspended portion: _____ Served forthwith: _____

11. ☐ This sentence is to run concurrent with (specify): _____   12. Registration Required: ☑ per (specify code section): PC290
13. Execution of sentence imposed: a. ☑ at initial sentencing hearing. b. ☐ at resentencing per decision on appeal. c. ☐ after revocation of probation.
d. ☐ at resentencing per recall of commitment. (PC 1170(d).) e. ☐ other (specify): _____

| 14. | DATE SENTENCE PRONOUNCED | CREDIT FOR TIME SPENT IN CUSTODY TOTAL DAYS | ACTUAL LOCAL TIME | LOCAL CONDUCT CREDITS | TIME SERVED IN STATE INSTITUTION |
|---|---|---|---|---|---|
| | 09-26-18 | 508 | 254 | ☐ 2933  ☐ 2933.1  ☑ 4019  254 | DMH [ ] CDCR [ ] DRC [ ] |

15. The defendant is remanded to the custody of the sheriff ☑ forthwith ☐ after 48 hours excluding Saturdays, Sundays, and holidays.
To be delivered to ☑ the reception center designated by the director of the California Department of Corrections and Rehabilitation.
☐ county jail ☐ Other (specify): _____

CLERK OF THE COURT: I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE 9-27-18 |
|---|---|

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.
Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
CR-290.1 [Rev. July 1, 2012]

**FELONY ABSTRACT OF JUDGMENT—DETERMINATE**
**SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM**

Penal Code,
§§ 1170, 1213, 1213.5

Exh. 1 - Adm.

IN CUSTODY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
### CENTRAL DIVISION

FILED
CRIMINAL RECORDS
2018 JAN 18 PM 2:00
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>                                    Plaintiff,<br><br>v.<br><br>ARTEMIO ILLENES GARCIA,<br>   dob ████, Booking No. 181033024;<br><br>                                    Defendant | CT No.  CD275258<br>DA No.  AEH185<br><br>COMPLAINT-FELONY |

| INFORMATION |
|---|
| Date: _____ |

# COPY

## PC296 DNA TEST STATUS SUMMARY

| Defendant | DNA Testing Requirements |
|---|---|
| GARCIA, ARTEMIO ILLENES | DNA sample required upon conviction |

### CHARGE SUMMARY

| Count | Charge | Issue Type | Sentence Range | Special Allegations | Allegation Effect |
|---|---|---|---|---|---|
| 1 | PC664\PC209(b)(1)<br>GARCIA, ARTEMIO ILLENES | Felony | 5-7-9 | | |
| 2 | PC289(b)<br>GARCIA, ARTEMIO ILLENES | Felony | 3-6-8 | | |
| 3 | PC289(b)<br>GARCIA, ARTEMIO ILLENES | Felony | 3-6-8 | | |
| 4 | PC243.4(a)<br>GARCIA, ARTEMIO ILLENES | Felony | 2-3-4 | | |

PC1054.3                                    INFORMAL REQUEST FOR DISCOVERY

The undersigned, certifying upon information and belief, complains that in the County of San Diego, State of California, the Defendant(s) did commit the following crime(s):

Exh. 1 - Adm.                    Page 1 of 3, Court Case No. CD275258

Allegation: 3:20-cv-00756-DMS-AHG... Series...
Uploaded in Country... 10/13/2020 at 11:08:26 a.m. (Pacific Daylight Time)   Base City: OTM
Designated in Country: Mexico

# CHARGES

## COUNT 1 - ATTEMPT KIDNAP FOR SPECIFIC FELONY CRIME

On or about September 13, 2017, ARTEMIO ILLENES GARCIA, did unlawfully attempt to kidnap and carry away HIEU Q. to commit a violation of Penal Code Section 289, in violation of PENAL CODE SECTION 209(b)(1) and PENAL CODE SECTION 664.

## COUNT 2 - SEXUAL PENETRATION OF INCOMPETENT PERSON BY FOREIGN OBJECT

On or about September 13, 2017, ARTEMIO ILLENES GARCIA did unlawfully cause the penetration of the genital of another person by a foreign object when such person was incapable, because of mental disease, defect, disorder and physical disability, of giving legal consent and this was known and reasonably should have been known to the defendant in violation of PENAL CODE SECTION 289(b).

## COUNT 3 - SEXUAL PENETRATION OF INCOMPETENT PERSON BY FOREIGN OBJECT

On or about September 13, 2017, ARTEMIO ILLENES GARCIA did unlawfully cause the penetration of the anal openings of another person by a foreign object when such person was incapable, because of mental disease, defect, disorder and physical disability, of giving legal consent and this was known and reasonably should have been known to the defendant in violation of PENAL CODE SECTION 289(b).

## COUNT 4 - SEXUAL BATTERY BY RESTRAINT

On or about and between August 1, 2017 and September 13, 2017, ARTEMIO ILLENES GARCIA did willfully and unlawfully touch an intimate part of HIEU Q. person while said person was unlawfully restrained by said defendant and an accomplice, against the will of said person and for the purpose of sexual arousal, sexual gratification and sexual abuse, in violation of PENAL CODE SECTION 243.4(a).

NOTICE: Any defendant named on this complaint who is on criminal probation in San Diego County is, by receiving this complaint, on notice that the evidence presented to the court at the preliminary hearing on this complaint is presented for a dual purpose: the People are seeking a holding order on the charges pursuant to Penal Code Section 872 and simultaneously, the People are seeking a revocation of the defendant's probation, on any and all such probation grants, utilizing the same evidence, at the preliminary hearing. Defenses to either or both procedures should be considered and presented as appropriate at the preliminary hearing.

NOTICE: Any defendant named on this complaint who is on Mandatory Supervision in San Diego County is, by receiving this complaint, on notice that the evidence presented to the court at the preliminary hearing on this complaint is presented for a dual purpose: the People are seeking a holding order on the charges pursuant to Penal Code Section 872 and simultaneously, the People are seeking a revocation of the defendant's Mandatory Supervision pursuant to Penal Code Sections 1170(h)(5)(B) and 1203.2, on any and all such grants, utilizing the same evidence, at the preliminary hearing. Defense to either or both procedures should be considered and presented as appropriate at the preliminary hearing.

Pursuant to PENAL CODE SECTION 1054.5(b), the People are hereby informally requesting that defendant's counsel provide discovery to the People as required by PENAL CODE SECTION 1054.3.

Sheriff's records indicate that as of the booking date one or more defendants have not yet provided a DNA sample to the DOJ database. Pursuant to Penal Code Section 296(e), the court shall order collection of DNA from the defendant(s) if advised by the prosecuting attorney that a sample is required but has not been provided by the defendant. Pursuant to Penal Code sections 296/296.1, if not already required from a past conviction, any defendants who have not done so will be required to provide a sample upon conviction of this felony offense.

MANDATORY STATE PRISON INCARCERATION: An executed sentence for a felony shall be served by defendant ARTEMIO ILLENES GARCIA in state prison pursuant to PENAL CODE SECTIONS 1170(f) and (h)(3).

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT AND THAT THIS COMPLAINT, CASE NUMBER CD275258, CONSISTS OF 4 COUNTS.

Executed at City of San Diego, County of San Diego, State of California, on January 18, 2018.

_____
COMPLAINANT

---

INFORMATION

SUMMER STEPHAN
District Attorney
County of San Diego
State of California
by:

_____
Date

_____
Deputy District Attorney

**CLERK'S CERTIFICATE**

The foregoing document, consisting of ___ page(s), is a full, true, and correct copy of the ☒original ☐copy on file in this office.

Clerk of the Superior Court

9-27-18    by _____
Date              Deputy

Exh. 1 - Adm.

Page 3 of 3, Court Case No. CD275258

004

DEPARTMENT OF HOMELAND SECURITY
## NOTICE TO APPEAR

DOB: 05/07/1960

Event No: ▮▮▮▮▮

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Subject ID: ▮▮▮▮    PINS: ▮▮▮▮    File No: 092 169 635

In the Matter of:

Respondent: **ARTEMIO GARCIA-ILLENES AKA: GARCIA, Artemio; GARCIA, Artemio Illenes** currently residing at:

**7488 CALZADA DE LA FUENTE OTAY MESA,CALIFORNIA, 92154**

(Number, street, city, state and ZIP code)    (Area code and phone number)

[ ] You are an arriving alien.

[ ] You are an alien present in the United States who has not been admitted or paroled.

[X] You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of MEXICO and a citizen of MEXICO;

3. You were admitted to the United States at New York, NY on or about December 1, 1990 as a lawful permanent resident;

4. You were, on January 30, 2018, convicted in the Superior Court of California, County of San Diego, for the offense of Sexual Penetration of Incompetant Person, a felony, in violation of California Penal Code 289(b);

See Continuation Page Made a Part Hereof

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a)(43)(A) of the Act, a law relating to Murder, Rape OR Sexual Abuse of a Minor

[ ] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

[ ] Section 235(b)(1) order was vacated pursuant to:    [ ] 8CFR 208.30    [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

**7488 CALZADA DE LA FUENTE OTAY MESA CA 921540000. OTAY MESA DETENTION CENTER**
(Complete Address of Immigration Court, including Room Number, if any)

on **October 15, 2020** at **1:00 PM** to show why you should not be removed from the United States based on the
   (Date)         (Time)

charge(s) set forth above.

O 4236 GONZALEZ - ADDO
(Signature and Title of Issuing Officer) (Sign in ink)

Date: **October 8, 2020**    **SAN BERNARDINO, CA**
(City and State)

Uploaded: 3-16-2023 8:28 a.m. Pacific Daylight Time - Base City: OTM
Case 3:20-cv-07721-SI Document 254-2 Filed 12/01/23 PageID.10118 Page 8 of 153
Allegations: 3, delete, Add/Sub. Redesignated.
Designated Country: Mexico

**Notice to Respondent**

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at www.uscis.gov/i-589. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

---

**Request for Prompt Hearing**

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

_____
*(Signature of Respondent) (Sign in ink)*

Date: _____

_____
*(Signature and Title of Immigration Officer) (Sign in ink)*

---

**Certificate of Service**

This Notice To Appear was served on the respondent by me on  October 8, 2020 , in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person ☐ by certified mail, returned receipt # _____ requested ☐ by regular mail

Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the  ENGLISH  language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____
*(Signature of Respondent if Personally Served) (Sign in ink)*

V 6527 PEREZ – DO
_____
*(Signature and Title of officer) (Sign in ink)*

DHS Form I-862 (2/20)

Page 2 of 4

006

Allegations: 3:20-cv-00755-DMS-AHG   Document 254-2   Filed 12/01/23   PageID.10119   Page 9 of 153
Uploaded: 12/13/2020 at 10:08:26 a.m. (Pacific Daylight Time)   Base City: 31M
Designated Country: MEXICO

**Privacy Act Statement**

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

Exh. 1 - Adm.
DHS Form I-862 (2/20)

Page 3 of 4

**007**

Allegations: Admits All | Charges: Concedes All
Uploaded: 3/24/2021 | Expires: 08:28 a.m. Pacific Daylight Time; Base City: GTM
Designated Country: Mexico

Case 3:20-cv-00756-DMS-AHG Document 254-2 Filed 12/01/23 PageID.10120 Page 10 of 153

**U.S. Department of Homeland Security**

**Continuation Page for Form** I-862

| Alien's Name<br>GARCIA-ILLENES, ARTEMIO | File Number<br>092 169 635<br>Event No: | Date<br>10/08/2020 |
|---|---|---|

THE SERVICE ALLEGES THAT YOU:
--------------------------------
5. For that offense you were sentenced to six (6) years in prison.

| Signature<br>O 4236 GONZALEZ | Title<br>SDDO |
|---|---|

_____4_____ of _____4_____ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

Exh. 1 - Adm.

**008**

**Patient:** GARCIA-ILLENES, ARTEMIO
**MRN #:** 5778105
**Agency #:** 092169635

**Age/DOB:** 61 years 

## Patient Snapshot

| Immunizations | Series # | Date (Age) | |
|---|---|---|---|
| Moderna COVID-19 Vaccine 100 MCG/0.5ML Intramuscular Suspension | 1 | 25-Jan 2021 (60 Y) | |
| Moderna COVID-19 Vaccine 100 MCG/0.5ML Intramuscular Suspension | 2 | 18-Feb 2021 (60 Y) | |

| Active Medications | SIG<br>Days / Quantity / Refills | Action Due<br>Date | Ordered By<br>Provider |
|---|---|---|---|
| | TAKE 1 TABLET AT BEDTIME .<br>Days:30, Quantity:30 Tablet, Refills:0 | | Leon, Arturo |
| | TAKE 1 TABLET DAILY<br>Days:30, Quantity:1 * 30 Tablet Pack, Refills:4 | | Purviance, Cynthia |
| | TAKE 1 TABLET AT BEDTIME .<br>Days:30, Quantity:30 Tablet, Refills:4 | | Purviance, Cynthia |
| | SUCK 1 LOZENGE 3 times daily PRN sore throat<br>Days:14, Quantity:42 Lozenge, Refills:1 | | Lazo, Anamarie |
| | INJECT 1  ML Intramuscular<br>Days:11, Quantity:1 * 0.5 ML Syringe, Refills:0 | | Boganey, Rae |
| | TAKE 2 TABLET TWICE DAILY PRN<br>Days:30, Quantity:60 Tablet, Refills:2 | | Purviance, Cynthia |

Copyright ©2021 Allscripts Healthcare Solutions, Inc. and/or its affiliates. All rights reserved.

DHS Franco Notice Removal 000007

Exh. 20 - Adm.

EOIR – 7 of 299

**009**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
OTAY MESA, CALIFORNIA

File:  A092-169-635

April 1, 2021

In the Matter of

ARTEMIO GARCIA-ILLENES          )          IN REMOVAL PROCEEDINGS
                                )
   RESPONDENT                   )
                                )

CHARGES:

APPLICATIONS:  ███████████████████████████████████████
               ███████████████████████████████████████
               ██████████████████████

ON BEHALF OF RESPONDENT: PRO SE

ON BEHALF OF DHS: BENJAMIN DACIN


ORAL DECISION OF THE IMMIGRATION JUDGE

I. REMOVAL PROCEEDINGS

The respondent is 60-year-old single male native and citizen of Mexico.  The United States Department of Homeland Security has brought these removal proceedings against the respondent under the authority of the Immigration and Nationality Act.  Proceedings were commenced with the filing of the Notice to Appear with the Immigration Court.  See Exhibit 1.  Since this Court was vested with jurisdiction, the Court took pleadings.  The respondent admitted the allegations as alleged in the

1

Notice to Appear.  The respondent concedes that he is removable as charged under 237(a)(2)(A)(iii) of the Act.  On the basis of the respondent's admissions and concessions, the Court finds that the respondent's removability has been established.  See Pagayon v. Holder and Perez-Mejia v. Holder.  Mexico was designated as the country of removal.

The respondent applied for relief from removal as stated above.  The respondent's ███████ application for ██████ is contained in the record as Exhibit 16 and 19.  The respondent swore before this Court that the contents of the application were true and correct.  Based on the entire state of the evidence and testimony offered here today and based on evidence whether or not the Court references it or not, the Court will deny all forms of relief.

## II. STATEMENT OF LAW

A. Credibility

The Court has observed the demeanor, candor, and responsiveness of the respondent, the inherent believability of the respondent's account, the consistency between the respondent's statement compared to the Record of Proceedings as a whole.  The Court notes inconsistencies of the respondent's testimony, his ████ and police reports of his conviction.  Based on the standards set forth the REAL ID Act, considering the totality of the circumstances, this Court finds that the respondent is not credible.

For the record, the respondent was convicted for a 2017 offense of sexual penetration of a mentally incompetent person.  The victim was 39 years old, but had a mental age of 4 to 8 years old.  The record indicates that there was no prior relationship between the respondent and the victim, which is to say this was not some sort of a dating relationship gone bad.  This was in fact a stranger sexual assault.  The police

A092-169-635                     2                     April 1, 2021

report indicates that the brother of the victim actually saw the respondent's hand down the victim's pants moving back and forth. The victim also said that this happened to her. The respondent's version of events is completely unbelievable. The respondent indicates he was bending over to tie his shoes and the victim fell on top of him. This is inconsistent with the two witnesses who actually saw him with his hand down her pants. The respondent told the victim's brother at the time that he was helping her find her keys, which appears to be a lie back then, as the victim, due to her mental status, did not carry keys. So his statement to the brother at the time that he was finding her keys is inconsistent with what he said today, which is that she fell on top of him. The respondent stated this version of events both in his ███ and in court here today. There were also times in which the respondent was unresponsive to questions by both the Court and the Government. Any reader of the transcript can find those instances where a specific question was asked that the respondent answered something completely different. For example, the Government asked how it was that the victim fell on top of him, and he failed to explain that story; he just kept repeating that she fell on top of me. So based on those reasons and others that can be found in the transcript of non-responsiveness, the Court will find that the respondent is not credible, and the Court finds that the respondent has not met his burden to show that his crime was not ███ ██████████████████████████ an aggravated felony.

So, turning to relief, this Court will find that the respondent is ineligible for ██████ ████████████████████████████████████ The evidence in the record indicates that respondent was convicted on January 30, 2018 for penal code Section 289(b), which is a felony and is called sexual penetration of a mentally incompetent person, and the respondent was given a six-year sentence. See Exhibit 2. The respondent also conceded in this court on January 20, 2021, that his conviction that

I just mentioned is an aggravated felony.  The Immigration Judge sustained the

respondent's removability as an aggravated felon.  The Act deems all aggravated

felonies ███████████████████████████████.  So this Court will find

that the respondent is ineligible for ████████████████████████████████

████████ based on the crime that has been talked about.  The facts are conclusive on

that point.  According to ███████████ of the Act, an alien convicted of a ████████

████ crime is a danger to the community and is not eligible for █████████████

████████  So in addition to finding that the crime is a ████████████ crime, the Court

will also find that this is an aggravated felony for which a sentence of at least five years

was imposed.  <u>Flores-Vega v. Barr</u>. █████████████████████████████

████████████████████████████████████████████████████████

████████████████████  ████████████████████████████████

████████████████████████████████████████████████

████████████████████████

Now we will turn to the only form of relief available to the respondent,

which is █████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████



Turning to the facts here,

014



This Court, however, has no basis to believe that the respondent is being credible about that incident also.  So this Court will deny █████████████████████████████

██████

    This Court will enter the following orders:

    IT IS HEREBY ORDERED that the respondent's application for ██████ be denied.

A092-169-635              6              April 1, 2021

IT IS FURTHER ORDERED that the respondent be removed from the United States to Mexico on the charge contained in the Notice to Appear.

IT IS FURTHER ORDERED that the respondent's application for ███████ ███ under the Act be denied.

IT IS FURTHER ORDERED the respondent's request for ███████ ████████████████████ be denied.

IT IS FURTHER ORDERED that the respondent's request for ███████ ████████████████████ be denied.

The Court also reads the following warning to the respondent: Failure to depart as required means you could be removed from the United States. You may have to pay a civil penalty of up to $5,000, and you would become ineligible for any change of status for 10 years. If you fail to comply with the removal order, you could be fined $813 for each day. If you are removable under Section 237 of the Act, which you are, and you fail to comply with the removal order, you should face additional fines and can be imprisoned for up to 10 years.

*Please see the next page for electronic*

*signature*

BEGOVICH, SAMANTHA
Immigration Judge

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Artemio GARCIA-ILLENES, A092-169-635

Respondent

**FILED**

Sep 16, 2021

ON BEHALF OF RESPONDENT: Yolanda Crystal Felix, Esquire

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, Otay Mesa, CA

Before: Greer; Appellate Immigration Judge

Opinion by Appellate Immigration Judge Greer

GREER, Appellate Immigration Judge

The respondent, a native and citizen of Mexico, appeals the Immigration Judge's April 1, 2021, decision denying his application for ████████████████████████████████████████ and his request for ███████████████████████████████████████████████████████████████

The record will be remanded.

We review the Immigration Judge's factual findings for clear error, including findings as to the credibility of testimony. We review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo. *See* 8 C.F.R. § 1003.1(d)(3); *see also Matter of Z-Z-O-*, 26 I&N Dec. 586 (BIA 2015).

On appeal, the respondent argues that he exhibited indicia of incompetency at his immigration hearings, and that the Immigration Judge did not take measures to assess his competency. The respondent requests remand under *Matter of M-A-M-*, 25 I&N Dec. 474 (BIA 2011), for a competency determination. [1]

The test for determining whether the respondent is competent to participate in immigration proceedings is whether he "has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses." *See Matter of*

---

[1] The respondent, who is represented, is not a member of the Franco class. *Franco-Gonzalez v. Holder*, 2014 WL 5475097 (C.D. Cal. 2014)

A092-169-635

*M-A-M-*, 25 I&N Dec. at 479. "When there are indicia of incompetency, an Immigration Judge must take measures to determine whether a respondent is competent to participate in proceedings. The approach taken in any particular case will vary based on the circumstances of the case." *Matter of M-A-M-*, 25 I&N Dec. at 480. The Immigration Judge has discretion to determine which safeguards are appropriate in each case and must articulate the rationale for the decision regarding the respondent's competency. *Matter of M-A-M-*, 25 I&N Dec. at 481-82. Indicia of incompetency may include "certain behaviors by the respondent, such as the inability to understand and respond to questions, the inability to stay on topic, or a high level of distraction," or medical issues. *Matter of M-A-M-*, 25 I&N Dec. at 479.

In this case, the respondent attached a document to his appeal brief indicating that, in February 2021, a staff member from the Legal Orientation Project at the Otay Mesa detention center helped the respondent complete an ▓▓▓▓ application (Form ▐▓▓▓). (Respondent's Br., Attachment A). The staff member stated that she did not believe that the respondent was competent to represent himself based on her interactions with him in attempting to complete the Form▐▓▓▓.

These concerns were forwarded to an Assistant Chief Counsel at the Department of Homeland Security, but were not raised at the immigration hearings. Further, the Immigration Judge found that the respondent was non-responsive to several questions at the hearings and not a credible witness (IJ at 2, 3). *See Matter of J-R-R-A-*, 26 I&N Dec. 609, 610 (BIA 2015) (stating that competency issues may affect the reliability of the respondent's testimony).

Under these circumstances, where the Immigration Judge did not have the benefit of relevant information relating to the respondent's competency that may explain credibility concerns, we will remand the record to the Immigration Judge to make a competency determination. If the Immigration Judge determines that safeguards are needed, he should identify and implement appropriate safeguards and hold a new hearing. *See Matter of M-J-K-*, 26 I&N Dec. 773 (BIA 2016). The parties may supplement the record on remand. The Immigration Judge should issue a decision, including the reasons for his competency determination.

Accordingly, the following order will be entered.

ORDER: The record is remanded to the Immigration Judge for further proceedings consistent with this opinion and the entry of a new decision.

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
SAN DIEGO, CALIFORNIA

File:  A092-169-635                                          December 8, 2021

In the Matter of

|  |  |  |
|---|---|---|
| ARTEMIO GARCIA-ILLENES | ) | IN REMOVAL PROCEEDINGS |
|  | ) |  |
|  | ) |  |
| RESPONDENT | ) |  |

CHARGES:

APPLICATIONS:

ON BEHALF OF RESPONDENT: PRO SE

ON BEHALF OF DHS: LAUREN BORTOLOTTI

ORAL DECISION OF THE IMMIGRATION JUDGE

On April 1, 2021, this Court heard the Merits hearing of this respondent.  This Court entered an oral decision and also created an order of the Immigration Judge on that same date.  The respondent's applications for ███████████████████ ██████████████████████████████████████████ ███████████████████ were all denied.  The Court ruled then, as I do now, that the respondent is ineligible for █████████████████████

1

███████████████████ due to his ████████████ crime.  The respondent's 2018 conviction for Penal Code Section 289(B), sexual penetration of a mentally incompetent person, is an aggravated felony and he received six years in prison, so the Court found then, and now, that the crime was a ████████████ crime and an aggravated felony for which a sentence of at least five years was imposed.  Flores-Vega v. Barr.

## PROCEDURAL HISTORY

On April 1, 2021, the Court denied all forms of relief and found the respondent removable, ordering him removed to Mexico.  The Court is now re-issuing its oral decision based upon a remand by a single Board member.

On September 16, 2021, the Board of Immigration Appeals remanded this matter to the Court because it concluded that the Court did not have the benefit of relevant information regarding the respondent's competency which might have explained the Court's credibility concerns, so the last paragraph of the remand on page two said the BIA remands the record to the Immigration Judge to make a competency determination. The date of the notice was September 16, 2021.

In Exhibit 23 of the record, the Court notes that on September 27, 2021, the Court interpreted the remand as directing this Court to find a bona fide doubt as to the respondent's mental competency.  Alternatively, the Court also interpreted the remand as stating there was insufficient evidence as to mental competency, so in Exhibits 31, 33 and 34 the Court ordered a forensic competency evaluation.  The Department of Homeland Security filed Exhibit 20, which contains extensive documentation as to the respondent's entire treatment history while detained.

The licensed clinical psychologist, Alexandra Drecunrikon, indicates that she did review those documents I just referenced, Exhibit 20, where she wrote on page 2 she

A092-169-635                    2                    December 8, 2021

reviewed respondent's medical records dated 9/28/2021; it should be November 26, 2021. The Court is marking Dr. Drecunrikon's report as Exhibit 38 and admitting it into evidence. And without re-reading all of her impressions and conclusions, the Court will adopt her statement from pages 4 through 6 and on page 7 the Court will adopt herein and also agree with her opinion that the respondent is adjudicated competent to represent himself in Immigration proceedings.

STATEMENT OF LAW

The Court adopts and asserts herein by reference the Court's earlier discussions on my earlier oral decision on pages 2 through 6 of the transcript. The Court further adds the following analysis based on the BIA remand.

The Court has now re-evaluated the competency of the respondent and the Court hereby clarifies the credibility concerns that the Court made about the respondent earlier. First and foremost, the Court emphasizes that the respondent is not eligible for ██████████████████ because he is convicted of an aggravated felony and ███████████ ████████████████████████████████████████████ ████████ is not just based on a finding of adverse credibility. ████████████████

A092-169-635          3          December 8, 2021

**021**



The Court also notes in the order of Immigration Judge dated 4/1/2021 that during the Merits hearing that the respondent "confirmed throughout the proceedings that he understood what was occurring and what was asked of him and the respondent was told to interrupt, take a break or have any questions repeated whenever he wanted" and in the remand proceedings the Court did ask for understanding of the respondent, additional hearings were conducted along the way to advise respondent what was occurring and this Court concluded that no additional safeguards were necessary.

