UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN RODRIGUEZ ALCANTARA; YASMANI OSORIO REYNA; MARIA FLOR CALDERON LOPEZ; MARY DOE; on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs-Petitioners,<br><br>v.<br><br>GREGORY ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement; et al.,<br><br>　　　　　　　Defendants-Respondents. | Case No.: 20cv0756 DMS (AHG)<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS AND (2) DENYING AS MOOT DEFENDANTS' MOTION TO DECERTIFY SUBCLASS** |

　　　　This case returns to the Court on Defendants' motion to dismiss or to decertify the Otay Mesa Medically Vulnerable Subclass.[1] Plaintiffs filed an opposition to the motion, and Defendants filed a reply. After reviewing the parties' briefs, the relevant legal authority, and the record in this case, the Court grants the motion to dismiss and denies as moot Defendants' motion to decertify the Otay Mesa Medically Vulnerable Subclass.

///

---

[1] The Federal Defendants filed the motion, to which Defendant LaRose filed a joinder.

# I.

# BACKGROUND

This case was filed on April 21, 2020, at the beginning of the COVID-19 pandemic. At that time, there was no vaccine or specific treatment for COVID-19, and the means and methods of transmission were uncertain. Amidst all of the uncertainties surrounding the virus, one thing was clear: The virus was spreading like wildfire in congregate environments like nursing homes, cruise ships, and detention facilities.

One of the reasons for the rapid spread of the virus in those environments was the inability of people to maintain a safe distance from one another. To remedy that problem in detention facilities, individuals and groups began petitioning courts to release detainees, particularly those who were at heightened risk of severe illness or death from COVID-19.

This case was one of those cases. Indeed, the second paragraph of the Complaint makes that clear. It states:

> This action challenges U.S. Immigration and Customs Enforcement ('ICE')'s *continued detention* of Plaintiff-Petitioners ("Plaintiffs") and similarly situated people in the midst of the Coronavirus Disease 2019 pandemic, under conditions and population levels that make social distancing impossible and place them at severe risk, in violation of their Fifth Amendment Due Process Rights.

(Compl. ¶ 2, ECF No. 1) (emphasis added). Throughout the Complaint, Plaintiffs repeatedly emphasized that the focus of their case was the immediate release of class members "from ICE custody due to the urgent threat to their lives and health posed by COVID-19." (*Id.* ¶ 3; *see also id.* ¶ 146 ("When conditions of confinement in an immigration detention facility lead to uniformly unsafe conditions that rise to the level of a constitutional violation, *the only available remedy is to reduce levels of detention* unless and until conditions can be brought in line with constitutional standards.") (emphasis added); *id.* ¶ 147 ("*releasing detainees from Otay Mesa [Detention Center] and Imperial [Regional Detention Facility] is the only viable remedy* to ensure their safety from the

threat to their health that COVID-19 poses.") (emphasis added); *id.* ¶ 149 ("Defendants are subjecting Plaintiffs to unreasonable harm from continued detention. *Release is the only effective remedy*.") (emphasis added).) That focus on population reduction was also made clear in Plaintiffs' motion for a temporary restraining order ("TRO"), (*see* ECF No. 2-1 at 1 (seeking "*the immediate release*, … of a subclass of medically vulnerable persons incarcerated at Otay Mesa [Detention Center ("Otay Mesa")] who face heightened risk of serious illness or death due to COVID-19")), their motion for a preliminary injunction directed to Otay Mesa, (*see* ECF No. 60 at 1 (seeking an injunction forbidding "the continued detention of medically vulnerable people in U.S. Customs and Immigration Enforcement ("ICE") custody in Otay Mesa.")), and their motion for relief from the denial of their motion for preliminary injunction. (*See* ECF No. 112 (seeking a process to resolve requests for release from medically vulnerable detainees); ECF No. 125 (stating in reply brief that case "remains a challenge to unconstitutional confinement".))

After the Court granted Plaintiffs' request for a TRO and ordered Defendants to release certain members of the Otay Mesa Medically Vulnerable Subclass,[2] Defendants filed a motion to dismiss the case on the ground it was moot. Specifically, Defendants argued the case was moot because Plaintiffs had received all of the relief sought in the Complaint, i.e., release from detention, and none of the detainees that had been released would be re-detained.[3] In response to that motion, Plaintiffs pointed out that some Subclass members remained in detention, therefore their case was not moot. (ECF No. 110 at 3.) Plaintiffs also explained that they were seeking other forms of injunctive relief,

---

[2] The Otay Mesa Medically Vulnerable Subclass was defined as "All civil immigration detainees incarcerated at the Otay Mesa Detention Center who are age 60 or over or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19 as determined by CDC guidelines." (ECF No. 41 at 13.)