So again this Court will deny all forms of relief. I will re-issue an order of the Immigration Judge. This Court enters a finding that it is not necessary to re-do the merits hearing because the Court believes the respondent was competent during that hearing and the subsequent FCE corroborates that. The Court further enters a finding that with the new information presented to the Court by the Board from Crystal Felix, the Court still finds the respondent is competent and the Court enters a finding that the

respondent has failed to meet his burden of proof for ███████████████████████

███████████████████████████████████████████████████████████

███████████████ and the Court enters the finding that it is unnecessary to

re-conduct the Merits hearing.

## ORDER

The Court will enter a removal order and the respondent is ordered removed to Mexico.

***Please see the next page for electronic***

***signature***

Begovich, Samantha
Immigration Judge

A092-169-635                                    5                         December 8, 2021

## *Clinic Note v11*

## Otay Mesa Detention Center
### 7488 Calzada De La Fuente
### San Diego, CA 92154
### (619) 671-8700

Inmate:          ARTEMIO GARCIA-ILLENES
Inmate ID:       5778105
Age/DOB:         ████████████
Agency No:       092169635 - ICE

**Notes**

Inmate refused offer of receiving Booster dose of Moderna. "I don't want it."

**Signatures**
Electronically signed by : Karen Yocom, R.N.; Dec  8 2021  3:16PM PST (Author)

Exh. 52 - Adm.

000162

024

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Artemio GARCIA-ILLENES, A092-169-635

Respondent

**FILED**

Jun 27, 2022

ON BEHALF OF RESPONDENT: Yolanda C. Felix, Esquire

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, Otay Mesa, CA

Before: Greer, Appellate Immigration Judge; Liebmann, Appellate Immigration Judge; Saenz, Appellate Immigration Judge

Opinion by Appellate Immigration Judge Saenz

SAENZ, Appellate Immigration Judge

This case was last before us on September 16, 2021, following the respondent's appeal from the Immigration Judge's April 1, 2021, decision pretermitting his applications for ███████ ███████████████████████████ and denying his application for ████████████████████████████████████.[1] We remanded the record for the Immigration Judge to assess the respondent's competency under *Matter of M-A-M-*, 25 I&N Dec. 474 (BIA 2011). On remand, the Immigration Judge found the respondent was competent to represent himself in removal proceedings and again denied his application for relief from removal. The respondent now appeals from the Immigration Judge's December 8, 2021, decision. We will sustain the appeal and again remand the record for further proceedings.[2]

We review the findings of fact made by the Immigration Judge, including the determination of credibility, for clear error. 8 C.F.R. § 1003.1(d)(3)(i). We review all other issues, including questions of judgment, discretion, and law, de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

---

[1] ████████ ████ ██████████████████████████ ████████ █
████████████████████████████████████████████████████████████████
███████████████████████████████

[2] On remand, the Immigration Judge shall order a Qualified Representative to be provided to the respondent through the Executive Office for Immigration Review's National Qualified Representative Program if the respondent is unrepresented.

A092-169-635

The Immigration Judge's December 8, 2021, decision includes a finding that the respondent was mentally competent (IJ at 3). We have reviewed the record in full and find the Immigration Judge's competency determination is clearly erroneous, as the respondent is not competent to proceed without implementation of safeguards. *Matter of J-S-S-*, 26 I&N Dec. 679, 684 (BIA 2015) ("A finding of competency is a finding of fact that the Board reviews to determine if it is clearly erroneous."); *see also Matter of M-A-M-*, 25 I&N Dec. at 479 ("the test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses").

While the Immigration Judge accepted the conclusion of the mental competency evaluation, she did not address aspects of the report that called into question the respondent's understanding of these proceedings and symptoms of anxiety (IJ at 3; Exh. 38). These symptoms were described as interfering with his ability to focus and respond without medication, as evidenced by the respondent's inability to provide coherent and responsive testimony during the hearing (Tr. at 3-12, 28, Oct. 5, 2021; Exh. 38 at 3, 6). When taking the foregoing into account, along with the manner in which the respondent testified during the proceedings, we conclude the respondent did not have a sufficient rational and factual understanding of the proceedings where he was unassisted by a qualified representative. *See Matter of M-J-K-*, 26 I&N Dec. 773, 777 (BIA 2016) (explaining that the appointment of a qualified representative may be appropriate where a respondent lacks competency to proceed without safeguards and the appointment of a qualified representative would assist the respondent in participating in proceedings and identifying and implementing additional safeguards, if necessary).

Accordingly, the following orders will be issued.

ORDER: The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and the entry of a new decision.

Uploaded on:  1/20/2023 at 2:41:11 p.m. (Pacific Standard Time) Base City:  OTM

13-49B

# REFUSAL TO ACCEPT MEDICAL TREATMENT

I, (Name) Garcia - Illenes , Artemio        (Number) 092-169635 ,        at
(Facility)    OMDC

refuse to accept the following Dental/ Psychiatric/ Medical/ and/or Surgical services and/ or
treatment recommended by this Facility's Dental/ Psychiatric/ Medical staff and/or a referred
secondary care specialist: (list treatment(s)/service(s) in layman terminology)

Covid 19 Swab

I am refusing the above recommended treatment(s)/service(s) for the following reason(s):

Does not want

I acknowledge that I have been informed of the risks and possible consequences which include,
but are not limited to, the following, and which may be up to and including death:

unknown covid status

I understand the possible consequences and/or complications, listed above and still refuse
recommended treatment. I understand that my failure to follow this advice may seriously affect
my health or the health of the person under my guardianship.

I hereby release the Dental/ Psychiatric/ Medical staff and/or a referred secondary care specialist
associated with this correctional facility, CoreCivic, any contract managed care company, and
their employees and agents of all responsibility regarding this matter, and I am making this
decision of my own free will.

| | | |
|---|---|---|
| Inmate/Resident Signature | Inmate/Resident # | DOB |

**(This section to be completed by a staff member)**

| | | |
|---|---|---|
| Qualified Health Care Professional Signature | 9/20/22 | 1200 |
| (Note: For CDCR inmates must be an RN or higher credentialed QHCP) | Date/Time | |
| Witness Signature | 9/20/22 | 1200 |
| | Date/Time | |

EOIR - 576 of 775

12/8/14

Proprietary Information – Not For Distribution – Copyrighted - Property of CoreCivic

Exh. 52 - Adm.

000576

027

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court


In the Matter of                                              File:  A092-169-635


ARTEMIO GARCIA-ILLENES          )          IN REMOVAL PROCEEDINGS
                                )
    RESPONDENT                  )          Transcript of Hearing


Before Robinson Jr., Eugene H., Immigration Judge


Date: January 31, 2023                    Place: SAN DIEGO, CALIFORNIA

Transcribed by Free State Reporting, Inc.-3

Official Interpreter:  SARA FELDMAN

Language: SPANISH

Appearances:

  For the Respondent: CRYSTAL FELIX

  For the DHS: LAUREN A. BORTOLOTTI

1    JUDGE FOR THE RECORD

2         All right.  We are on the record.  Today is January 31st, 2023.  This is

3    Immigration Judge Eugene Robinson in the Otay Mesa Immigration Court.  This is a

4    remanded removal proceeding in the matter of A042-071-690 [sic], excuse me.  The

5    respondent is appearing in person along with his counsel.

6    JUDGE TO MS. FELIX

7         Counsel, please state your appearance.

8    MS. FELIX TO JUDGE

9         Good afternoon, Your Honor.  Crystal Felix, qualified representative for

10   Mr. Garcia-Illenes.

11   JUDGE TO MS. BORTOLOTTI

12        And counsel for the Department, please state your appearance.

13   MS. BORTOLOTTI TO JUDGE

14        Lauren Bortolotti, for the Department of Homeland Security.

15   JUDGE TO MR. GARCIA-ILLENES

16        Good afternoon, Mr. Garcia.

17   MR. GARCIA-ILLENES TO JUDGE

18        [No audible response.]

19   JUDGE TO MR. GARCIA-ILLENES

20        Sir, can you please state your full, true and complete name?

21   MR. GARCIA-ILLENES TO JUDGE

22        Artemio Garcia-Illenes.

23   JUDGE TO MR. GARCIA-ILLENES

24        And, sir, Spanish is your best and preferred language?

25   MR. GARCIA-ILLENES TO JUDGE

1      Yes.

2    JUDGE TO MR. GARCIA-ILLENES

3      We do have a Spanish language interpreter participating today who has

4    previously been sworn.

5    JUDGE TO INTERPRETER

6      Madam Interpreter, please state your name for the record.

7    INTERPRETER TO JUDGE

8      Sara Feldman.

9    JUDGE TO MR. GARCIA-ILLENES

10     Now, Mr. Garcia, do you continue to authorize Attorney Felix to represent you

11   and speak on your behalf?

12   MR. GARCIA-ILLENES TO JUDGE

13     [No audible response.]

14   JUDGE TO MR. GARCIA-ILLENES

15     I need a verbal response, sir.  Do you continue to authorize Attorney Felix to

16   represent you and speak on your behalf?

17   MR. GARCIA-ILLENES TO JUDGE

18     Yes, yes [in English].

19   JUDGE TO MS. BORTOLOTTI AND MS. FELIX

20     So to summarize a discussion between the parties and the Court before we

21   came on the record, Attorney Felix indicated that she does have a Dr. Cook available to

22   provide some limited testimony in the case currently before the Court.  Ms. Felix,

23   indicated while she had previously indicated that she would rely on Dr. Cook's

24   declaration, and in reviewing the case it became apparent that there were some

25   additional questions that she would like to place on the record and get Dr. Cook's

1    response.  Government objects to proceeding with Dr. Cook's testimony, and believes

2    that it would be cumulative.  However, in light of Ms. Felix's representations, the Court

3    will allow Dr. Cook to provide limited testimony for purposes of this proceeding.

4    Dr. Cook is available by Webex, and is currently joined in the proceedings by that

5    means.  Ms. Felix also indicated that there was some medical issues with the

6    respondent in the last day or so and that he was twice taken off-site for treatment and

7    only returned early this morning.  The respondent has indicated he is not feeling well

8    and as an additional safeguard in these proceedings, Ms. Felix, is requesting that the

9    Court grant another limited continuance before we proceed with the case.  With that

10   understanding the Court is going to grant a continuance until next Thursday morning, at

11   9:00 a.m.  We will take Dr. Cook's testimony today and then we'll have that on the

12   record before the Court issues a decision in the case.  Any other comments regarding

13   the summary the Court just provided?

14   MS. FELIX TO JUDGE

15        Nothing from respondent.

16   MS. BORTOLOTTI TO JUDGE

17        Nothing from the Department.

18   JUDGE TO MS. BORTOLOTTI AND MS. FELIX

19        All right.

20   JUDGE FOR THE RECORD

21        And we do have some additional persons in the courtroom today.  We have

22   Attorney Irizarry from the Immigration Justice Project.

23   JUDGE TO MS. FAJARDO

24        And who is the other person?

25   MS. FAJARDO TO JUDGE

A092-169-635                    20                    January 31, 2023

**031**

1       Hello, Your Honor.  My name is Maricarmen Fajardo, and I'm a paralegal with the

2   Immigration Justice Project.

3   JUDGE TO MS. FAJARDO

4       Okay.  Very well, thank you.

5   JUDGE FOR THE RECORD

6       And Attorney Sara Mortensen is also participating -- or observing I should say by,

7   by Webex.

8   JUDGE TO MS. FELIX

9       Okay.  Ms. Felix, is there any other matter that we need to address before we

10   receive Dr. Cook's testimony?

11   MS. FELIX TO JUDGE

12       No, Your Honor.  I just want to know if the trial attorney believes this expert

13   needs to be qualified or whether she would agree to her qualifications?

14   MS. BORTOLOTTI TO JUDGE

15       I agree to her a qualifications as to a doctor in the United States.  I do not believe

16   that she has any of the qualifications to have an opinion on how the respondent would

17   do in Mexico.  It does appear that she has that type of expert opinion, or expert

18   qualifications.

19   MS. FELIX TO JUDGE

20       Understood.  And we won't be asking her questions about that.

21   JUDGE TO MS. FELIX

22       All right.

23   JUDGE TO DR. COOK

24       All right.  Well, so Dr. Cook, before we receive your testimony I do have a few

25   instructions.

A092-169-635                          21                      January 31, 2023

1    DR. COOK TO JUDGE

2        Yes, Your Honor.

3    JUDGE TO DR. COOK

4        Everything that you say today has to be translated for the benefit of Mr. Garcia,

5    so please speak clearly, loudly and take frequent pauses so that the interpreter can

6    interpret everything that you're saying  You will be asked questions --

7    DR. COOK TO JUDGE

8        Understood.

9    JUDGE TO DR. COOK

10       You will be asked questions by Attorney Felix, by Counsel for the Department,

11   and I may also ask you some questions.  If at any time you do not understand a

12   question, please do not answer it.  Just tell us that you do not understand the question

13   and it will be asked in a different way.  And if at any point you do not remember

14   something or you do not know the answer to a question, please do not guess.  Just tell

15   us that you do not know or that you do not remember.  Do you understand --

16   DR. COOK TO JUDGE

17       Yes, Your Honor.

18   JUDGE TO DR. COOK

19       Do you understand these instructions?

20   DR. COOK TO JUDGE

21       I understand all these conditions, yes.  Thank you.

22   JUDGE TO DR. COOK

23       Very well.  And all right.  In just a moment, Dr. Cook, I'm going to administer the

24   oath if I can get it to swing around to you.

25   DR. COOK TO JUDGE

1          Great.

2      JUDGE TO DR. COOK

3          Please raise your hand, right hand to take an oath.  Do you swear or affirm or

4      promise that the testimony you provide in this proceeding will be the truth, the whole

5      truth and nothing but the truth?

6      DR. COOK TO JUDGE

7          I do so swear, thank you.

8      JUDGE TO DR. COOK

9          Thank you very much.  You may lower your hand.

10     JUDGE FOR THE RECORD

11         Let me see, I did the oath.

12     JUDGE TO MS. FELIX

13         All right.  All right.  Very well, Attorney Felix, at this point you may begin your

14     direct examination.

15     MS. FELIX TO JUDGE

16         Thank you, Your Honor.

17     MS. FELIX TO DR. COOK

18         Dr. Cook, how would you describe your area of expertise?

19     DR. COOK TO MS. FELIX

20         Overall I'm considered a complex case evaluator, and I have expertise in

21     neuropsychiatric evaluation, neuropsychological evaluation and neuromedical history

22     taking in Immigration.

23     MS. FELIX TO DR. COOK

24         And did you evaluate Mr. Garcia?

25     DR. COOK TO MS. FELIX

034

1        Yes, I did.

2    MS. FELIX TO DR. COOK

3        How many times?

4    DR. COOK TO MS. FELIX

5        I saw him twice.

6    MS. FELIX TO DR. COOK

7        Did you review any records in preparation for those evaluations?

8    DR. COOK TO MS. FELIX

9        Yes, I reviewed a 7 page forensic competency evaluation and I reviewed about

10   300 pages of Otay Mesa Detention Center records.

11   MS. FELIX TO DR. COOK

12       So based on your education, expertise and your evaluation of Mr. Garcia, and his

13   medical records, what is his current mental health diagnoses?

14   DR. COOK TO MS. FELIX

15       He has several.  The first is probably the major depressive disorder.  It's

16   recurrent and moderate.   The next is another specified trauma and stressor related

17   disorder that's associated with treatment conditions of concern that include a past

18   history and present history of childhood psychological and physical abuse that emerged,

19   possibly to include sexual abuse that's been repressed.  He has a somatic symptom

20   disorder.  It has predominant pain characteristics or features, and finally he has -- which

21   one didn't I mention, let's see trauma -- one other one.  Oh, I know the dissociative

22   amnesia, which is selective for autobiographical information.

23   MS. FELIX TO DR. COOK

24       And do those mental health diagnoses affect his ability to participate in his

25   removal proceedings?

A092-169-635                          24                          January 31, 2023

**035**

1    DR. COOK TO MS. FELIX

2         Yes.

3    MS. FELIX TO DR. COOK

4         How so?

5    DR. COOK TO MS. FELIX

6         He has a limited capacity to speak on matters that are autobiographical and

7    should be well known in nature and on matters that are autobiographical and traumatic

8    in nature. His ability to speak also is limited by pain complaints and concerns and

9    compulsive focus on his physical health. I think he probably has neurocognitive deficits

10   but I was unable to make that diagnosis of a major neurocognitive disorder because he

11   couldn't fully participate in testing. Which also was done over the web. And I do a lot of

12   evaluations now over the web, and I can generally get those diagnoses. And at the time

13   unfortunately his pain preoccupations were so high that he couldn't really give me full

14   and complete answers or concentrate and attend for any length of time.

15   MS. FELIX TO DR. COOK

16        And does -- do his diagnoses impact his credibility?

17   DR. COOK TO MS. FELIX

18        I think that always there's a confusion with sematic symptom disorder in that

19   people tend to think that the complaints are fake or imagined. But really they're things

20   that are related to a heightened awareness of pain in the body, and I do think some of

21   his medical conditions as we see in sematic disorders are verified and treated, and

22   others, like possibly the episode that led to his removal yesterday are really hard to

23   guess. So the same thing is that they always take people off site and eval. We do

24   consider sematic symptom disorder in the medical field a very legitimate disorder.

25   MS. FELIX TO DR. COOK

1      In your expert opinion, what kind of treatment does Mr. Garcia need to be stable?

2    DR. COOK TO MS. FELIX

3      Ideally he would be seen regularly by a primary care physician.  This is in,

4    referring to the model that we use at UCSD medical center, and what we're doing there

5    as primaries is basically having the doctors see them once a month for about 15

6    minutes at a time.  The idea is that they're establishing a therapeutic alliance, providing

7    a listening ear and then treating the things that they can treat and redirecting the person

8    to other strategies that could help the sematic.  In his case, we're saying we'd be

9    looking at treating him with relaxation strategies, distraction strategies and also using

10   small amounts of medication as appropriate to address specific pain symptoms.

11   MS. BORTOLOTTI TO JUDGE

12      I'm sorry.  Everything went silent for the last 30 seconds or so.  Did that happen

13   everywhere?

14   JUDGE TO MS. BORTOLOTTI

15      No, I think that was just with you.

16   MS. BORTOLOTTI TO JUDGE

17      Okay.  So the last thing I heard was seeing a primary care physician once a

18   month for 15 minutes, and then treating the symptoms that were presented.

19   MS. FELIX TO DR. COOK

20      Dr. Cook can you repeat what, what you said after, with respect what --

21   MS. BORTOLOTTI TO JUDGE

22      Probably, probably not word for word, could it be read back?

23   JUDGE TO MS. BORTOLOTTI

24      No, we don't have that capability, sorry.

25   MS. BORTOLOTTI TO JUDGE

1      Okay.

2   DR. COOK TO MS. BORTOLOTTI

3      I can restate the --

4   MS. FELIX TO MS. BORTOLOTTI

5      I can ask the question again.

6   MS. BORTOLOTTI TO MS. FELIX

7      I'm sorry, what?

8   MS. FELIX TO MS. BORTOLOTTI

9      I can ask the question again if you'd like.

10  MS. BORTOLOTTI TO MS. FELIX

11     No, I think I -- I think basically you asked about -- well, go ahead and ask it, that's

12  cleaner. Yeah.

13  MS. FELIX TO MS. BORTOLOTTI

14     Sure.

15  MS. FELIX TO DR. COOK

16     What kind of treatment does Mr. Garcia need to be stable.

17  DR. COOK TO MS. FELIX

18     Okay. So the model that we have at UCSD for sematic symptom disorder at a

19  primary care unit, is essentially we ask them to meet with them monthly for 15 minute

20  intervals more or less, to establish a therapeutic alliance. They provide a listening ear.

21  They take people and refer them to adjunctive therapies that would include meditating,

22  breathing, relaxation strategy, aps, all organized around trying to address the, in this

23  case predominant pain focus. We use redirection and distraction techniques and we

24  also do intervene with medication. And we understand that the goal is to try to tease

25  out which are the legitimate complaints, which are the recurring complaints and then

1   how do we address the underlying issues.   Which typically are psychiatric and

2   psychological in nature.  Often these disorders are seen in people who have Post

3   Traumatic Stress Disorder and other stressor disorders.

4   MS. FELIX TO DR. COOK

5           Would Mr., Mr. Garcia benefit from psychotropic medication?

6   DR. COOK TO MS. FELIX

7           Yes.  There are certain ones that we particularly use to treat the anxiety, the

8   underlying anxiety associated with trauma.

9   MS. FELIX TO DR. COOK

10          And how would the use of medication impact Mr. Garcia's daily life?

11  DR. COOK TO MS. FELIX

12          Well, there's a, a, a high relationship between pain complaints and how well

13  people sleep.  So what we would do is we would intervene with a medication to address

14  the depression, anxiety and trauma, and sleep.  So the hope would be that some of the

15  pain complains would lessen in severity, some of the pain complaints might go away

16  and some of the pain complaints would persist because they're more tied to a traumatic

17  basis than any, more than -- so than anything else.

18  MS. FELIX TO DR. COOK

19          In your evaluation of Mr. Garcia, did he report harm inflicted upon him in the

20  past?

21  DR. COOK TO MS. FELIX

22          Yes.  He reported childhood abuse that included his father breaking his hand and

23  fingers.  He was hit with some kind of, of bar.  He's had some trauma, physical trauma

24  at, on -- we see that was I think somebody came up behind him and scratched his hand.

25  He said to get that addressed because people thought he was making it up.  I think that

A092-169-635                    28                    January 31, 2023

**039**

1   led to fears of bullying and peer and social rejection.  So he stayed in his cell as a

2   compensatory strategy and has kept to himself pretty much since that time.  He's had

3   other accidents and injuries, but I think those are the primary ones.

4   MS. FELIX TO DR. COOK

5         What lasting repercussions have resulted as result of his past harm?

6   DR. COOK TO MS. FELIX

7         The, the most significant one again is the child abuse, and it became a little bit

8   worrisome the second time I evaluated him when he was talking about illusions of

9   shadows and unwanted touch on his side, because that raised the possibility of

10  childhood sexual abuse that has been repressed.  And when we talk about pain, pain

11  has fear components and pain has emotional components and this is how those

12  components kind of get splintered off into a physical perception of pain.  As a repressive

13  mechanism basically to help the person cope with an unwanted memory and an

14  unwanted experience.

15  MS. FELIX TO JUDGE

16        And just for the record, Your Honor, I just want to note that Mr. Garcia has been

17  rubbing his chest the entire proceeding and he has his face down, squinted, which looks

18  like potential pain.

19  JUDGE TO MS. FELIX

20        and the Court also observes those actions on behalf of the respondent since the

21  start of the proceeding.

22  MS. FELIX TO JUDGE

23        Thank you, Your Honor.

24  MS. FELIX TO DR. COOK

25        Dr. Cook, how will Mr. Garcia's mental health be impacted if he is removed from

A092-169-635                        29                    January 31, 2023

1  a safe and stable structure?

2  DR. COOK TO MS. FELIX

3       You know, I think that he devised a way to be safe by staying in his room.  And if

4  he loses the safety of a place and has to find or develop a safety plan on his own, I think

5  it's going to be really hard for him.  He couldn't tell me much about family support.  He

6  couldn't really remember how many brothers and sisters he actually has.  I don't know if

7  they would have any capacity to offer him support, so if he is indeed on his own or if he

8  were to have to go to a place that no longer is familiar to him or is foreign to him or is

9  traumatic for him, I would expect a huge psychiatric decompensation and behavioral

10  regression.

11  MS. FELIX TO DR. COOK

12       Just a moment.  And how would he be impacted if he's placed in a large mental

13  health institution?

14  DR. COOK TO MS. FELIX

15       That would not be ideal.  I mean, he's coping now by being in a pod which is

16  smaller, and then by being in his room almost all the time.  And this is primarily out of,

17  because of the bullying that has taken place and because of the attacks that took place.

18  He has kind of an ingrained fear of being attacked and in salt -- assaulted, and when

19  people didn't believe him that made the whole facility untrustworthy.  So this kind of

20  setup or pattern would be expected to occur again if he went into a large facility.

21  MS. FELIX TO DR. COOK

22       How would his mental health be impacted if he was put in a facility with limited

23  providers?

24  DR. COOK TO MS. FELIX

25       Again, he's somebody who kind of needs a lot of eyes on in order to be able to

1   help differentiate what is a good day for him and what is a legitimately bad day.  It's

2   really hard to tell and he needs professional support in some way or other, so a large

3   facility with few providers again could be dangerous to him.

4   MS. FELIX TO DR. COOK

5        And what do you mean by could be dangerous?

6   DR. COOK TO MS. FELIX

7        It's really related to psychiatric decompensation and it also could be related to

8   less legitimate physical problems and diagnoses.  You kind of need somebody who can

9   establish a relationship with him and then track what is his usual presentation.  Let's say

10   something like headache pain or cardiac pain, and what is an atypical piece that has

11   come in, that he's able to report that might have more validity for a legitimate health

12   problem that needs support and intervention.

13   MS. FELIX TO DR. COOK

14        If Mr. Garcia was placed in a high stress and new environment would his

15   behaviors change?

16   DR. COOK TO MS. FELIX

17        High stress and -- yeah, new, new alone will change his behaviors.  New alone

18   will be hard unless it's small, and unless he's given options to feel safe like locking a

19   door or having a private room, or having lots of staff around to kind of check in on him

20   frequently.  He would sort of need a transition time with the most maximal staffing

21   possible.  To gauge, you know, either, A, more physical problems, more physical pain or

22   psychiatric decompensation to more trauma symptoms.

23   MS. FELIX TO DR. COOK

24        What -- with people with diagnoses like Mr. Garcia, what does psychiatric

25   decompensation look like?

1   DR. COOK TO MS. FELIX

2          Usually it's a ramping up of all symptomatology.  So he could become agitated,

3   he could become restless.  His sleep, which is already short, interrupted and

4   nonrestorative might end up being awake all night out of fear.  It might lead to yelling,

5   screaming, acting out behaviors out of fear.  He probably would have blurry or cascade

6   of traumatic symptomatology that all was attributed to pain.  And again there are some

7   legitimate health problems in there that would need to be treated and addressed that

8   could potentially aggravate.