[3] By the time the motion to dismiss was filed in August 2020, Defendants had released 92 of the 134 Subclass members and the COVID-19 infection rate at Otay Mesa was in decline, but the wider COVID-19 outbreak was not yet contained. (ECF No. 77 at 1-2.)

including an order requiring Defendants to provide periodic reports on the number of COVID-19 cases at Otay Mesa, (*id.* at 4-5), and conduct universal testing at both Otay Mesa and Imperial. (*Id.* at 4.) Because some Subclass members were still detained at Otay Mesa and the Court had not yet ordered Defendants to provide periodic reports on the COVID-19 outbreak, the Court denied Defendants' motion. (ECF No. 130.)

Thereafter, the parties began the formal discovery process, and in April 2021, the parties began settlement discussions. (ECF No. 171.) By that time, COVID-19 vaccines were available and being administered to wide swaths of the population, including individuals in federal custody.

In October 2021, the parties requested to stay the case so they could continue their settlement discussions. The Court granted that request, and the case was stayed for more than a year while those discussions progressed. During that time, the country continued to make significant progress in its fight against COVID-19 through expanded vaccination efforts and the development of specific treatments for the virus, including Paxlovid.

After the stay was lifted in November 2022, Defendants moved again for judgment on the pleadings and/or to dismiss the case on the ground it was moot. (ECF Nos. 201, 202.) In that motion, Defendants argued the case was moot in light of the Supreme Court's decision in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), and because the named Plaintiffs had been released from detention and their removal cases had been resolved. (ECF No. 201 at 5.) In response, Plaintiffs argued the motion was premature and they should first be allowed to amend their complaint to substitute in new plaintiffs and "align the remedies Plaintiffs seek with the current state of the pandemic and ICE's response to it." (ECF No. 209 at 4.) Those remedies would no longer include the release of detainees at Otay Mesa. (*Id.* at 10.) Instead, Plaintiffs would seek to remedy Defendants' alleged failure to provide the putative class with access to Paxlovid and alleged failure to provide detainees with "certain baseline protections against COVID." (*Id.* at 5.) The Court agreed with Defendants that the individual claims of the named Plaintiffs were moot and thus those claims were dismissed. (ECF No. 221.) The claims

of the Otay Mesa Medically Vulnerable Subclass were not moot, however, and thus the Court denied the motion to dismiss that class claim and ordered Plaintiffs to file a motion to substitute a new class representative. (*Id.*)

Plaintiffs then filed their motion to substitute a new class representative, and before the Court could rule on that motion, Defendants filed the present motion to dismiss. As in their previous motions to dismiss, Defendants again argue this case is moot, but for different reasons. Specifically, Defendants argue the case is now moot "due to the existence and availability of the vaccine and the end of the COVID-19 emergency." (ECF No. 227 at 5.) Plaintiffs respond that their claims are not moot because although they "no longer seek release," they are still seeking "to remedy failures in the COVID-19 protection policies and procedures within the facility." (ECF No. 244 at 7.)

## II.
## DISCUSSION

"The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011). "[W]hen the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome[,]" a case is moot and must be dismissed. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "In other words, if events subsequent to the filing of the case resolve the parties' dispute, we must dismiss the case as moot, because '[w]e do not have the constitutional authority to decide moot cases[.]'" *Pitts*, 653 F.3d at 1087 (citations omitted).

"Consistent with the dictates of the Supreme Court, we approach mootness cautiously and with care to ensure that the party claiming the benefit of mootness—here, the government—has carried its burden of establishing that the claim is moot." *United States v. Larson*, 302 F.3d 1016, 1020 (9th Cir. 2002). To meet that burden, Defendants must show it is absolutely clear that Plaintiffs no longer need the judicial protection sought through their Complaint. *Id.* In considering whether Defendants have made that

showing, the Court must give close inspection to claims "extracted late in the day from [a] general prayer for relief and asserted solely to avoid otherwise certain mootness[.]" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997). In the Ninth Circuit, attempts to bootstrap new forms of relief "into an ancillary prayer for relief" late in the litigation are not permitted. *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1212 (9th Cir. 2018).