9   MS. FELIX TO DR. COOK

10          Would this psychiatric decompensation make him more vulnerable to harm?

11   DR. COOK TO MS. FELIX

12          Yes.  When people are agitated they are not necessarily tracking present.

13   They're sort of in the past, and are acting in erratic manners.  Sometimes they're talking

14   to themselves, sometimes they're shouting.  They may not even be aware they're doing

15   that.  They kind of get restless and they're moving about.  They may not have a, like a

16   clear walking style.  They're must be darting from place to place.  When people get

17   trauma reactivated they turn into either fight responses, which is yelling and agitation or

18   flight responses, which is moving in erratic ways as if somebody is following them or

19   pursuing them or intends to harm them.

20   MS. FELIX TO DR. COOK

21          Would these, would these changes, if Mr. Garcia were to decompensate be

22   noticeable to someone who is not a medical professional?

23   DR. COOK TO MS. FELIX

24          Yeah.  There's a certain level of disorganized, erratic energy that's visibly able to

25   be seen.  People will -- who will see it, if they're not professionals they'll move away

A092-169-635                       32                        January 31, 2023

1   from it, and they'll cross streets to avoid people like this.  People who are professionals

2   kind of understand it and might actually check in with the person to see if they're okay,

3   call 911.  Just, you know, report it in some way to anybody who might be around so if

4   there was in institution it might get treatment.  If it was not in institutional care it might

5   get ignored or issued like a police report or something, an incident report.

6   MS. FELIX TO DR. COOK

7         Okay.  Dr. Cook, based on your evaluation do you believe that Mr. Garcia would

8   decompensate if removed from his current housing?

9   DR. COOK TO MS. FELIX

10        Yeah.  If, if, if the current, the definition of current housing is understood as a

11  private room, where he has access to staff who can help him that's small, that's, you

12  know, in a pod with a regular structured routine.

13  MS. FELIX TO DR. COOK

14        And what specific factors regarding this case informed this conclusion?

15  DR. COOK TO MS. FELIX

16        It really is all based on his underlying of childhood abuse and it really is about the

17  very specific needs he now has because of his fears of the night, his fears of others, his

18  fears of being traumatized again, and how he's taken all of those fears and is sort of

19  reenacting them traumatically with internal perceptions of pain, which is really emotional

20  trauma.

21  MS. FELIX TO DR. COOK

22        Just a moment.  Do Mr. Garcia's symptoms impair his social and occupational

23  functioning?

24  DR. COOK TO MS. FELIX

25        In general, yes.  He is sort of a well-identified loner in his medical records.

1    Socially individuals like this feel very isolated.  They feel very misunderstood.  They feel

2    nobody is taking their pain complaints seriously or is understanding the extent to which

3    they have legitimate traumatic complaints.  It was interesting to me that in the second

4    session he gave a very clear description of what the etiology of his headache pain was,

5    and that took a while to appreciate.  And that's my specialty in particular is the complex

6    case neuromedical interviewing and neuropsychological consequences, and it took me I

7    would say two-and-a-half hours to get to this idea of an accident that has happened in

8    county jail where he fell and hit the -- his head on a steel piece of metal.  And then it's

9    interesting that would debunk that, it's interesting that he then used the idea of that it felt

10   like, you know, his head felt like a steel plate -- his pain pressure felt like a steel plate,

11   which was kind of interesting.  He just sort of fused the two things together which is

12   what we see in sematic symptom disorder.  So he's got a legitimate headache for sure.

13   It just may not be at the pain level that he thought it was, which was every day, but also

14   exceptionally high.  And in general you, you can sort of tell what his pain complaint is

15   based on how interactive he was.  In the second session he was much more interactive.

16   The first session he was as he is today, head down and not making a lot of eye contact.

17   MS. FELIX TO DR. COOK

18        And would his symptoms impair his ability to find employment?

19   DR. COOK TO MS. FELIX

20        Yeah.  I would almost say he can do very limited things, and so I don't see him

21   having the independent initiative to look for work.  He would need guidance and

22   structure.  What he was able to share that he has done most recently over these last

23   few years as being in a detained setting is he basically can clean his table to a limited

24   degree.  Which is a safe occupation to do because there's only a few other workers

25   around.  There's not a lot of people around.  He used to be a farm worker.  Physically I

A092-169-635                     34                     January 31, 2023

1   don't think he's capable of that anymore.  Emotionally I would say he doesn't have the

2   ability to tolerate being around a lot of other people.  There are very limited jobs that he

3   could do and he probably would need those to be semi supervised, with a low number

4   of coworkers or employees around him.  He, I think, likes to work but it would have to be

5   a very small job in a routine sort of setting.

6   MS. FELIX TO DR. COOK

7         People with diagnoses like Mr. Garcia, are they able to get medical care for

8   themselves?

9   DR. COOK TO MS. FELIX

10        Yeah, if he's able to ask for help.  I think he would have a huge problem trying to

11  sort out what is an exaggerated perception of pain versus what is an, a -- what do they

12  call it, an actual legitimate basis, or a legitimate increase in pain.  I think with the cardiac

13  thing he fell into an algorithm that was going to get him to the hospital no matter what.  If

14  any of you have dizziness and chest pain, you're going to the hospital, particularly if

15  you're at the age that he is.

16  MS. FELIX TO DR. COOK

17        If Mr. Garcia were to decompensate, would he be likely to become homeless?

18  DR. COOK TO MS. FELIX

19        I don't think he has the capacity to find a home on his own.  I don't think he has

20  the capacity to find a safe place on his own.

21  MS. FELIX TO DR. COOK

22        Last question.  Will Mr. Garcia's symptoms worsen if he is not provided proper

23  treatment in an unstable environment?

24  DR. COOK TO MS. FELIX

25        I think the environment is his sanity.  It's his container for being able to predict

1   what each day brings. There has to be predictable. I think his symptoms will

2   decompensate if it's unpredictable in any way. I think if he went into an unstructured

3   setting, changes in staff, changes in routine, or no staff, or no routine would absolutely

4   overwhelm him. You can kind of see how he's sitting now, and today is a bad day for

5   him. Yesterday was a worse day. Today he probably has a little bit less pain. And he

6   is, you know, reassuring with the rubbing and also kind of indicating that the pressure

7   still feels it's there. Anxiety is high. There's not a lot of difference between chest

8   pressure from panic, and chest pressure from a heart attack. So they successfully ruled

9   that out, I'm quite sure, simply by pulling a trope level, which is why he went to the

10  hospital and they probably got a baseline as well. If his, if his blood pressure was

11  spiking high, they were running other tests so he was probably there all day.

12  MS. FELIX TO JUDGE

13      No further questions from respondent.

14  JUDGE TO MS. FELIX

15      Thank you.

16  MS. FELIX TO DR. COOK

17      Thank you, Dr. Cook.

18  JUDGE TO MS. BORTOLOTTI

19      Ms. Bortolotti --

20  DR. COOK TO MS. FELIX

21      You're welcome.

22  JUDGE TO MS. BORTOLOTTI

23      -- any cross-examination?

24  MS. BORTOLOTTI TO JUDGE

25      Yes, Your Honor.

1    JUDGE TO MS. BORTOLOTTI

2         You may proceed.

3    MS. BORTOLOTTI TO DR. COOK

4         The medical documents that you reviewed do show that respondent is compliant

5    with his medications, correct?

6    DR. COOK TO MS. BORTOLOTTI

7         He's rarely given medication.  He's given like acetometaphine so he does take

8    what he's given.  It's not necessarily effective.

9    MS. BORTOLOTTI TO DR. COOK

10        Okay.  And he -- you, in your report you said that he could go to a shelter in

11   Texas, correct?

12   DR. COOK TO MS. BORTOLOTTI

13        Yes.

14   MS. BORTOLOTTI TO DR. COOK

15        All right.  And that shelter in, in Texas, you thought was appropriate for multiple

16   reasons including that there were Spanish speakers there, correct?

17   DR. COOK TO MS. BORTOLOTTI

18        Yes.  He would be able to communicate a little bit more easily without a need for

19   an interpreter.

20   MS. BORTOLOTTI TO DR. COOK

21        And also because if -- when there's faith based activities, you think that is also a

22   helpful thing for him?

23   DR. COOK TO MS. BORTOLOTTI

24        Yes.

25   MS. BORTOLOTTI TO DR. COOK

A092-169-635                          37                          January 31, 2023

048

1       All right.  And did your review of these documents show that the respondent has

2    a tendency to yell and be agitated here at the facility?

3    DR. COOK TO MS. BORTOLOTTI

4       I'm not sure, because I don't know that I had records that would have been at his

5    most vulnerable when he first came in.

6    MS. BORTOLOTTI TO DR. COOK

7       Okay.  You don't think that the 300 pages that you reviewed were the documents

8    from when he was first, from when --

9    DR. COOK TO MS. BORTOLOTTI

10      I'm not sure, yeah.

11   MS. BORTOLOTTI TO DR. COOK

12      -- from his incarceration at the time?

13   DR. COOK TO MS. BORTOLOTTI

14      I'm, I'm not sure, because I don't actually know when he first came in.  There

15   were a lot of medical records and it was a little unclear what, which was what.  I think

16   there was a gap in the sequence.

17   MS. BORTOLOTTI TO DR. COOK

18      One moment.

19   DR. COOK TO MS. BORTOLOTTI

20      Like I don't recall.  This may help, I don't recall any segregation.

21   MS. BORTOLOTTI TO DR. COOK

22      Okay.  And you said that he could work like clearing dishes or washing dishes?

23   DR. COOK TO MS. BORTOLOTTI

24      Just -- no, actually just washing tables.

25   MS. BORTOLOTTI TO DR. COOK

1        Washing tables.  Okay.  So --

2    DR. COOK TO MS. BORTOLOTTI

3        It's like the the, the least taxing job at OMDC is when the cafeteria empties and the

4    dining hall empties or whatever, and they just go around and they just wipe the tables

5    down.

6    MS. BORTOLOTTI TO DR. COOK

7        And he's able to do that?

8    DR. COOK TO MS. BORTOLOTTI

9        Yeah.  Yeah, it has contingencies, like there's nobody else around like, you

10   know, other than other workers.  It's small supervised -- it's a big hall, but it's a small

11   supervised event.

12   MS. BORTOLOTTI TO DR. COOK

13       And you said that it would, he would really benefit from seeing a primary care

14   doctor once a month?

15   DR. COOK TO MS. BORTOLOTTI

16       Yes.

17   MS. BORTOLOTTI TO JUDGE

18       No other questions.

19   DR. COOK TO MS. BORTOLOTTI

20       It's actually a treatment protocol for sematic symptom disorder.

21   JUDGE TO DR. COOK

22       Dr. Cook, you said that you evaluated him on two separate occasions?  Is that

23   right?

24   DR. COOK TO JUDGE

25       Yes, sir.

A092-169-635                          39                    January 31, 2023

**050**

1    JUDGE TO DR. COOK

2        How far apart were those evaluations?

3    DR. COOK TO JUDGE

4        The one was in September and the other one was in, ewe, gosh I forgot what the

5    other one is, huh, March -- no March -- May, maybe may.

6    JUDGE TO DR. COOK

7        So the first one was in May and then the second in September?

8    DR. COOK TO JUDGE

9        No, let me -- can I, can I review my records?

10   JUDGE TO DR. COOK

11       You may.

12   DR. COOK TO JUDGE

13       I have to look it up.

14   JUDGE TO DR. COOK

15       You may.

16   DR. COOK TO JUDGE

17       Okay.  Let me just see what they are really quick.  Okay.  It looks like the first one

18   was January.  When did I -- okay, here it is, and the other one was September.

19   JUDGE TO DR. COOK

20       Both in 2022?

21   DR. COOK TO JUDGE

22       Yes.

23   JUDGE TO DR. COOK

24       All right.  But that's approximately an eight to nine month interval.  Did you, did it

25   appear to you in your professional opinion that he had experienced any -- well, you tell

1    me, what was the difference between your evaluation in January and the evaluation you

2    performed in September?

3    DR. COOK TO JUDGE

4          The only thing that changed -- well, first of all, let me go back.  The first

5    difference was, was that one was to get him designated potentially Franco-Gonzalez,

6    and was to the Board of Immigration Appeals, and the second one was really about an

7    affidavit for a bond petition.  So what I was able to do was the second time I was able to

8    gather more information from him and actually added in exactly what happened in 2018,

9    in the jail, which resulted in a, in a head injury.  But I still couldn't test him effectively.

10   But I got more information on that and I also got more information about the illusions

11   that he had that his sleep was hard to go to sleep, because he'd have a dark shadow

12   that he would see in his room.  And then he would get, become convinced that

13   somebody was touching his thigh in an unwanted way, so I was able to add illusions on

14   that as well.  So I kind of was able to appreciate also a little bit more of his personal

15   history.  He was having a better day and he could share more information, so I was able

16   to ascertain that he did come to the United States with his family as a teenager to the

17   Los Angeles area, and had brothers and sisters but didn't know where they were, didn't

18   know what they were up to.  But at least I got background and, and the other thing I

19   appreciated was just that he could get to a point where he could be articulate and

20   engaged and so it helped me understand that when he's feeling high stress and it feels

21   traumatized, that's when he's most likely to become less organized, more disorganized.

22   More restless, more likely to have a sematic pain complaint that could potentially take

23   him to the hospital.  So that's kind of what I got from the second evaluation.

24   JUDGE TO DR. COOK

25         All right.  All right.

1    JUDGE TO MS. FELIX

2         Ms. Felix, do you have any additional questions for the doctor in light of those

3    from Government and the Court?

4    MS. FELIX TO JUDGE

5         Yes, just one question, Your Honor.

6    JUDGE TO MS. FELIX

7         You may proceed.

8    MS. FELIX TO DR. COOK

9         Dr. Cook, what about the shelter in Texas would work for Mr. Garcia-Illenes?

10   DR. COOK TO MS. FELIX

11        Well, if I remember correctly --

12   MS. BORTOLOTTI TO JUDGE

13        Objection, relevance.

14   JUDGE TO MS. BORTOLOTTI

15        Overruled, I'll allow it.

16   MS. FELIX TO JUDGE

17        Relevance for a ███ case.

18   JUDGE TO MS. FELIX

19        I'll allow it.

20   DR. COOK TO MS. FELIX

21        If I remember correctly, that's a smaller shelter.  It is faith based.  They do have

22   people who speak Spanish.  It's a quiet small place.  I would believe that they actually

23   do have rooms with doors that you could lock.  He might be able to tolerate a

24   roommate, but I'm not sure.  It's just, he really needs an environment that's quiet,

25   controlled, supervised, has access to others and can be anticipated and predicted.  He

A092-169-635                        42                        January 31, 2023

1    needs faith, he needs structure.

2    MS. FELIX TO DR. COOK

3        Thank you.

4    MS. FELIX TO JUDGE

5        No further questions from respondent.

6    MS. BORTOLOTTI TO JUDGE

7        Your Honor, can I ask one last question?

8    JUDGE TO MS. BORTOLOTTI

9        You may.

10   MS. BORTOLOTTI TO DR. COOK

11       For the two evaluations you conducted, were you paid?

12   DR. COOK TO MS. BORTOLOTTI

13       Yes, of course.

14   MS. BORTOLOTTI TO DR. COOK

15       Okay.  Okay.  Thank you.

16   MS. FELIX TO JUDGE

17       May I follow up?

18   JUDGE TO MS. FELIX

19       You may.

20   MS. FELIX TO DR. COOK

21       Dr. Cook, whether you provide a diagnosis in reports do you still get paid?

22   DR. COOK TO MS. FELIX

23       Yes.

24   MS. FELIX TO JUDGE

25       Nothing further.

1    JUDGE TO MS. FELIX

2        Okay.

3    JUDGE TO DR. COOK

4        The last question I have, doctor, is what is your professional opinion as to the

5    reliability of his auto, autobiographical history as you've described it?

6    DR. COOK TO JUDGE

7        It was, I would say scanty, rather than unreliable.  And so scanty often implies

8    reliable, in, in kind of a backwards way.  If they just say I don't really know, I can't say, I

9    don't remember, which is what the first evaluation was full of even including things like

10   his -- where he was from.  At one point he said, I'm speaking Spanish, aren't I?  I know

11   I'll never forget that, you know.  But the bottom line is I think he's reliable for the history

12   that he can recount, because he then when he -- in the second evaluation he gave a

13   very clear and credible brain injury accident history.  It's hard for people to know what

14   the parameters are of the actual brain injury, and he couldn't say it or mention it or even

15   think about it in the first evaluation.  But in the second, he basically could describe

16   exactly what happened and his deficit probably be appreciated on testing, if I could ever

17   get him tested.

18   JUDGE TO DR. COOK

19       All right.

20   JUDGE TO MS. FELIX

21       Anything else, counsel?

22   MS. FELIX TO JUDGE

23       Nothing for Dr. Cook.

24   JUDGE TO MS. FELIX

25       All right.

1    JUDGE TO DR. COOK

2        Dr. Cook, thank you very much your testimony in these proceedings.  At this time

3    you are excused as a witness and you may disconnect.

4    DR. COOK TO JUDGE

5        Okay, great.  Thank you very much, Your Honor.

6    JUDGE TO DR. COOK

7        All right.  Take care.  Bye-bye.

8    DR. COOK TO JUDGE

9        Bye-bye.

10    JUDGE TO MS. FELIX

11        All right.  So before we, we adjourn for today, just to confirm I believe the last

12    time Ms. Felix that we were on the record, your client was absent.  I believe he was in

13    medical quarantine at that time.  But my notes reflect that you did agree that this case is

14    only one where we are addressing his eligibility for ███████? Is that right?

15    MS. FELIX TO JUDGE

16        That's correct.

17    JUDGE TO MS. FELIX

18        All right.  And with that are there any other matters that we need to address today

19    on the record?

20    MS. FELIX TO JUDGE

21        Your Honor, may I propose as a safeguard, instead of taking Mr. Garcia's

22    testimony to submit a supplemental declaration.  That way I could even prepare a

23    written closing and we wouldn't need another individual date.  And I just think putting

24    him through another individual and actually having him testify would just be detrimental

25    to his health.  And we would need additional continuances in case additional

1   emergencies occur.

2   JUDGE TO MS. FELIX

3        So you're proposing that we vacate the date that I indicated we would proceed

4   with on next week?

5   MS. FELIX TO JUDGE

6        If, if I could provide the Court a supplemental declaration of the information I

7   would, I believe I would solicit on that day.

8   JUDGE TO MS. FELIX

9        Okay.

10  JUDGE TO MS. BORTOLOTTI

11       Ms. Bortolotti, do you have any objection to proceeding into that, pro, proceeding

12  in that fashion?

13  MS. BORTOLOTTI TO JUDGE

14       Your Honor, that's exactly what I suggested.  It's, it's part of the preliminary

15  aspect of this case, is just doing it on paper.

16  JUDGE TO MS. BORTOLOTTI

17       Okay.

18  JUDGE TO MS. FELIX

19       So Ms. Felix, how much time would you like to have to prepare the supplemental

20  declaration and your written closing?

21  MS. FELIX TO JUDGE

22       Two weeks, Your Honor.

23  JUDGE TO MS. FELIX

24       Two weeks, from today?

25  MS. FELIX TO JUDGE

1       Yes, please.

2   JUDGE TO MS. FELIX

3       Okay.  Which is the 14th.  Is that right?  Am I looking at that correctly?  All right.

4   JUDGE TO MS. BORTOLOTTI

5       Ms. Bortolotti, would you like an opportunity to respond or do you want to submit

6   your written closing on the same deadline?

7   MS. BORTOLOTTI TO JUDGE

8       It'd like to respond, Your Honor.

9   JUDGE TO MS. BORTOLOTTI

10      How much time do you need to be able to do so?

11  MS. BORTOLOTTI TO JUDGE

12      Oh --

13  JUDGE TO MS. BORTOLOTTI

14      From the 14th.

15  MS. BORTOLOTTI TO JUDGE

16      Can I -- yes.  Can I get until February 2nd?

17  JUDGE TO MS. BORTOLOTTI

18      February 2nd or March 2nd?

19  MS. BORTOLOTTI TO JUDGE

20      Oh, sorry, March 2nd, March 2nd.  Sorry.

21  JUDGE TO MS. BORTOLOTTI

22      All right.

23  MS. BORTOLOTTI TO JUDGE

24      It's just there's a holiday in there, I just might need an extra day or two.

25  JUDGE TO MS. BORTOLOTTI

1        Okay.  February 2nd is fine.

2    MS. BORTOLOTTI TO JUDGE

3        March 2nd?

4    JUDGE TO MS. BORTOLOTTI

5        March 2nd.

6    MS. BORTOLOTTI TO JUDGE

7        Thank you.

8    JUDGE TO MS. BORTOLOTTI

9        All right.

10   JUDGE TO MS. BORTOLOTTI AND MS. FELIX

11       All right.  Anything else that we need to address today on the record?

12   MS. FELIX TO JUDGE

13       Nothing from the --

14   MS. BORTOLOTTI TO JUDGE

15       Your Honor, for the, for the closing argument can we just get into argument, or do

16   you need us to recite all of the history of this case, since -- I know that you gave us an

17   exhibit list that kind of outlines the whole history.  Would it be okay if we just went

18   straight into our argument?

19   JUDGE TO MS. BORTOLOTTI

20       Oh, absolutely.  You don't, you don't need to --

21   MS. BORTOLOTTI TO JUDGE

22       Okay.

23   JUDGE TO MS. BORTOLOTTI

24       -- provide the procedural background or anything of that nature.

25   MS. BORTOLOTTI TO JUDGE

1        Okay.  Thank you.

2    JUDGE TO MS. BORTOLOTTI

3        Okay.

4    JUDGE TO MS. BORTOLOTTI AND MS. FELIX

5        Anything else?

6    MS. FELIX TO JUDGE

7        Nothing.

8    MS. BORTOLOTTI TO JUDGE

9        Nothing else from the Department.  Oh, sorry, the biometrics are complete, so we

10    don't have to worry about that.

11    JUDGE TO MS. BORTOLOTTI

12        All right.

13    JUDGE TO MS. BORTOLOTTI AND MS. FELIX

14        All right.  Thank you for that update.

15    JUDGE FOR THE RECORD

16        Okay, there being nothing further today then we will be off the record.

17    MS. FELIX TO JUDGE

18        Thank you, Your Honor.

19    MS. FELIX TO MS. BORTOLOTTI

20        Thank you, counsel.

21    JUDGE TO MS. FELIX

22        Thank you for your time.

23                            HEARING CLOSED

24

25

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court


In the Matter of                                             File:  A092-169-635



                                            )
ARTEMIO GARCIA-ILLENES        )        IN REMOVAL PROCEEDINGS
                                            )
    RESPONDENT                        )            Transcript of Hearing



Before Robinson Jr., Eugene H., Immigration Judge



Date: November 3, 2022                    Place: SAN DIEGO, CALIFORNIA


Transcribed by Free State Reporting, Inc.-3


Official Interpreter:


Language: SPANISH


Appearances:

  For the Respondent: CRYSTAL FELIX

  For the DHS: LAUREN A. BORTOLOTTI

1   JUDGE FOR THE RECORD

2        All right.  We are on the record.  Today is November 3rd, 2022.  This is

3   Immigration Judge Eugene Robinson, in the Otay Mesa Immigration Court.  These are

4   continued removal proceedings in the matter of A092-169-635, Artemio Garcia-Illenes.

5   The respondent is appearing in person, along with his counsel.

6   JUDGE TO MS. FELIX

7        Counsel, please state your appearance.

8   MS. FELIX TO JUDGE

9        Crystal Felix, appearing as a qualified representative for Mr. Garcia.

10   JUDGE TO MS. BORTOLOTTI

11        And for the Department?

12   MS. BORTOLOTTI TO JUDGE

13        Lauren Bortolotti, for the Department of Homeland Security.

14   JUDGE TO MS. FELIX

15        And Ms. Felix, you indicated you were willing to waive interpretation for the

16   limited purpose of today's proceeding, correct?

17   MS. FELIX TO JUDGE

18        That's correct.

19   JUDGE TO MS. FELIX

20        All right.  So at the last session I had notes that say we were extending until

21   today to allow for completion of the mental health evaluation.  But I don't see that any of

22   that material has been submitted to the Court.  What's the status?

23   MS. FELIX TO JUDGE

24        We have a draft completed at this point.  But I'm working with the doctor.  I think

25   at this point we're ready to set it for a merits, and I can file the evaluation during the call-

1   up date.

2   JUDGE TO MS. FELIX

3        Okay.  I think we have December 20 --

4   COURT CLERK TO JUDGE

5        Twenty-eighth.

6   JUDGE TO MS. FELIX

7        -- 28th.

8   JUDGE TO COURT CLERK

9        In the morning or afternoon?

10  COURT CLERK TO JUDGE

11       It'd be 1:00 p.m.

12  JUDGE TO MS. FELIX

13       December 28th, at 1:00 p.m.

14  MS. FELIX TO JUDGE

15       I'm not available on that date.  Do you have any dates sooner than that?

16  JUDGE TO MS. BORTOLOTTI

17       While we're looking for that, counsel for the Department, please state your

18  appearance.

19  MS. BORTOLOTTI TO JUDGE

20       Lauren Bortolotti, for the Department of Homeland Security.

21  JUDGE TO MS. BORTOLOTTI

22       All right.  Thank you.

23  COURT CLERK TO JUDGE

24       I only have November 30th --

25  MS. FELIX TO JUDGE

A092-169-635                    14                    November 3, 2022

1       Oh.

2   COURT CLERK TO JUDGE

3       -- or November 23rd.

4   JUDGE TO MS. FELIX

5       Is that -- are those dates too soon, the 23rd or the 30th of this month?

6   MS. FELIX TO JUDGE

7       Yes, Your Honor, those are too soon.

8   COURT CLERK TO JUDGE

9       The only other dates we have are the 28th and the 29th.

10  JUDGE TO COURT CLERK

11      All right.  Let me take a look here real quick.

12  JUDGE TO MS. FELIX

13      So what would, what would be, what would be your optimum dates for the merits,

14  Ms. Felix?  Just state what you want.

15  MS. FELIX TO JUDGE

16      Any day of the week of December 19th or -- I could make December 29th work.

17  JUDGE TO MS. FELIX

18      You could make the 29th work?

19  MS. FELIX TO JUDGE

20      Yes.

21  JUDGE TO MS. FELIX

22      Okay.

23  COURT CLERK TO MS. FELIX

24      At 8:00 a.m.?

25  MS. FELIX TO COURT CLERK

1       That works.

2   JUDGE TO MS. FELIX

3       That works.

4   MS. BORTOLOTTI TO JUDGE

5       Is that the 29th or the 28th?

6   COURT CLERK TO MS. BORTOLOTTI

7       The 29th, at 8:00.

8   JUDGE TO MS. BORTOLOTTI

9       Twenty-nine.

10  MS. BORTOLOTTI TO JUDGE

11      Okay.  And that was at 8:00 a.m.?

12  COURT CLERK TO MS. FELIX

13      Yes, it was.

14  JUDGE TO MS. BORTOLOTTI

15      Correct.

16  MS. BORTOLOTTI TO JUDGE

17      Okay, thank you.

18  JUDGE TO MS. BORTOLOTTI

19      All right.

20  JUDGE TO MS. BORTOLOTTI AND MS. FELIX

21      So with a merits date of the 29th, the call-up date would be December 15th and

22  any opposing statements the 22nd.  All right.  Any other matters we need to address on

23  the record?