Here, there is no dispute Plaintiffs are no longer seeking the primary form of relief requested in their Complaint, namely release of medically vulnerable detainees from ICE custody. Plaintiffs also make no mention of their request for "information regarding the ongoing COVID-19 outbreak in Otay Mesa[,]" (Compl. at 42), presumably because, nearly four years later, that outbreak is long over. This leaves only Plaintiffs' request for a declaration "that the conditions under which Defendants have confined Plaintiffs and Otay Mesa and Imperial Class members place class members at substantial risk of serious illness and death, in violation of the Due Process Clause of the Fifth Amendment[.]" (*Id.*) However, Plaintiffs do not appear to rely on this request to refute Defendants' mootness arguments.

Instead, Plaintiffs rely on case law stating a case is moot only if "'there is no effective relief remaining for a court to provide.'" (*See* Opp'n to Mot. at 3, ECF No. 244.) (citations omitted). Generally, this is an accurate statement of the law, but Plaintiffs fail to acknowledge that it comes with an important limitation, namely, that the relief still available to the court be requested in the complaint. The availability of some form of relief untethered to the complaint does not save a case from being dismissed as moot.

Two cases from the Ninth Circuit bear this out. The first is *Seven Words LLC v. Network Solutions*, 260 F.3d 1089 (9th Cir. 2001). In that case, the plaintiff sought injunctive relief to remedy the defendant's failure to register certain domain names on the Internet. *Id.* at 1091. The district court dismissed the case, and two months before scheduled argument at the Ninth Circuit, all of the domain names at issue were registered to third parties. *Id.* at 1094. The issue of mootness was raised on appeal, and the plaintiff argued the case was not moot because "it may still be entitled to damages and/or

declaratory relief." *Id.* at 1095. The court rejected that argument because the plaintiff "never sought damages in this litigation" and there was no longer a live controversy supporting declaratory relief, stating "[w]e will not second-guess Seven Words's tactical decisions and now conjure up a damages claim where none exists." *Id.* at 1095, 1098.

The plaintiff further argued that "its general prayer for relief in its complaint includes an implicit prayer for damages, pointing out that a general prayer for relief 'may include appropriate monetary relief should circumstances prohibit injunctive relief.'" *Id.* at 1097. The court rejected this argument also, paying heed to the Supreme Court's admonition "to be wary of late-in-the-day damages claims," and "cautioning that 'a claim for … damages, extracted late in the day from [plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness, [bears] close inspection.'" *Id.* (quoting *Arizonans for Off. Eng.*, 520 U.S. at 71). Considered through that lens, the *Seven Words* court found the plaintiff's attempt to fashion a new specific from of relief from a general prayer for relief "would render the [notice] pleading requirements of Federal Rule of Civil Procedure 8(a)(3) illusory and certainly prejudice [the defendant]." *Id.* at 1098.

The Ninth Circuit revisited these issues in *Bain*. There, the plaintiffs filed a complaint against the public sector teachers' Union alleging the Union was violating their First Amendment rights. *Bain*, 891 F.3d at 1208-09. In the complaint, the plaintiffs specifically sought various forms of declaratory and injunctive relief. *Id.* at 1210-11. The district court dismissed the case and the plaintiffs appealed that ruling. While the appeal was pending, the plaintiffs disassociated from the Union, raising the issue of whether the appeal was moot. *Id.* at 1209, 1211. On that issue, the plaintiff argued the case was not moot because the district court retained the ability to grant restitution. *Id.* at 1212. The court of appeal began its discussion by pointing out that "[u]ntil now, Plaintiffs never sought any type of money damages." *Id.* Instead, the plaintiffs' requests for declaratory and injunctive relief "form[ed] the body, heart, and soul of Plaintiffs' action." *Id.* Given those two findings, the court interpreted the plaintiffs' attempt "to transform their lawsuit from a request for prospective equitable relief into a plea for money damages to remedy

past wrongs" as an "eleventh hour" effort to defeat mootness, which the court rejected. *Id.* at 1212-13. Like the *Seven Words* court, the *Bain* court reasoned that the plaintiffs were simply trying "to 'wrest a claim for [restitution] from a general prayer for relief' without prior notice to the [defendant]." *Id.* at 1214.