24  MS. FELIX TO JUDGE

25      Your Honor, is it possible to schedule a Franco bond hearing?

A092-169-635                    16                    November 3, 2022

1   JUDGE TO MS. FELIX

2        [No audible response.]

3   MS. FELIX TO JUDGE

4        Or I can call the Court?

5   JUDGE TO MS. FELIX

6        Yeah, you can call the Court --

7   MS. FELIX TO JUDGE

8        Okay.

9   JUDGE TO MS. FELIX

10        -- see what date's available.  All right.

11   MS. FELIX TO JUDGE

12        Nothing further from respondent.

13   JUDGE TO MS. FELIX

14        All right.  All right.  Well, then we are off the record.

15   MS. FELIX TO JUDGE

16        Thank you.

17   JUDGE TO MS. FELIX

18        All right.

19                          <u>HEARING ADJOURNED</u>

20

21

22

23

24

25

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of                                    File:  A092-169-635

ARTEMIO GARCIA-ILLENES          )          IN REMOVAL PROCEEDINGS
                                )
     RESPONDENT                 )          Transcript of Hearing

Before Robinson Jr., Eugene H., Immigration Judge

Date: September 26, 2022                Place: SAN DIEGO, CALIFORNIA

Transcribed by Free State Reporting, Inc.-3

Official Interpreter:  LEXIA RAMOS

Language: SPANISH

Appearances:

 For the Respondent: CRYSTAL FELIX

 For the DHS: LAUREN A. BORTOLOTTI

1    JUDGE FOR THE RECORD

2         On the record.  Today is September 26, 2022.  This is Immigration Judge

3    Eugene Robinson, in the Otay Mesa Immigration Court.  These are continued removal

4    proceedings in the matter of A092-169-635.  The record reflects that Spanish is the

5    respondent's best and preferred language, and we do have a Spanish language

6    interpreter participating today.

7    JUDGE TO INTERPRETER

8         Madam Interpreter, please state your name for the record.

9    INTERPRETER TO JUDGE

10        Lexia Ramos [phonetic sp.].

11   JUDGE TO INTERPRETER

12        And Madam Interpreter, do you swear or affirm and promise that you are

13   competent to interpret from English to Spanish, and Spanish to English and that you will

14   do so accurately, correctly and to the best of your ability?

15   INTERPRETER TO JUDGE

16        I do, Your Honor.

17   JUDGE TO INTERPRETER

18        Thanks so much.

19   JUDGE FOR THE RECORD

20        The respondent is appearing in person and he has counsel participating by

21   video.

22   JUDGE TO MS. FELIX

23        Counsel, please state your appearance.

24   MS. FELIX TO JUDGE

25        Crystal Felix, qualified representative, for Mr. Garcia.

A092-169-635                           7                    September 26, 2022

1    JUDGE TO MS. BORTOLOTTI

2        And for the Department?

3    MS. BORTOLOTTI TO JUDGE

4        Lauren Bortolotti, for the Department of Homeland Security.

5    JUDGE TO MR. GARCIA-ILLENES

6        Sir, please state your full, true and complete name.

7    MR. GARCIA-ILLENES TO JUDGE

8        Artemio Garcia.

9    JUDGE TO MR. GARCIA-ILLENES

10       And sir, and sir, do you authorize Attorney Felix to represent you and speak on

11   your behalf?

12   MR. GARCIA-ILLENES TO JUDGE

13       Yes.

14   JUDGE TO MR. GARCIA-ILLENES

15       Okay. So, sir, your counsel and I are going to discuss your case briefly without

16   interpretation and we'll be right back with you. Do you understand?

17   MR. GARCIA-ILLENES TO JUDGE

18       No, I don't understand.

19   JUDGE TO MR. GARCIA-ILLENES

20       Okay. We're going to talk about your case without interpretation for a few

21   moments. Do you understand?

22   MR. GARCIA-ILLENES TO JUDGE

23       Yes.

24   JUDGE TO MR. GARCIA-ILLENES

25       All right.

1   JUDGE TO MS. FELIX

2        So Ms., Ms. Felix, looking at the, the review of the case, where do we stand right

3   now?

4   MS. FELIX TO JUDGE

5        Your Honor, I did file an updated Form ███ and he has been evaluated by a

6   doctor.  But because it looks like we are going to need a follow-up, I'd like to set it for a

7   reset Master, just to get -- to provide the Court a status on, on the evidence.

8   JUDGE TO MS. FELIX

9        And it looks like that ███ was just uploaded today.  All right.  So how much time

10  you think you need to be ready for your next Master Calendar?

11  MS. FELIX TO JUDGE

12       Three or four weeks, Your Honor.

13  JUDGE TO MS. FELIX

14       All right.  So, so I have October 20th, at 1:00 p.m. and November 3rd at 1:00

15  p.m. and November 10th at 1:00 p.m.

16  MS. FELIX TO JUDGE

17       November 3rd, Your Honor, at 1:00 works.

18  JUDGE TO MS. FELIX

19       All right.  Now, you said the purpose of this delay is for the follow-up on the

20  medical, the mental health examination?  Or what, what exactly is it?

21  MS. FELIX TO JUDGE

22       Yes, Mr. Garcia has already been --

23  JUDGE TO MS. FELIX

24       Uh-huh.

25  MS. FELIX TO JUDGE

A092-169-635                       9                    September 26, 2022

1        -- by a doctor.

2     JUDGE TO MS. FELIX

3        Uh-huh.

4     MS. FELIX TO JUDGE

5        But the doctor in preparing her report said she may need to follow-up, so it's, it's

6     to allow time to schedule that and then for her to complete her report.

7     JUDGE TO MS. FELIX

8        Okay.  Got it.

9     JUDGE TO MS. BORTOLOTTI

10       Ms. Bortolotti, any other matters we need to discuss about the status right now?

11    MS. BORTOLOTTI TO JUDGE

12       Nothing, nothing, Your Honor, no.

13    JUDGE TO MS. BORTOLOTTI

14       All right.

15    JUDGE TO INTERPRETER

16       Okay, Madam Interpreter, you can resume interpretation at this point.

17    JUDGE TO MR. GARCIA-ILLENES

18       Sir, your counsel has indicated that your mental health evaluation has been

19    completed.  And the doctor who completed that evaluation needs some additional time

20    to prepare the report.  So we're going to set your next hearing for November 3rd at 1:00

21    p.m.  Your attorney did also file an ▮▮▮▮▮▮ application.  So the Court has

22    received that document.  Sir, do you have any questions about what has occurred here

23    today?

24    MR. GARCIA-ILLENES TO JUDGE

25       No.

A092-169-635                    10                    September 26, 2022

1   JUDGE TO MR. GARCIA-ILLENES

2       Very well.

3   JUDGE TO MS. FELIX

4       Ms. Felix, any other matters we need to go on the record?

5   MS. FELIX TO JUDGE

6       Yes, Your Honor.  A note on the ▮▮▮ it's not signed by Mr. Garcia, and that's

7   because the contents of that application are informed both by him, but also in document

8   review that he couldn't review.

9   JUDGE TO MS. FELIX

10      So we, we can have him sign it before we, before we proceed with the final

11  hearing.

12  MS. FELIX TO JUDGE

13      Okay, Your Honor.

14  JUDGE TO MS. FELIX

15      All right.  Any other matters?

16  MS. FELIX TO JUDGE

17      Nothing from respondent.

18  JUDGE TO MS. FELIX

19      All right.

20  JUDGE TO MR. GARCIA-ILLENES

21      Sir, your counsel indicates that your -- she's going to have you sign your updated

22  ▮▮▮▮ application at a later date.  And we'll make sure that that happens before your

23  final hearing.  Do you understand?

24  MR. GARCIA-ILLENES TO JUDGE

25      I don't understand everything very well.

A092-169-635                    11                    September 26, 2022

1    JUDGE TO MR. GARCIA-ILLENES

2        Okay.  Your attorney will explain it all to you later.

3    MR. GARCIA-ILLENES TO JUDGE

4        Okay.

5    JUDGE TO MR. GARCIA-ILLENES

6        All right.

7    JUDGE FOR THE RECORD

8        There being nothing further then, we will be off the record.

9    JUDGE TO MR. GARCIA-ILLENES

10        Have good morning, sir.

11   JUDGE TO MS. FELIX

12        Thank you, Ms. Felix.

13   MS. FELIX TO MS. BORTOLOTTI

14        Thank you, counsel.

15   MS. FELIX TO JUDGE

16        Thank you, Your Honor, excuse me.

17                          HEARING ADJOURNED

18

19

20

21

22

23

24

25

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of                                          File:  A092-169-635

)
ARTEMIO GARCIA-ILLENES              )          IN REMOVAL PROCEEDINGS
)
RESPONDENT                          )              Transcript of Hearing

Before Robinson Jr., Eugene H., Immigration Judge

Date: July 27, 2022                          Place: SAN DIEGO, CALIFORNIA

Transcribed by Free State Reporting, Inc.-3

Official Interpreter:

Language: SPANISH

Appearances:

  For the Respondent: CRYSTAL FELIX

  For the DHS: LAUREN A. BORTOLOTTI

1  JUDGE TO MS. FELIX

2      Ms. Felix, do we need an interpreter?

3  MS. FELIX TO JUDGE

4      We, we can waive for today, Your Honor.

5  JUDGE TO MS. FELIX

6      All right.  Very well.

7  JUDGE FOR THE RECORD

8      All right.  Very well then, we are on the record.  Today is July 27, 2022.  This is

9  Immigration Judge Eugene Robinson, in the Otay Mesa Immigration Court.  These are

10  remanded proceedings in the matter of A092-169-635.  The respondent is appearing in

11  person, along with his counsel.

12  JUDGE TO MS. FELIX

13      Counsel, please state your appearance.

14  MS. FELIX TO JUDGE

15      Good morning, Your Honor.  Crystal Felix, appearing as a qualified

16  representative, for Mr. Garcia.

17  JUDGE TO MS. BORTOLOTTI

18      And for the Department?

19  MS. BORTOLOTTI TO JUDGE

20      Lauren Bortolotti, for the Department of Homeland Security.

21  JUDGE TO MS. FELIX

22      Ms. Felix, you indicated just before we started that you will be waiving

23  interpretation for the limited purpose of today's proceeding?  Is that correct?

24  MS. FELIX TO JUDGE

25      That's correct, Your Honor.

A092-169-635                        1                        July 27, 2022

1   JUDGE TO MS. FELIX

2       All right.  So as I indicated --

3   JUDGE FOR THE RECORD

4       And I will note for the record that the respondent is present in Court along with

5   his counsel.

6   JUDGE TO MS. FELIX

7       It's a very short remand order.  I've already addressed issue number one, which

8   was ordering a qualified representative.  So it looks like the other issue is to find out,

9   Ms. Felix, what safeguards do you want the Court to order, or grant?  I should say.

10  MS. FELIX TO JUDGE

11      Your Honor, at this time I'm requesting a continuance to determine those

12  safeguards.  He does have a very lengthy record, and I was his counsel for his appeal.

13  However, that was limited to competency and I didn't look fully at his merits.  But

14  regarding the issue of what safeguards to attach to his case, I also wanted to know if

15  we're able to sort of enter new pleadings or submit a, a, a new ███, have another

16  merits.  What was the, the Court's impression of the next steps --

17  JUDGE TO MS. FELIX

18      Yeah.  So --

19  MS. FELIX TO JUDGE

20      -- in this remand.

21  JUDGE TO MS. FELIX

22      -- that was, that was my next issue to address is whether or not you want to enter

23  new pleadings, and submit a new application?

24  MS. FELIX TO JUDGE

25      Yes, to both.

1    JUDGE TO MS. FELIX

2         Okay.  All right.  So how much time do you think you'll be, need to be prepared to

3    enter pleadings on behalf of your client, and to submit your application?

4    MS. FELIX TO JUDGE

5         I, I would ask for a month, Your Honor, and that's only because we are collecting

6    evidence, such as a psychological evaluation.  And I have -- I'm waiting for the ROP and

7    the DARs from the Court.

8    JUDGE TO MS. FELIX

9         Okay.  And you've already submitted those requests?

10   MS. FELIX TO JUDGE

11        Yes.

12   JUDGE TO MS. FELIX

13        All right.  So that looks like for -- so 30 days again will, will bring us back to the

14   same date we had for the other case, August 30th.

15   MS. FELIX TO JUDGE

16        If I may look at my calendar on my computer?

17   JUDGE TO MS. FELIX

18        Okay.  That's a Tuesday.

19   MS. FELIX TO JUDGE

20        Okay.  Thank you.  I am available.

21   JUDGE TO MS. FELIX

22        Okay.  And that will be at 8:00 a.m.

23   MS. FELIX TO JUDGE

24        Great.

25   JUDGE TO MS. FELIX

1      All right.  So you think by that date you will have your application ready in

2   addition to being ready to submit your pleadings?

3   MS. FELIX TO JUDGE

4      Yes.  I can have the pleadings and the ▮ on that date.

5   JUDGE TO MS. FELIX

6      Okay.  Excellent.  All right.  Do you think it's too soon for us to go ahead and set

7   the merits date?

8   MS. FELIX TO JUDGE

9      I do, Your Honor.

10   JUDGE TO MS. FELIX

11      Okay.

12   JUDGE TO MS. BORTOLOTTI

13      Government counsel, any other matters we need to, you think we need to

14   address based on the BIA's order at this point?

15   MS. BORTOLOTTI TO JUDGE

16      Nothing from the Government.

17   JUDGE TO MS. BORTOLOTTI

18      Okay.

19   JUDGE TO MS. FELIX

20      And let me just to make you aware of the prior pleadings, Ms. Felix, it looks like

21   back on January 20th of 2021, respondent admitted allegations 1 through 5 on the

22   Notice to Appear.  The Court denied the charge on respondent's behalf.  But then

23   sustained the charge based on Exhibits 1 through 5 in the record.  1 through 5 are the

24   Notice to Appear, DHS submitted evidence on December 11th that was marked as 2,

25   which is the submission of the police report.  On the 17th, DHS submitted the I-213.

A092-169-635                            4                            July 27, 2022

1   That's Exhibit 3.  Exhibit 4 was submitted by the Department on January 7th of 2021.

2   That is the application to replace alien registration card.  And Exhibit 5 was a DHS brief

3   filed on January 13, 2021, and it is the Department's statement on removability.

4   MS. FELIX TO JUDGE

5        Thank you, Your Honor.  I would like to request if I can be provided time to object

6   to any evidence in the record, if I find it necessary to, to make objection.  But if -- I don't

7   know how that works because it's remanded proceedings.

8   JUDGE TO MS. FELIX

9        Well, I -- well, you can make your objections --

10  MS. FELIX TO JUDGE

11       Okay.

12  JUDGE TO MS. FELIX

13       -- and we'll, and we'll address it at that point.

14  MS. FELIX TO JUDGE

15       Thank you.

16  JUDGE TO MS. FELIX

17       All right.

18  MS. BORTOLOTTI TO JUDGE

19       Your Honor, did you receive the ESI filing?

20  JUDGE TO MS. BORTOLOTTI

21       Yes.  That was submitted on the 20th -- I have not marked that yet because I'm

22  like Ms. Felix, I need to go through the record, the entirety of the record.

23  MS. BORTOLOTTI TO JUDGE

24       Okay.

25  MS. FELIX TO MS. BORTOLOTTI

A092-169-635                        5                        July 27, 2022

1        And counsel, I received that as well.

2    JUDGE TO MS. FELIX

3        Okay.

4    JUDGE TO MS. BORTOLOTTI

5        Yeah, we received it, but again I haven't marked it yet.  All right.  And let's --

6    JUDGE TO MS. FELIX

7        Okay.

8    JUDGE TO MS. BORTOLOTTI AND MS. FELIX

9        Any other matters we need to go over today on the record?

10   MS. FELIX TO JUDGE

11       Nothing from respondent.

12   MS. BORTOLOTTI TO JUDGE

13       Nothing from the Government.

14   JUDGE TO MS. BORTOLOTTI AND MS. FELIX

15       All right.

16   JUDGE FOR THE RECORD

17       Very well.  Then we will be off the record.

18                              HEARING ADJOURNED

19

20

21

22

23

24

25

Case 3:20-cv-00756-DMS-AHG   Document 254-2   Filed 12/01/23   PageID.10193   Page 83 of 153

Crystal Felix, Esq.
ABA Immigration Justice Project
2727 Camino del Rio S. Ste. 320
San Diego, California 92108
Office: 619.255.8786
Fax:    619.255.8849
Email: crystal.felix@abaijp.org

**DETAINED**

*EOIR Contract Qualified Representative for*
**Artemio GARCIA ILLENES**

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## OTAY MESA, CALIFORNIA

| | | |
|---|---|---|
| **In the Matter of:** | ) | |
| | ) | **File No.** |
| **Artemio GARCIA ILLENES** | ) | **A 092-169-635** |
| | ) | |
| | ) | |
| **In Removal Proceedings** | ) | |

Hon. Immigration Judge Eugene H. Robinson Jr.

Next Hearing: March 02, 2023; 8 AM

## RESPONDENT'S CLOSING ARGUMENT
## IN SUPPORT OF APPLICATION FOR ▮▮▮▮▮▮▮▮

Exh. 53 - Adm.

## I.    INTRODUCTION

Respondent, Mr. Garcia Illenes, by and through his EOIR Contracted Qualified
Representative ("QR") submit the following closing statement in support of his application for
████████████████████████████████████████ Mr. Garcia Illenes is eligible for
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████

Mr. Garcia Illenes asserts through his QR that ████████████████████████
████████████████████████████████. Because of his diagnosis Mr. Garcia
Illenes's condition severely impairs his ability to survive independent of assistance from others – he
requires care – he requires more care than he is currently receiving at Otay Mesa Detention Center.
Nonetheless, if removed to Mexico Mr. Garcia Illenes will be forced out of his current structured
and safe environment and be vulnerable to harm from different sources.

Mr. Garcia Illenes has submitted evidence that establishes that in Mexico there is an overall
lack of services available to people with disabilities and because of that people – particularly people
without familial support – have limited options to treat their mental health symptoms. ████████
██ ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████
████████████████████████████████████████████████-██
████████████████████████████████████████████████████

EOIR – 2 of 15

2



## II.   ARGUMENT

Mr. Garcia Illenes suffers from

psychiatric illness. Dr. Kuck reported the following DSM-5 [ICD-10] diagnostic impressions:

- **Other Specified Trauma- and Stressor-Related Disorder**, {Chronic, residual posttraumatic stress with childhood amnesia related to physical/psychological abuse, nocturnal visual (dark shadows) and tactile (unwanted touch on thighs) illusions, current fears of bullying and of Covid-19 infection}; [F43.8]
- **Major Depressive Disorder**, Recurrent, Moderate Severity; [F33.1]
- **Somatic Symptom Disorder with Predominant Pain, Severe and Persistent**; [F45.1]
- **Dissociative Amnesia**, {Selective autobiographical amnesia for severe childhood abuse, now generalizing under stress to memory for life events}; provisional diagnosis.
- The DSM-5 [ICD-10] treatment conditions of concern include:
  - o  Personal History (past history) of Psychological and Physical Abuse in Childhood, {Emotional threat and punishment with severe physical abuse}; [Z62.811, Z62.810].
  - o  Social Exclusion or Rejection, {Peer bullying, verbal abuse, intimidation}; [Z60.4]

*See* R2-Exhibit 49a, Respondent's Prehearing Brief, Witness List, and Supporting Evidence (Part

I) filed December 16, 2022, Tab C at 18-30. Dr. Kuck testified that Mr. Garcia Illenes's mental

health symptoms impair his social and occupational functioning. Because of this Mr. Garcia Illenes

3

Case 3:20-cv-00756-DMS-AHG   Document 254-2   Filed 12/01/23   PageID.10196   Page 86 of
153
Uploaded on:  2/13/2023 at 10:57:53 a.m. (Pacific Standard Time) Base City:  OTM

will not be able to afford mental health care in Mexico. The Mexican healthcare system comprises

two sectors: public and private. *See* R2-Exhibit 49b,  Respondent's Prehearing Brief, Witness List,

and Supporting Evidence (Part II) filed December 16, 2022, Tab D at 94. The private sector

provides services for those with the capacity to pay. *Id*. The record shows that he has been in some

form of detention since 2018, the record also shows that prior to that he did not have stable

employment. This record supports the conclusion that he would lack the financial resources to pay

for private health care. Mr. Garcia Illenes is a 62-year-old male with several mental health

conditions with one that causes him to be hyper focused on his medical conditions- which further

impedes him ability to gain employment in Mexico. The record does not support the conclusion

that  Mr. Garcia Illenes would likely be able to obtain future employment that would provide him

with enough money to afford private healthcare services.

Next, the record also shows that Mr. Garcia Illenes would likely be unable to obtain

employment that would afford him public health insurance. In Mexico public health care services

are available to persons employed in the government or formal sector. Mr. Garcia Illenes would

likely be unable to secure formal employment as he mostly worked in agriculture, landscaping, or

construction. Tab A, Supplemental Declaration. Free public healthcare services are provided to

individuals without social security. Cf. *See* R2-Exhibit 49b,  Respondent's Prehearing Brief,

Witness List, and Supporting Evidence (Part II) filed December 16, 2022, Tab D at 95, 101, "The

National Health Survey showed that 21% of the population had no insurance, while a subsequent

survey revealed that 87% of the population from the lowest socioeconomic level lacked access to

health services."

Austerity measures under the current Mexican president have resulted in widespread cuts

to many social services, including the healthcare sector. *See* R2-Exhibit 49b,  Respondent's

Uploaded on: 2/13/2023 at 10:57:53 a.m. (Pacific Standard Time) Base City:  OTM

Prehearing Brief, Witness List, and Supporting Evidence (Part II) filed December 16, 2022, Tab

D at 107. In January, 2020 just months before the pandemic struck Mexico, the current Mexican

president dismantled the health insurance program Seguro Popular and replaced it with INSABI.

*Id.* INSABI's implementation, however, has been chaotic, flawed, and uneven and has left many

poor Mexicans who formerly had coverage through Seguro Popular uninsured. *Id.*

The record establishes that Mr. Garcia Illenes would most likely be unable to afford

psychiatric care for his mental health conditions causing him to decompensate. Even if he could

find affordable community-based services in Mexico, he would likely be unable to access them.

Mexico allocates 2.2% of the total health budget to mental health services, eight times lower than

the proportion of the global burden of disease, estimated for mental health disorders *See* R2-

Exhibit 49b, Respondent's Prehearing Brief, Witness List, and Supporting Evidence (Part II) filed

December 16, 2022, Tab D at 96. To serve a population of 129.2 million inhabitants, there are 39

psychiatric hospitals in Mexico, 34 of which are funded by the Ministry of Health and five by the

National Institute of Social Security. *Id.* The treatment for mental disorders remains within

specialized services (tertiary care), specifically psychiatric hospitals. *See* R2-Exhibit 49b,

Respondent's Prehearing Brief, Witness List, and Supporting Evidence (Part II) filed December

16, 2022, Tab D at 99.

As Dr. Kuck testified – his preservation and hyperfocus on his somatic symptoms

will cause him to stand out and be considered socially unacceptable in society which impacts his

EOIR - 5 of 15

Exh. 53 - Adm.

085

Uploaded on:  2/13/2023 at 10:57:53 a.m. (Pacific Standard Time)  Base City:  OTM

occupational functioning,



EOIR - 6 of 15

Exh. 53 - Adm.

086

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬ ▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬

Mr. Garcia Illenes has not had support from his family during these proceedings and he will continue to not have family support if removed to Mexico. Mr. Garcia Illenes has experienced homelessness in the United States and is likely to experience homelessness again in Mexico.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬ ▬ ▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬ ▬ ▬▬▬

▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬ ▬ ▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Uploaded on:  2/13/2023 at 10:57:53 a.m. (Pacific Standard Time) Base City:  OTM



Dr. Kuck testified that if Mr. Garcia Illenes did not receive professional support it would lead to his psychiatric

EOIR – 8 of 15

Exh. 53 – Adm.

088

decompensation and behavioral regression. If he decompensates Dr. Kuck testified that all his mental health symptoms will reamplify which would lead to agitation, problems with sleep and disorganized erratic energy. Dr. Kuck testified that because of his diagnosis Mr. Garcia Illenes does not have the capacity to find a place to live on his own, he requires guidance and structure. Regarding work, he requires small easy tasks with limited interaction with others. Mr. Garcia Illenes required predictability as Dr. Kuck testified- his environment maintains his sanity- he needs a place with structure, predictability, staff, routine – without this he would be absolutely overwhelmed which would lead erratic conduct.

## III.   CONCLUSION

For the reasons set forth in this closing statement, Respondent's Prehearing Brief and Supporting Evidence (Part I-III) filed December 16, 2022, and those presented at the merits

9

hearing on January 31, 2023, Mr. Garcia Illenes respectfully requests this Court grant his

application for ███████████████████████████

Respectfully Submitted by Counsel for Mr. Garcia Illenes:

/s/ Crystal Felix
Crystal Felix
*EOIR Contract Qualfied Representative for Respondent*

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**OTAY MESA IMMIGRATION COURT**
**7488 Calzada de la Fuente**
**San Diego, California 92154**

| | |
|---|---|
| File No.:     A092 169 635 | Date: May 3, 2023 |
| In the Matter of | |
| Artemio GARCIA-ILLENES, | **IN REMOVAL PROCEEDINGS** |
| Respondent. | |

**ON BEHALF OF RESPONDENT:**

Yolanda Crystal Felix, Esquire
2727 Camino del Rio South, Suite 320
San Diego, California 92108

**ON BEHALF OF THE DEPARTMENT OF HOMELAND SECURITY:**

Lauren Bortolotti, Assistant Chief Counsel
P.O. Box 438150
San Diego, California 92143

**CHARGE:**     Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, Aggravated Felony.

**APPLICATIONS:**     ███████████████████████████████████████

## DECISION AND ORDERS OF THE IMMIGRATION JUDGE

### I.     INTRODUCTION AND PROCEDURAL HISTORY

This matter is again before the Immigration Court after a series of appeals and remands. The Court will not here recount the entirety of the procedural history, as the parties are familiar with the procedural record. Most recently, the Board of Immigration Appeals ("BIA") held that the prior Immigration Judge erred in deciding that Respondent was competent to proceed without the implementation of safeguards. (Artemio Garcia-Illenes, A092 169 635, at *2 (BIA June 27, 2022).) As such, the BIA directed this Court to order a Qualified Representative ("QR") to be provided to Respondent, conduct further proceedings, and enter a new decision. (*Id.* at 1 n.2, 2.)