In this case, as in *Seven Words* and *Bain*, Plaintiffs are no longer seeking the relief sought in their Complaint, namely and most importantly, the immediate release of medically vulnerable detainees at Otay Mesa.[4] Instead, and in response to Defendants' assertions of mootness, Plaintiffs have changed tack and now appear to be challenging Defendants' "COVID-protection policies and procedures within the facility," (Opp'n to Mot. at 7), particularly Defendants' vaccination program and their failure to stock Paxlovid. (*Id.* at 4-6.) Although the exact boundaries of this relief are unclear, what is clear is the Complaint did not raise either the issue of a vaccination program or the availability of Paxlovid. Indeed, the Complaint could not have raised those issues because neither vaccines nor Paxlovid existed when the Complaint was filed. Any argument that these issues were somehow contemplated by the Complaint is simply an impossibility, as is any suggestion that Defendants had notice that Plaintiffs were seeking relief related to these issues. Like the plaintiffs in *Seven Words* and *Bain*, Plaintiffs here are "attempt[ing] to manufacture jurisdiction and avoid mootness by suddenly seeking" a different form of

///
///
///

---

[4] As mentioned above, Plaintiffs do not rely on the two other forms of relief requested in their Complaint, namely, (1) the request for information related to the "ongoing COVID-19 outbreak in Otay Mesa" and (2) the request for a declaration "that the conditions under which Defendants have confined Plaintiffs and Otay Mesa and Imperial Class members place class members at substantial risk of serious illness and death[.]" (Compl. at 42.) Even if they did, the Court would find those requests do not save this case from mootness because the COVID-19 outbreak at Otay Mesa in April 2020 has ended and the conditions at Otay Mesa in April 2020 no longer exist.

relief. *Bain*, 891 F.3d at 1214. This Court rejects that attempt, and following the reasoning of *Seven Words* and *Bain*, finds this case is moot.[5]

///

///

---

[5] The Court notes there is case law that could support a finding, consistent with Defendants' arguments here, that changes in the COVID-19 landscape over the past four years also render this case moot. For instance, in *Clark v. Governor of N.J.*, 53 F.4th 769, 781 (3d Cir. 2022), *cert. denied by Clark v. Murphy*, ___ U.S. ___, 143 S.Ct. 2436 (2023), the Third Circuit found that an appeal involving a challenge to state-issued COVID-19 restrictions was moot in light of changed circumstances. In discussing mootness, that court stated "it is hard to imagine that we could once again face anything quite like what confronted us [in 2020-21]. Moreover, the public health outlook has changed dramatically since the dark days of March 2020 …. Our knowledge of the virus and its vectors of transmission, the rollout of the vaccines, and the availability of therapeutic responses to infection have totally changed the nature of the disease itself, our understanding of it, and our response to it. The accumulation of those changed circumstances thus make the return of the same pandemic … unlikely." *Id.* at 778. The Eighth Circuit came to the same conclusion in *Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365 (8th Cir. 2022), *cert. denied*, ___ U.S. ___, 143 S.Ct. 574 (2023), as did the Ninth Circuit in *Brach v. Newsom*, 38 F.4th 6 (9th Cir. 2022) (*en banc*), *cert. denied*, ___ U.S. ___, 143 S.Ct. 854 (2023). This case is distinguishable from those cases because it does not involve a challenge to state-issued executive orders. In those cases, the mootness question is neater because the challenged action is revoked or rescinded with the stroke of a pen. Here, by contrast, the conduct at issue is the continued detention of medically vulnerable individuals in a carceral setting, which presents a messier and more complicated situation. What binds the cases together, however, is they are all based on the same underlying fact of an unprecedented, once-in-a-lifetime pandemic that is now under control. Relying on that common thread, the Third Circuit extended the holding of *Clark* to an appeal involving requests for release from state custody in light of the COVID-19 pandemic. *See Newkirk v. Superintendent Huntingdon SCI*, Nos. 21-1739, 21-1787 and 21-1854, 2023 WL 4861767 (3d Cir. July 31, 2023). There, the court stated that "'mootness concerns itself with … whether the same precise situation – the pandemic such as it presented itself in 2020 and 2021 – will occur again[.]'" *Id.* at *1 (quoting *Clark*, 53 F.4th at 778-79). Finding that occurrence improbable, the court dismissed the appeal as moot. Although the Ninth Circuit has not taken this approach to similar custody challenges, the reasoning of these cases supports Defendants' arguments here that this case is moot.

## III.
## CONCLUSION

For the reasons set out above, the Court grants Defendants' motion to dismiss this case as moot. In light of this holding, Defendants' alternative motion to decertify the Otay Mesa Medically Vulnerable Subclass is denied as moot, as are Plaintiffs' motion to substitute new class representative and motion to add new plaintiffs. The Clerk of Court shall enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated: March 20, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court