Upon remand, the Court followed the BIA's directive and ordered the provision of a Qualified Representative ("QR") to Respondent.[1] (R2-Exh. 41.) Since that time, Respondent's QR has represented him by addressing his removability and eligibility for relief, submitting evidence to the Court in support of his application for relief, and requesting safeguards on his behalf. (R2-Exhs. 47, 49a, 49b, 49c, 50, 53.)

---

[1] This matter was reassigned to the undersigned Immigration Judge on remand, who familiarized himself with the entirety of the Record in accordance with 8 C.F.R. § 1240.1(b).

Respondent is a native and citizen of Mexico who was personally served with a Notice to Appear ("NTA") by the Department of Homeland Security ("Department") on October 8, 2020. (Exh. 1, NTA, at 2.) In the NTA, the Department alleged that Respondent is a native and citizen of Mexico who was admitted to the United States at New York, New York, on or about December 1, 1990, as a lawful permanent resident. (*Id.* at 1; Exh. 4, at 2.) The Department further alleged that on January 30, 2018, Respondent was convicted in the Superior Court of California, County of San Diego, for the offense of Sexual Penetration of Incompetent Person, in violation of California Penal Code section 289(b), for which he was sentenced to six years in prison. (Exh. 1, at 1, 4, 9.) Accordingly, the Department charged Respondent with being deportable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("Act") because at some time after admission, he was convicted of an aggravated felony, as defined in section 101(a)(43)(A) of the Act. (*Id.* at 1.) The Department filed the NTA with the Otay Mesa Immigration Court on October 13, 2020, thereby vesting this Court with jurisdiction over the instant proceedings. (*Id.*); 8 C.F.R. § 1003.14(a) (2020).

After Respondent's QR entered her appearance, the Court granted several postponements to allow Respondent's QR to prepare, including accommodating Respondent's particular needs for hearing preparation. On January 31, 2023, the Court conducted a merits hearing, during which it received testimony from Respondent's expert witness, Dr. Julia Kuck. Respondent conceded that his offense is both an aggravated felony and ▮▮▮▮ and that he is therefore ineligible for ▮▮▮▮▮▮

(R2-Exh. 49a, at 5.) ▮▮▮▮▮

▮▮▮▮ (*Id.*) Therefore, the Court reaffirms its prior finding that Respondent is removable as charged in the NTA and directs Mexico for removal. (Exh. 1, at 1, 4, 9; Exh. 4, at 2); INA § 240(c)(3)(A). The parties agreed to the safeguard of proceeding on their written submissions in the Record, without requiring any additional testimony from Respondent. At the close of the merits hearing, the Court allowed the parties to submit written closing arguments, along with a supplemental declaration from Respondent. (R2-Exhs. 53-54.) After considering the totality of the evidence, the Court finds that Respondent has not met his burden to demonstrate his eligibility for DCAT.

## II.   EVIDENCE

Upon remand, the Court allowed the parties to submit additional evidence and update the country conditions evidence in the Record. Two of the safeguards Respondent requested narrowed the evidence the Court considered in this case. Respondent requested that, as safeguards, the Court 1) not require additional testimony from Respondent, and 2) consider his ▮▮▮ application based on the objective evidence alone. Given the longevity of this case and the numerous exhibits in the Record, the Court previously laid out the list of exhibits, numbered 1-51, which the Court incorporates herein by reference. (Amended Exhibit List ICO A092-169-635, Jan. 31, 2023.)[2] The Court has received additional submissions from the parties, which it hereby admits with the following exhibit numbers:

- R2-Exhibit 52: Department's Submission of Evidence, filed January 20, 2023;

---

[2] The Court notes that the exhibit listed as "Exhibit 4A" was a scrivener's error and should not be included in the list.

A092 169 635                       Page 2 of 14                       May 3, 2023

- ████████████████████████████████████

- <u>R2-Exhibit 54 for ID only</u>: Department's Closing Argument, filed March 1, 2023.

For consistency, the Court will refer to the page numbers created electronically by its filing system and displayed on the bottom left of each page. Even if not explicitly mentioned in this decision, the Court individually and cumulatively considered the entirety of the Record.

## III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.   Mental Competency

If a respondent lacks sufficient competency to meaningfully participate in immigration proceedings, the Court must "prescribe safeguards to protect [his] rights and privileges" before going forward with the proceedings. *Matter of M-A-M-*, 25 I&N Dec. 474, 478 (BIA 2011) (quoting INA § 240(b)(3)). The type and extent of these safeguards are within the discretion of the Court. *M-A-M-*, 25 I&N Dec. at 481-82. A lack of competency does not mean that immigration proceedings cannot go forward, so long as the respondent is afforded a full and fair hearing. *Id.* at 479 (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

In the most recent appeal in this case, the BIA held that Respondent was not competent to proceed without the implementation of safeguards and directed the Court to order the provision of a QR. (Artemio Garcia-Illenes, A092 169 635 (BIA June 27, 2022).) The Court issued an order for the provision of a QR on July 12, 2022. (R2-Exh. 41.) Thereafter, Respondent appeared alongside his QR at several hearings, he received multiple postponements for attorney preparation, and his QR aided him in preparing his application for relief. (*See* R2-Exhs. 45, 47, 50.) Ahead of his merits hearing, Respondent's QR suggested the following safeguards be implemented: 1) that the Court waive the signature requirement for his ████ application, asserting that Respondent's mental health impedes his ability to remember details; 2) that Respondent's QR be permitted to ask leading, repeated, or clarifying questions, as necessary; 3) that Respondent be permitted to testify from his QR's table in the courtroom; and 4) that Respondent be permitted to take breaks as needed. (R2-Exh. 49a, at 12.) During his hearing, the Court granted the QR's requested safeguard to not require testimony from Respondent, due to the concern that additional merits hearings could be detrimental to his health, and to consider Respondent's request for relief from removal based on the Record alone. As such, the need for the second and third safeguards Respondent's QR initially suggested became moot, and the fourth safeguard never became necessary to implement during his hearing. (*See id.*) The Court hereby grants the first safeguard. Finally, with the appointment of his QR, Respondent has had the ultimate safeguard of legal representation during these proceedings. *See M-A-M-*, 25 I&N Dec. at 481-83 (discussing the impact of legal representation on respondents' proceedings where competency was in question, and whether additional safeguards were necessary to protect the respondents' rights and privileges when they were represented).

The Court has applied the framework set forth in *M-A-M-*. The Court finds sufficient safeguards have been prescribed to protect Respondent's interests, and that Respondent therefore

received a full and fair hearing. *M-A-M-*, 25 I&N Dec. at 479. Given these safeguards and other accommodations, the Court is confident that Respondent's QR was able to adequately represent his interests and that the Record is sufficiently complete to make an informed decision in this case. *See* INA § 240(b)(3); *M-A-M-*, 25 I&N Dec. at 478.

### B. Credibility

As a threshold matter, the Court must make a determination of Respondent's credibility and the credibility of his expert witness, Dr. Kuck. *See Kalubi v. Ashcroft*, 364 F.3d 1134, 1137-38 (9th Cir. 2014). Respondent's application was filed after the effective date of the REAL ID Act of 2005, and as such, the credibility determination standard created by the REAL ID Act applies. The Court may therefore consider the totality of the circumstances and all relevant factors. It may base its credibility determination on the demeanor, candor, or responsiveness of the applicant, the inherent plausibility of the applicant's account, the consistency between the applicant's written and oral statements, the internal consistency of each such statement with other evidence of record, and any inaccuracy, or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

#### i. Respondent

As explained in *M-A-M-*, immigration proceedings may properly continue even when a respondent is found incompetent. 25 I&N Dec. at 479. However, as directed by the BIA, "where a mental health concern may be affecting the reliability of the applicant's testimony, the Immigration Judge should, as a safeguard, generally accept that the applicant believes what he has presented, even though his account may not be believable to others or otherwise sufficient to support the claim." *Matter of J-R-R-A-*, 26 I&N Dec. 609, 612 (BIA 2015). Therefore, the Immigration Judge should focus on whether the applicant can meet his burden of proof based on the objective evidence of record and any other relevant evidence. *Id.*

*Id.*

Nevertheless, the Court considers the entirety of the Record regarding the reliability of Respondent's statements.

Throughout the Record, various medical and mental healthcare providers described Respondent as a "fair" to "poor" historian. (*See, e.g.*, Exh. 20, at 42, 153; R1-Exh. 38, at 2; R2-Exh. 52, at 212.) Pursuant to the first remand in this case, Respondent underwent a Forensic Competency Evaluation with Dr. Alexandra Drecun,[3] a clinical psychologist. Dr. Drecun noted Respondent's self-reported "poor memory" and described that his unmanaged symptoms of anxiety "can distract and interfere with his ability to focus, process[,] and remember information

---

[3] The Court is mindful that after the completion of this evaluation, the BIA later determined that the Court's finding that Respondent was competent, predicated in part on the evaluation, was "clearly erroneous." (Artemio Garcia-Illenes, A092 169 635, at *2 (BIA June 27, 2022).) The Court does not rely in this decision on Dr. Drecun's ultimate conclusions about Respondent's competence to participate in his removal proceedings, but rather considers only Dr. Drecun's clinical impressions of Respondent's mental health.

within the immigration proceedings." (R1-Exh. 38, at 3, 6.) Further, Dr. Drecun noted Respondent's inability to remember details from his childhood and described that such amnesia is "common in individuals who have abuse [as a child] in their histories." (*Id.* at 2.) During these current remanded proceedings, Respondent's QR sought the evaluation of another psychologist, Dr. Kuck. Consistent with Dr. Drecun's assessment, one of Dr. Kuck's provisional diagnoses for Respondent was Dissociative Amnesia. (R2-Exh. 49a, at 71, 74.) Throughout the evaluation, Dr. Kuck noted Respondent's difficulties, both self-reported and objectively observed, with his memory, focus, concentration, and ability to recall details outside of his current experiences. (*Id.* at 64-67, 70-74.) During Respondent's January 31, 2023, merits hearing, the Court requested Dr. Kuck's professional opinion regarding the reliability of Respondent's autobiographical history, and she replied that rather than describing it as "unreliable," she would describe it as "scanty."

Finally, the Court observed a disconnect in the Record between the objective evidence about Respondent, as compared to his subjective descriptions, like when he sought medical treatment. For example, Respondent's well-documented head pain has required treatment throughout his detention, including receiving a computerized tomography ("CT") scan. (R1-Exh. 20; R2-Exh. 52.) While Respondent has repeatedly asserted that his pain is the result of metal lodged in his head after he fell and hit his head in 2018, the results of the CT scan evidenced no metal objects in Respondent's head. (R2-Exh. 52, at 49 (as Respondent sought an x-ray of his head to search for metal, the provider noted a previously-administered CT scan was "unremarkable" with "no mention" of a metallic foreign body), 86-87 (same), 573 (CT scan results); *see, e.g.,* R2-Exh. 49a, at 65-66, 70 ("It is notable [Respondent] has some verified health conditions, which were being actively treated per detention records. . . . [H]is normal findings along with medical reassurance do not alleviate his anxiety.").) While Respondent has certainly experienced medical conditions that required treatment, his ability to describe those conditions has not always been supported by objective evidence.

Accordingly, the Court finds Respondent is not a reliable historian, and it attributes minimal evidentiary weight to information proffered by him, whether directly to the Court, in documentary submissions, or to medical and mental health providers for treatment. Instead, the Court will rely on the objective observations of healthcare providers and the objective evidence Respondent has submitted as it considers whether that evidence demonstrates ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### ii.    *Respondent's Expert Witness*

The Court finds Dr. Kuck testified credibly. Her testimony was consistent with the psychological evaluation she prepared and which Respondent submitted to the Court. However, this finding does not dictate the remainder of the Court's findings about Respondent. In *Matter of M-A-M-Z-*, 28 I&N Dec. 173 (BIA 2020), the BIA held that "[e]xpert witness testimony is evidence, but only the Immigration Judge makes factual findings." *M-A-M-Z-*, 28 I&N Dec. at 177. The BIA further held that "even where, as here, the Immigration Judge finds an expert to be a credible witness, it does not follow that the Immigration Judge must accept all the testimony and opinions provided as facts." *Id.* The BIA went on to state that "when the Immigration Judge makes a factual finding that is not consistent with an expert's opinion, it is important . . . to explain the reasons behind the factual findings." *M-A-M-Z-*, 28 I&N Dec. at 177-78. While the Court

finds Dr. Kuck was a credible expert witness, it does not accept all her findings and opinions without its own further analysis. The Court will apply the holding from *M-A-M-Z-* in the analysis below.

**C.     Relief from Removal:** ████████████

Respondent bears the burden to establish his eligibility for relief.  INA § 240(c)(4)(A)(i): 8 C.F.R. § 1240.8(d).  An applicant is ineligible for ████████████████████████ ████████████████████████████████████████████████████ ██ ██ ██
████████████████████████████████████████████████████████
████████████████

On January 30, 2018, Respondent was convicted in the Superior Court of California, County of San Diego, for the offense of Sexual Penetration of Incompetent Person, in violation of California Penal Code § 289(b), for which he was sentenced to six years in prison. (Exh. 1, at 9.) Respondent, through counsel, conceded that his conviction constituted an aggravated felony-rape offense under sections 237(a)(2)(A)(iii) and 101(a)(43)(A) of the Act.  (R2-Exh. 49a, at 5.) Moreover, Respondent conceded that his conviction was for a *per se* ████████████ ████████████████████████████████████████  The Court concurs with the assessment of Respondent's counsel regarding the impact of his conviction on his eligibility for relief. ████████████ ████████████████████████████████████████████████  Thus, the only application for relief before the Court is Respondent's ████████ application. (R2-Exh. 49a, at 5.)

There are no mandatory criminal bars to an applicant seeking ████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████



Upon a thorough review of Respondent's application, the Court finds that Respondent has not met his burden for



Respondent has suffered from various ailments while he has been detained at the Otay Mesa Detention Center ("OMDC"), for which he has received treatment from providers at OMDC and medication. The medical records for Respondent demonstrate that his most recent medical conditions included: acid reflux, allergic rhinitis, burning sensation of eye, constipation, cough, decreased vision in both eyes, edentulous maxilla, gastroesophageal reflux disease, various infections and pain throughout the body, hypertension, hypertriglyceridemia, masticatory difficulty, bilateral meibomian gland dysfunction, myopia, nasal sinus congestion, numbness in left hand, onychomycosis of great toe, and paresthesia. (R2-Exh. 52, at 4.) The medications Respondent has received while at OMDC and the Chuckawalla Valley State Prison include atorvastatin, clotrimazole, ibuprofen and Tylenol, lisinopril, loratadine, and milk of magnesia. (*Id.* at 5-7, 399-491.) Respondent's medications at both facilities have been aimed at treating pain, high blood pressure, fungal infections, constipation, allergies, congestion or respiratory conditions, and eye or dental problems. (*See, e.g., id.* at 9, 42, 66, 534.) The Record does not indicate that Respondent has taken any psychotropic medications during his detention at either facility. (*Id.* at 4-281, 399-491; R1-Exh. 38, at 6 ("[Respondent] is not currently prescribed any psychotropic medication.").)

Turning to Respondent's mental health, several providers have assessed Respondent's mental health during these proceedings, and they have reached both consistent and differing conclusions about him. When Dr. Drecun evaluated Respondent, she determined that "[g]iven his symptoms of feeling desperate, nervous, scared, shaking with fear[,] and poor memory," a diagnosis of Unspecified Anxiety Disorder, of moderate severity, was appropriate. (R1-Exh. 38, at 3, 6.) Dr. Drecun elaborated that Respondent was "alert and oriented to person, place, time, and situation" during the evaluation, and he demonstrated good eye contact. (*Id.* at 4.) Dr. Drecun detected no deviations in Respondent's speech; signs or symptoms of perceptual disturbances, such as auditory or visual hallucinations; or "[s]igns that [Respondent] might be responding to stimuli." (*Id.*) Respondent denied any suicidal or homicidal ideation when Dr. Drecun inquired. (*Id.* at 3-4.) Dr. Drecun noted that, while Respondent was not taking psychotropic medication at

EOIR - 8 of 14

the time, an anti-anxiolytic or psychotropic medication could help manage his symptoms of anxiety, which could improve his memory and ability to focus. (*Id.* at 6.)

When Dr. Kuck evaluated Respondent, she determined that Respondent met the diagnostic criteria for: 1) Other Specified Trauma- and Stressor-Related Disorder, 2) Major Depressive Disorder, 3) Somatic Symptom Disorder with Predominant Pain, and 4) a provisional diagnosis of Dissociative Amnesia. (R2-Exh. 49a, at 74.) Additionally, she noted his treatment conditions of concern of Personal History of Psychological and Physical Abuse in Childhood and Social Exclusion or Rejection. (*Id.*) Although Dr. Kuck made no anxiety-specific diagnoses, she did discuss Respondent's symptoms of anxiety throughout her evaluation. (*Id.* at 67-70, 72.) As this was the second evaluation she conducted with Respondent, Dr. Kuck described that Respondent demonstrated less dissociation and regression than the previous interview, and that he showed more task engagement and social engagement. (*Id.* at 65-67.) Respondent was "oriented to person, location, [and] state, but not to year or date" during his evaluation with Dr. Kuck. (*Id.* at 72.) Dr. Kuck determined that Respondent was "not suicidal in thought, intent[,] or plan." (*Id.* at 67.) He was neither homicidal "nor gravely disabled." (*Id.* at 76.) Dr. Kuck concluded that Respondent "does not have psychosis nor command hallucinations." (*Id.*)

Last, during one mental health visit at OMDC, Respondent saw Dr. Wong for depression, who provided relevant observations about Respondent. (R2-Exh. 52, at 275-78.) Dr. Wong noted Respondent's calm, cooperative behavior, his depressed mood, and that he was oriented to person, place, and time. (*Id.* at 275.) Dr. Wong identified "no abnormalities" in Respondent's perception, such as hallucinations or illusions. (*Id.*) Dr. Wong did not consider Respondent to be impacted by any anxiety during the visit and observed Respondent's ability to maintain an appropriate conversation. (*Id.* at 278.) Respondent denied any suicidal ideation, homicidal ideation, psychosis, symptoms of bipolar disorder, or psychotic symptoms. (*Id.*)

Dr. Wong described that, at first, Respondent claimed to have been "hospitalized psychiatrically in the past, but then he said he never has." (*Id.* at 278.) The Court observes that on several other occasions at OMDC, Respondent denied ever being hospitalized psychiatrically. (Exh. 20, at 156, 178.) Next, Respondent asserted to Dr. Wong that he has taken medication for depression in the past and that he "received an antidepressant while at another facility" in the United States. (*Id.*) Respondent's statement contradicts the medication information available to the Court from the other detention facility where he has spent a significant period of time in the United States, as those records make no mention of Respondent taking psychotropic medications. (*Id.* at 399-491.) Additionally, while a box for "current treatment with psychotropics" is checked off on the visit record, Dr. Wong also described that Respondent was uninterested in taking medication. (*Id.* at 276-78.) The Court finds that this checked-off box was likely accidental or a typographical error, in light of the narration Dr. Wong provided and when compared to the remainder of Respondent's medical records, which make no mention of Respondent taking psychotropic medication. Given the Court's finding that Respondent is an unreliable historian, the Court finds that his statements to Dr. Wong about hospitalization and medication are inconclusive and unreliable to demonstrate those details.

Despite the observations of Dr. Drecun and Dr. Kuck regarding Respondent's problems with his memory and focus, the Record reflects that Respondent has still been able to participate

in daily activities. He has engaged in a work program at OMDC, and he has successfully completed numerous classes during his criminal and immigration detention. (R2-Exh. 49a, at 55 (math class completed January 2020), 56 (10-week parenting course completed June 2019), 58 (communication course completed December 2021), 59 ("Unlock your Thinking Open Your Mind" course completed March 2022), 60 (Anger Management course completed August 2021), 61 ("12-Steps" course completed October 2021), 62 ("Managing Your Emotions" course completed September 2021), 68 (Respondent worked cleaning tables in cafeteria after meals).) Although Dr. Drecun noted that Unspecified Anxiety Disorder entails "clinically significant distress or impairment in social, occupational or other important areas of functioning," the Court finds that Respondent's mental illness has not been so severe that it has prevented him from engaging in these activities. (*Id.*; R1-Exh. 38, at 6.) Given the varying information before the Court about Respondent's mental illness, the Court finds that, while there has been some variation and fluctuation in his mental well-being, the Record does not reflect that his mental illness is so intrusive or entrenched that it interferes with his daily functioning or prevents him from caring for himself.

Respondent's QR asserted that "his mental health illnesses cause him to act in a bizarre manner," such that he would be institutionalized against his will to treat his mental illness. (R2-Exh. 49a, at 19.) However, the Court finds Respondent's argument is unsupported by the Record. Although Respondent represented to Dr. Kuck that he isolates and does not interact with other detainees, the Record demonstrates that Respondent is able to interact and socialize with other individuals in an appropriate fashion. (*Compare* R2-Exh. 49a, at 68 ("he is not engaged with other detainees in a social way") *with* R2-Exh. 52, at 86 ("[Respondent] observed in the medical holding tank sitting down, smiling, and talking to another patient from his housing unit. [Respondent] does not appear in distress, discomfort or pain."), 278 (provider described Respondent's ability to "maintain an appropriate conversation").) Moreover, Respondent's QR and Dr. Kuck asserted that Respondent will decompensate in Mexico without adequate medical or mental health treatment and outside of the structured environment that detention provides. (R2-Exh. 49a, at 70-72.) Respondent is currently receiving minimal treatment for his mental illness, yet there is no evidence in the Record of ███████████████████████████████████████████████████████
████████

Therefore, regarding the likelihood of Respondent's forced institutionalization due to his mental illness, the Court finds that Respondent has not met his burden to warrant ████ relief. The Court has before it no objective evidence of prior hospitalizations or institutionalizations due to Respondent's mental health, either on a voluntary or involuntary basis. Respondent said he was hospitalized psychiatrically once, but then recanted that statement. Even considering Dr. Kuck's "prediction" that Respondent would psychologically decompensate in an "unsafe" setting, the Court finds this evidence to be too speculative for Respondent to meet his burden, especially when weighed alongside the rest of the Record. (R2-Exh. 49a, at 72.) Throughout his life, Respondent has maintained employment, residences, and lawful permanent resident status in the United States. He has participated in and completed several classes and work programs throughout his detention in recent years. The Court has before it no evidence to suggest Respondent has ever taken psychotropic medication, and despite not receiving substantial mental healthcare or therapy, his

behavior and daily functioning has not become erratic or disruptive, such that he has been isolated, segregated, or hospitalized while at OMDC or any other facility.



The evidence before the Court about Respondent is distinct. While Respondent may be suffering from mental illnesses, he has not met his burden to demonstrate that

Accordingly, based on the entirety of the evidence before the Court, the Court finds that Respondent has not demonstrated

████████████████████████████████████████████████████

## IV.   CONCLUSION

The Court will deny Respondent's applications for ████████████████████ ████████████████████████████████████, due to its finding that his conviction ███████████████ renders him ineligible for this relief.  The Court will deny Respondent's ████ T  application because the objective evidence he submitted does not demonstrate that ████████████████████████████████████████

████████████████████████

Accordingly, the Court will enter the following orders:

### ORDERS

**IT IS ORDERED** that Respondent's application for ████████████ ████████████ is **denied**.

**IT IS FURTHER ORDERED** that Respondent's application for ████████ ████████████████████████████ of the Act is **denied**.

**IT IS FURTHER ORDERED** that Respondent's application for ████████ ████████████████████████ is **denied**.

**IT IS FURTHER ORDERED** that Respondent's application for ████████ ████████████████████████ is **denied**.

**IT IS FURTHER ORDERED** that Respondent be removed to **MEXICO** on the charge contained in the Notice to Appear.

Dated:  May 3, 2023

Eugene H. Robinson, Jr.
Immigration Judge

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB#1125-0005
**Notice of Entry of Appearance as Attorney or
Representative Before the Board of Immigration Appeals**

| (Type or Print) **NAME AND ADDRESS OF REPRESENTED PARTY** | | | **ALIEN ("A") NUMBER** (Provide A- number of the party represented or the visa beneficiary in this case.) A092-169-635 |
|---|---|---|---|
| Artemio | | GARCIA ILLENES | |
| (First) | (Middle Initial) | (Last) | USCIS Visa Appeal (Provide beneficiary name) |
| 7488 Calzada de la Fuente | | | |
| (Number and Street) | | (Apt. No.) | Fine (Provide fine number) |
| San Diego | CA | 92154 | |
| (City) | (State) | (Zip Code) | Disciplinary case (Provide docket number) |

**Attorney or Representative (please check one of the following):**     California - 321248

☑ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court(s) of the following states(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia (use additional space on reverse side if necessary) and I am not subject to any order disbarring, suspending, enjoining, restraining or otherwise restricting me in the practice of law in any jurisdiction (if subject to such an order, do not check this box and explain on reverse).

**Full Name of Court** California            **Bar Number (if applicable)**  321248

☐ I am a representative accredited to appear before the Executive Office for Immigration Review as defined in 8 C.F.R. § 1292.1(a)(4) with the following recognized organization:

☐ I am a law student or law graduate of an accredited U.S. law school as defined in 8 C.F.R. § 1292.1(a)(2).

☐ I am a reputable individual as defined in 8 C.F.R. § 1292.1(a)(3).

☐ I am an accredited foreign government official, as defined in 8 C.F.R. § 1291.1(a)(5), from _____ (country).

☐ I am a person who was authorized to practice on December 23, 1952, under 8 C.F.R. § 1292.1(b).

**Attorney or Representative (please check one of the following):**

☐ I hereby enter my appearance as attorney or representative for, and at the request of, the party named above.

☑ EOIR has ordered the provision of a Qualified Representative for the party named above and I appear in that capacity.

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representations before the Board of Immigration Appeals. By signing this form, I consent to publication of my name and any findings of misconduct by EOIR, should I become subject to any public discipline by EOIR pursuant to the rules and procedures at 8 C.F.R. 1003.101 et seq. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **SIGNATURE OF ATTORNEY OR REPRESENTATIVE** | **EOIR ID NUMBER** | **DATE** |
|---|---|---|
| X //s//, YOLANDA FELIX | BB058421 | 05/22/2023 |

**NAME OF ATTORNEY OR REPRESENTATIVE, ADDRESS, FAX & PHONE NUMBERS, & EMAIL ADDRESS**

Name: Yolanda                               C                          Felix
               (First)                    (Middle Initial)                (Last)

Law Firm: ABA Immigration Justice Project

Address: 2727 Camino del Rio S, Ste 320

| (Number and Street) | | |
|---|---|---|
| San Diego | CA | 92108 |
| (City) | (State) | (Zip Code) |

Telephone: 619-255-8786     Facsimile: 619-255-8849     Email: crystal.felix@abaijp.org

☐ Check here if new address

Form EOIR - 27
Rev. Feb 2022

**Indicate Type of Appearance:**

☑ Primary Attorney/Representative ☐ Non-Primary Attorney/Representative

I am providing pro bono representation. Check one: ☐ yes ☑ no

---

### Proof of Service

I (Name) Yolanda Felix _____ provided a copy of this Form EOIR-27 on (Date) _____ to the

to the ☐ DHS (U.S. Immigration and Customs Enforcement – ICE) at _____
☐ DHS (U.S. Citizenship and Immigration Services – USCIS) at _____
☐ EOIR Disciplinary Counsel at _____

☑ No service needed. I electronically filed this document, and the opposing party is participating in ECAS.

**X** //s//, YOLANDA FELIX on 05/22/2023 12:37:58 PM
_____ Signature of Person Serving

---

**APPEARANCES** - An appearance for each represented party shall be filed on a separate Form EOIR-27 by the attorney or representative appearing in each appeal or motion to reopen or motion to reconsider before the Board of Immigration Appeals (see 8 C.F.R. § 1003.38(g)), even though the attorney or representative may have appeared in the case before the Immigration Judge or the U.S. Citizenship and Immigration Services. For information on how to file a Form EOIR-27 with the Board of Immigration Appeals, please see the EOIR website at www.justice.gov/eoir. If information is omitted from the Form EOIR-27 or it is not properly completed, the appearance may not be recognized and the accompanying filing may be rejected. When an appearance is made by a person acting in a representative capacity, his/her personal appearance or signature constitutes a representation that, under the provisions in 8 C.F.R. part 1003, he/she is authorized and qualified to represent individuals and will comply with the EOIR Rules of Professional Conduct in 8 C.F.R. § 1003.102. Thereafter, substitution or withdrawal may be permitted upon approval by the Board of a request of the attorney or representative of record in accordance with *Matter of Rosales*, 19 I&N Dec. 655 (1988). Appearances for limited purposes are not permitted. See Matter of Velasquez, 19 I&N Dec. 377, 384 (BIA 1986). Note: Attorneys and Accredited Representatives (with full accreditation) must register with the EOIR eRegistry in order to practice before the Board of Immigration Appeals (see 8 C.F.R. § 1292.1(f)). Registration must be completed online on the EOIR website at www.justice.gov/eoir. Attorneys and Accredited Representatives (with full accreditation) must first update their address in eRegistry before filing a Form EOIR-27 that reflects a new address.

**FREEDOM OF INFORMATION ACT** - This form may not be used to request records under the Freedom of Information Act or the Privacy Act. The manner of requesting such records is in 28 C.F.R. §§ 16.1-16.11 and appendices. For further information about requesting records from EOIR under the Freedom of Information Act, see How to File a Freedom of Information Act (FOIA) Request With the Executive Office for Immigration Review, available on EOIR's website at http://www.justice.gov/eoir.

**PRIVACY ACT NOTICE** - The information requested on this form is authorized by 8 U.S.C. § 1362 and 8 C.F.R. § 1003.3 in order to enter an appearance to represent a party before the Board of Immigration Appeals. The information you provide is mandatory and required to enter an appearance. Failure to provide the requested information will result in an inability to represent a party or receive notice of actions in a proceeding. EOIR may share this information with others in accordance with approved routine uses described in EOIR's system of records notice, EOIR-001, Records and Management Information System, 69 Fed. Reg. 26,179 (May 11, 2004), and EOIR-003, Practitioner Complaint-Disciplinary Files, 64 Fed. Reg. 49237 (September 1999), or their successors. Furthermore, the submission of this form acknowledges that an attorney or representative will be subject to the disciplinary rules and procedures at 8 C.F.R. 1003.101 et seq., including, pursuant to 8 C.F.R. §§ 292.3(h)(3), 1003.108(c), publication of the name of the attorney or representative and findings of misconduct should the attorney or representative be subject to any public discipline by EOIR.
**CASES BEFORE EOIR** - Automated information about cases before EOIR is available by calling (800) 898-7180 or (240) 314-1500.
**ADDITIONAL INFORMATION:**

Under the Paperwork Reduction Act, a person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose the least possible burden on you to provide us with information. The estimated average time to complete this form is six (6) minutes. If you have comments regarding the accuracy of this estimate, or suggestions for making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041.

EOIR 2 of 2

Form EOIR - 27
Rev. Feb 2022

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

In the Matter of                     )
                                )
**GARCIA ILLENES, Artemio**    )    **File No.: A 092-169-635**
                                )
In Removal Proceedings       )
                                )
                                )

## RESPONDENT'S BRIEF IN SUPPORT OF APPEAL

### I.    Introduction and Procedural History

#### A. Introduction

Respondent, Mr. Artemio Garcia Illenes ("Mr. Garcia Illenes"), through EOIR
Contracted Qualified Representative ("QR"), Crystal Felix, appeals the decision of the Executive
Office for Immigration Review, Immigration Court in Otay Mesa, California, denying Mr.
Garcia Illenes's applications for ███████████████████████████████████

███████████████████████

The Immigration Judge's decision must be vacated first and foremost because the
Immigration Judge misapplied *Matter of J-R-R-A*, and erroneously limited the evidentiary weight
of the information proffered by Mr. Garcia Illenes, <u>instead of</u> incorporating it into the analysis to
determine ███████████████████████. Next, the A. The    Immigration
Judge erroneously found that Mr. Garcia Illenes did not present objective evidence that ████████

2

**106**

█████████ Remand, therefore, is respectfully requested.

## B. Procedural History

Mr. Garcia Illenes's case is before the Board of Immigration Appeals ("the Board" or "BIA") for the third time during these proceedings. The Board most recently remanded this matter after finding that Mr. Garcia Illenes was incompetent and required safeguards – including the provision of a Qualified Representative ("QR") to represent Mr. Garcia Illenes. Mr. Garcia Illenes is a *Franco-Gonzalez* class member. *Franco-Gonzalez v. Holder*, No. 10-2211, 2011 WL 11705815, 16 (C.D. Cal. 2011) *see also* R2-Exhibit 41.

On July 27, 2022, Mr. Garcia Illenes appeared with his QR at the first master calendar hearing ("MCH") after the second Board remand. Undersigned QR, requested a continuance to prepare to enter new pleadings and submit an updated Form ████ Tr. at 1-6. Mr. Garcia Illenes's housing unit was placed on COVID-19 quarantine and the matter was reset to September 26, 2022, after the Court granted undersigned QR's unopposed Motion to Continue Master Calendar Hearing. R-2- Exhibit 45.

On September 26, 2022, Mr. Garcia Illenes appeared at his MCH and indicated a lack of understanding. Tr. at 8, and 11. On that date, Mr. Garcia Illenes received an additional continuance to allow the medical expert to conduct a follow-up meeting. Tr. at 7-12.

On November 03, 2022, Mr. Garcia Illenes appeared at his MCH, and his case was set for the final merits hearing. Tr. 13-17. On December 16, 2022, Mr. Garcia Illenes filed his Prehearing Brief, Witness List, and Supporting Evidence in three parts. R2-Exhibit 49a-c. On December 28, 2022, the Court granted an unopposed Motion to Continue the Merits Hearing

because undersigned QR was having difficulty preparing Mr. Garcia Illenes due to his mental illness and hyperfocus on his medical ailments. R2-Exhibit 50 and R2-Exhibit 51.

On January 31, 2023, Mr. Garcia Illenes had his final merits hearing. Tr. 18-49. Each party was allowed to submit a written closing. On May 03, 2023, the Immigration Judge denied relief to Mr. Garcia Illenes, and he timely appeals with the support of his QR.

## II.    Statement of Issues

A. **The Immigration Judge misapplied *Matter of J-R-R-A-* and erroneously limited the evidentiary weight of the information proffered by Mr. Garcia Illenes, instead of incorporating it into the analysis to determine ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮.**

B. **The Immigration Judge erroneously found that Mr. Garcia Illenes did not present objective evidence that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**

## III.   Standard of Review

Facts determined by the Immigration Judge, including findings as to credibility of testimony and likelihood of future events, shall be reviewed to determine whether those findings are clearly erroneous. 8 C.F.R. § 1003.1(d)(3)(i). The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo*. 8 C.F.R. § 1003.1(d)(3)(ii).

## IV.   Argument

A. **The Immigration Judge incorrectly applied *Matter of J-R-R-A*, thus erroneously limiting the evidentiary weight of the information proffered by Mr. Garcia Illenes, instead of incorporating it into the analysis to determine ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**

### 1.   The Immigration Judge incorrectly applied *Matter of J-R-R-A.*

There is no question in this matter that Mr. Garcia Illenes has been found incompetent and was provided with a QR. *See* R2-Exhibit 41. In *Matter of J-R-R-A-*, this Board provided

guidance regarding credibility assessments in cases involving noncitizens who are incompetent or who have serious mental health or cognitive issues that may affect their testimony, particularly with respect to ▇▇▇▇▇▇▇▇ claims for relief from removal. *Matter of J-R-R-A-*, 26 I&N Dec. 609, 610 (BIA 2015). The Board noted that:

> A situation could arise in which an applicant who is deemed incompetent by the Immigration Judge sincerely believes his account of events, although they are highly implausible to an outside observer. Alternatively, the individual could be deemed competent for purposes of his hearing, although he has been diagnosed with a mental illness or serious cognitive disability and may exhibit symptoms that affect his ability to provide testimony in a coherent, linear manner. *See Matter of M-A-M-*, 25 I&N Dec. at 480 (indicating that even if a noncitizen is deemed to be medically competent, there may be good cause for concern about the ability to proceed without safeguards). In such circumstances, the factors that would otherwise point to a lack of honesty in a witness—including inconsistencies, implausibility, inaccuracy of details, inappropriate demeanor, and nonresponsiveness—may be reflective of a mental illness or disability, rather than an attempt to deceive the Immigration Judge.

*Matter of J-R-R-A-*, 26 I&N Dec. 609, 611 (BIA 2015) (Emphasis added). In such circumstances, the Board provides the following guidance that as a safeguard, an Immigration Judge should generally accept that the applicant believes what he has presented, even though his account may not be believable to others or otherwise sufficient to support the claim and then the Immigration Judge should then focus on whether the applicant can meet his burden of proof based on the objective evidence of record and other relevant issues. *Matter of J-R-R-A-*, 26 I&N Dec. 609, 612 (BIA 2015). The Board notes that the purpose of the safeguard provided by *Matter of J-R-R-A* was to enhance the fairness of the proceedings by foreclosing the possibility that a claim is denied solely on testimony that is unreliable on account of the applicant's competency issues, rather than any deliberate fabrication. *Matter of J-R-R-A-*, 26 I&N Dec. 609, 612 (BIA 2015).

EOIR 8 of 20

5

**109**

Here, the Immigration Judge applied the safeguard provided in *Matter of J-R-R-A-*, but in a way that did not ensure fairness but was in fact detrimental to Mr. Garcia Illenes. The Immigration Judge found that Mr. Garcia Illenes is not a reliable historian, and it attributed minimal evidentiary weight to information proffered by him, whether directly to the Court, in documentary submissions, or to medical and mental health providers for treatment. I.J. at 5. The Immigration Judge instead relied on objective observations of healthcare providers and the objective evidence submitted. I.J. at 5.

### a. Despite Mr. Garcia Illenes being incompetent he provided some autobiographical information that must not be ignored.

The Immigration Judge notes that the record describes Mr. Garcia Illenes as a fair to poor historian. I.J. at 4. That does not mean information provided by a Respondent must then be given limited weight. Further, the Immigration Judge asked Dr. Kuck about the reliability of his autobiographical history. Tr. at 44. Dr. Kuck opined that she would describe Mr. Garcia Illenes as "scanty, rather than unreliable." Tr. at 44. She went on to provide that scanty often implies reliable—and provided a bottom line that she believed he's reliable for the history that he can recount. Tr. at 44. Further, Mr. Garcia Illenes provided a Form ▮▮▮ and two declarations prepared with the support from his QR– which have been entirely disregarded. The Immigration Judge misapplied *Matter of J-R-R-A-*, when the Court attributed minimal evidentiary weight to all information proffered by him, whether directly to the Court, in documentary submissions, or to medical and mental health providers for treatment. I.J. at 5. This "safeguard" as applied in this matter did not ensure fairness and was detrimental to Mr. Garcia Illenes.

Next, in explaining why the Immigration Judge limited the evidentiary weight of Mr. Garcia Illene's testimony the Immigration Judge focused on a "disconnect" in the record between the objective evidence in the record and Mr. Garcia Illenes's testimony. Particularly

EOIR 9 of 20

6

citing to him having a "metal lodged in his head" when the CT scans and all medical evidence indicating no such metal exists. Whether Mr. Garcia Illenes has a metal lodged in his head is not relevant to whether he is a poor autobiographical historian and instead exactly that which makes him vulnerable to harm.

Mr. Garcia Illenes's – Somatic Symptom Disorder with predominant pain, severe and persistent; [F45.1] diagnosis is relevant to his current claim because he cannot focus to fully participate in his case over extended periods of time due to his pain concerns. *See* R2- Exhibit 49A Respondent's Prehearing Brief, Witness List, and Supporting Evidence (Part I) Tab C at EOIR page 71. But more importantly, it is in part what differentiates him from others.

**b. The Immigration Judge used Mr. Garcia Illenes's mental health symptoms to discredit his proffered information and failed to include the symptoms in his analysis to determine** ▮

Dr. Kuck opined that Mr. Garcia Illenes's ability to speak is limited by pain, complaints and concerns and compulsive focus on his physical health. Tr. at 25. Dr. Kuck believes he has neurocognitive deficits but was unable to make that diagnosis of a major neurocognitive disorder because he could not even fully participate in testing. Tr. at 25. Mr. Garcia Illenes's somatic symptoms of disorder makes him seem incredible to others because he is always complaining of problems with his physical health. Dr. Kuck opined that there is a confusion with somatic symptom disorder in that people tend to think that the complaints are fake or imagined but really, they are things that are related to a heightened awareness of pain in the body. Tr. at 25. Dr. Kuck testified that she thought some of his medical conditions are verified and treated, and others are really hard to guess as seen in somatic disorders. Tr. at 25.

When Dr. Kuck was asked whether Mr. Garcia Illenes's symptoms impair his social and occupational functioning she opined that yes. Tr. at 33. Mr. Garcia Illenes and individuals like him are very isolated and feel very misunderstood. Tr. at 34. She opined:

7

> They feel nobody is taking their pain complaints seriously or is understanding the extent to which they have legitimate traumatic complaints. It was interesting to me that in the second session he gave a very clear description of what the etiology of his headache pain was, and that took a while to appreciate. And that's my specialty in particular is the complex case neuromedical interviewing and neuropsychological consequences, and it took me I would say two-and-a-half hours to get to this idea of an accident that has happened in county jail where he fell and hit the -- his head on a steel piece of metal. And then it's interesting that would debunk that, it's interesting that he then used the idea of that it felt like, you know, his head felt like a steel plate -- his pain pressure felt like a steel plate, which was kind of interesting. He just sort of fused the two things together which is what we see in somatic symptom disorder. So, he's got a legitimate headache for sure. It just may not be at the pain level that he thought it was, which was every day, but also exceptionally high. And in general, you, you can sort of tell what his pain complaint is based on how interactive he was. In the second session he was much more interactive. The first session he was as he is today, head down and not making a lot of eye contact.

Tr. at 34. Somatic symptom disorder in the medical field is a very legitimate disorder that requires treatment. Tr. at 25. The treatment suggested by Dr. Kuck would be that Mr. Garcia Illenes be seen regularly by a primary care physician about once a month for about 15 minutes at a time. Tr. at 26. The idea is that they're establishing a therapeutic alliance, providing a listening ear and then treating the things that they can treat and redirecting the person to other strategies that could help the somatic. Tr. at 26. Dr. Kuck explained that someone like Mr. Garcia Illenes would decompensate if moved to a new environment with limited care providers. Tr. 30-31. This decompensation would cause Mr. Garcia Illenes to be agitated, yelling, screaming, acting out in fear and unable to seek help for legitimate health problems. Tr. at 32. Dr. Kuck opined that Mr. Garcia Illenes's changes in behavior would be noticeable to non-medical professional who would avoid him or call for treatment or police. Tr. at 32-33.

Here the Immigration Judge focused on some objective evidence of record but ignored other relevant issues— how Mr. Garcia Illenes presents himself to others. Mr. Garcia Illenes's

"inconsistencies" pointed out by the Immigration Judge are directly reflective of the mental

illness that ███████████████████████████

### c. The evidence in the record shows that Mr. Garcia Illenes does not have familial support anywhere.

The Immigration Judge misapplied the safeguard provided in *Matter of J-R-R-A* and

determined that whether there is family support is inconclusive. I.J. at 8. The Court found that

there was no direct evidence regarding the ability or willingness of Respondent's son or sister to

support him if removed to Mexico. I.J. at 8. The Court found that Mr. Garcia Illenes was unable

to meet his burden due to the lack of information in the record. I.J. at 8. This finding is

inappropriate for an incompetent respondent – particularly where there is evidence in the record

that Mr. Garcia Illenes does not have their support. Notably, two declarations were submitted to

the Court, and one specifically indicated Mr. Garcia Illenes does not have family support. In fact,

for his request for release he was planning on going to live in a small shelter. Relying solely on

objective evidence -despite Mr. Garcia Illenes providing relevant information – was an

inappropriate safeguard in this case that infringed on Mr. Garcia Illenes's right to a full and fair

hearing – particularly as an incompetent respondent.

### d. The Immigration Judge focused decompensation solely on the access to psychotropic medication, ignoring the controlled structed Mr. Garcia Illenes's current detained setting provides him.

The Immigration Judge found that the record does not indicate that Mr. Garcia Illenes has

taken any psychotropic  medications while detained. I.J. at 8. The Immigration Judge then

concluded that although assessing medical care in Mexico may present a challenge for Mr.

Garcia Illenes, and he may encounter a difficulty obtaining medication, the Court found that ███

████████████████████████████████████████████████████

███████████████████████████████████████. I.J. at 8. This conclusion ignores

9

**113**

Filed at BIA on: 08/08/2023 at 09:53:49 PM (Eastern Daylight Time) 158
Case 3:20-cv-00756-DMS-AHG Document 254-2 Filed 12/01/23 PageID.10226 Page 116 of
153

evidence presented that his currently living situation is what is currently protecting him from harm. As stated above, Mr. Garcia Illenes is hyper focused on his physical health- which includes medical conditions that may or may not exist and as a person diagnosed with Somatic Symptom Disorder is hard to decipher. As discussed above, and as the record reflects- Mr. Garcia Illenes is vulnerable to harm if taken out of his current living situation and not provided sufficient treatment. Yet, the Immigration Judge erroneously limited the weight of the expert witness as speculative. I.J. at 10. Without providing sufficient reasoning as required.

### e. The Immigration Judge did not comply with the requirements set in *Matter of M-A-M-Z*

The Board in *Matter of M-A-M-Z* held that expert testimony is evidence, but only an Immigration Judge makes factual findings. The Board further held, When the Immigration Judge makes a factual finding that is not consistent with an expert's opinion, it is important, as the Immigration Judge did here, to explain the reasons behind the factual findings. *Matter of M-A-M-Z*, 28 I&N Dec, 173, 177 (BIA 2020). *Matter of M-A-M-Z*, 28 I&N Dec, 173, 177-78 (BIA 2020). In this case, the Immigration Judge found that Dr. Kuck was a credible witness. I.J. at 5. The Immigration Judge then applied its own analysis- which was flawed because of its improper application of *Matter of J-R-R-A*.

Here, the Immigration Judge did not sufficiently explain the reasons behind the factual findings. First, it is argued that the reasoning was flawed because it focused solely on the objective evidence in the record when Mr. Garcia Illenes did provide autobiographical information for the Court to consider. Next, did not consider that accident noted throughout the record from 2018- where Mr. Garcia Illenes begins to complain of having a metal plate in his head. Instead the Immigration Judge notes- "Throughout his life. Respondent has maintained employment, residences, and lawful permanent resident status in the United States. He has

EOIR 13 of 20

10

**114**

participated in and completed several classes and work programs throughout his detention in recent years." I.J. at 10. This statement ignores evidence in the record that Mr. Garcia was not able to maintain employment, and was not able to maintain residence. This statement further ignores Dr. Kuck's testimony about how the current structured environment allows him to do some small work tasks such as cleaning tables. Tr. at 34. Further, it is unknown what is required of a noncitizen to complete classes while in the detention- but it could very well be mere attendance, without much more.

The Immigration Judge found that the record does not reflect that his mental illness is so intrusive or entrenched that it interferes with his daily functioning or prevents him for caring for himself. I.J. at 10. This ignores the testimony of Dr. Kuck without sufficient analysis by the Court. The Immigration Judge again ignores the fact that the detention center is what is maintaining his limited level of functioning. I.J. at 10.

For all the reasons listed above, because of the misapplication of *Matter of J-R-R-A*, the case must be remanded. Remand is necessary so the Court can comply with the regulations and provide Mr. Garcia Illenes a full and fair hearing.

**B. The Immigration Judge erroneously found that Mr. Garcia Illenes did not present objective evidence that** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

If removed to Mexico Mr. Garcia Illenes's mental health conditions will worsen and he will ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Garcia Illenes suffers from psychiatric illness. Dr. Kuck reported the following DSM-5 [ICD-10] diagnostic impressions:

- **Other Specified Trauma- and Stressor-Related Disorder**, {Chronic, residual posttraumatic stress with childhood amnesia related to physical/psychological abuse, nocturnal visual (dark shadows) and tactile (unwanted touch on thighs) illusions, current fears of bullying and of Covid-19 infection}; [F43.8]

11

EOIR 14 of 20

Filed at BIA on: 08/08/2023 at 09:53:49 PM (Eastern Daylight Time)

- **Major Depressive Disorder**, Recurrent, Moderate Severity; [F33.1]
- **Somatic Symptom Disorder with Predominant Pain, Severe and Persistent**; [F45.1]
- **Dissociative Amnesia**, {Selective autobiographical amnesia for severe childhood abuse, now generalizing under stress to memory for life events}; provisional diagnosis.
- The DSM-5 [ICD-10] treatment conditions of concern include:
  - Personal History (past history) of Psychological and Physical Abuse in Childhood, {Emotional threat and punishment with severe physical abuse}; [Z62.811, Z62.810].
  - Social Exclusion or Rejection, {Peer bullying, verbal abuse, intimidation}; [Z60.4]

*See* R2-Exhibit 49a, Respondent's Prehearing Brief, Witness List, and Supporting Evidence (Part I) filed December 16, 2022, Tab C at 18-30. Dr. Kuck testified that Mr. Garcia Illenes's mental health symptoms impair his social and occupational functioning. Because of this Mr. Garcia Illenes will not be able to afford mental health or medical care in Mexico. The I.J. noted that Mr. Garcia Illenes may have challenges assessing medical care in Mexico and he may encounter a difficulty obtaining medication. I.J. at 8. The Mexican healthcare system comprises two sectors: public and private. *See* R2-Exhibit 49b, Respondent's Prehearing Brief, Witness List, and Supporting Evidence (Part II) filed December 16, 2022, Tab D at 94. The private sector provides services for those with the capacity to pay. *Id*. The record shows that he has been in some form of detention since 2018, the record also shows that prior to that he did not have stable employment. This record supports the conclusion that he would lack the financial resources to pay for private health care. Mr. Garcia Illenes is a 62-year-old male with several mental health conditions with one that causes him to be hyper focused on his medical conditions- which further impedes him ability to gain employment in Mexico. The record does not support the conclusion that Mr. Garcia Illenes would likely be able to obtain future employment that would provide him with enough money to afford private healthcare services.

12

Next, the record also shows that Mr. Garcia Illenes would likely be unable to obtain employment that would afford him public health insurance. In Mexico public health care services are available to persons employed in the government or formal sector. Mr. Garcia Illenes would likely be unable to secure formal employment as he mostly worked in agriculture, landscaping, or construction. R2- Exhibit 53 at Tab A, Supplemental Declaration. Free public healthcare services are provided to individuals without social security. Cf. *See* R2-Exhibit 49b, Respondent's Prehearing Brief, Witness List, and Supporting Evidence (Part II) filed December 16, 2022, Tab D at 95, 101, "The National Health Survey showed that 21% of the population had no insurance, while a subsequent survey revealed that 87% of the population from the lowest socioeconomic level lacked access to health services."

Austerity measures under the current Mexican president have resulted in widespread cuts to many social services, including the healthcare sector. *See* R2-Exhibit 49b, Respondent's Prehearing Brief, Witness List, and Supporting Evidence (Part II) filed December 16, 2022, Tab D at 107. In January 2020 just months before the pandemic struck Mexico, the current Mexican president dismantled the health insurance program Seguro Popular and replaced it with INSABI. *Id*. INSABI's implementation, however, has been chaotic, flawed, and uneven and has left many poor Mexicans who formerly had coverage through Seguro Popular uninsured. *Id*.

The record establishes that Mr. Garcia Illenes would most likely be unable to afford psychiatric care for his mental health conditions causing him to decompensate. Even if he could find affordable community-based services in Mexico, he would likely be unable to access them. Mexico allocates 2.2% of the total health budget to mental health services, eight times lower than the proportion of the global burden of disease, estimated for mental health disorders *See* R2-Exhibit 49b, Respondent's Prehearing Brief, Witness List, and Supporting Evidence (Part II)

EOIR 16 of 20

13

**117**

filed December 16, 2022, Tab D at 96. To serve a population of 129.2 million inhabitants, there are 39 psychiatric hospitals in Mexico, 34 of which are funded by the Ministry of Health and five by the National Institute of Social Security. *Id*. The treatment for mental disorders remains within specialized services (tertiary care), specifically psychiatric hospitals. *See* R2-Exhibit 49b, Respondent's Prehearing Brief, Witness List, and Supporting Evidence (Part II) filed December 16, 2022, Tab D at 99.



14

The Immigration Judge erred in finding that 

. Mr. Garcia Illenes has not had support from his family during these proceedings and he will continue to not have family support if removed to Mexico. Mr. Garcia Illenes has experienced homelessness in the United States and is likely to experience homelessness again in Mexico.

Dr. Kuck testified that if Mr. Garcia Illenes did not receive professional support it would lead to his psychiatric decompensation and behavioral regression. If he decompensates Dr. Kuck testified that all his mental health symptoms will reamplify which would lead to agitation, problems with sleep and disorganized erratic energy. Dr. Kuck testified that because of his diagnosis Mr. Garcia Illenes does not have the capacity to find a place to live on his own, he requires guidance and structure. Regarding work, he requires small easy tasks with limited interaction with others. Mr. Garcia Illenes required predictability as Dr. Kuck testified- his environment maintains his sanity- he needs a place with structure, predictability, staff, routine – without this he would be absolutely overwhelmed which would lead erratic conduct.

In considering the various suppositions which would lead to Mr. Garcia Illenes to be institutionalized and whether the hypothetical chain of events is possible we request the court

consider Mr. Garcia Illenes's severe diagnosis; Mr. Garcia Illenes's dependence on professional medical care; Mexico's lack of access to adequate medical attention; absence of support from family and friends in Mexico; inability to access state funded benefits and resources; Mr. Garcia Illenes's lack of insight and understanding in his mental illness; Mr. Garcia Illenes' s inability to manage his mental illness and its symptoms here in the United States outside of a controlled setting evidenced by his inability to fully participate with his QR, his criminal history, his lack of stable employment, homelessness, and disconnect from family.

Given Mr. Garcia Illenes's severe and chronic mental illness – ███████████████████████

████████████████████████████████████████████. Therefore, remand is necessary so the Court can comply with the regulations and provide Mr. Garcia Illenes with a full and fair hearing.

### V.   **Conclusion**

For the foregoing reasons, the Immigration Judge's decision must be vacated, and case remanded.

Dated: August 08, 2023,                    Respectfully submitted,

                                           /s/ Crystal Felix
                                           Crystal Felix
                                           EOIR Contracted Qualified Representative
                                           for Mr. Artemio Garcia Illenes

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Artemio GARCIA-ILLENES, A092-169-635

Respondent

> **FILED**
> Sep 25, 2023

ON BEHALF OF RESPONDENT: Yolanda C. Felix, Esquire

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, Otay Mesa, CA

Before: Greer, Appellate Immigration Judge; Liebmann, Appellate Immigration Judge; Saenz, Appellate Immigration Judge

Opinion by Appellate Immigration Judge Saenz

SAENZ, Appellate Immigration Judge

This case was last before us on June 27, 2022, when we reversed the Immigration Judge's determination that the respondent was competent and remanded for further proceedings. The respondent, a native and citizen of Mexico and a lawful permanent resident of the United States, appeals from the Immigration Judge's May 3, 2023, decision denying his application for ██████████████.[1] The Department of Homeland Security has not responded to the appeal.[2] The appeal will be dismissed.

We review the findings of fact, including the determination of credibility, made by the Immigration Judge under the "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review all other issues, including issues of law, discretion, or judgment, under the de novo standard. 8 C.F.R. § 1003.1(d)(3)(ii).

On April 1, 2021, the Immigration Judge determined that the respondent was not credible and also denied the applications for relief and protection from removal on the merits. On



[1] ████████████████████████████████████

[2] The Immigration Judge determined that the respondent's conviction constitutes a ████ crime that renders him ineligible for ████████████████████

**121**

A092-169-635

September 16, 2021, the Board remanded the case for a new decision pursuant to new evidence regarding the respondent's credibility and directed the Immigration Judge to render a judicial competency inquiry. On December 8, 2021, the Immigration Judge determined that the respondent was competent, incorporated the prior decision by reference, and ordered the respondent removed. On June 27, 2022, the Board reversed the Immigration Judge's competency determination, remanded the case for further proceedings, and directed the Immigration Judge to order a Qualified Representative for the respondent through the Executive Office for Immigration Review's National Qualified Representative Program.

On remand, the Immigration Judge conducted additional proceedings and determined that the respondent was ineligible for ███████████████████████. This appeal followed.

The respondent was diagnosed with mental health impairments during immigration detention, including a trauma- and stressor-related disorder, major depressive disorder, and somatic symptom disorder (IJ at 9; Exh. 49a, Tab C at 28). ████████████████████████████████

We will uphold the Immigration Judge's determination denying the respondent's request for



A092-169-635



The respondent contends that the Immigration Judge incorrectly gave limited evidentiary weight to the respondent's statements because of his mental health symptoms, which resulted in a misapplication of *Matter of J-R-R-A-*, 26 I&N Dec. 609 (BIA 2015) (Respondent's Br. at 4-7). We disagree. ▮▮

The respondent has not adequately identified objective record evidence overlooked by the Immigration Judge that supports his claim for protection from removal. We therefore discern no reason to disturb the Immigration Judge's decision.

Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.

---

[3] Because these issues are dispositive of the respondent's ▮ application, we need not address the Immigration Judge's remaining reasons for denying this claim. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). We therefore will not address the respondent's remaining arguments on appeal regarding his eligibility for ▮ (Respondent's Br. at 4-11).

**ACMS Docket Report**
**United States Court of Appeals for the Ninth Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 23-2592 | **Docketed:** 10/05/2023 |
| Garcia-Illenes v. Garland | |
| **Appeal From:** Board of Immigration Appeals | |
| **Fee Status:** IFP | |

**Case Type Information:**
  **1)** Agency
  **2)** Immigration
  **3)**

**Originating Court Information:**
  **Agency:** BIA - San Diego Southern California : A092-169-635
  **Date Rec'd COA:** 10/05/2023
  **Date Order/Judgment:** 09/25/2023

**Prior Cases:**

**Current Cases:**

| | |
|---|---|
| ARTEMIO GARCIA-ILLENES | Artemio Garcia-Illenes |
| A092-169-635, | [Pro Se] |
| Petitioner | 7488 Calzada de la Fuente |
| | San Diego, CA 92154 |
| | |
| MERRICK B. GARLAND, ATTORNEY GENERAL Oil | |
| Respondent | Email: Ninth.Circuit.OIL@usdoj.gov |
| | [Government] |
| | DOJ - U.S. Department of Justice |
| | Civil Division/Office of Immigration Litigation |
| | P.O. Box 878, Benjamin Franklin Station |
| | Washington, DC 20044 |
| | |
| | Colin J. Tucker, Trial Attorney |
| | Email: colin.tucker@usdoj.gov |
| | [Government] |
| | DOJ - U.S. Department of Justice |
| | Civil Division/Office of Immigration Litigation |
| | P.O. Box 878, Benjamin Franklin Station |
| | Washington, DC 20044 |

| | | |
|---|---|---|
| 10/05/2023 | 1 | **PETITION FOR REVIEW** filed by Petitioner Artemio Garcia-Illenes. [Entered: 10/05/2023 02:11 PM] |
| 10/05/2023 | 2 | **MOTION TO STAY REMOVAL** filed by Petitioner(s); **REMOVAL STAYED** pending further order of the court per General Order 6.4(c). [Entered: 10/05/2023 02:11 PM] |
| 10/05/2023 | 3 | **MOTION** to proceed in forma pauperis filed by . [Entered: 10/05/2023 02:11 PM] |
| 10/05/2023 | 4 | **MOTION** for appointment of counsel filed by . [Entered: 10/05/2023 02:11 PM] |
| 10/05/2023 | 5 | **CASE OPENED.** Petition for Review has been received in the Clerk's office of the United States Court of Appeals for the Ninth Circuit on **10/5/2023**.<br>The U.S. Court of Appeals docket number **23-2592** has been assigned to this case. All communications with the court must indicate this Court of Appeals docket number. Please carefully review the docket to ensure the name(s) and contact information are correct. It is your responsibility to alert the court if your contact information changes.<br>**Resources Available**<br>For more information about case processing and to assist you in preparing your brief, please review the Case Opening Information (for attorneys and pro se litigants), review the Appellate Practice Guide, and counsel for petitioner(s) should also review the Immigration Outline and consider contacting the court's Appellate Mentoring Program for help with the brief and argument. [Entered: 10/05/2023 02:11 PM] |
| 10/05/2023 | ☐ 6<br>2 pg. 254 KB | **SCHEDULE NOTICE.** Certified Administrative Record due 11/14/2023, Respondent Response to Stay Motion (Filed with PFR) due 12/5/2023, Immigration Petitioner Opening Brief due 12/26/2023, Immigration Respondent Answering Brief due 1/23/2024. All briefs shall be served and filed pursuant to FRAP 31 and 9th Cir. R. 31-2.1.<br><br>Failure of the petitioner(s)/appellant(s) to comply with this briefing schedule will result in automatic dismissal of the appeal. See 9th Cir. R. 42-1 [Entered: 10/05/2023 02:14 PM] |
| 10/06/2023 | 7 | **NOTICE OF APPEARANCE** by Colin J. Tucker for Respondent Merrick B. Garland. [Entered: 10/06/2023 07:46 AM] |
| 10/06/2023 | 8 | **ADDED** Counsel for Respondent Colin J. Tucker for Respondent Merrick B. Garland. [Entered: 10/06/2023 07:50 AM] |
| 10/13/2023 | ☐ 9<br>1 pg. 143 KB | **ORDER FILED.** Lisa B. Fitzgerald, Appellate Commissioner.<br>The motion to proceed in forma pauperis (Docket Entry No. 3) is granted. The certified administrative record is due November 14, 2023. The response to the motion to stay removal is due December 5, 2023. The briefing schedule is stayed pending resolution of the motion for appointment of counsel. See 9th Cir. R. 27-11. [Entered: 10/13/2023 02:03 PM] |
| 11/01/2023 | 10 | **CERTIFIED ADMINISTRATIVE RECORD** filed by DOJ Executive Office Of Immigration Review. [Entered: 11/01/2023 09:56 AM] |

Allegations: White-00756-DHS-AHC
Uploaded on 08/20/2020 at 02:48 p.m. (Pacific Daylight Time) Case City: OTM
Case 3:20-cv-00756-DMS-AHC Document 254-2 Filed 12/01/23 PageID.10238 Page 128 of 153

DEPARTMENT OF HOMELAND SECURITY

# NOTICE TO APPEAR

In removal proceedings under section 240 of the Immigration and Nationality Act:

File No. A213 591 569

In the Matter of:

Respondent: MUHAMMAD, Awais

currently residing at:

c/o DHS Otay Mesa Detention Center, 7488 Calzada de la Fuente, San Diego, CA 92154
(Number, street, city and ZIP code)

(Area code and phone number)

[ ] You are an arriving alien.

[X] You are an alien present in the United States who has not been admitted or paroled.

[ ] You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that:

1. You are not a citizen or national of the United States;

2. You are a native of PAKISTAN and a citizen of PAKISTAN;

3. You entered the United States at or near Calexico, California, on or about March 06, 2020;

4. You were not then admitted or paroled after inspection by an immigration officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(6)(A)(i) of the Act, as amended, as an alien present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General.

[ ] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

EOIR, 7488 Calzada De La Fuente, San Diego, CA 92154
(Complete Address of Immigration Court, including Room Number, if any)

on TO BE SET at TO BE SET to show why you should not be removed from the United States based on the
(Date)      (Time)

charge(s) set forth above.

Rodney Richmond, SDDO
(Signature and Title of Issuing Officer)

Date **JUN 1 8 2020**

SAN DIEGO, CALIFORNIA
(City and State)

DHS Form I-862 (5/17)      See reverse for important information      Page 1 of 2

Exh. 1 - Adm.

126

Uploaded on: 6/18/2020 at 12:02:48 p.m. (Pacific Daylight Time) Base City: OTM

Alleg... ...ed ... ...ed
Designated Country: PAKISTAN

## Notice to Respondent

**Warning: Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the Department of Homeland Security immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United Stated and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act (the Act).

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855)448-6903

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

_____
(Signature of Respondent)

Date _____

_____
(Signature and Title of Immigration Officer)

### Certificate of Service

This Notice To Appear was served on the respondent by me on **6/18/2020** in the following manner and in compliance with section 236(a)(1) of the Act.

☐ In person   ☐ by certified mail, returned receipt # _____   requested   ☒ by regular mail

☐ Attached is a credible fear worksheet

☒ Attached is a list of organization and attorneys which provide free legal services          **Served via in house mail at OMDC**

The alien was provided oral notice in the _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____              _____
(Signature of Respondent if Personally Served)            (Signature and Title of Officer)

EOIR – 2 of 4

Exh. 1 - Adm.

**127**



# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### REPORT OF INVESTIGATION

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



08/05/2020 19:03 EDT

Page 1 of 6

**CASE NUMBER**

**CASE OPENED**
7/2/2020

**CURRENT CASE TITLE**
Muhammad AWAIS

**REPORT TITLE**
Interview of Muhammad Awais

**SYNOPSIS**

Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), Office of the Special Agent in Charge (SAC), San Diego, has a national security interest in regards to Awais Muhammad (Muhammad). The HSI investigative assessment is ongoing to determine if Muhammad poses a national security threat to the United States.

This report will document the interview of Muhammad Awais at the Otay Mesa Detention Center on 07/28/2020.

**REPORTED BY**
Monique Lafontan
SPECIAL AGENT

**APPROVED BY**
Jorge Nieto
SUPERVISORY SPECIAL AGENT

**DATE APPROVED**
8/5/2020

| Current Case Title | ROI Number | Date Approved |
|---|---|---|
| Muhammad AWAIS | | 8/5/2020 |

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

BOIR - 91 of 110

Exh. 4 - Adm.

128

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
SAN DIEGO, CALIFORNIA

File: A213-591-569                                     March 29, 2021

In the Matter of

AWAIS MUHAMMAD          )          IN REMOVAL PROCEEDINGS
                        )
    RESPONDENT          )

CHARGE:         Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (the
                Act) - present without having been admitted or paroled

APPLICATIONS:_____

ON BEHALF OF RESPONDENT: KHALIL AHMAD

ON BEHALF OF DHS: PAULA DIXON

ORAL DECISION AND ORDERS OF THE IMMIGRATION JUDGE

The respondent is a 28-year-old male who is a native and citizen of Pakistan. On
June 18, 2020, the Department of Homeland Security (DHS) issued a Notice to Appear
(NTA) against the respondent. The NTA is included in the record as Exhibit 1.

The respondent has conceded the charge of inadmissibility set forth above. See
Section 240(c)(2) of the Act. The respondent declined to designate a country for
removal, and the Court has designated Pakistan.

As relief, the respondent filed with the Court an application for ▮▮▮▮ See

1

**129**

Exhibit 2.  Under the regulations, the Form ▇▇ is considered to be not only an
application for ▇▇▇ but also an application for ▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  A hearing
on the merits of these applications was conducted on February 16, 2021, and again on
today's date.  The respondent was the sole witness.

The Court has considered the evidence presented by the parties, to include the
respondent's documents at Exhibit 3, the background evidence submitted by the DHS,
as well as the DHS evidence of an investigative nature at Exhibits 6 and 7.
Respondent's counsel did object to the Court's consideration of Exhibits 6 and 7,
including because the maker's of the documents were not presented for cross-
examination.  However, the Court has broad authority pursuant to 8 C.F.R. Section
1240.7(a), to admit any document that is the result of an investigation where it is
relevant and material to any issue in the case.  In this case, the question of the
authenticity of the respondent's documents has additionally overlapped with the issue,
to be explained below, as to whether he is a credible witness.

The Court does give reduced weight to the documents presented by the DHS at
Exhibits 6 and 7, to the extent that the makers were not available for cross-examination.
However, the Court is not making a finding that the respondent's ▇▇ application is
"frivolous," because the Court's understanding is that the DHS investigation cast doubt
upon the authenticity of the respondent's documents, but does not include the legal
conclusion of deliberately fabricated evidence on behalf of the respondent.  Indeed, this
Court would likely be unwilling to make a frivolous finding absent the maker of Exhibit 6
or 7 being presented for cross-examination.

However, the conclusions of the forensic analysis are consistent with the other
DHS investigations concerning the authenticity of the respondent's evidence.  Even to

A213-591-569                            2                        March 29, 2021

the untrained eye, as will be discussed below, there is good reason to suspect the authenticity of the evidence presented by the respondent in this case. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ In short, the Court has admitted Exhibits 6 and 7, and will discuss the evidence further concerning the analysis of the issue of the respondent's credibility.

FURTHER ANALYSIS AND FINDINGS

The respondent did request ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████. The Court has applied the "totality of the circumstances" test to assess the issue of the respondent's credibility, and concludes for the reasons to be explained below that the respondent was not a credible witness.

In Matter of O-M-O-, 28 I&N Dec. 191, BIA 2021, the Board stated: "Courts have long recognized that Immigration Judges may find that documents are not genuine if they contain hallmarks of fraud, which include misspellings, overwriting, incorrect information, and alterations." Id. at 194. The Board stated further: "The circuit courts have also affirmed findings of fraud where an applicant has submitted documents that were purportedly created by different persons or organizations but have very close similarities to each other." Id. at 195.

The documents submitted by the respondent in this case have the "hallmarks of fraud" noted above, and this undermines the respondent's claim that ████████████

███████████  First, he offered a medical certificate that was issued in the English language as support for his assertion that he had been attacked and suffered injuries on June 7, 2019. The document contains numerous spelling and grammatical errors. The document is titled: "To whom it my, M Y, [sic] concern." It is unclear for what purpose a general document of this nature would have been issued, considering especially the respondent's testimony that he was employed with his father raising cattle, and thus he would not have needed the medical certificate as an excuse for absence from work. What is more significant than the facial problems with the document, however, is that a DHS investigation did not identify the doctor, Syed Muhammad Tabish, who purportedly issued the document, as being a registered doctor in Pakistan. Thus, the medical document does not inspire confidence as to its authenticity.

Furthermore, the respondent's testimony was in conflict with the plain terms of the document. When asked to describe what had occurred to him on June 7, 2019, following the beating, respondent said that he walked to his home, a distance of about five minutes. He said that from his home, he and his father walked to the doctor's office, which he again said was about a five-minute walk. This testimony should be compared with the medical document itself, which provides that the respondent "was carried to my health center" in an injured condition. Respondent did not have a good explanation as to why this purported medical document would indicate that he needed to be carried to the doctor's office, when the respondent stated in his testimony that he clearly had been able to walk that day despite allegedly receiving injuries.

Next, the respondent also presented among his documents within Exhibit 3 what purports to be a "police character certificate." Remarkably, this document supposedly was issued at the same district police station where the respondent said he had been warned by the officer in charge in June 2019, when he allegedly went to make a

A213-591-569                            4                    March 29, 2021

complaint with his father, that if he engaged in any further Shia activities, that he wa~~s~~ould be imprisoned.  When the respondent was asked about this on cross-examination, specifically how it is that the same authorities who threatened him because of his alleged religious conversion would be willing to issue a "character certificate" on his behalf, he had no explanation.  Another anomaly with this document is that it actually includes a website at which the document supposedly could be verified.  A DHS investigator sought to verify the document by going to this website, but no such document was found to exist.  Again, the respondent appears not to have submitted a genuine document to this Court, but rather has submitted something that was created for his ▮▮▮ case.

Several of the respondent's documents also suffer from the defect discussed in Matter of O-M-O-, supra, which is that documents supposedly written by different persons have the same exact content.  This includes tabs 6 and 7 within the respondent's Exhibit 3, as well as tabs 8 and 9.  The DHS evidence at Exhibit 7 plainly indicates that the respondent's documents within Exhibit 3, tabs 1 through 13, were generated by the same printer, despite supposedly being issued by different persons on different dates and at different places.



The record of the respondent's interview with the ▮▮▮ officer reflects that the ▮▮▮ officer questioned the respondent specifically about whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The respondent answered that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  This testimony is in conflict with the document at Exhibit 3, tab 10, which purports to be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Thus, the respondent's testimony that there was

███████████ is in conflict with ████████████████████████

███████████ When the respondent was asked to explain this inconsistency, he said

████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

██████████████████████. This Court, accordingly, is being asked to believe that ████

█████████████████████████████████████████████

████████████████████████████████████████

█████████████ This is not a credible scenario. The preparation of the ████████████ in the context where the respondent previously told the ███████ officer that no such ████████ was possible, also casts doubt on whether this evidence is genuine. The DHS forensic analysis generally was not able to confirm any of the respondent's documents as being authentic, and specifically pointed out that certain "wet seals" on the documents were generated by a computer.

The respondent's testimony before the ███████ officer also reflected adversely on his credibility for the following reasons. First, despite saying that █████████████ ████████████████████████████ he was unable to specify to the ███████ officer the date that the alleged ████████ took place. Id. at 30. He claimed in testimony in Immigration Court that he was suffering from a headache during the interview with the ███████ officer, but this claim is impeached by the record of the ████████ interview, where the respondent at the outset of the interview told the ███████ officer that he was feeling "fine." Id. at 2.

Second, the respondent was not able to provide a plausible explanation as to why he allegedly converted from Sunni to Shia Islam. It is fundamentally not believable that if the religious conversion actually occurred, the respondent would not be able to

give a complete and coherent explanation as to why he had converted. His only explanation for the alleged conversion in court today was that he wished to practice the "true Islam."

Therefore, the Court finds that the respondent was not a credible witness. The Court further finds, for the reasons explained above, that the respondent's evidence offered as corroboration actually undermines the bona fides or good faith of his ███████ ███████ requests. The application for █████ will therefore be denied.

The legal conclusion necessarily follows, that because the respondent was not a credible witness and his ███████ application has been denied, that the application for ███████████████████████████ of the Act will also be denied. With respect to ████████████████████████████, the Court again considers the respondent's credibility as being the fundamental issue. Because the respondent was found not credible, this is not a case where he can establish a████████████ ████████████████████████████  ███████████████

█████████████ ɴNor does the background evidence support a███████████

████████████████████████████████████████

████████████████████████████████████████  For these reasons, the respondent's applications shall be denied, and he will be ordered removed from the United States to Pakistan.

ORDERS

IT IS HEREBY ORDERED that the respondent's application for ███████ be denied.

IT IS FURTHER ORDERED that the respondent's application for ███████████ ████████████████████████ of the Act be denied.

IT IS FURTHER ORDERED that the respondent's application for ███████████

███████████████████████████ be denied.

IT IS FURTHER ORDERED that the respondent shall be removed from the United States to Pakistan pursuant to the charge contained in the NTA.


**_Please see the next page for electronic signature_**

ROMIG, JEFFREY L.
Immigration Judge

IMMIGRATION COURT
7488 CALZADA DE LA FUENTE
SAN DIEGO, CA  92154

In the Matter of

Case No.: A213-591-569

MUHAMMAD, AWAIS
     Respondent

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on ___March. 29, 2021.___
This memorandum is solely for the convenience of the parties.  If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[ ✔ ] The respondent was ordered removed from the United States to
      **PAKISTAN**.
[ ] Respondent's application for voluntary departure was denied and
    respondent was ordered removed to **PAKISTAN.**

[ ] Respondent's application for voluntary departure was granted until
    _____ under DHS SAFEGUARDS
    with an alternate order of removal to **PAKISTAN.**
Respondent's application for:
[ ] ▋▋▋ was ( )granted ( ✔ )denied( )withdrawn.
[ ] ▋▋▋ was ( )granted ( ✔ )denied ( )withdrawn.
[ ] A Waiver under Section ____ was ( )granted ( )denied ( )withdrawn.
[ ] Cancellation of removal under section 240A(a) was ( )granted ( )denied
    ( )withdrawn.
Respondent's application for:
[ ] Cancellation under section 240A(b)(1) was ( ) granted ( ) denied
    ( ) withdrawn.  If granted, it is ordered that the respondent be issued
    all appropriate documents necessary to give effect to this order.
[ ] Cancellation under section 240A(b) (2) was ( )granted ( )denied
    ( )withdrawn.  If granted it is ordered that the respondent be issued
    all appropriated documents necessary to give effect to this order.
[ ] Adjustment of Status under Section ____ was ( )granted ( )denied
    ( )withdrawn.  If granted it is ordered that the respondent be issued
        all appropriated documents necessary to give effect to this order.
[ ✔ ] Respondent's application of ( ✔ ▋▋▋            ( )
    ▋▋▋
    ( ) granted ( ✔ ) denied ( ) withdrawn.
[ ] Respondent's status was rescinded under section 246.
[ ] Respondent is admitted to the United States as a ____ until ____.
[ ] As a condition of admission, respondent is to post a $ _____ bond.
[ ] Respondent knowingly filed a frivolous asylum application after proper
    notice.
[ ] Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.
[ ] Proceedings were terminated.
[ ✔ ] If you are under a final order of removal, and if you willfully fail
    or refuse to 1) depart when and as required, 2) make timely application
    in good faith for any documents necessary for departure, or 3) present
    yourself for removal at the time and place required, or, if you conspire
    to or take any action designed to prevent or hamper your departure, you
    shall be subject to civil money penalty of up to $813 for each day under

ALIEN NUMBER: 213-591-569        NAME: MUHAMMAD, AWAIS

such violation. (INA section 274D(a)). If you are removable pursuant to INA 237(a), then you shall further be fined and/or imprisoned for up to 10 years. (INA section 243(a)(1)).

[  ] Other: _____

Date:  Mar 29, 2021

JEFFREY L. ROMIG
Immigration Judge

Appeal: Waived  Reserved   Appeal Due By:  April 28, 2021

by respondent

---

CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY: MAIL [M]  PERSONAL SERVICE (P)  ELECTRONIC SERVICE [E]
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [✓] ALIEN's ATT/REP  [✓] DHS
DATE: __3-29-21__   BY: COURT STAFF __JLR__
       Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

---

Q6

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A213-591-569 – San Diego, CA

Date:        AUG 19 2021

In re:  Awais MUHAMMAD

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Dario Aguirre, Esquire

ON BEHALF OF DHS:             Paula Dixon
                              Assistant Chief Counsel

APPLICATION: ███████████████████████████████

ORDER:

The Board affirms, without opinion, the result of the decision below.  The decision below is,

therefore, the final agency determination.  See 8 C.F.R. § 1003.1(e)(4).

_____
FOR THE BOARD

**ACMS Docket Report**
United States Court of Appeals for the Ninth Circuit

| | |
|---|---|
| **Court of Appeals Docket #:** 21-649 | **Docketed:** 08/27/2021 |
| Muhammad v. Garland | |
| **Appeal From:** Board of Immigration Appeals | |
| **Fee Status:** IFP | |

**Case Type Information:**
  **1)** Agency
  **2)** Immigration
  **3)**

**Originating Court Information:**
  **Agency:** BIA - San Diego Southern California : A213-591-569
  **Date Rec'd COA:** 08/27/2021
  **Date Order/Judgment:** 08/19/2021

**Prior Cases:**

**Current Cases:**

| | |
|---|---|
| AWAIS MUHAMMAD<br>A213-591-569,<br>Petitioner, | Gina F. Elliott<br>Direct: 323-854-6543<br>Email: gelliott@bradleybernsteinllp.com<br>[Retained]<br>Bradley Bernstein Sands, LLP<br>3911 Harrison Street<br>Suite 100<br>Oakland, CA 94611 |
| MERRICK B. GARLAND, U.S. ATTORNEY GENERAL<br>Respondent, | Drew Brinkman<br>Email: andrew.brinkman@usdoj.gov<br>[Government]<br>DOJ - U.S. Department of Justice<br>Civil Division/Office of Immigration Litigation<br>P.O. Box 878, Benjamin Franklin Station<br>Washington, DC 20044<br><br>OIL<br>Email: Ninth.Circuit.OIL@usdoj.gov<br>[Government]<br>DOJ - U.S. Department of Justice<br>Civil Division/Office of Immigration Litigation<br>P.O. Box 878, Benjamin Franklin Station<br>Washington, DC 20044<br><br>Jennifer A. Singer<br>Email: Jennifer.A.Singer@usdoj.gov<br>[Government]<br>DOJ - U.S. Department of Justice<br>Civil Division/Office of Immigration Litigation<br>P.O. Box 878, Benjamin Franklin Station<br>Washington, DC 20044 |

| 08/27/2021 | 1 | PETITION FOR REVIEW filed by Petitioner(s). [Entered: 08/27/2021 01:32:00 PM] |
|---|---|---|
| 08/27/2021 | 2 | MOTION TO STAY REMOVAL filed by Petitioner(s); REMOVAL STAYED pending further order of the court per General Order 6.4(c). [Entered: 08/27/2021 01:32:00 PM] |
| 08/27/2021 | 3 | AGENCY DECISION on review dated 8/19/2021. [Entered: 08/27/2021 01:33:00 PM] |
| 08/27/2021 | 4 | CASE OPENED. Petition for Review has been received in the Clerk's office of the United States Court of Appeals for the Ninth Circuit on 8/27/2021.<br>The U.S. Court of Appeals docket number 21-649 has been assigned to this case. All communications with the court must indicate this Court of Appeals docket number. Please carefully review the docket to ensure the name(s) and contact information are correct. It is your responsibility to alert the court if your contact information changes.<br>**Resources Available**<br>For more information about case processing and to assist you in preparing your brief, please review the Case Opening Information (for attorneys and pro se litigants), review the Appellate Practice Guide, and counsel for petitioner(s) should also review the Immigration Outline and consider contacting the court's Appellate Mentoring Program for help with the brief and argument. [Entered: 08/27/2021 02:13:00 PM] |
| 08/27/2021 | 5<br>2 pg. 238 KB | BRIEFING SCHEDULE NOTICE. Certified Administrative Record due 10/1/2021, Respondent Response to Stay Motion (Filed with PFR) due 10/22/2021, Petitioner Opening Brief due 11/30/2021, Respondent Answering Brief due 1/31/2022. Optional Reply Brief due 21 days after service of Answering Brief. All briefs shall be served and filed pursuant to FRAP 31 and 9th Cir. R. 31-2.1.<br>Failure of the petitioner to comply with this briefing schedule will result in automatic dismissal of the appeal. See 9th Cir. R. 42-1. [Entered: 08/27/2021 02:16:00 PM] |
| 08/30/2021 | 6 | NOTICE OF APPEARANCE by Jennifer A. Singer for Merrick B. Garland. [Entered: 08/30/2021 12:44:00 PM] |
| 08/30/2021 | 7 | ADDED Jennifer A. Singer for Merrick B. Garland Respondent. [Entered: 08/30/2021 03:18:00 PM] |
| 09/03/2021 | 8<br>8 pg. 296 KB | ORDER TO SHOW CAUSE.  [Entered: 09/03/2021 04:56:00 PM] |
| 09/22/2021 | 9 | MOTION to proceed in forma pauperis filed by Petitioner(s). [Entered: 09/22/2021 02:28:00 PM] |
| 09/27/2021 | 10 | CERTIFIED ADMINISTRATIVE RECORD filed. [Entered: 09/27/2021 01:13:00 PM] |
| 09/28/2021 | 11<br>1 pg. 125 KB | ORDER FILED Motion to Proceed In Forma Pauperis or Form 4 (DE 9) granted. [Entered: 09/28/2021 04:58:00 PM] |
| 10/04/2021 | 12 | SUPPLEMENTAL MOTION TO STAY REMOVAL filed by Petitioner Awais Muhammad. [Entered: 10/04/2021 01:59:00 PM] |
| 10/04/2021 | 13 | MOTION to accept late filing filed by Petitioner Awais Muhammad. [Entered: 10/04/2021 02:04:00 PM] |
| 10/07/2021 | 14<br>1 pg. 129 KB | ORDER FILED Motion to Accept Late Filing (DE 13) granted. [Entered: 10/07/2021 09:14:00 AM] |
| 10/22/2021 | 15 | OPPOSITION to motion to stay removal filed by Respondent Merrick B. Garland. [Entered: 10/22/2021 12:34:00 PM] |
| 11/17/2021 | 16 | STREAMLINED request for extension of time to file opening brief for 30 days filed by Petitioner Awais Muhammad. [Entered: 11/17/2021 08:36:00 AM] |
| 11/17/2021 | 17 | ORDER FILED. Streamlined Request for Extension of Time to File Opening Brief for 30 days (DE 16) granted. Amended briefing schedule: Petitioner Opening Brief due 12/30/2021, Respondent Answering Brief due 2/28/2022. Optional Reply Brief due 21 days after service of Answering Brief. All briefs shall be served and filed pursuant to FRAP 31 and 9th Cir. R. 31-2.1. [Entered: 11/17/2021 09:07:00 AM] |
| 12/29/2021 | 18 | MOTION to extend time to file opening brief filed by Petitioner Awais Muhammad. [Entered: 12/29/2021 09:26:00 AM] |
| 01/07/2022 | 19<br>1 pg. 127 KB | ORDER FILED. Motion to Extend Time to File Opening Brief (DE 18) granted. Amended briefing schedule: Petitioner Opening Brief due 1/31/2022, Respondent Answering Brief due 4/1/2022. Optional Reply Brief due 21 days after service of Answering Brief. All briefs shall be served and filed pursuant to FRAP 31 and 9th Cir. R. 31-2.1. [Entered: 01/07/2022 04:52:00 PM] |
| 01/26/2022 | 20 | OPENING BRIEF submitted for filing by Petitioner Awais Muhammad. [Entered: 01/26/2022 02:10:00 PM] |
| 01/26/2022 | 21<br>1 pg. 141 KB | ORDER FILED. Opening Brief submitted at DE 20 by Petitioner Awais Muhammad is filed. Within 7 days of this order, Petitioner must file 6 copies of the brief in paper format bound with blue front cover pages. Each copy must include certification at the end that the copy is identical to the electronic version. The paper copies must be sent to the Clerk's principal office. [Entered: 01/26/2022 02:49:00 PM] |
| 02/03/2022 | 22 | Paper copies (6) of Opening Brief submitted at DE 20 by Petitioner Awais Muhammad received. [Entered: 02/03/2022 11:47:00 AM] |
| 02/11/2022 | 23 | NOTICE OF APPEARANCE by Drew Brinkman for Merrick B. Garland. [Entered: 02/11/2022 09:11:00 AM] |
| 02/11/2022 | 24 | ADDED Drew Brinkman for Respondent Merrick B. Garland. [Entered: 02/11/2022 11:48:00 AM] |
| 03/22/2022 | 25 | STREAMLINED request for extension of time to file answering brief for 30 days filed by Respondent Merrick B. Garland. [Entered: 03/22/2022 07:50:00 AM] |
| 03/22/2022 | 26 | ORDER FILED. Streamlined Request for Extension of Time to File Answering Brief for 30 days (DE 25) granted. Amended briefing schedule: Respondent Answering Brief due 5/2/2022. Optional Reply Brief due 21 days after service of Answering Brief. All briefs shall be served and filed pursuant to FRAP 31 and 9th Cir. R. 31-2.1. [Entered: 03/22/2022 03:43:00 PM] |
| 04/26/2022 | 27 | MOTION to hold case in abeyance filed by Respondent Merrick B. Garland. [Entered: 04/26/2022 03:24:00 PM] |

| | | |
|---|---|---|
| 05/03/2022 | 28 | **NOTICE OF APPEARANCE** by Gina F. Elliott for Awais Muhammad replacing Christopher Paul Kailani Medeiros. [Entered: 05/03/2022 01:03:00 PM] |
| 05/03/2022 | 29 | **ADDED** Gina F. Elliott for Petitioner Awais Muhammad. [Entered: 05/03/2022 02:59:00 PM] |
| 05/03/2022 | 30 | **TERMINATED** participation of Christopher Paul Kailani Medeiros representing Petitioner Awais Muhammad. [Entered: 05/03/2022 03:00:00 PM] |
| 05/06/2022 | 31 | **RESPONSE** to Motion to Hold in Abeyance (DE 27) filed by Petitioner Awais Muhammad. [Entered: 05/06/2022 10:48:00 AM] |
| 05/10/2022 | ☐ 32<br>2 pg. 178 KB | **ORDER FILED.** The parties' joint motions (Docket Entry Nos. 27, 31) to stay appellate proceedings are granted. The previously established briefing schedule is vacated.<br>Appellate proceedings are stayed until resolution of petitioner's motion to reopen with the Board of Immigration Appeals or until further order of this court.<br>Respondent shall file a status report on August 4, 2022 and every 90 days thereafter while the motion to reopen is pending. Status reports should include: any change in the status of the motion to reopen; and the estimated date of resolution of the motion to reopen, if known.<br>Respondent shall notify the court by filing a status report within 7 days of the resolution of the motion to reopen.<br>Failure to file a status report will terminate the stay of appellate proceedings. The remaining briefing schedule will be reset in a future order. [Entered: 05/10/2022 04:42:00 PM] |
| 07/07/2022 | 33 | **STATUS REPORT** (as required by Court order) filed by Respondent Merrick B. Garland. [Entered: 07/07/2022 01:45:00 PM] |
| 07/15/2022 | 34 | **MOTION** to dismiss for lack of jurisdiction filed by Respondent Merrick B. Garland. [Entered: 07/15/2022 06:25:00 AM] |
| 09/22/2022 | ☐ 35<br>1 pg. 254 KB | **ORDER FILED.** Milan D. SMITH, Jr., Daniel A. BRESS, Lawrence VANDYKE There is no longer a final order of removal that this court has jurisdiction to review because petitioner's removal proceedings were reopened by the agency on June 30, 2022. See 8 U.S.C. § 1252(a)(1); Lopez-Ruiz v. Ashcroft, 298 F.3d 886, 887 (9th Cir. 2002).<br>The government's motion to dismiss this petition for lack of jurisdiction (Docket Entry No. 34) is granted. The supplemented motion for a stay of removal (Docket Entry Nos. 2 and 12) is denied. The temporary stay of removal is lifted.<br>PETITION FOR REVIEW DISMISSED. [Entered: 09/22/2022 04:14:00 PM] |
| 11/14/2022 | ☐ 36<br>1 pg. 178 KB | **MANDATE ISSUED** Milan D. SMITH, Jr., Daniel A. BRESS, Lawrence VANDYKE [Entered: 11/14/2022 02:11 PM] |

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Awais MUHAMMAD, A213-591-569

Respondent

> **FILED**
> Jun 30, 2022

ON BEHALF OF RESPONDENT: Dario Aguirre, Esquire

ON BEHALF OF DHS: Paula Dixon, Assistant Chief Counsel

IN REMOVAL PROCEEDINGS
On Motion from a Decision of the Board of Immigration Appeals

Before: Mullane, Appellate Immigration Judge

MULLANE, Appellate Immigration Judge

ORDER:

The respondent and the Department of Homeland Security's joint motion to reopen is granted and the record is remanded for further proceedings.

**143**

**Patient:** MUHAMMAD, AWAIS
**MRN #:** 5733191
**Agency #:** 213591569

**Age/DOB:** 30 years ▮▮▮▮▮

## Patient Snapshot

| Immunizations | Series # | Date (Age) |
|---|---|---|
| Flucelvax Quadrivalent Intramuscular Suspension | 1 | 21Oct2020 @ 1325 |
| Moderna COVID-19 Bival Booster 50 MCG/0.5ML Intramuscular Suspension | 1 | 07-Mar 2023 (30 Y) |
| Moderna COVID-19 Vaccine 100 MCG/0.5ML Intramuscular Suspension | 1 | 19-May 2021 (28 Y) |
| Moderna COVID-19 Vaccine 100 MCG/0.5ML Intramuscular Suspension | 2 | 16-Jun 2021 (28 Y) |
| PPD, tuberculin skin test; purified protein derivative solution, intradermal | 1 | 02-Jul 2022 (29 Y) |

| Active Medications | SIG Days / Quantity / Refills | Action Due Date | Ordered By Provider |
|---|---|---|---|
| ▮▮▮▮▮ | TAKE 1 TABLET TWICE DAILY PRN Days:30, Quantity:30 Tablet , Refills:5 | | Bautista, Rosa |
| ▮▮▮▮▮ | INJECT 0.1 ML ONCE Days:0, Quantity:0.1 Milliliter Refills:0 | | Boganey, Rae |
| ▮▮▮▮▮ | TAKE 2 CAPSULE DAILY Days:30, Quantity:60 Capsule, Refills:5 | | Bautista, Rosa |
| ▮▮▮▮▮ | APPLY 1 INCH TWICE DAILY prn Days:30, Quantity:1 * 85 GM Tube, Refills:2 | | Purviance, Cynthia |
| ▮▮▮▮▮ | INSTILL 2 SPRAY Daily PRN for nasal congestion Days:30, Quantity:1 * 16.9 ML Bottle, Refills:5 | | Bautista, Rosa |
| ▮▮▮▮▮ | TAKE 1 TABLET DAILY Days:30, Quantity:30 Tablet, Refills:3 | | Igbo, Chrisitana |
| ▮▮▮▮▮ | TAKE 2 TABLET TWICE DAILY PRN Days:30, Quantity:30 Tablet, Refills:5 | | Purviance, Cynthia |

Copyright ©2023 Allscripts Healthcare Solutions, Inc. and/or its affiliates. All rights reserved.

Exh. C11 - Adm.

EOIR – 399 of 493

**144**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OTAY MESA IMMIGRATION COURT
7488 Calzada de la Fuente
San Diego, California 92154

File No.:     A213-591-569                         )          Date: April 11, 2023
                                                   )
In the Matter of                                   )
                                                   )          **IN REMOVAL PROCEEDINGS**
    AWAIS MUHAMMED,                                 )
                                                   )
                        Respondent.                )

**ON BEHALF OF**                          **ON BEHALF OF THE DEPARTMENT**
**THE RESPONDENT:**                        **OF HOMELAND SECURITY:**
Sara Mortenson, Esquire                   Paula Dixon, Assistant Chief Counsel
2727 Camino Del Rio S, Ste 320            P.O. Box 438150
San Diego, California 92108               San Diego, California 92143

## DECISION AND ORDER OF THE IMMIGRATION JUDGE

### Jurisdiction and Procedural History

A Notice to Appear for the above-named respondent was filed in this case on June 18, 2020. The filing of this charging document commenced proceedings and vested jurisdiction with this court. On March 29, 2021, following a hearing on the merits, all forms of relief sought were denied and Respondent was ordered removed to Pakistan. Subsequently, the Respondent timely filed an appeal with the Board of Immigration Appeals (BIA) on April 22, 2021. Following briefing by the parties on the issues, the BIA issued an order on August 19, 2021, affirming the IJ's decision. Thereafter, Respondent filed a Motion to Reopen with the BIA on April 29, 2022. The BIA granted the motion and remanded the case to the immigration court on June 30, 2022. On March 7, 2023, Respondent, though counsel, filed a Motion for Judicial Competency Hearing and Adoption of Safeguards Based on Respondent's Mental Health. The Court set the hearing for March 28, 2023, and proceeded with the hearing on that date.[1]

### Issue

---

[1] Pursuant to 8 CFR 1240.1(b), the case having been assigned the day before the hearing, the undersigned has familiarized himself with the record of proceedings prior to ruling on this matter.

EOIR – 1 of 7

There is an issue as to whether the respondent is competent to represent himself in these remanded proceedings. If not, whether he is competent to proceed with the assistance of counsel and/or other safeguards.

## Statement of Law & Procedure

### A. Definition of Competence to Represent Oneself

When determining whether an unrepresented respondent is competent to represent him- or herself in an immigration proceeding, the Immigration Judge must consider *both* the individual's ability to meaningfully participate in the proceeding as set forth in *Matter of M-A-M-, 25 I&N Dec. 474 (BIA 2011)* and the individual's ability to perform additional functions necessary for self-representation.

Immigration Judges shall consider the following when determining if a respondent is competent to represent him- or herself:

First, the respondent must be able to meaningfully participate in the proceeding as set forth in *Matter of M-A-M-*. To meaningfully participate, the respondent must have a rational and factual understanding of:

> a. the nature and object of the proceeding;
>
> b. the privilege of representation by counsel;
>
> c. the right to present, examine, and object to evidence;
>
> d. the right to cross-examine witnesses; and
>
> e. the right to appeal.

Second, for an unrepresented respondent to be competent to represent him- or herself in an immigration proceeding, he or she must also be able to perform additional functions necessary for self-representation. To represent him- or herself, the respondent must have sufficient present ability to:

> a. exercise the rights listed above;
>
> b. make informed decisions about whether to waive the rights listed above;
>
> c. respond to the allegations and charges in the proceeding;
>
> d. present information and evidence relevant to eligibility for relief; and
>
> e. act upon instructions and information presented by the Immigration Judge and government counsel.

2

EOIR - 2 of 7

A respondent is incompetent to represent him- or herself in an immigration proceeding if he or she, because of a mental disorder (including Intellectual Disability), is unable to satisfy any of the provisions above. "Mental disorder" (including Intellectual Disability) is defined as a significant impairment of the cognitive, emotional, or behavioral functioning of a person.

## B. Procedure for Determining Competence for Class Members

Where the respondent is a member of the class in *Franco-Gonzales v. Holder,* and the Department of Homeland Security (Department) has filed a notice of Class Membership with the Immigration Court or the Board of Immigration Appeals, the Immigration Judge must conduct a Judicial Competency Inquiry (JCI).

At the conclusion of the JCI, the Immigration Judge will weigh the evidence of record and determine that: 1) there is no reasonable cause to believe the respondent is suffering from a mental disorder that impairs his or her ability to perform a function required by the definition of competence to represent oneself, and accordingly, the respondent is competent, or 2) a preponderance of the evidence establishes that the respondent is incompetent (i.e, the respondent has a mental disorder that significantly impairs his cognitive, emotional, or behavioral ability to perform a function required for self-representation ). Alternatively, the Immigration Judge may find the evidentiary record inconclusive and then must refer the case for a Forensic Competency Evaluation by a Mental Health Professional.

### Recitation of the Evidentiary Record

The evidentiary record of this proceeding consists of:

Exhibit 1: Notice to Appear

Exhibit 2: Respondent's ▮▮▮▮ Application

Exhibit 3: Respondent's "Exhibits for Final Merits Hearing"

Exhibit 4: DHS Submission of Evidence

Exhibit 5: DHS Submission of Evidence Part II

Exhibit 6: DHS Submission of Rebuttal Evidence

Exhibit R-7: DHS Submission of Evidence

Exhibit R-8: Respondent's Supplemental Exhibits in Support of Application [I]

Exhibit R-9: Respondent's Supplemental Exhibits in Support of Application [II]

Exhibit C-10: DHS Submission of Medical Records Part I

Exhibit C-11: DHS Submission of Medical Records Part II

EOIR - 3 of 7

3

Exhibit C-12: DHS Submission of Medical Records Part III

Exhibit C-13: Respondent's Amended Motion for Safeguards & Supplemental Exhibits

- Respondent also testified in response to the questions presented by the court. His testimony is recorded on the digital audio recording (DAR) system.

### Findings of the Court

### Class Membership

The respondent in this case is not a member of the class in *Franco-Gonzales v. Holder*.

The Department did not file a Notice of Class Membership and the previous Immigration Judge did not make a finding of *bona fide doubt*. However, on March 7, 2023, the Immigration Judge did grant Respondent Counsel's Motion for a JCI.

### Judicial Competency Inquiry

On March 28, 2023, the undersigned conducted a Judicial Competency Inquiry in this case following the procedures prescribed in *Franco-Gonzales v. Holder*. Specifically, I provided the necessary advisals and questioned the respondent in the manner directed in the Order.

Respondent testified that he has met with mental health personnel while detained because he has scary thoughts and dreams and cannot sleep at night. He takes medication, the name of which he is unable to recall, but believes it is only for pain. He also sometimes has trouble breathing. Respondent underwent a psychological evaluation in January 2023 and acknowledged that he has been diagnosed with post-traumatic stress disorder (PTSD) and major depressive disorder. Respondent stated that he has been in the Department's custody since he entered the United States in March 2020. He testified that when he first arrived in the United States, he was not in his right mind because of the head injuries he received in Pakistan. He completed the 12th grade in Pakistan and worked as a farmer with his family. Respondent was able to recall the route he travelled from Pakistan to the United States. He says that he is broken and traumatized and he wants to be released in the United States where he can be protected, because he will be killed if he returns to Pakistan. He does not recall what evidence he presented in the prior proceedings, but he believes that he has given all the evidence he has available.

Finding of Incompetence:

Based upon the totality of the evidence at the conclusion of the JCI including, but not limited to the evidence developed at the JCI. I find that a preponderance of the evidence establishes that the respondent is incompetent to represent himself, because the respondent does not have sufficient present ability to respond on his own to the allegations and charges in the proceeding or to present information and evidence relevant to eligibility for relief, and act upon instructions and information presented by the Immigration Judge and government counsel.

EOIR - 4 of 7

As was noted in *Matter of M-A-M-, 25 I&N Dec.* at 480 (citing *Indiana v. Edwards*, 554 U.S. 164, 175 (2008)), "Mental competency is not a static condition. '"It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways."

Accordingly, I find by a preponderance of the evidence establishes that the respondent is incompetent to represent himself.

## Qualified Representative

Although the respondent has been found incompetent to represent himself in this proceeding, I have not ordered that a Qualified Representative be provided because Respondent is already represented by pro bono counsel in these remanded proceedings. On September 13, 2022, pro bono counsel Sara Mortenson filed a Form E-28 entering her appearance in this matter. Thus, there is no need to order a Qualified Representative. Accordingly, the Court will proceed to address the substantive immigration law issues in the respondent's case.

## Other Appropriate Safeguards and Protections

To ensure the fundamental fairness of the remanded proceedings, the Court will grant the following additional safeguards and protections requested by Respondent's counsel:

1. Presuming that Mr. Muhammad's subjective fear of future persecution is genuine and accept that he believes what he has presented;

2. Accept Respondent's declaration in lieu of testimony and formally incorporate his declaration into the record and give it the full weight of oral testimony;

3. Allow Respondent to testify at counsel table instead of on the witness stand;

4. Allow Respondent to use notes;

5. Allow Respondent to refresh his memory with documents in the record:

6. Provide Respondent additional time to answer questions and/or time to speak with counsel to seek clarification, if necessary;

7. Allow Respondent's counsel to ask leading questions;

8. Refrain from hostile or aggressive questioning;

9. Pose questions in a slow and careful manner;

10. Limit use of compound questions and questions with complex terms and concepts;

11. Take frequent breaks / drink water.

EOIR - 5 of 7

**149**

The court has approved all safeguards requested by pro bono counsel except the request to prohibit adversarial questioning. The Department of Homeland Security has a right to cross-examine the respondent to test both his credibility and the accuracy of the information he presents. To the extent that the Department's mere act of asking questions may be deemed adversarial, the requested safeguard will not be implemented.

Having established sufficient safeguards and protections, the Court will proceed to address the substantive legal issues in the case.

## Conclusions

There is reasonable cause based upon a preponderance of the evidence to believe the respondent is suffering from a mental disorder that impairs his ability to perform a function required by the definition of competence to represent oneself, and accordingly, the respondent is not competent to represent himself. Combined with his significant psychological distress, his prolonged detention of nearly three years, and the totality of the circumstances, the respondent's diagnosed mental disorders significantly impair his cognitive, emotional, or behavioral ability to perform a function required for self-representation.

Specifically, based on the totality of the circumstances, I find by a preponderance of the evidence that Respondent is not competent to represent himself. I find that he does have a rational and factual understanding of the nature and object of the proceedings, but that he is unable to meaningfully participate in the proceedings on his own. Further, he does understand his rights and the applications available to him; how he came into these proceedings; why he is in the proceedings; and his immigration history. That stated, Respondent can consult with his pro bono counsel and he will have, through his counsel, a reasonable opportunity to examine and present evidence and to cross-examine any witnesses, if applicable.

## Orders

**IT IS ORDERED** that the respondent is incompetent to represent himself, but he is competent to assist his counsel in the remanded proceedings;

**IT IS FURTHER ORDERED** that the safeguards outlined above are granted.

Eugene H. Robinson, Jr.
Immigration Judge

### Certificate of Service

This document was served by:   Mail ☑   Personal Service ☐   E-Service ☐
To: ☑ Respondent   ☑ Respondent c/o Custodial Officer   ☐ Respondent's Atty/Rep   ☐ DHS

Date: 04/11/2025   By: Court Staff C. Goosby